## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

        **Plaintiff,**                **Case No.: 6:20-cv-02354-GAP-EJK**

**vs.**

**STRIDE, INC., formerly known as**
**K12 INC., and K12 FLORIDA LLC,**

        **Defendants.**

_____/

## MOTION OF DEFENDANTS STRIDE, INC., FORMERLY KNOWN AS K12 INC., AND K12 FLORIDA LLC TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT

Defendants Stride, Inc., formerly known as K12 Inc. ("Stride"), and K12 Florida LLC ("K12 Florida") (together, "K12"), through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby move to dismiss all claims of the Complaint of Plaintiff Florida Virtual School ("FLVS").

As grounds for this motion, K12 states that, even accepting all of the factual allegations in the Complaint as true, FLVS can prove no set of facts in support of its claims that entitle it to relief because, among other reasons, it has delayed inexcusably in bringing the challenged uses to the attention of K12; it has proceeded despite K12's timely efforts to address FLVS's stated concerns; and K12 has not violated any laws or agreements to warrant any relief.

-1-

Further, FLVS cannot maintain its trademark and unfair competition claims because it is using litigation – or the threat of it – to stifle legitimate competition. Specifically, FLVS is trying to leverage the Lanham Act and FLVS's highly descriptive trademark registrations to bully competitors and improperly prevent them from using descriptive terms like "online school" to describe services offered online to Florida primary and secondary school students and to prevent consumers from comparing the service offerings of competitors in the Florida online education market.

## Factual Background

This is a trademark and false advertising fight that FLVS has picked and that K12 sought to avoid and thought it already had settled and resolved. The dispute actually has its origins in an earlier proceeding with which this Court is familiar. *Florida VirtualSchool v. K12, Inc*., Case No. 6:11-cv-00831-KRS (M.D. Fla., filed May 18, 2011).

K12 has operated in the State of Florida since at least 2003, providing services to the State, to the State's school districts, and directly to families and students, with the authorization of the Florida Department of Education. Among these services, K12 has been involved in publishing proprietary online curriculum and physical learning materials and providing teaching services to kindergarten through twelfth grade students.

K12 began using the mark FLORIDA VIRTUAL ACADEMY in 2003 to describe its services offered in Florida.  K12 began using the mark FLORIDA VIRTUAL PROGRAM at least as early as the 2008-2009 school year.[1]  In September 2009, FLVS filed an application with the U.S. Patent & Trademark Office (the "Trademark Office"), seeking to register the FLORIDA VIRTUAL SCHOOL mark.  The Trademark Office issued an Office Action noting that the "FLORIDA" element of the mark was geographically descriptive, and it directed, over the applicant's objection, that FLVS "must disclaim 'VIRTUAL SCHOOL' because such wording appears to be generic in the context of applicant's goods and/or services."  *See* Dec. 23, 2009 Office Action in Response to Application SN 77832081 at 1 (Ex. 1).[2]

In a final action denying FLVS's arguments against the disclaimer requirement, the Trademark Office cautioned that "no amount of purported proof that a generic term has acquired secondary meaning can transform that term into a

---

[1] During the time period, FLVS alleges K12 has breached an agreement and violated the law for the relevant Complaint, only K12 Florida and not Stride has been approved as a Virtual Instruction Program provider in Florida to provide such services, and only K12 Florida and not Stride has provided such services.

[2] The Court may consider documents attached to a motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.  *See Hi-Tech Pharm., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming a district court decision that considered a contract attached to a motion to dismiss without converting the motion into a motion for summary judgment).

registrable trademark.  Such a designation cannot become a trademark under any circumstances."  *See* Feb. 26, 2010 Office Action in connection with Application SN 77832081 at 1 (Ex. 2).  FLVS therefore accepted an amendment to the application to include the disclaimer:  "No claim is made to the exclusive right to use 'VIRTUAL SCHOOL' apart from the mark as shown."  The registration with the disclaimer was issued on August 10, 2010.  *See* Ex. A to Cmplt.[3]

On May 18, 2011, FLVS, an agency of the State of Florida, filed suit challenging K12's use of FLORIDA VIRTUAL ACADEMY and FLORIDA VIRTUAL PROGRAM, and the related acronyms FLVA and FLVP, alleging that such use violated its FLORIDA VIRTUAL SCHOOL and FLVS trademark registrations.  *Florida Virtual School v. K12, Inc*., No. 6:11-cv-00831-KRS (M.D. Fla., filed May 18, 2011).

K12 argued in defense that FLVS had known about K12's use of its marks virtually from inception.  It also noted that FLVS is a creature of state statute that exists as an agency of the State of Florida, and the State of Florida, through its Department of Education, specifically authorized K12 to operate in Florida after K12 disclosed its intention to use the FLORIDA VIRTUAL ACADEMY and FLORIDA VIRTUAL PROGRAM marks and the corresponding acronyms.  However, K12

---

[3] All subsequent registrations of FLVS featuring or incorporating the words "FLORIDA VIRTUAL SCHOOL" include the same disclaimer.  *See* Exhibits A, C, F and G to Cmplt.

found the diversion of resources and attention from its program to the trademark lawsuit to be unproductive, and it therefore entered into a Settlement Agreement with FLVS after over four years of litigation.  Cmplt. ¶32.[4]

The Settlement Agreement was executed by the parties on or about November 3, 2015.  The Settlement Agreement included the following provisions:

- K12 agreed to halt all use of its FLORIDA VIRTUAL ACADEMY, FLORIDA VIRTUAL ACADEMIES and FLORIDA VIRTUAL PROGRAM marks and the corresponding acronyms (collectively, "the K12 marks") by June 30, 2016, and to rebrand its Florida programs, changing the names of all of its goods and services offered under the K12 marks, Ex. 3, ¶ 5(a);

- K12 agreed to change its websites, including uniform resource locators ("URLs"), and to halt promotion and marketing under the K12 marks, *id.* ¶ 5(a)(3);

- K12 agreed to refrain from including the words "Florida" and "Virtual" together in the same mark, regardless of the order in which the words are used in the mark or insertion of other words between these words, for goods or services.  But FLVS agreed that this restriction "shall not prohibit K12 from using the word 'Florida' or the word 'Virtual' individually in a mark (i.e., by

---

[4] The parties have agreed that the Settlement Agreement should be made part of the record in this proceeding, and a copy has been attached hereto as Exhibit 3 which the financial terms redacted.

using 'Florida' in a mark or 'Virtual' in a mark so long as the mark does not contain both words) . . . or from making non-trademark usage of the words 'Florida' and 'Virtual' in combination, such as by referring to the Florida Virtual Instruction Program established by Florida Statutes § 1002.45," *id.* ¶ 5(d);

- The parties attached to the Settlement Agreement a list of "Approved Marks" to which FLVS did not object, as well as a list of "Prohibited Marks," but they specifically provided:  "The Parties further agree that K12 is not required to select a mark listed … and that there shall be no presumption against K12's choice of a mark not listed," *id.* ¶ 5(e); and

- The parties appended to the Settlement Agreement as Exhibit 3 thereto a Trademark Quitclaim Assignment dated November 3, 2015, in which K12 "hereby quitclaims, assigns, transfers, and sets over to FLVS any right, title, and interest in and to all rights that K12 may have in the K12 Marks . . . ."

Eager to head off further litigation by FLVS, K12 included a Notice and Cure provision in the Settlement Agreement, providing that if FLVS became aware of any instance of a prohibited use of the K12 marks,  "FLVS shall notify K12 as soon as practicable but in no event later than thirty (30) calendar days from the date upon which FLVS becomes aware of the use."  *Id.* ¶ 5(c).

The Settlement Agreement further provided, under a "Conference Prior to

Litigation" provision, for the parties to confer and negotiate in good faith in the event that FLVS intended to challenge a new mark chosen by K12, in an effort to resolve the dispute without litigation. *Id.* ¶ 14.

On August 3, 2020, FLVS's litigation counsel from the prior lawsuit invoked the "Conference Prior to Litigation" provision of the Settlement Agreement to challenge references to K12's program for the Hendry County School District's statewide online program as the "Florida Online School"; the use of the acronym "FLOS" in reference to the Hendry County program; and descriptive, non-trademark references to the program as "the Florida virtual school powered by K12." The letter from FLVS's litigation counsel gave K12 fifteen business days to permanently cease these references. *See* Cmplt. ¶ 37 (referencing FLVS's "repeated demands for Defendants to cease and desist"); *id.* ¶ 73 (alleging satisfaction of all conditions precedent, which necessarily would include notice and meet and confer obligations).

According to an online article posted June 12, 2019, a true and correct copy of which is attached hereto as Exhibit 4, the Florida Online School program was publicly announced in June 2019 – *more than a year earlier than the August 2020 demand of FLVS's litigation counsel* – and it began its inaugural academic year on August 12, 2019, with a publicly available internet site located at www.flos.k12.com. The Hendry County School District is overseen by the Florida Department of Education.

During the process of conferring among counsel concerning the August 3, 2020 demand letter from FLVS's litigation counsel and a subsequent demand letter dated August 26, 2020, FLVS acknowledged that K12 had changed its Florida branding, as provided in the Settlement Agreement, to FLORIDA CYBER CHARTER ACADEMY, but FLVS complained that K12 was using the domain name flva.com as a redirect to the K12 site in violation of the provision in the Settlement Agreement for transfer of domain names featuring the K12 marks. *See* Cmplt. ¶ 37.

FLVS's litigation counsel also raised during the conferral process that a reference to FLVS in an online piece describing K12's attributes, titled "K12 vs. Competitors," that included a "Comparison Checklist" (the "Checklist"), which invited consumers to undertake their own comparison between attributes of "K12-Powered Schools" and those of "Other Online Learning Solutions," falsely or misleadingly suggested that FLVS lacked all of the attributes listed in the unchecked boxes under the heading "Other Online Learning Solutions." That is, FLVS asserted that a reasonable consumer would read the invitation to consumers to undertake their own comparisons using the Checklist instead to assert that each of the competitors lacked each and every one of the attributes characterizing the K12 program.

K12 made the following responses to these contentions:

- With respect to the use of FLORIDA ONLINE SCHOOL and FLOS for the

Hendry County program, K12 noted that the nomenclature did not violate any restriction in the Settlement Agreement inasmuch as the name selected was not on the Settlement Agreement's "Prohibited List" and thus gave rise to no presumption of a violation.  Further, K12 stated that an immediate name change after the school year already had begun would create confusion for those who enrolled under the existing names, but K12 stated that, regardless of its belief that the use was a permissible use, it did not wish to create a dispute over the name and would explore a change.  As the website for the Hendry County Program shows, the program is being re-branded to DIGITAL ACADEMY OF FLORIDA.  *See* Ex. 5.

- With respect to the descriptive use references to a "Florida virtual school powered by K12," K12 noted that the Settlement Agreement specifically permitted descriptive, non-trademark usage of the words "Florida" and "Virtual" in combination.  Nonetheless, it agreed to remove the references to avoid an unnecessary dispute and has done so.  Cmplt. ¶ 38 (acknowledging that K12 removed the challenged references from its website).

- With respect to the use of the flva.com domain name as a redirect, K12 noted that its failure to transfer the flva.com domain to FLVS was inadvertent, and it promised to take immediate steps to complete the transfer of the flva.com domain name to FLVS and has done so.  Cmplt. ¶ 61 (acknowledging that

K12 transferred the domain name after receiving FLVS's notice).

- With respect to the "Comparative Checklist," K12 noted that the entire document, when viewed in context, clearly constituted a non-misleading invitation to consumers to use the blank checklist to compare the attributes of K12's competitors to those of K12.   Nonetheless, K12 agreed to remove reference to FLVS in identifying K12's Florida competitors and has done so. Cmplt. ¶ 58 (acknowledging that K12 "removed the reference to FLVS in the advertisement").

Despite these actions taken by K12 in a good faith effort to avoid this dispute, FLVS filed its lawsuit on December 22, 2020, more than three months after the "Conference Prior to Litigation."

## ARGUMENT

### I.   FLVS's Claims For Injunctive Relief Are Barred As A Matter Of Law Because Plaintiff Cannot Show Irreparable Harm.

Although FLVS makes conclusory and formulaic assertions of irreparable harm, it cannot demonstrate any such harm as a matter of law for at least three reasons.   *First*, K12 has acted promptly to address all challenged uses of the marks which Plaintiff has brought to K12's attention.   Cmplt. ¶¶ 38, 58, 61; Ex. 5.

*Second*, as shown above in the Factual Background, K12's use of the FLORIDA ONLINE SCHOOL and FLOS marks in connection with the Hendry

County program was publicly advertised at least as early as June 2019.  Ex. 4.[5]  As to the flva.com domain name, FLVS was entitled to ownership as of November 3, 2015 by virtue of the Trademark Quitclaim Assignment accompanying the Settlement Agreement, Ex. 3 (Settlement Agreement) and Ex. 3 thereto (Quitclaim Assignment).  Had FLVS been exercising any control over use of its marks and domains incorporating them, it would have known of this use purportedly causing it irreparable injury in the more than five years since the transfer of ownership.

Indeed, delay by a plaintiff in seeking an injunction for trademark infringement undermines a finding of irreparable harm.  *See Wreal, LLC v. Amazon.com, Inc*., 840 F.3d 1244, 1248 (11th Cir. 2016) (finding a "five-month delay" in seeking a preliminary injunction "fatally undermine[s] any showing of irreparable injury"); *Larweth v. Magellan Health, Inc*., 398 F. Supp. 3d 1281, 1291 (M.D. Fla. 2019), *aff'd*, No. 19-13247, 2021 WL 21139 (11th Cir. Jan. 4, 2021) (stating "delay in seeking an injunction is a factor to consider" against the moving party when deciding whether to grant a permanent injunction).  Such delay is particularly relevant when the party "fails to offer any explanation for its . . . delay" and when a party "relied exclusively on evidence that was available" prior to the

---

[5]  A court may take judicial notice of, and consider, "documents attached to a motion to dismiss or response, which are public records that are 'central' to a plaintiff's claims, without converting the motion to dismiss into a motion for summary judgment."  *Beepot v. J.P. Morgan Chase Nat. Corp. Servs., Inc*., 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014), *aff'd sub nom, Beepot v. JP Morgan Chase Nat. Corp. Servs., Inc*., 626 F. App'x 935 (11th Cir. 2015).

delay of moving for an injunction.  *Wreal, LLC*, 840 F.3d at 1248.

**Third,** FLVS's claim for injunctive relief is moot as a matter of law. When "the conduct sought to be stopped has ceased and is unlikely to resume" federal courts "should not grant injunctive relief."  *Snair v. City of Clearwater*, 787 F. Supp. 1401, 1415 (M.D. Fla. 1992) (citing *Ragsdale v. Turnock*, 841 F.2d 1358, 1366 (7th Cir. 1988)); *see also H&R Block E. Enters., Inc. v. JTH Tax, Inc*., No. 05-20389-CIV, 2005 WL 8155965, at *3 (S.D. Fla. Apr. 25, 2005) (finding that when a defendant pulls an infringing advertisement once he became aware it was improper, and has filed a declaration that he will not run similar advertisements again, an injunction is moot and should not be granted) (citing *Snair*, 787 F. Supp. at 1415). When a  defendant "effectively provides . . . the relief" sought by the plaintiff, the issue is effectively "resolved," and the claims by the plaintiff are rendered "moot." *Mailplanet.com, Inc. v. Lo Monaco Hogar, S.L.*, 291 F. App'x 229, 232 (11th Cir. 2008) (finding Lanham Act claim for permanent injunctive relief moot because the parties effectively resolved the issues prior to the filing of the complaint).

As shown above, K12 promptly acted to address the challenged uses FLVS brought to its attention, and there is nothing in FLVS's factual allegations to suggest that the halted uses are likely to resume.  Rather, the facts show that K12 has effectively provided the relief sought by FLVS by addressing its stated concerns, thereby rendering any injunctive relief moot.  *Snair*, 787 F. Supp. at 1415;

*Mailplanet.com, Inc.*, 291 F. App'x at 232.

**II.    FLVS's Claims For Monetary Relief For Alleged Trademark Infringement Should Be Dismissed Because They Are Based On Initial Interest Confusion, An Unrecognized Claim In The Eleventh Circuit.**

To the extent that FLVS's trademark infringement claims are based on "initial interest confusion," such claims have not been recognized in the Eleventh Circuit. *See Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1283 (M.D. Fla. 2011) (holding that because "initial interest confusion [ ] is not actionable confusion in the Eleventh Circuit," plaintiff's claim for trademark infringement fails) (issue not reached on appeal), *aff'd*, 693 F.3d 1338 (11th Cir. 2012).   Indeed, as the Southern District of Florida recently observed, "courts in this Circuit are reluctant to find this manner of confusion actionable."  *USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1265-66 (S.D. Fla. 2016) (citing *Suntree Techs.*, 693 F.3d at 1347 (declining to address whether initial interest confusion is actionable in the Eleventh Circuit)); *Vital Pharm., Inc. v. Am. Body Bldg. Products, LLC*, 511 F. Supp. 2d 1303, 1318 (S.D. Fla. 2007) ("The Eleventh Circuit has not embraced this principle, and I find it unpersuasive").  Further, the Eleventh Circuit has suggested that if initial interest confusion is remedied prior to a customer going through with a sale, there is no infringement cause of action.  *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 n. 10 (11th Cir. 2008) (stating that if "it will be clear to the consumer that there is no relationship

between the defendant and the competitor" prior to a sale, then it is not likely to cause the type of confusion actionable under the Lanham Act).

Given what is involved in actually enrolling a child in a K12 offering, FLVS's infringement claims are based on initial interest confusion and therefore are not viable. *See Suntree Techs.*, 902 F. Supp. at 1283.  As parents do their due diligence to decide where to enroll their child and actually go through the involvement of enrolling their child in a school such as the program formerly known as Florida Online School, it is highly unlikely these consumers of education products for their own children would still confuse K12's online schooling program with that of FLVS prior to making a purchase.  *See N. Am. Med. Corp.*, 522 F.3d at 1224 n.10.  Simply, even if there were initial interest confusion at the outset, parents would remedy any such confusion prior to enrolling their child with K12.  Further, K12's use of FLORIDA ONLINE SCHOOL and the FLOS acronym at most would result only in initial interest confusion but would not present any actionable claim for damages.

The Court therefore should dismiss all of Plaintiff's Lanham Act and common law trademark infringement claims.

## III.   FLVS Fails To State A Claim For Breach Of Contract.

### A.   *FLVS does not plead and cannot show that it gave the contractually mandated timely notice of its claims.*

Mindful that it was dealing with an aggressively litigious competitor seeking to inhibit competition by asserting FLVS's highly descriptive mark against similarly

descriptive formulations despite FLVS's mandated disclaimer of the "Virtual School" element of FLVS's own mark, K12 negotiated to include in the Settlement Agreement a "Notice and Cure" provision requiring FLVS "to notify K12 as soon as practicable but in no event later than thirty (30) calendar days from the date upon which FLVS becomes aware of the use." Ex. 3, ¶ 5(c). FLVS has not pleaded satisfaction of this condition.[6]

FLVS pleads no facts supporting that it gave the required notice within thirty days of when it first became aware of claimed prohibited mark usage. *See generally* Cmplt. As to the FLORIDA ONLINE SCHOOL and FLOS uses, FLVS's first awareness – assuming *any* monitoring by FLVS of uses now being claimed to have caused irreparable harm – likely would have been June 2019, given that this use was "open and notorious" for more than a year before FLVS's counsel issued his initial August 3, 2020 demand letter.[7] And FLVS's knowledge of use of the flva.com domain as a redirect likely would have been as early as November 3, 2015.

Given its delay in providing notice, FLVS cannot as a matter of law

---

[6] Plaintiff's conclusory, formulaic allegation that "[a]ll conditions precedent to maintaining this action have either occurred or been waived," Cmplt. ¶73, is too vague and conclusory to satisfy the plausibility standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating a Court does not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" within a complaint) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[7] Although they cannot be considered on a motion to dismiss, Plaintiff attached to its "Conference Prior to Litigation" Notice printouts from K12's 2019 webpages showing that Plaintiff has been aware for some time of the uses it now challenges, which likely explains why it does not plead that it gave notice within 30 days of first becoming aware of the challenged uses.

demonstrate the irreparable injury element necessary for injunctive relief, even if K12 had not already changed the name. Moreover, the "Notice and Cure" provision of the Settlement Agreement, properly interpreted, prevents FLVS from recovering monetary damages under the Settlement Agreement for purportedly prohibited uses that have continued for more than thirty days prior to notice being provided to K12.[8] FLVS's failure to provide seasonable notice or to take any timely steps to alert K12 to the fact that it considered the use objectionable bars such recovery.

**B.    Claims based on K12's inadvertent failure to transfer the flva.com domain name likewise are barred by FLVS's failure to give timely notice of this claim.**

With regard to K12's alleged failure to transfer the domain name flva.com to FLVS under the Settlement Agreement, that failure was a matter of public record – the registrar of the domain was publicly available to FLVS – as of the November 2015 signing of the Settlement Agreement and the Quitclaim Assignment, and K12 was permitted to continue using it until December 2016. FLVS filed this lawsuit on December 22, 2020. Thus, FLVS must have known of K12's failure to transfer the domain name *four years prior to filing suit*. FLVS's breach claim arising from the

---

[8] K12's use of FLORIDA ONLINE SCHOOL and FLOS is not prohibited under the Settlement Agreement in any event because the parties expressly provided that "there shall be no presumption against K12's choice of a mark not listed on [the Prohibited List]." Ex. 3, ¶ 5(e). Similarly, K12's descriptive use of the phrase "a Florida virtual school powered by K12" is not actionable as a breach of the Settlement Agreement because the Settlement Agreement expressly did not prohibit K12 "from making non-trademark usage of the words 'Florida' and 'Virtual' in combination." *Id.*, ¶ 5(d).

delay in transferring the domain name therefore is barred by FLVS's failure to plead that it gave seasonable notice of the failure, as required under the Settlement Agreement.  Ex. C, ¶5(c). Finally, as noted in Section I, *supra,* FLVS could not be entitled to injunctive relief with respect to the failure because the domain name promptly was transferred once FLVS finally gave K12 notice. *See* Cmplt. ¶ 61.

## IV.    FLVS's False Advertising Claim Fails Because There Is No False or Misleading Statement in K12's "Comparative Checklist."

FLVS fails to state a viable Lanham Act false advertising claim (Count V) because the entire advertisement – as opposed to the partial screenshot of the prior version of the document attached to the Complaint as Exhibit K – makes pellucidly clear to the reader that the blank checklist is to be used by the consumer to undertake his or her own comparison.[9]   The caption appearing next to the Checklist in its current iteration clearly explains:

---

[9] According to paragraph 53 of the Complaint, Exhibit K purports to be "[s]creenshots *from* this advertisement" (emphasis added).  Inexplicably, the screenshots do not provide the date on which the website was "last visited," do not include the current version of the document, and eliminate text that is critical to understanding the document in context.



**K12 vs. Other Online Learning Solutions**

When comparing K12 to other online learning solutions like Connections Academy and Time4Learning, use this checklist to weigh your options.

A true and correct copy of a screenshot of the entire document, printed on February 17, 2021, is attached hereto as Exhibit 6.[10]  Notably, the "your" referred to in this text is the consumer, meaning that it is the consumer being invited to use the checklist to make the comparison.  Also notably, reference to FLVS has been removed in the current iteration of the document.  Cmplt. ¶ 58; Ex. 6.

Among the elements that must be properly alleged in order to state a claim for false advertising under § 1125(a) of the Lanham Act is the requirement that "the

---

[10] On a 12(b)(6) motion to dismiss, the Court may consider "documents central to or referenced in the complaint."  *Lowe v. STME, LLC*, 354 F. Supp. 3d 1311, 1314 (M.D. Fla. 2019) (citing *La Grasta v. First Union Sec., Inc*., 358 F.3d 840, 845 (11th Cir. 2004)); *see also Spiral Direct, Inc. v. Basic Sports Apparel, Inc*., 151 F. Supp. 3d 1268, 1274 (M.D. Fla. 2015).

advertisements of the opposing party are false or misleading as to the party's own product of another's." *Third Party Verification, Inc. v. Signaturelink, Inc*., 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007) (citing *Hickson Corp. v. N. Crossarm Co., Inc*., 357 F.3d 1256, 1260–61 (11th Cir. 2004)).   Failure to sufficiently plead an element of the claim justifies dismissal under Rule 12(b)(6).   *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc*., 797 F.3d 1248, 1277 (11th Cir. 2015) (stating a plaintiff "must plead" the statements made by the defendant satisfy each of the five elements of false advertising under § 1125 of the Lanham Act).   Plaintiff cannot meet these claim requirements.

To satisfy the false or misleading element, a plaintiff must show "the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers."   *Hickson Corp.*, 357 F.3d at 1261 (quotations omitted).   When determining whether an advertisement is "false or misleading," the court "must analyze the message conveyed in full context, and must view the face of the statement in its entirety."   *Incarcerated Entm't, LLC v. Warner Bros. Pictures*, 261 F. Supp. 3d 1220, 1230 (M.D. Fla. 2017) (citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)).   In other words, "the court must view the face of the statement in its entirety, rather than examining the eyes, nose, and mouth

separately and in isolation from each other." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc*., 299 F.3d 1242, 1248 (11th Cir. 2002).

FLVS deliberately omitted the very language that precludes a finding of falsity and renders the Checklist non-misleading, and FLVS otherwise fails to explain how that statement could be misleading as to FLVS after the reverence to FLVS was removed by K12.

Analyzing the Checklist "in full context" demonstrates the document is not a statement comparing the attributes of K12 with those of its Florida competitors; it is merely an invitation for the consumer to use the Checklist provided to perform the comparison himself or herself, which is precisely why the right side of the Checklist is "unchecked" so consumers can may use it as a tool to make their own determinations. *See* Ex. 6; *Incarcerated Entm't*, 261 F. Supp. 3d at 1230; *see also Johnson & Johnson Vision Care*, 299 F.3d at 1248. Simply, K12 makes no claims "that are literally false as a factual matter," but instead presents the Checklist as a method for consumer comparison to aid in informed decision making.

Similarly, FLVS does not demonstrate on the pleadings that K12's Checklist conveys any false impression, is misleading in context, or is likely to deceive consumers. The Checklist included as Exhibit K to FLVS's Complaint states "what makes K12-powered schools different from other online learning solutions." *See* Cmplt., Ex. K. The text itself includes the header "Comparison Checklist." FLVS's

argument that K12's representations are "misleading" or that parents somehow will be led astray by "unchecked" boxes on the form, Cmplt. ¶ 120, is baseless. A plain reading of the unambiguous language omitted from FLVS 's Exhibit K demonstrates that no parent would be misled.[11]  FLVS 's claim that K12's Checklist "deceive[s] or [is] likely to deceive consumers" provides no factual allegation of any deception or actual false impression caused – or which reasonably could be caused – by K12's Checklist. *See Hickson Corp.*, 357 F.3d 1256 at 1261. Consequently, the statements in the complete Checklist cannot be actionable as a false or misleading advertisement as a matter of law.

## V.   FLVS Has Not Stated An Actionable Trade Dress Infringement Claim Based On K12's Use of the Color Blue.

To the extent that FLVS's reference to K12's use of a two tone blue color scheme, Cmplt. ¶¶ 42-47, is intended to state a claim for trade dress infringement, the claim fails as a matter of law under the general rule that "no seller can foreclose others absolutely from using any particular color." *AmBrit, Inc. v. Kraft, Inc.*, 812

---

[11] Indeed, Florida parents are presented with "unchecked" boxes on a checklist by the Florida Department of Education every year, as mandated by Florida law. *See, e.g.,* http://www.fldoe.org/core/fileparse.php/7739/urlt/SampleParentChecklist.pdf.   Florida Statute 1002.23(3) requires the "Florida Parent Checklist" be issued each school year to all parents of Florida students in grades K-12. The sample form provided by the Department of Education is a checklist with "unchecked" boxes used by parents as a decision-making tool. No reasonable parent would be led to believe that these "unchecked" boxes indicated something was missing or lacking – only that the parent had to fill in the blanks.  FLVS's claim that parents are somehow inherently mislead by "unchecked" boxes on K12's Checklist – but not the Department of Education's—is thus inherently unreasonable.

F.2d 1531, 1548 (11th Cir. 1986). Further, the claim fails because FLVS fails to plead that the claimed color element either is inherently distinctive or has acquired secondary meaning.  *Id.* at 1535;  s*ee Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 212 (2000) (citing *Qualitex Co. v. Jacobson Prod. Co*., 514 U.S. 159, 163 (1995)); *see also Tempur-Pedic N. Am., LLC v. Mattress Firm, Inc*., No. 8:18-CV-2147-T-33SPF, 2019 WL 2255022, at *4 (M.D. Fla. Jan. 11, 2019) (finding "colored [mattress] trim" was not "unique" to a line of mattresses, and absent that showing of secondary meaning, the color was not protected).[12]

### Conclusion

For all the foregoing reasons, K12's Motion to Dismiss should be granted.

---

[12] While K12 did agree that it would not use "Pantone®color 300U blue" in conjunction with any mark adopted under the Settlement Agreement, there is no allegation in the Complaint that K12 has done so.

## Certificate of Local Rule 3.01(g) Conferral

In accordance with the provisions of Local Rule 3.01(g), the undersigned certifies that, prior to the filing of this motion, counsel for Defendants (Steven Hollman and Daniel Johnson) conferred with counsel for Plaintiff (Stephen Luther and Luis Guzman) in a good faith effort to resolve the motion, but the parties were unable to agree on the resolution of any part of this motion.  The conference occurred electronically using the Zoom platform on February 10, 2021.

Dated:  February 18, 2021

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP

By:
Steven P. Hollman*
Trial Counsel
Abraham J. Shanedling*
Trial Counsel
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C.  20006-6801
Tel. No.:  (202) 747-1941
Fax No.:  (202) 747-3912
Email:  shollman@sheppardmullin.com
ashanedling@sheppardmullin.com

*Pro Hac Vice motion pending

Daniel C. Johnson
Trial Counsel
Florida Bar No. 522880

-23-

CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801-3456
Tel. No.:    (407) 849-0300
Fax No.:    (407) 648-9099
Email:       djohnson@carltonfields.com
Secondary: dcarlucci@carltonfields.com
Secondary: orlecf@cfdom.net

Eleanor M. Yost
Trial Counsel
Florida Bar No. 1003178
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Tel. No.:    (813) 229-4395
Fax No.:    (813) 229-4133
Email:       eyost@carltonfields.com

*Attorneys for Defendants*
    *Stride, Inc., and K12 Florida LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing MOTION OF DEFENDANTS STRIDE, INC., AND K12 FLORIDA LLC TO DISMISS COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT has been furnished electronically, through the CM/ECF system, to all counsel of record on this 18th day of February, 2021.

/s/ *Daniel C. Johnson*
Daniel C. Johnson