# EXHIBIT 3

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into as of the date on which the last party hereto executes this Agreement (the "Effective Date") between **Florida VirtualSchool**, a Florida Educational Institution ("FLVS"), on the one hand, and **K12 Inc.** and **K12 Florida, LLC** (collectively "K12"), on the other hand (FLVS and K12 collectively, the "Parties").

## RECITALS

A.      On May 18, 2011, FLVS filed a Complaint against K12 in the United States District Court for the Middle District of Florida, Orlando Division in Case No. 6:11-cv-831-ORL-31-KRS (the "District Court Proceeding").  The Complaint in the District Court Proceeding asserts counts against K12 concerning the Florida VirtualSchool and FLVS marks (collectively the "FLVS Marks") for infringement of federally registered marks (Count I), service mark infringement and false designation of origin under Section 43(a) of the Lanham Act (Count II), and common law service mark infringement and unfair competition under Florida law (Count IV).[1]  On June 30, 2011, K12 filed an Answer denying liability and asserting various affirmative defenses against FLVS, including but not limited to affirmative defenses of lack of standing, equitable estoppel, laches, acquiescence, and prior use.  On August 7, 2015, K12 filed with the Trademark Trial and Appeal Board a Consolidated Petition for Cancellation to cancel the FLVS Marks (the "Cancellation Proceeding").  The District Court Proceeding, together with the appeal therefrom to the Eleventh Circuit Court of Appeals and the Florida Supreme Court, and the Cancellation Proceeding are referred to collectively as the "Litigation."

B.      The claims and defenses asserted in the Litigation, together with all claims for damages, injunctive relief, attorneys' fees, and costs relating thereto in the Litigation are referred to collectively as the "Claims."

---

[1]      Count III for cyberpiracy against co-defendant Name Administration, Inc. was dismissed in conjunction with a settlement agreement between FLVS and Name Administration, Inc.

C.      The Parties now wish fully and finally to resolve and settle all disputes, controversies, and issues between them which are the subject of the Claims and the Litigation, to dismiss the District Court Proceeding and the Cancellation Proceeding with prejudice, and to release any and all Claims which have been, could have been, or could be asserted by FLVS against K12 or by K12 against FLVS relating to or arising out of the Litigation, including all claims for attorneys' fees, costs, or other sanctions or penalties.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained, the receipt and sufficiency of which are mutually acknowledged, it is hereby agreed by and between the Parties as follows:

1.      **Incorporation of Recitals.**  The foregoing Recitals are incorporated herein by reference and made a part of this Agreement.

2.      **Dismissal With Prejudice of the District Court Proceeding.** Within ten (10) calendar days of the Effective Date, the Parties shall file the joint stipulation for dismissal with prejudice in the form attached hereto as **Exhibit 1** and incorporated herein by reference.

3.      **Dismissal With Prejudice of the Cancellation Proceeding.** Within ten (10) calendar days of the Effective Date, K12 shall dismiss the Cancellation Proceeding with prejudice in the form attached hereto as **Exhibit 2** and incorporated herein by reference.

4.      **Financial Terms Redacted**

5.    **K12 to Cease Use of Marks**.

(a)    Subject to Paragraph 5(b) below, by June 30, 2016 (the "Cessation Date"), K12 shall permanently cease all use of the Florida Virtual Academy, Florida Virtual Academies, FLVA, Florida Virtual Program, and FLVP marks and acronyms (the "K12 Marks").  For the avoidance of doubt, the changes made by K12 shall include, but not be limited to, the following:

(1)    As of the Effective Date, K12 will not create, offer, provide, distribute, or advertise any new goods and services, courses, or programs under the K12 Marks.  The Parties expressly acknowledge that K12 shall be permitted to continue to operate and promote goods and services, courses, or programs existing as of the Effective Date under the K12 Marks until the Cessation Date and to make the uses permitted under Paragraph 5(b) below;

(2)    By the Cessation Date, K12 will change the names of all goods or services offered or otherwise provided under K12 Marks existing as of the Effective Date, including changing the names of all charter schools operating under the K12 Marks or any variation thereof (e.g., Florida Virtual Academy at [name of school district]) and the name of the "safety net" continuation of the Florida Virtual Academy;

(3)    By the Cessation Date, K12 will change its website(s) to reflect the name(s) established pursuant to Paragraph 5(a)(2), including by changing page uniform resource locators ("URLs") that contain or reflect the K12 Marks, such as flva.k12.com, k12.com/flva and facebook.com/FloridaVirtualAcademies ("K12 Mark URLs");

(4)    As of the Cessation Date, and subject to the uses permitted under Paragraph 5(b) below, K12 will not promote, market, or advertise any

3

goods or services under the K12 Marks, including without limitation in websites, social media, banner advertising, and other online information resources, physical signage, billboards, posters, or direct mail solicitations, etc.

(5)    By the Cessation Date, K12 will notify all employees and school board members who are affiliated with, affected by, or otherwise providing goods, services, or work for K12 with respect to the programs, operations, goods, or services offered or otherwise provided under the K12 Marks existing as of the Effective Date, including all of K12's Florida teachers, that they shall cease using the K12 Marks as of the Cessation Date, subject to uses permitted under Paragraph 5(b) below.

(b)    Notwithstanding the foregoing, or any other action, limitation or restriction herein, the Parties hereby acknowledge and agree that K12 may continue to use the K12 Marks following the Cessation Date as follows:

(1)    K12 may continue to use the K12 Marks in a factual manner as a historical reference to K12's past operations under the K12 Marks (the "Historical Reference Safe Harbor"). The Historical Reference Safe Harbor shall be subject to a rule of reasonableness based on the following considerations: (1) illustrative examples of appropriate usage under the Historical Reference Safe Harbor include, but are not limited to, generation of student records for student enrollment and completion information, responses to interview questions or individual requests specifically seeking information concerning prior marks used by K12 in Florida, and any disclosures required by law; (2) materials subject to the Historical Reference Safe Harbor shall not be used to promote or market

4

any goods or services; and (3) K12 shall refer to its past operations in Florida using other references where reasonably practicable.

(2) During the period from the Cessation Date up to and including October 31, 2016, K12 may continue to use the K12 Marks for the limited purpose of transitioning to the new name(s) established pursuant to Paragraph 5(a)(2), including to market its services under the new name(s) established pursuant to Paragraph 5(a)(2). Such use must be made in conjunction with a statement indicating the prior name of the services as "formerly known as [applicable K12 Mark]") (the "Transitional Use Safe Harbor").

(3) During the period from the Cessation Date up to and including December 31, 2016, K12 may continue to host the K12 Mark URLs solely with a redirection link to K12's new website(s) established pursuant to Paragraph 5(a)(3) and without other content (the "URL Safe Harbor").

(4) The parties further hereby acknowledge and agree that K12 shall not be liable for any use of the K12 Marks that is solely for the purpose of making a good faith attempt to correct a third party who incorrectly refers to K12 or its programs after the Cessation Date by the K12 Marks or in response to inquiries about K12's prior names (the "Corrective Use Safe Harbor").

(c)   The parties expressly acknowledge that K12's efforts to ensure the cessation of use of the K12 Marks and the transition to new marks set forth in Paragraph 5(a) are subject to the Historical Reference Safe Harbor, the Transitional Use Safe Harbor, the URL Safe Harbor, and the Corrective Use Safe Harbor, as set forth in Paragraph 5(b), as well as to a standard of reasonableness.

K12 does not agree, and is not required under the terms of this Agreement, to identify and destroy every instance or document in which the K12 Marks have been previously used or written in hard copy or electronic form (provided that the amount and character of K12's usage of the K12 Marks through to the Cessation Date remains substantially consistent with its usage prior to the Effective Date) and K12 has no obligation or responsibility to police use of the K12 Marks by third-parties whom it does not control or who are not Affiliates of K12 (as defined herein) after the Cessation Date.  To the extent that FLVS becomes aware of any instance in which an individual or party who is controlled by, or is an Affiliate of, K12 employs or otherwise uses the K12 Marks following the Cessation Date in a manner that is not permitted by Paragraph 5(b), including through usage of outdated and discontinued written materials, FLVS shall notify K12 as soon as practicable but in no event later than thirty (30) calendar days from the date upon which FLVS becomes aware of the use.  Upon notification from FLVS, K12 will have ten (10) calendar days within which to notify the individual or party as to its name change, to request that such individual or party discontinue any use of the K12 Marks that is outside the Historical Reference Safe Harbor, the Transitional Use Safe Harbor, the URL Safe Harbor, and the Corrective Use Safe Harbor, and to confirm in writing to FLVS that such use of the K12 Marks has been terminated (the "Notice and Cure").  FLVS's obligation to utilize the Notice and Cure procedure shall be limited to a total of fifteen (15) such events for the period from the Cessation Date to June 30, 2017, and a total of five (5) such events for each year thereafter.  The determination of what constitutes an "event" under this paragraph shall be subject to a rule of reasonableness in favor of determining that usage of the K12 Marks constitutes a single event rather than multiple events.  By way of example, multiple uses of the K12 Marks within a single website or social media posting shall constitute a single event, and multiple brochures, pamphlets, or other usages at a single conference shall constitute a single event.  If the Notice and Cure procedure does not result in termination of use of the K12 Marks, or if use of the K12 Marks occurs in excess of the permitted number of Notice and Cure events per

calendar year, FLVS shall be entitled to all available legal and equitable remedies for such use of the K12 Marks.

(d)     K12 agrees that any marks used in conjunction with schools, services, or programs offered or managed by K12 after the Cessation Date shall not include the words "Florida" and "Virtual" together in the same mark, regardless of the order in which the words are used in the mark or insertion of other words between these words, for goods or services offered in Florida or outside Florida. The Parties further agree and acknowledge that this provision shall not prohibit K12 from using the word "Florida" or the word "Virtual" individually in a mark (i.e., by using "Florida" in a mark or "Virtual" in a mark so long as the mark does not contain both words),[2] or from making non-trademark usage of the words "Florida" and "Virtual" in combination, such as by referring to the Florida Virtual Instruction Program established by Florida Statutes § 1002.45. K12 further agrees that it shall not use the marks listed under the heading "Prohibited Marks" set forth on Appendix A, which is incorporated herein by reference. However, in the event that FLVS abandons the FLVS Marks, K12 will be released from the prohibitions, obligations, and agreements set forth in this Paragraph 5(d) and in the "Prohibited Marks" portion of Appendix A.

(e)     Because the agreement set forth herein is not intended to address every dispute that might arise between FLVS and K12 regarding K12's selection of a new mark or marks, the parties have agreed that the marks listed under the heading "Approved Marks" set forth on Appendix A are approved for K12's usage and shall not form the basis for any future cause of action against K12 (1) for any mark and/or acronym adopted by K12 prior to the Cessation Date or (2) for any mark and/or acronym adopted by K12 after the Cessation Date provided that such mark and/or acronym has not been subject to intervening trademark use by FLVS and would not be likely to cause confusion with any intervening trademark use by FLVS. For any mark or acronym listed on Appendix A that is

---

[2]     Although such individual use shall not constitute a violation of this provision, FLVS reserves the right to object to a mark using either "Florida" or "Virtual" on other grounds.

adopted in accordance with the foregoing, FLVS agrees that it will not at any time claim rights in that mark; that it will not contest K12's rights in that mark; and that it will not oppose any applications to register that mark or attempt to cancel any registration that issues for that mark. The Parties further agree that K12 is not required to select a mark listed on Appendix A, and that there shall be no presumption against K12's choice of a mark not listed on Appendix A.

(f)     The Parties hereby acknowledge and agree that this Agreement, including specifically and without limitation Paragraph 5(d), is not intended and shall not prevent K12 from providing goods and services to Florida school districts where such school districts refer to their program as a "Virtual Instruction Program" in Florida as defined by Florida Statutes § 1002.45 or where the school district has chosen to include the words "Florida" and/or "Virtual" in the name of a program. This paragraph 5(f) does not constitute approval by FLVS of any Florida school district use of the words "Florida" and/or "Virtual" as trademarks, and FLVS reserves the right to address such issues with the school districts where appropriate.

(g)     K12 agrees that it will not use Pantone® color 300U blue in conjunction with any mark adopted pursuant to Paragraph 5(a)(2) or for any successor mark therefor. However, in the event that FLVS abandons its usage of Pantone® color 300U in connection with the FLVS Marks, K12 will be released from the prohibitions, obligations, and agreements set forth in this Paragraph 5(g).

6.     **Releases**.

(a)     **Release by FLVS**.  FLVS, on behalf of itself and its wholly and partly owned subsidiaries, Affiliates, insurers, dealers, officers, directors, agents, employees, shareholders, attorneys, predecessors, successors, representatives, and assigns, hereby irrevocably releases, acquits, and forever discharges K12 Inc. and K12 Florida, LLC  and their wholly and partly owned subsidiaries, Affiliates, insurers, dealers, officers, directors, agents, employees, shareholders, attorneys, predecessors, successors, representatives, and assigns, if any, from any and all actions, causes of action, counterclaims, obligations, suits, debts, costs or liabilities, losses, public or private injunctive relief,

disgorgement, restitution, or demands of any kind or nature whatsoever, in equity or otherwise, whether known or unknown, which FLVS ever had, now has, or may hereafter claim to have had, against K12 on or before the Effective Date arising out of or relating in any way to the Claims or the Litigation.

(b)     **Release by K12 Inc. and K12 Florida, LLC**.  K12 Inc. and K12 Florida, LLC, on behalf of itself and its wholly and partly owned subsidiaries, Affiliates, insurers, dealers, officers, directors, agents, employees, shareholders, attorneys, predecessors, successors, representatives, and assigns, if any, hereby irrevocably releases, acquits, and forever discharges FLVS, and its wholly and partly owned subsidiaries, Affiliates, insurers, dealers, officers, directors, agents, employees, shareholders, attorneys, predecessors, successors, representatives, and assigns, from any and all actions, causes of action, counterclaims, obligations, suits, debts, costs or liabilities, losses, public or private injunctive relief, disgorgement, restitution, or demands of any kind or nature whatsoever, in equity or otherwise, whether known or unknown, which K12 Inc. and K12 Florida, LLC ever had, now has, or may hereafter claim to have had, against FLVS on or before the Effective Date arising out of or relating in any way to the Claims or the Litigation.

(c)     **Definition of Affiliate**.  "Affiliate" means a corporation, partnership, joint venture, individual, or other legal entity that controls, is controlled by, or is under common control with a Party, either directly or through another Affiliate.  "Control" means the power to direct the management and policies of an entity through a controlling vote on the board of directors or similar governing body of that entity or the ownership of interests entitled to more than 50% of the votes of that entity.

7.     **Assignment of Rights to the K12 Marks**.  K12 agrees to assign any rights it may have acquired in the K12 Marks to FLVS pursuant to the assignment agreement at **Exhibit 3** hereto, which is incorporated herein by reference.  Subject to the URL Safe Harbor of Paragraph 5(b)(3), to the extent K12 owns or controls any domains that include the K12 Marks, K12 shall also transfer

ownership of such domains to FLVS.  FLVS agrees that it will not make any prospective use, including marketing and promotional use, of the K12 Marks that would be likely to create consumer confusion.  To further that objective, FLVS shall not make any use of the K12 Marks prior to July 1, 2018 other than to enforce its exclusive rights in the K12 Marks against unauthorized use.  The Parties further acknowledge and agree that notwithstanding the foregoing, FLVS does not intend to abandon and does not abandon the K12 Marks.

8.     **Confidentiality.**  To the extent permitted by law, the Parties agree that the terms of this Agreement, as well as all discussions concerning this Agreement, are confidential.  Accordingly, neither Party shall disclose the terms or any related discussions to any other person or entity without the prior written consent of the other Party, except that each party may disclose the Agreement and the terms and conditions of settlement to that party's attorneys, Board of Directors or Board of Trustees, accountants, financial advisors, and as otherwise required and compelled by law.  The Parties specifically agree that neither Party shall publicize the fact of the Agreement or its terms; however, it shall not be a violation of this Agreement for any Party to explain that the dispute has been amicably resolved by agreement, so long as the terms of the Agreement are not disclosed.

9.     **Non-Disparagement.**  The Parties recognize the need to maintain continued harmonious relationships with their agents, employees, customers, the public, and the communities in which they conduct business.  All Parties therefore agree not to make or publish any critical, denigrating, or disparaging written or oral statements about each other, or their respective directors, officers, employees, customers or agents, related to the Claims or the Litigation or the facts or circumstances giving rise to the Claims or the Litigation.

10.     **No Admission of Fault or Liability.**  This Agreement reflects the settlement of disputed claims and assertions, and a desire of the Parties to avoid the expense and nuisance of litigation.  No term of this Agreement, or any aspect of its negotiation or performance, is intended or shall be regarded as an admission of liability, fault or responsibility by any party to this Agreement.

11.     **Claims Not Assigned.**   Each Party to this Agreement acknowledges, represents, and warrants that it has not assigned, sold, transferred, or otherwise disposed of, in whole or in part, any of the claims that are being released or the rights that are being transferred herein.

12.     **Notices.**   Any notice or communication required or permitted to be given by any party hereunder shall be in written form and shall be considered to be sufficient if mailed by registered or certified mail or transmitted by overnight courier, as follows:

For FLVS, to:

>       Frank Kruppenbacher, Esq.
>       General Counsel
>       Florida VirtualSchool
>       2145 Metrocenter Boulevard
>       Suite 200
>       Orlando, Florida 32835

Notices to FLVS shall be copied to:

>       Stephen H. Luther, Esq.
>       ALLEN, DYER, DOPPELT,
>       MILBRATH & GILCHRIST, P.A.
>       255 S. Orange Avenue, Suite 1401
>       Orlando, Florida 32801

For K12 Inc. and K12 Florida, LLC:

>       Howard Polsky, Esq.
>       General Counsel
>       K12 Inc.
>       2300 Corporate Park Drive
>       Herndon, VA 20171

Notices to K12 Inc. and/or K12 Florida, LLC shall be copied to:

>       Steven Hollman, Esq.
>       Rebecca Mandel, Esq.
>       HOGAN LOVELLS US LLP
>       555 Thirteenth Street, N.W.
>       Washington, DC 20004

13.     **Jurisdiction and Venue**. The parties hereby consent to the exclusive jurisdiction of the state or federal courts for Orange County, Florida and agree that all actions or proceedings arising out

11

of or relating to this Agreement shall be litigated in such courts. Each party waives any objection it may have to such jurisdiction based on lack of personal jurisdiction, improper venue or forum non conveniens for such proceedings.

14.     **Conference Prior to Litigation.**  The Parties agree that, in the event that FLVS intends to challenge a new mark chosen by K12 following its cessation of the K12 Marks, before an action may be filed, FLVS shall serve written notice upon K12 detailing the nature of the dispute.  Within fifteen (15) business days following service of the written notice, representatives of each Party having authority to settle the dispute, along with their attorneys, will negotiate in good faith in an effort to resolve it without litigation.

15.     **Injunctive Relief.**  Paragraph 5 of this Agreement is necessary for the protection of the business and goodwill of the Parties and is considered by the Parties to be reasonable for such purpose. The Parties agree that any breach of Paragraph 5 of this Agreement will cause substantial and irreparable injury and, therefore, in the event of any such breach or threatened breach, in addition to other remedies which may be available, the Parties shall have the right to specific performance and other injunctive and equitable relief, without the necessity of posting a bond.

16.     **Attorneys' Fees and Costs.**  Each party agrees to bear its own attorneys' fees and costs incurred in connection with the Litigation and this Agreement.

17.     **Independent Judgment/No Other Promises.**  Each Party to this Agreement represents and warrants that: (a) in entering into this Agreement, each Party has had the benefit and advice of such Party's own counsel in connection with this Agreement and that the terms of this Agreement have been completely read and explained to them; (b) in executing this Agreement, each Party is relying on its own judgment, beliefs and knowledge as to the nature, extent, merits, and viability of the claims and potential claims referenced herein; (c) this Agreement is executed without any reliance upon any statement, representation, promise, inducement, understanding, or agreement by or on behalf of any Party or by or on behalf of any employee, representative, agent, or attorney employed by any Party;

and (d) no promise, inducement, understanding or agreement not expressed herein has been made to any Party.

18.    **Agreement Binding on Successors.**  This Agreement, including, without limitation, the releases set forth herein, shall be binding upon the heirs, executors, administrators, personal representatives, assignees, transferees, and other successors-in-interest of the persons or entities being bound hereby, and shall inure to the benefit of all similar successors-in-interest of all persons benefiting from any releases set forth in this Agreement.

19.    **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same agreement.  Executed counterparts delivered by e-mail or facsimile transmission shall have the same force and effect as counterparts bearing original signatures.

20.    **Construction and Interpretation.**  This Agreement shall be deemed to have been drafted jointly by the Parties.  No law or rule requiring the interpretation of uncertainties against a drafting party shall apply.

21.    **Integration and Amendment.**  This Agreement, together with the attachments hereto, constitutes an integrated contract and is the entire agreement of the Parties pertaining to the subject matters hereof, superseding all prior and/or contemporaneous negotiations, agreements, representations and/or understandings of the Parties with respect to the subject matter of this Agreement.  No amendment, supplement, modification, waiver or termination of any part of this Agreement shall be valid or binding unless executed in a writing by all Parties which references this provision of this Agreement.

22.    **No Joint Venture.**  Nothing contained in this Agreement shall be construed as a joint venture or partnership between the Parties, and no Party has the right to bind any other Party to any obligation unless such right is expressly set forth in this Agreement.

23.    **Authority to Execute.**  Each person signing this Agreement represents and warrants that such person has the authority to execute this Agreement as indicated.

24.    **Severability.**  In the event any provision of this Agreement is held to be void, voidable or unenforceable, the remaining provisions shall remain in full force and effect.

25.    **Choice of Law**.  This Agreement will be governed by and construed in accordance with the laws of the State of Florida without regard to any jurisdiction's conflicts of laws principles.

26.    **Necessary Steps.**  The Parties agree that each shall undertake any required steps and/or execute any further documentation necessary to carry out the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates set forth below.

**FLORIDA VIRTUALSCHOOL,**
a Florida Educational Institution

DATED:    11/03/2015          By: Dhyana Ziegler, DCJ, PhD *(Digitally signed by Dhyana Ziegler, DCJ, PhD, DN: cn=Dhyana Ziegler, DCJ, PhD, o=Florida Virtual School, ou=Chair, Board of Trustees, email=imclaughlin@flvs.net, c=US, Date: 2015.11.03 15:51:21 -05'00')*

Its:  Chair, Board of Trustees

**K12 INC.**
a Delaware Corporation

DATED:    _____     By:_____

Its: _____

**K12 FLORIDA, LLC**
a Florida Limited Liability Company

DATED:    _____     By:_____

Its: _____

23.    **Authority to Execute.**  Each person signing this Agreement represents and warrants that such person has the authority to execute this Agreement as indicated.

24.    **Severability.**  In the event any provision of this Agreement is held to be void, voidable or unenforceable, the remaining provisions shall remain in full force and effect.

25.    **Choice of Law**.  This Agreement will be governed by and construed in accordance with the laws of the State of Florida without regard to any jurisdiction's conflicts of laws principles.

26.    **Necessary Steps.**  The Parties agree that each shall undertake any required steps and/or execute any further documentation necessary to carry out the terms and conditions of this Agreement.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates set forth below.

**FLORIDA VIRTUALSCHOOL,**
a Florida Educational Institution

DATED: _____     By: _____

                            Its: _____

**K12 INC.**
a Delaware Corporation

DATED:    11/3/2015          By: _____

                            Its:    *CEO*

**K12 FLORIDA, LLC**
a Florida Limited Liability Company

DATED:    11/3/2015          By: _____

                            Its:    Secretary

14

**APPENDIX A**

**Marks and Corresponding Acronyms**

**Approved Marks:**

1. Cyber Charter Academy of Florida – CCAF or CCAOF

2. Digital Charter Academy of Florida – DCAF or DCAOF

3. Florida Charter Academy Online - FCAO

4. Florida Cyber Charter Academy – FCCA

5. Florida Digital Charter Academy – FDCA

6. Florida K12 Blended Academy – FKBA or FK12BA

7. Florida K12 Cyber Academy – FKCA or FK12CA

8. Florida K12 Digital Academy – FKDA or FK12DA

9. Florida K12 Intersect Academy – FKIA or FK12IA

10. Florida K12 Online Academy – FKOA or FK12OA

11. Online Charter Academy of Florida – OCAF or OCAOF

12. [COUNTY NAME] Virtual Academy

**Prohibited Marks:**

1. Florida Online Academy

2. Florida Online Charter Academy

3. The FLVS Marks

4. The K12 Marks

**EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FLORIDA VIRTUALSCHOOL,**                    **Case No. 6:11-cv-831-Orl-31KRS**

        **Plaintiff,**

**vs.**

**K12 INC. and K12 FLORIDA, LLC,**

        **Defendants.**

_____/

### JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE

Florida VirtualSchool, K12 Inc. and K12 Florida, LLC (collectively "the parties"), through their undersigned counsel and pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure hereby notify the Court that the parties have reached a settlement resolving all remaining issues in this case. Accordingly, the parties jointly move this Court for an Order denying all pending motions and dismissing this action, with prejudice, with each party to bear its own attorneys' fees and costs.

Respectfully submitted this _____ day of November, 2015.

/s/ Stephen H. Luther _____
Stephen H. Luther
Florida Bar No. 528846
sluther@addmg.com
Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Herbert L. Allen
Florida Bar No. 114126
hallen@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
**ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

**Attorneys for Plaintiff**

/s/ Stephanie L. Carman _____          /s/ Steven P. Hollman _____
Stephanie L. Carman                      Steven P. Hollman (admitted *pro hac vice*)
stephanie.carman@hoganlovells.com        steven.hollman@hoganlovells.com
**HOGAN LOVELLS US LLP**                 Rebecca C. Mandel (admitted *pro hac vice*)
600 Brickell Avenue, Suite 2700          rebecca.mandel@hoganlovells.com
Miami, FL 33131                          James W. Clayton (admitted *pro hac vice*)
Telephone: (305) 459-6500                james.clayton@hoganlovells.com
Facsimile:  (305) 459-6550               Lauren B. Cury (admitted *pro hac vice*)
                                         lauren.cury@hoganlovells.com
**Counsel for Defendants**               **HOGAN LOVELLS US LLP**
**K12, Inc. and K12 Florida, LLC**       555 13th Street, N.W.
                                         Washington, DC  20004
                                         Telephone:  (202) 637-5600
                                         Facsimile:  (202) 637-5910

                                         **Counsel for Defendants**
                                         **K12, Inc. and K12 Florida, LLC**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2015, I electronically filed the foregoing using the Case Management/Electronic Case Filing ("CM/ECF") System, which will send a Notice of Electronic Filing to the following CM/ECF participants:

Stephanie L. Carman
stephanie.carman@hoganlovells.com
**HOGAN LOVELLS US LLP**
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile:  (305) 459-6550

**Counsel for Defendants**
**K12, Inc. and K12 Florida, LLC**

Steven P. Hollman (admitted *pro hac vice)*
steven.hollman@hoganlovells.com
Rebecca C. Mandel (admitted *pro hac vice*)
rebecca.mandel@hoganlovells.com
James W. Clayton (admitted *pro hac vice*)
james.clayton@hoganlovells.com
Lauren B. Cury (admitted *pro hac vice*)
lauren.cury@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 13th Street, N.W.
Washington, DC  20004
Telephone: (202) 637-5600
Facsimile:  (202) 637-5910

**Counsel for Defendants**
**K12, Inc. and K12 Florida, LLC**

*s/ Stephen H. Luther*

18

<u>**EXHIBIT 2**</u>

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD**

|  |  |  |
|---|---|---|
| K12 INC. and K12 FLORIDA, LLC, | ) | |
| | ) | |
| Petitioners, | ) | Cancellation No. 92061995 |
| | ) | |
| v. | ) | Registration Nos. 3,830,765, 3,873,393 |
| | ) | |
| FLORIDA VIRTUALSCHOOL | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

<u>**JOINT STIPULATION FOR DISMISSAL WITH PREJUDICE**</u>

Florida VirtualSchool, K12 Inc. and K12 Florida, LLC (collectively "the parties"), through their undersigned counsel and pursuant to TBMP § 605 hereby notify the Board that the parties have reached a settlement resolving all remaining issues in this case.  Accordingly, the parties jointly move this Board for an Order denying all pending motions and dismissing this action, with prejudice, with each party to bear its own attorneys' fees and costs.

Respectfully submitted this _____ day of November, 2015.


_s/ Stephanie L. Carman_____
Stephanie L. Carman
stephanie.carman@hoganlovells.com
**HOGAN LOVELLS US LLP**
600 Brickell Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 459-6500
Facsimile:  (305) 459-6550

**Counsel for Defendants
K12, Inc. and K12 Florida, LLC**

_s/ Steven P. Hollman_____
Steven P. Hollman (admitted _pro hac vice_)
steven.hollman@hoganlovells.com
Rebecca C. Mandel (admitted _pro hac vice_)
rebecca.mandel@hoganlovells.com
James W. Clayton (admitted _pro hac vice_)
james.clayton@hoganlovells.com
Lauren B. Cury (admitted _pro hac vice_)
lauren.cury@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 13th Street, N.W.
Washington, DC  20004
Telephone: (202) 637-5600
Facsimile:  (202) 637-5910

**Counsel for Petitioners
K12, Inc. and K12 Florida, LLC**


_s/ Stephen H. Luther_____
Stephen H. Luther
Florida Bar No. 528846
sluther@addmg.com
Brian R. Gilchrist
Florida Bar No. 774065
bgilchrist@addmg.com
Herbert L. Allen
Florida Bar No. 114126
hallen@addmg.com
Ryan T. Santurri
Florida Bar No. 0015698
rsanturri@addmg.com
**ALLEN, DYER, DOPPELT,
MILBRATH & GILCHRIST, P.A.**
255 S. Orange Avenue, Suite 1401
Orlando, Florida 32801
Telephone: (407) 841-2330
Facsimile: (407) 841-2343

**Attorneys for Respondent
Florida VirtualSchool**

20

## EXHIBIT 3

# TRADEMARK QUITCLAIM ASSIGNMENT

This Quitclaim Assignment between K12 Inc., and K12 Florida, LLC (collectively "K12"), on the one hand, and Florida VirtualSchool, a Florida Educational Institution ("FLVS"), on the other hand, is entered into as of November ___, 2015.

1.      A dispute has arisen between FLVS and K12 over the rights to the Florida Virtual Academy, Florida Virtual Academies, FLVA, Florida Virtual Program, and FLVP marks and acronyms (the "K12 Marks").

2.      FLVS and K12 have decided to resolve the dispute between them concerning the K12 Marks and to transfer the K12 Marks to FLVS, with no party admitting to any fault or liability.  In connection therewith, FLVS desires to obtain, and K12 is willing to give, a quitclaim of any right, title, and interest that K12 may have in or to the K12 Marks.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, K12 hereby agrees as follows:

1.      K12 represents that it has not transferred, assigned, or otherwise caused any limitations to be placed on its authority to transfer all rights it may possess in the K12 Marks.

2.      Subject to Paragraphs 5 and 7 of the Settlement Agreement between K12 and FLVS executed simultaneously herewith, K12 hereby quitclaims, assigns, transfers, and sets over to FLVS any right, title, and interest in and to all rights that K12 may have in the K12 Marks, whether in block letters or any stylized form, together with any goodwill associated with said K12 Marks.

3.      K12 further quitclaims, assigns, transfers, and sets over to FLVS all causes of action, claims for damages, and all remedies arising out of any violation of the rights in the K12 Marks assigned in this Quitclaim Assignment that may have accrued prior to the date of assignment, including, but not limited to, the right to sue for, collect, and retain damages for past infringements of said rights.

IN WITNESS WHEREOF, the parties have executed this Quitclaim Agreement effective as of the date listed above.

FLORIDA VIRTUALSCHOOL

DATED:      11/03/2015

By   Dhyana Ziegler, DCJ, PhD

Its:   Chair, Board of Trustees

21

K12 INC.,

DATED:     11/3/2015     By _____

                                   Its: _____CEO_____

K12 FLORIDA, LLC

DATED:     11/3/2015     By _____

                                   Its: _____Secretary_____