**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

    Plaintiff,

v.                                         Case No:   6:20-cv-2354-GAP-EJK

K12, INC. and K12 FLORIDA, LLC,

    Defendants.

**ORDER**

This case is before the Court without oral argument on Defendants' Motion to Dismiss (Doc. 17). The Court has also considered Plaintiff's response in opposition (Doc. 20).

**I.  Background**

Plaintiff Florida Virtual School ("FLVS") is an independent public agency established by the State of Florida that provides online educational services to elementary, middle, and high school students. FLVS also creates courseware and technology that it distributes to other school districts. Defendants K12, Inc. and K12 Florida, LLC (together, "K12")[1] also provide online learning services.

---

[1] In its Motion, K12 claims that it has changed its name to Stride, Inc. (Doc. 17 at 1), but that fact is not pertinent to the resolution of the Motion.

FLVS claims that it owns several federally registered trademarks, including the terms "Florida Virtual School" and "FLVS" and three logos with those terms (collectively, the "Marks"). These Marks are used on FLVS's website and in its advertisements.

In 2011, FLVS sued K12 for infringement on these Marks. Four years later, FLVS and K12 settled that suit through an agreement (the "Settlement Agreement"). FLVS now claims that K12 has breached the Settlement Agreement by, for example, describing itself as "Florida virtual school powered by K12" and referring to its services as "Florida virtual schooling." FLVS also brings claims for trademark infringement, Lanham Act false advertising, and several common law claims.

## II.   Legal Standard

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see, e.g.*, *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto. *See* Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."

*Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–555 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009).

**III.    Analysis**

  a. *Injunctive Relief*

Injunctive relief is a remedy, not an independent claim subject to dismissal. Even so, K12 attacks FLVS's prayer for injunctive relief— a remedy typically used in trademark cases—on two bases. First, K12 argues that FLVS's delay in seeking an injunction for the alleged trademark infringement prohibits its claim. Doc. 17 at

10–11. Second, it claims that FLVS's claim for injunctive relief is moot. The Court will address each of these arguments in turn.

i. Irreparable Harm

K12 argues that FLVS cannot show irreparable harm because (i) it has stopped using FLVS's marks and (ii) FLVS delayed its efforts in seeking this relief. Doc. 17 at 10–11.

FLVS seeks a permanent injunction in connection with its trademark claims. "In ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day." *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) (citation omitted). The party seeking a permanent injunction must establish (1) an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) the balance of hardship favors an equitable remedy; and (4) the issuance of a permanent injunction would not be a disservice to the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

K12's assertion that it has stopped using the marks does not provide a basis to dismiss FLVS's prayer for a permanent injunction, nor does K12 cite any authority to support that relief at this stage of the proceeding. Additionally, FLVS's alleged delay in filing suit does not provide a basis for dismissal. Here, FLVS seeks a permanent injunction, not a preliminary one. K12 cites *Wreal, LLC v.*

*Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) as support for dismissal, but that case addressed a five-month delay in seeking a *preliminary* injunction.[2] And even if delay would preclude FLVS from obtaining its requested remedy, a motion to dismiss is not the proper vehicle by which to make that determination.

    ii.  Voluntary Cessation

K12 next argues that because it has stopped using the Marks, FLVS's claim for injunctive relief is moot as a matter of law. Doc. 17 at 12. Generally, "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d, 1173, 1183 (11th Cir. 2007). That limitation prohibits a court from hearing a moot case—one that "no longer presents a live controversy with respect to which the court can give meaningful relief." *Id.* But a defendant's voluntary cessation of a challenged practice does not necessarily deprive a federal court of its power to determine the legality of the practice because the defendant must also prove that the challenged conduct cannot reasonably be expected to reoccur. *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011) (citations omitted). A three-step inquiry guides the Court in determining whether a case is moot: (1) "whether the termination of the offending conduct was

---

[2] K12 also cites *Larweth v. Magellan Health, Inc.*, 398 F. Supp. 3d 1281 (M.D. Fla. 2019). That case also deals with *preliminary* injunctions rather than permanent injunctions.

- 5 -

'unambiguous;' " (2) "whether the change in ... conduct appears to be the result of substantial deliberation, or is simply an attempt to manipulate jurisdiction;" and (3) "whether the [Defendant] has 'consistently applied' a new policy or adhered to a new course of conduct." *Id*.

K12 has not met its burden of demonstrating that its use of FLVS's mark cannot be reasonably expected to start up again. It simply claims that it "promptly acted to address the challenged uses FLVS brought to its attention." Doc. 17 at 12.[3] But to satisfy its burden, K12 must provide evidence, not arguments, and K12 submitted no evidence in support of this argument. Without any evidence, the Court cannot determine whether K12 has satisfied its "heavy burden" of proving that the case is moot.[4] *Nat'l Ass'n of Bds. of Pharm.*, 633 F.3d at 1310.

b. *Trademark Infringement Claims for Monetary Relief*

Next, K12 argues that FLVS's trademark infringement claims for monetary relief are based on an initial interest confusion and are not viable. FLVS responds that it has not pled a trademark claim limited to initial interest confusion.

---

[3] K12's contention that "there is nothing in FLVS's factual allegations to suggest that the halted uses are likely to resume" (Doc. 17 at 12) has it backward. The burden of proving mootness lies with the party claiming a case is moot—here, K12. *Nat'l Ass'n of Bds. of Pharm.*, 633 F.3d at 1310.

[4] *H&R Block E. Enters., Inc. v. JTH Tax, Inc.*, No. 05-20389-Civ, 2005 WL 8155965, at *3 (S.D. Fla. Apr. 25, 2005), which K12 cites in support of its argument, is inapposite. There, the plaintiff sought a preliminary injunction. And even if *JTH* were in the same procedural posture, the defendant there filed a declaration attesting that he would not resume the infringing conduct. *Id.* at *3.

A successful trademark infringement claim requires an allegation that a defendant's use of the mark is likely to cause confusion. *Caliber Auto. Liquidators v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 934 (11th Cir. 2010). To determine if a plaintiff has shown a likelihood of confusion, courts consider a seven-factor test that includes evidence of actual confusion as one of its most important factors. *Id.* at 935.

Some courts have held that a plaintiff's showing of initial interest confusion is sufficient to show actual confusion. *See, e.g.*, *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). Initial interest confusion occurs when the confusion concludes at some point prior to the closing of a sale. *Brain Pharma, LLC v. Woodbolt Distribution, LLC*, No. 12-60141-CIV, 2012 WL 12838277, at *6 (S.D. Fla. May 1, 2012). The Eleventh Circuit has not explicitly ruled on whether initial interest confusion can support a trademark infringement claim. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1347 (11th Cir. 2012) (declining to address whether initial interest confusion is actionable in this Circuit).

K12 argues that because initial interest confusion has not been recognized by the Eleventh Circuit, FLVS's claims for monetary relief should be dismissed "[t]o the extent that [they] are based on" this theory. Doc. 17 at 13. But there is no allegation in the complaint that the confusion alleged here involves only initial interest. K12 argues that the process of enrolling a child in a virtual school offering

would involve initial interest confusion, but the complaint contains no allegation about this enrollment process that would allow the Court to draw this inference. On its face, FLVS's complaint states a claim for trademark infringement, and the possible reliance by FLVS on an initial interest theory does not change this fact.

      c. *Breach of Contract (Count VIII)*

K12 attacks FLVS's breach of contract claim because it does not allege that FLVS gave K12 timely notice of its claims. FLVS contends that the notice provision's terms do not apply to K12's own infringement.

To state a claim for breach of contract, a party must plead "(1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2007). FLVS's count for breach of contract is based on an alleged breach of the parties' Settlement Agreement. That Settlement Agreement's notice provision provides:

> To the extent that FLVS becomes aware of any instance in which an individual or party who is controlled by, or is an Affiliate of, K12 employs or otherwise uses the KI2 Marks following the Cessation Date in a manner that is not permitted by Paragraph 5(b), including through usage of outdated and discontinued written materials, FLVS shall notify Kl2 as soon as practicable but in no event later than thirty (30) calendar days from the date upon which FLVS becomes aware of the use. Upon notification from FLVS, KI2 will have ten (l0) calendar days within which to notify the individual or party as to its name change, to request that such individual or party discontinue any use of the KI2 Marks

Doc. 17–3 at 6.[5]

FLVS has sufficiently alleged its claim for breach of contract. It alleges the three elements of breach of contract—the existence of a contract (Doc. 1 ¶ 138), breach of that contract (*id.* ¶ 141), and resulting damages (*id.* ¶ 142). If the notice requirement here actually comports with K12's reading and creates a condition precedent (which the Court doubts that it does), FLVS has fulfilled its pleading requirement because Federal Rule of Civil Procedure 9(c) only requires a to party "allege generally that all conditions precedent have occurred or been performed." *See O'Toole v. Ford Motor Co.*, No. 13–cv–84, 2014 WL 2532451, at *4 (M.D. Fla. Mar. 6, 2014); *Orange Blossom Investment, LLC v. Allstate Ins. Co.*, No. 09-cv-14350-KMM, 2009 WL 10666904, at *2 (S.D. Fla. Dec. 14, 2009). FLVS has generally alleged that "[a]ll conditions precedent to maintaining this action have either occurred or been waived." Doc 1. ¶ 73. That is sufficient. *See Otto v. Seven Sease Cruises S. DE R.L., LLC*, No. 20-20188-Civ, 2020 WL 6122048, at *3 (S.D. Fla. Apr. 14, 2020) (allegation that "[a]ll conditions precedent to the filing of this action have been met or waived" satisfied Rule 9's pleading requirement).

---

[5] The Settlement Agreement was not attached to FLVS's complaint because it "calls for its terms to be confidential." Doc. 1 ¶ 33. The parties now agree that the Settlement Agreement can be publicly filed (although with its financial terms redacted). Doc. 17 at 5 n.4. And the Court can consider this document on a motion to dismiss because it is a "document[] central to or referenced in the complaint." *La Grasta v. First Union Secs., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

### d. *False Advertising*

Next, K12 challenges FLVS's false advertising claim by arguing that FLVS fails to allege a sufficient false or misleading element of K12's advertisement. Specifically, K12 attaches a different (and allegedly more complete) version of a checklist that FLVS included in its complaint.

To make out a claim for false advertising under the Lanham Act, a party must allege that (1) the advertisements of the opposing party are false or misleading as to the party's own product of another's; (2) the advertisements actually deceived customers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false or misleading advertisements by casually related declining sales or loss of goodwill. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260–61 (11th Cir. 2004). To fulfill the first element, a party must allege that "the statements at issue were either (1) commercial claims that are literally false as a factual matter or (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 1261.

K12 argues that the Court should consider its new version of the advertisement, which K12 contends "demonstrates the document is not a statement comparing the attributes of K12 with those of its Florida competitors." Doc. 17 at 20. In short, K12 contends that FLVS attached an incorrect advertisement to its complaint and that if the Court considers the "correct" (and more recent) version of the advertisement, FLVS fails to state a claim.

This argument is premature. To adopt K12's argument would require the Court to assess at least two issues of fact not ripe for review. First, the Court would need to decide which of the two advertisements—the one attached to FLVS's complaint or the one K12 attaches to its motion—is the correct advertisement. But the purpose of a motion to dismiss is to determine whether a plaintiff's complaint states a claim upon which relief may be granted. *Giummo v. Olsen*, 701 F. App'x 922, 924 (11th Cir. 2017). To make this determination, the Court must "accept the allegations of the complaint as true"—including the allegation here that the advertisement attached to the complaint is K12's advertisement (Doc. 1 ¶ 53). *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994).

Second, K12 would also have the Court determine whether any "parent would be misled" by K12's checklist. Doc. 17 at 21. This would require the resolution of an issue of fact—whether parents would be confused by the

checklist. Now is not the time to resolve that issue. FLVS's allegation that K12's "representations . . . are false and misleading, and . . . are likely to deceive customers," alongside the rest of its complaint, is sufficient to state a claim. Doc. 1, ¶ 120.

   e. *Trade Dress Infringement*

Finally, K12 attacks six paragraphs (Doc. 1 ¶¶ 42-47) in FLVS's complaint that K12 believes were intended to state a claim for trade dress infringement. K12 argues that these allegations cannot state a case because any alleged trade dress would only be the use of a color, which is not an actionable trade dress. Doc. 17 at 21.

"Trade dress involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980 (11th Cir. 1983). But here, it does not appear that FLVS relies on trade dress as a separate claim for trademark infringement. Indeed, these paragraphs only discuss the similarities between FLVS's website and K12's website. *See, e.g.*, Doc. 1 ¶ 44 (alleging that K12's website "prominently features a two-tone blue color scheme that is extremely similar" FLVS's scheme). They then allege that this duplication of FLVS's color scheme "serves to deepen the confusion" between the

parties' two products. Doc. 1 ¶ 47. There is no basis to dismiss just these paragraphs of the complaint.

### IV. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 31, 2021.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party