### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

FLORIDA VIRTUAL SCHOOL,

        Plaintiff,                       Case No.: 6:20-cv-2354-GAP-EJK

vs.

K12, INC., a foreign corporation;
and K12 FLORIDA, LLC, a foreign
limited liability company,

        Defendants.

_____/

### PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM

Plaintiff, Florida Virtual School ("FLVS"), hereby submits this Motion to Dismiss the Counterclaim (Doc. 29; the "Counterclaim") filed by Defendants, K12, Inc., and K12 Florida LLC (collectively "K12" or "Defendants").

### INTRODUCTION

This Court should dismiss all four counts of the Counterclaim with prejudice for failure to state a cause of action upon which relief may be granted. Counts I and II of the Counterclaim fail to state a claim because there is no actual or threatened injury beyond that which is set forth in FLVS's Complaint. Counts II and III of the Counterclaim fail to state a claim because they are founded upon a clearly erroneous interpretation of the subject agreement. Count IV of the Counterclaim attempts to assert a cause of action for attorney's fees, which

consistent precedent establishes is not legally cognizable prior to judgment on the underlying claim.

## BACKGROUND

As a public agency serving the citizens of the State of Florida and beyond for  more than twenty years, FLVS rarely finds itself forced to protect the integrity of its operations from businesses which seek to capitalize on FLVS's success. However, K12's repeated, obstinate conduct of infringing FLVS's trademarks and engaging in false advertising and unfair competition compels FLVS to act once again.

K12 initially entered the Florida market with the "Florida Virtual Academy" and "FLVA" marks which immediately caused confusion with FLVS's Florida Virtual School and FLVS marks.  After these marks created confusion, K12 chose the equally confusing "Florida Virtual Program" and "FLVP" marks.  More than four years of litigation ensued in which FLVS sought to stop K12's infringement, finally resulting in a settlement agreement resolving the case.  (Doc. 29-1; the "Settlement Agreement" and Appendix A thereto).

Even after more than four years of litigation, however, K12 still refuses to compete fairly and commenced using the "The Florida Online School" and "FLOS" marks.  The Settlement Agreement provides a non-exclusive list of marks that are acceptable to FLVS and those that are not, and the Florida Online School

2

mark is closer to the prohibited "Florida Online Academy" mark than it is to any approved mark.  (*See* Doc. 29-1, p. 15).   K12 also began inserting confusing references to Florida Virtual School in its marketing, and is misrepresenting the features offered by K12 and FLVS.   The repeated cycles of K12's infringement show a clear pattern: take the federally registered Florida Virtual School mark, copy two of the three words in the mark in their entirety, select a synonym of the third word, and then also copy all but one letter of FLVS's federally registered acronym to further the confusion.  This pattern allowed K12 to get as close as possible to FLVS's marks short of complete verbatim copying.[1]

    After it became clear that K12 was again engaging in trademark infringement and deceptive and confusing trade practices, FLVS initiated the dispute resolution procedure under Section 14 of the Settlement Agreement.  (Doc. 29, ¶ 14).  FLVS did not institute the dispute resolution under Section 5(c) because that section only applies to use of K12 mark by third parties, not disputes between FLVS and K12.   Section 5(c) requires FLVS to notify K12 within 30 days of discovering infringement via "use of the K12 Marks by third-parties" not K12 as further described in Argument, Section II below.  K12 is incorrectly interpreting this provision as applying to K12 in addition to or instead of third parties and has

---

[1] K12's copying of the Florida Virtual School marks in their entirety is also at issue in this litigation.  (See e.g., Doc. 1, ¶¶ 35 - 36).

made this issue a central feature of its defense.  K12, however, is not asserting that FLVS failed to meet and confer before filing suit.  The parties did meet and confer.  K12's argument, instead, is that FLVS failed to meet and confer under the correct dispute resolution paragraph of the Settlement Agreement.

When the dispute resolution process was unsuccessful in resolving the dispute, FLVS filed suit against K12 on December 20, 2020 asserting claims for federal and state trademark infringement, false advertising and unfair competition.  (Doc. 1).  K12 moved to dismiss FLVS's Complaint.  (Doc. 17). The Court denied K12's motion to dismiss. (Doc. 25).  K12 answered the Complaint and asserted affirmative defenses and counterclaims.

The Counterclaim counts include Count I for declaratory judgment that K12 has not infringed FLVS's marks or engaged in false advertising or unfair competition, Count II for declaratory judgment that K12 has not violated the terms of the Settlement Agreement, Count III for breach of contract against FLVS for allegedly failing to timely notify K12 of FLVS's claims and Count IV for declaratory judgment that K12 is entitled to attorney's fees under the Lanham Act, the federal trademark statute.  FLVS now seeks dismissal of all K12's Counterclaim counts as set forth herein.

## SUMMARY OF ARGUMENT

Each Counterclaim fails to state a cause of action upon which relief may be granted and should therefore be dismissed.  Moreover, each of  the Counterclaim counts is already at issue in the present suit by virtue of the Complaint and K12's Answer and Affirmative Defenses, and thus the Counterclaim should also be dismissed as redundant.

Count I of the Counterclaim should be dismissed because the assertions contained therein fail to constitute an "actual or threatened" injury sufficient to state a cause of action for declaratory judgment.  K12's counts for declaratory judgment of breach and breach of contract (Counts II and III) fail to state a claim as the assertion of breach of contract does not contain sufficient factual matter, if accepted as true, to state a claim to relief that is plausible on its face.  This breach of contract claim is not supportable because each count is premised on a fatally flawed and an unsupportable interpretation of the clear and unambiguous language of Section 5(c) of the Settlement Agreement attached to K12's Counterclaim at docket 29-1.  Section 5(c), and the corresponding thirty (30) day FLVS notice requirement applies only to "use of the K12 Marks by third parties" not use by K12.  It does not require FLVS to notify K12 about infringement by K12 so K12 can then notify itself again and request that it stop infringing, and there is no reason to allow this fatally defective interpretation of the Settlement Agreement

to remain in this case.  Count IV seeks an award of attorney's fees under the "exceptional case" standard, but this is a remedy that cannot be sustained as a separate cause of action

Furthermore, K12 has already denied liability under all of FLVS's claims (the subject matter of Counterclaim Count I), argued that FLVS failed to satisfy a condition precedent for this suit allegedly required by the parties' Settlement Agreement (Count II), claimed that FLVS breached the Settlement Agreement by allegedly failing to notify K12 of issues (Count III) and requested fees for defending against FLVS's claims (Count IV).  These arguments were raised in detail in K12's Motion to Dismiss (Doc. 17) and in its Answer and Affirmative Defenses (Doc. 29).  Even if this Court accepts the allegations set forth in the Counterclaim as sufficient to state a valid cause of action, they remain, at best, redundant since they are addressed by the underlying claims set forth in the Complaint.  Since jurisdiction under the Federal Declaratory Judgment Act is discretionary, this Court should nevertheless dismiss the Counterclaim as introducing unnecessary complexity to this suit.  For these reasons, and as more fully outlined in herein, the Counterclaim should be dismissed.

## THE STANDARD FOR MOTIONS TO DISMISS

Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the court takes all allegations of material fact in the complaint as true. *See Erickson v. Pardu*s, 551 U.S. 89, 94 (2007) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). If a claim fails to be facially plausible or fails a state a claim to relief that is plausible on its face, the claim is properly dismissed. *Hunter v. Diversified Consultants, Inc.*, 8:14-CV-2198-T-30, 2014 WL 6747153, at *1 (M.D. Fla. Nov. 26, 2014) (quoting *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir.2012).

## ARGUMENT

I.  **Count I of the Counterclaim Does Not Present an Actual or Threatened Injury Sufficient to Sustain a Cause of Action for Declaratory Judgment.**

Count I of K12's Counterclaim should be dismissed because K12 has failed to allege an "actual controversy" sufficient to invoke this Court's exercise of discretionary jurisdiction. Alternatively, this claim is unnecessary and redundant because the subject matter of this count is already before the Court via the Complaint and K12's Answer and Affirmative Defenses.

7

The Federal Declaratory Judgment Act permits a court to declare the rights of parties only in cases of an "actual controversy." 28 U.S.C. §2201(a). "An actual controversy exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F.Supp.2d 1333 (S.D. Fla. 2012), *citing GTE Directories Publishing Corp. v. Trimen America, Inc.*, 67 F.3d 1563, 1567 (11th Cir.1995). Therefore, K12 must show, (1) that it has personally suffered some actual or threatened injury as a result of FLVS's alleged conduct, (2) that this injury fairly can be traced to the challenged action, and (3) that it is likely to be redressed by a favorable decision. *Id*. (citations omitted).

Here, K12's allegation does not rise to the level of an "actual or threatened injury" sufficient for the Court to exercise discretionary jurisdiction under the Federal Declaratory Judgment Act because the sole possible injury arises from FLVS's claims in the Complaint. K12 asserts that there is an "actual and justiciable controversy between Counterclaimants and Counter-defendant as to whether the asserted marks are not infringed, as to whether the challenged statements made by Counterclaimants with respect to the respective goods and services of the parties are truthful and non-misleading, and as to whether Counterclaimants performed their obligations under the Settlement Agreement." (Counterclaim, ¶

26).  Missing from this statement is an allegation that K12 has suffered an "actual or threatened injury" beyond the mere fact that FLVS has filed an action asserting the infringement of a trademark, false advertising, and breach of contract.  Indeed, the only "threatened injury" alleged by K12 is a potential award of damages arising from FLVS's claims set forth in the Complaint.  Because FLVS's claims based on these same issues are pending have not been adjudicated and there is no impending damages award against K12, the counts for declaratory judgment do not implicate an "actual or threatened injury" and should be dismissed.

An analogous situation arose before this Court involving an insurer's counterclaim for declaratory judgment regarding its duty to indemnify the insured. *Axis Surplus Ins. Co. v. Contravest Const. Co.*, 921 F. Supp. 2d 1338 (M.D. Fla. 2012).  The insurer's counterclaim for declaratory judgment was based solely on its reservation of rights notification to the insured. *Id*.   Because no injury had yet arisen from the underlying damages claim, the insurer's counterclaim for declaratory judgment regarding its duty to indemnify under the policy contract was premature. *Id*. The insurer's claim for declaratory judgment, like K12's here, did not ripen into an "actual or threatened injury" until the underlying claim from whence an award of damages *may* arise was resolved.  The Counterclaim lacks this specific allegation, and even if K12's conjecture were entertained as to injury, the injury has not materialized.

Alternatively, this Court should dismiss Count I of the Counterclaim because it is redundant.  It is well settled that a court's exercise of jurisdiction under the Federal Declaratory Judgment Act is discretionary. *Local Union No. 808 Iron Workers Pension & Annuity Fund v. Fidelity and Deposit Company of Maryland*, 2013 WL 12155443 *3 (M.D. Fla. Dec. 24, 2013).   The needless complexity introduced by K12's Counterclaim counts that merely mirror those of the Complaint may be dismissed based on redundancy and in the interests of judicial efficiency. *See Encompass Indemnity Company v. Gray*, 434 F.Supp.3d 560 (W.D. Ky. 2020) ("courts should only exercise this discretionary jurisdiction when doing so would further the interests of justice or preserve the parties' resources").  Granting jurisdiction for these declaratory judgement claims will only add complexity, and require additional time and resources for the Court and parties in the conduct of the litigation without providing any additional claims and remedies that are not already available to K12 and FLVS.

For either of these  reasons, Counterclaim Count I should be dismissed.

## II.     Counterclaim Counts II and III Are Based on a Fatally Flawed Interpretation of the Parties' Settlement Agreement.

Count II seeks a declaratory judgment that FLVS has breached the terms of the Settlement Agreement by allegedly failing to notify K12 of its objections to K12's actions within a 30-day period set forth in Section 5(c) of the Settlement Agreement.   (Doc. 29, ¶¶ 28-32).  Count III for breach of contract is the mirror

image of Count II and asserts breach of contract on the same 30-day notification issue. (Doc. 29, ¶¶ 33-38).[2]  Both Counts should be dismissed because the express language of section 5(c) and the 30-day notice requirement apply only to third-party infringement and cannot plausibly be read to apply to trademark infringement claims against K12 itself or the trademarks at issue in this suit.

The Settlement Agreement is attached to K12's Counterclaim, and exhibits that are attached and incorporated into a complaint or counterclaim become part of those pleadings for the Rule 12(b)(6) analysis. *See Sch. Bd. of Manatee County*, 666. F. Supp at 1288 (citing *Solis–Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985) and *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir.2007) (bracketed material added); *see also Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir.2002) ("The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim."). While it is appropriate to delay ruling on a contract where the agreement is

---

[2] In addition to raising the 30-day notification issue, Counts II and III claim FLVS "fail[ed] to confer and negotiate in good faith…"  (Counterclaim, ¶¶ 30 and 36).  There are no allegations of any failure to negotiate other than the alleged 30-day issue and FLVS is not aware of any.  To the extent K12 contends there are other issues, the Complaint should be dismissed for failing to place FLVS on notice as to what these might be.

ambiguous and in need of extrinsic evidence for interpretation, if a contract "shows unambiguously on its face that the relief prayed for is not merited, then dismissal is appropriate." *Jacksonville Newspaper Printing Pressmen & Assistants' Union No. 57 v. Fla. Publishing Co.*, 340 F. Supp. 993, 995 (M.D. Fla. 1972).

Because contract interpretation is a question of law for the Court, it is appropriate for the Court to take up the dismissal of K12's counterclaim for breach of contract on a motion to dismiss unless the contract is ambiguous and in need of extrinsic evidence to be interpreted.  K12 does not allege that the Settlement Agreement is ambiguous, thus rendering its interpretation of the language of the Settlement Agreement susceptible to challenge on a motion to dismiss.  The issue before the Court, then, is to determine which interpretation is reasonable and correct and which is not.  *See KB Home Orlando LLC v. Mid-Continent Cas. Co.*, No. 619CV1573ORL37EJK, 2020 WL 3035643, at *2 (M.D. Fla. Apr. 27, 2020) ("Even if the parties offer two competing interpretations, a contract can still be 'unambiguous' if one interpretation is 'unreasonable in light of the contract's plain language.'") (quoting *Martinair Holland, N.V. v. Benihana, Inc.*, 780 F. App'x 772, 775 (11th Cir. 2019).

Counterclaim Counts II and III both depend on K12's conclusory allegation that the 30-day notification period applies to claims against K12 directly for K12 infringement. The Court has previously noted its skepticism regarding K12's

interpretation of Section 5(c) in K12's Motion to Dismiss FLVS's claim for Breach of Contract in the Complaint.  (Order at Doc. 25, p. 9: "If the notice requirement here [in Section 5(c)] actually comports with K12's reading and creates a condition precedent (which the Court doubts that it does)…") (bracketed material added). There is good reason for the Court to question K12's interpretation because it directly contradicts canons of contract interpretation, including the canon requiring that the Court and the parties "not interpret a contract in such a way as to render provisions meaningless when there is a reasonable interpretation that does not do so." *Moore v. State Farm Mut. Auto. Ins. Co.*, 916 So.2d 871, 877 (Fla. 2d DCA 2005).  Instead, courts and litigants must "strive to interpret a contract in such a way as to give meaning to all provisions while doing violence to none." *Bethany Trace Owners' Ass'n, Inc. v. Whispering Lakes I, LLC*, 155 So. 3d 1188, 1191 (Fla. 2d DCA 2014). FLVS's interpretation of the express language is the only reasonable interpretation.  K12's unreasonable interpretation is contrary to the plain meaning of the language.  Because Counts II and III depend on this fatally defective interpretation, these counts should be dismissed with prejudice.

As noted previously, K12's 30-day argument is based on a misapplication of Section 5(c) of the Settlement Agreement:

> …K12 has no obligation or responsibility to police use of the K12 Marks by <u>third-parties</u> whom it does not control or who are not Affiliates of K12 (as defined herein) after the Cessation Date.  To the extent that FLVS becomes aware of <u>any instance in which an</u>

individual or party who is controlled by, or is an Affiliate of, K12 employs or otherwise uses the KI2 Marks following the Cessation Date in a manner that is not permitted by Paragraph 5(b), including through usage of outdated and discontinued written materials, FLVS shall notify K12 as soon as practicable but in no event later than thirty (30) calendar days from the date upon which FLVS becomes aware of the use. Upon notification from FLVS, KI2 will have ten (l0) calendar days within which to notify the individual or party as to its name change, to request that such individual or party discontinue any use of the KI2 Marks…

(Doc 29-1, ¶5(c)(emphasis added)).

The express language of the first sentence of the cited section above explains that K12 has "no obligation or responsibility to police use of the K12 Marks by third-parties whom it does not control or who are not Affiliates of K12." *Id.* (emphasis added) This sentence sets the stage for the subsequent provisions applying to third-party infringing use.  The second sentence then addresses the applicability of this Section 5(c) to a third party "who is controlled by, or is an Affiliate of, K12" and misuses the K12 Marks.  Id. (emphasis added).  From the beginning of this meet and confer language, Section 5(c) draws a distinction between the two K12 entities[3] and other third-party entities that are defined by their relationship to the two K12 entities.

Once FLVS provides K12 notice of third-party infringement, K12 has "ten (l0) calendar days within which to notify the individual or party as to its name

---

[3] The Settlement Agreement defines "K12" to mean both K12 Inc. and K12 Florida, LLC in the opening paragraph of page 1 of the Settlement Agreement.  (Doc. 29-1, page one)

change, to request that such individual or party discontinue any use of the KI2 Marks." *Id.* This provision makes no sense under K12's interpretation because, if one or both of the K12 entities were the individual or party referenced, <u>this provision would require K12 to "notify" itself "as to its [own] name change"</u> after K12 has already received notice from FLVS. Such an interpretation of the Settlement Agreement is absurd and makes it necessary to impermissibly rewrite Section 5(c). *See e.g.*, *Vyfvinkel v. Vyfvinkel*, 135 So. 3d 384, 386 (Fla. 5th DCA 2014) ("where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner.").

Section 5(c)'s example of how unauthorized third-party use may happen, further demonstrates that this provision does not apply to K12. This provision explains that the continuing unauthorized use of the prior K12 Marks may occur by using "outdated and discontinued written materials" (Doc. 29-1, Section 5(c)). K12's interpretation of this provision makes no sense with respect to K12, because K12 itself is the party who decides what is outdated and should be discontinued. Put differently, in what sense would materials be "discontinued" where K12 itself has not discontinued their use? This example makes sense, however, for third parties who received materials from K12 and did not discontinue their use.

The provision also requires K12 to "request that such individual or party discontinue any use of the KI2 Marks". *Id*. Making a "request" to cease misuse makes sense for third parties, but not for K12, who would simply direct its own employees to stop the misuse. Again, construing this provision to apply solely to third parties is the only interpretation that makes sense and preserves all provisions of the Settlement Agreement. This provision also applies solely to disputes over the prior K12 Marks which are defined (Doc. 29-1, ¶ 5(a)), and K12 has failed to articulate how this provision could apply to all the claims and issues raised by FLVS.

Everything about Section 5(c) leads to only one possible interpretation: The 30-day notice period does not apply to claims against K12. Because FLVS is not suing any third parties in this litigation, Section 5(c) does not constitute a condition precedent for FLVS's breach of contract claim or any other claims in this litigation. Counts II and III should, therefore, be dismissed with prejudice.

## III.   Counterclaim Count IV Seeks Only a Remedy and Fails to State a Claim.

Count IV of the Defendant's Counterclaim should be dismissed for failure to state a cause of action upon which relief may be granted because there is no legally cognizable cause of action for attorney's fees. Jurisprudence on the subject of attorney's fees has firmly established that parties must bear their own attorney's fees absent a statutory or contractual provision authorizing such an award. *Alveska*

*Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975); *Aerotek, Inc. v. Thompson*, 2016 WL 11468590 *2 (M.D. Fla. Oct. 17, 2016).  Therefore, an attorney's fees award arises only under the specific conditions upon which an award is based, whether statutory or contractual, which are strictly construed. *See e.g., Wilmington Trust Co. v. Manufacturers Life Ins. Co.*, 749 F.2d 694 (11th Cir. 1985).

Courts have repeatedly refused to recognize a separate cause of action for an award of attorney's fees. *See e.g., White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 451 (1982) (observing that an award for attorney's fees is not compensation for an injury giving rise to an action); *Williams v. Walsh*, 558 F.2d, 667, 671 (2d Cir. 1977) (noting that a cause of action is "something distinct from the remedy or the relief sought"); *Metropolitan Life Ins. Company v. Sicoli and Massaro Inc.*, 2016 WL 5390899, at *3 n.6 (S.D.N.Y. Sept. 16, 2016) ("A request for an award of attorney's fees seeks a remedy; it does not plead a cause of action."). This refusal to recognize a separate cause of action for attorney fees applies to cases addressing statutory fee-shifting provisions. *See e.g., Carvel v. Franchise Stores Realty Corp.*, 2009 WL 4333652, at *9 (S.D.N.Y. Dec. 1, 2009) ("Section 1988 only grants attorneys' fees to a prevailing party under §§ 1981–83, it does not create an independent cause of action."); *Wilson H. Lee Co. v. New Haven Printing Pressmen Local Union No. 74*, 255 F.Supp. 929 (D. Conn. 1966) (rejecting application for attorney's fees based on a state statute in part because the attorney's fees provision

17

in the statute was a corollary remedy underlying the state statutory cause of action); *Avigliano v. Sumitomo Shoji America, Inc.*, 473 F.Supp. 506, 514–15 (S.D.N.Y. 1979) (striking counterclaim for attorney's fees based on statutory provision for failure to state a claim and not yet being justiciable without prejudice to making a later application for attorney's fees).

Both the procedural and substantive requirements attending an award of attorney's fees in this case contradict the notion that an award of attorney's fees may be asserted as a separate cause of action.  First, Rule 54 of the Federal Rules of Civil Procedure requires that such a claim must be made by a post-judgment motion filed after entry of judgement, not in a Counterclaim**.** Fed. R. Civ. P. 54(d)(2). Thus, a party's assertion of entitlement to an award of attorney's fees stands in contrast to a "cause of action," which at its core alleges the need for a judgment as to the rights and damages between the parties, *see Williams*, 558 F.2d at 670, because it arises only after a judgment is rendered.

Second, the substantive foundation of K12's assertion of entitlement to attorney's fees arises only after the determination of a prevailing party and in conjunction with an award of damages in connection with the underlying claim. 15 U.S.C. §1117(a) ("The court in exceptional cases may award reasonable attorney fees to the *prevailing* party.") (emphasis added).  First, nothing in the language of the statute indicates that an award of attorney's fees must be included as an

element of damages, or otherwise must be pled as a separate cause of action. Second, at least one court has specifically dismissed a separate cause of action for an award of attorney's fees under similar circumstances.  In *Elan Pharmaceuticals, LLC v. Sexton*, the court held that dismissal of a defendant's counterclaim for entitlement to attorney's fees, under the U.S. Patent statute, 35 U.S.C. §285, failed to state a cause of action upon which relief may be granted because such an award arose only by motion after judgment on the merits of the underlying claim. 421 F.Supp.3d 1119, 1126-7 (D. Kansas 2020).

K12's Counterclaim alleges that it is entitled to attorney's fees upon this Court's finding that this action is an "exceptional" case under 15 U.S.C. §1117(a). However, such a finding does not become ripe until this Court enters judgment. *See Elan Pharmaceuticals*.  Because there is no procedural mechanism by which attorney's fees may be pled as a separate cause of action, K12 has not prevailed on the underlying claims, and there has been no judgment entered on said claims, the Defendant's Counterclaim IV should be dismissed for failure to state a cause of action upon which relief may be granted.

## CONCLUSION

For the foregoing reasons, FLVS respectfully requests that K12's Counterclaim (Doc. 29) be dismissed in its entirety (including Counts I through IV) with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that I conferred with Steven Hollman, counsel for the Defendants, via email on May 20 and 21 and again via phone on May 24, 2021 and have confirmed that Defendants are presently opposed to the relief requested in this Motion.   Defendants' counsel, however, represented that Defendants may seek leave of Court to recast Count IV as a remedy and not a claim.  The parties will promptly notify the Court once Defendants' position on this matter is clear.

Respectfully submitted this 24th day of May, 2021.

/s/Stephen H. Luther
Stephen H. Luther
Trial Counsel
Florida Bar No. 528846
LUTHER LAW PLLC
4767 New Broad Street, # 1029
Orlando, FL 32814
407 501-6711 x101 (Main)
407 501-7049 (Direct)
sluther@lutherlawgroup.com

Luis Guzman
Florida Bar No. 570613
Trial Counsel
Florida Virtual School
2145 Metrocenter Blvd #100
Orlando, FL 32835
luguzman@flvs.net

and

Stephanie M. Marchman
Florida Bar No. 854301
Thomas C. McThenia, Jr.

Florida Bar No. 917141
Michael J. Colitz III
Florida Bar No. 164348
720 SW 2nd Avenue, Suite 106
Gainesville, FL 32601-6250
GRAY ROBINSON, P.A.
stephanie.marchman@gray-robinson.com
tom.mcthenia@gray-robinson.com
michael.colitz@gray-robinson.com

**Counsel for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2021 I filed the foregoing with the Court's CM/ECF system which will send a Notice of Electronic Filing to all counsel of Record.

*/s/ Stephen H. Luther*