# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

      **Plaintiff,**

v.    Case No: 6:20-cv-2354-GAP-EJK

**K12, INC. and K12 FLORIDA, LLC,**

      **Defendants.**

## REPORT AND RECOMMENDATION

This cause comes before the Court on Defendants' Motion to Disqualify Counsel (the "Motion"), filed March 15, 2022. (Doc. 73.) On March 29, 2022, Plaintiff filed a response in opposition. (Doc. 74.) The Court thereafter granted leave for Defendants to file a reply. (*See* Docs. 76–78.) The Motion is now ripe for review. Upon consideration, I respectfully recommend that the Motion be granted.

### I.    BACKGROUND

On December 22, 2020, Plaintiff Florida Virtual School ("FLVS") filed against Defendants the instant action, which involves an ongoing trademark dispute between the parties. In 2011, Plaintiff originally filed suit against Defendants for infringement (the "2011 Litigation"). (Doc. 1 ¶ 29.) Following four years of litigation, the parties entered into a settlement agreement (the "Settlement Agreement"). (*Id.* ¶ 32.) FLVS is currently represented by GrayRobinson, P.A. ("GrayRobinson") and Luther Law, PLLC. Defendants have since moved to disqualify GrayRobinson as co-counsel for

Plaintiff "based on a conflict of interest in violation of Rules 4-1.9 and 4-1.10 of the Rules Regulating The Florida Bar." (Doc. 73 at 1.) Defendants assert that attorney Stephanie Carman ("Ms. Carman"), who joined GrayRobinson in February 2021 from Hogan Lovells LLP ("Hogan Lovells"), previously represented Defendants in a prior lawsuit "between the same parties in which FLVS asserted the same trademarks it is asserting in this lawsuit, and K12 asserted some of the same defenses asserted in this lawsuit." (*Id.*) Defendants argue that because Ms. Carman was "privy to significant privileged and work-product protected information," her conflict should be imputed to GrayRobinson and GrayRobinson should be disqualified. (*Id.* at 1–2.)

Plaintiff responds that there are no compelling reasons to grant such a drastic remedy as disqualification. (Doc. 74 at 4.) Specifically, Plaintiff states that the "2011 litigation that K12 points to is not the same or substantially related to the current case. The cases cover two different time periods, assert different causes of action, allege the infringement of different trademarks, and encompass different facts." (*Id.* at 2.) Plaintiff contends that Ms. Carman has no "confidential or privileged information in her possession" relating to the 2011 Litigation, and that to the extent any conflict exists, it has been waived by Defendants' failure to timely bring the instant Motion. (*Id.* at 8, 10–11.) In fact, Plaintiff argues that Defendants' attorneys "likely knew, or had reason to know, of Ms. Carman's employment far earlier." (*Id.* at 11.) Plaintiff finally asserts that Defendants have inappropriately used the threat of the instant Motion to its strategic advantage to exclude GrayRobinson from large document productions and litigation-related correspondence. (*Id.* at 12.)

## II. STANDARD

"While it is true that there is a constitutionally based right to counsel of choice, it is also well established that the right is not absolute." *In re BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003). This right may be overridden if "compelling reasons" exist. *Id.* at 961. The party moving to disqualify counsel bears the burden of proving the grounds for disqualification. *Id.* A violation of the rules of professional conduct governing attorneys can be sufficient to warrant disqualification. *See McGriff v. Christie*, 477 F. App'x 673, 677 (11th Cir. 2012) (affirming the district court's disqualification of an attorney based on a violation of the Georgia Rules of Professional Conduct). Nevertheless, disqualification "is a harsh sanction" and "should be resorted to sparingly." *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982).

There are two sources of a court's authority to consider a motion to disqualify an attorney. "First, attorneys are bound by the local rules of the court in which they appear. . . . Second, federal common law also governs attorneys' professional conduct because motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006). "If a district court bases its disqualification order on an allegation of an ethical violation, 'the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power.'" *Id.* (quoting *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997)). "Instead, '[t]he court must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant

jurisdiction and must conclude that the attorney violated that rule.'" *Id.* (quoting *Schlumberger Techs., Inc.*, 113 F.3d at 1561).

### III. DISCUSSION

#### A. Waiver of Conflict

The first issue the undersigned considers is whether Defendants waived their right to object to GrayRobinson's representation of Plaintiff. Plaintiff contends that the three-month delay between Defendants' discovery of the conflict and the filing of the instant Motion is "sufficient to establish a waiver." (Doc. 74 at 11.) However, Plaintiff also argues that Defendants' attorneys "likely knew, or had reason to know, of Ms. Carman's employment far earlier." (*Id.*) Plaintiff states that because K12's counsel, Steven Hollman, had been "'linked' on LinkedIn.com" with Ms. Carman since November 2020, he "would have likely received an email notifying him of Ms. Carman's arrival at GrayRobinson in February of 2021." (*Id.*) In contrast, Defendants assert that they first learned of Ms. Carman's move to GrayRobinson on December 23, 2021, when Mr. Hollman "was preparing a list of legal professionals to whom to send a virtual holiday card." (Doc. 73 at 7.) Defendants state they had no prior knowledge of Ms. Carman's employment at GrayRobinson and have submitted a declaration stating such. (*Id.*; Doc. 73-1 ¶¶ 9–10.)

"A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cox v. Am. Cast Iron Pipe Co.*, 847 F.2d 725, 729 (11th Cir. 1998) (citation omitted). If the moving party fails to raise a

- 4 -

timely motion to disqualify, the right to do so is waived. *See Concerned Parents of Jordan Park v. Hous. Auth. of City of St. Petersburg, Fla.*, 934 F. Supp. 406, 408 (M.D. Fla. 1996) ("Defendant's failure to timely raise its objection operates as a waiver of its right to object."); *Cox*, 847 F.2d at 729 ("[A] failure to make a timely objection may also result in a waiver"). This rule seeks to deter a litigant from using a disqualification motion to "deprive his opponent of counsel of his choice after completing substantial preparation of the case." *Etkin & Co., Inc. v. SBD LLC*, No. 11-21321-CIV, 2012 WL 5398966, at *5 (S.D. Fla. Nov. 5, 2012). To determine whether a motion to disqualify is untimely, courts consider "the (1) length of the delay bringing the motion to disqualify; (2) when the movant learned of the conflict; (3) whether the movant was represented by counsel during the delay; (4) why the delay occurred; and (5) whether disqualification would result in prejudice to the non-moving party." *In re Jet 1 Center, Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004).

Here, the undersigned does not find the Motion to Disqualify to be untimely under either the undisputed three-month timeline or the timeline alleged by Plaintiff. With respect to Plaintiff's allegations that Defendants' attorneys "likely knew, or had reason to know" of Ms. Carman's employment with GrayRobinson from at least February 2021, these statements are just that—allegations without any solid support. (Doc. 74 at 11.) Plaintiff has no evidence to substantiate these allegations, but instead works from an inference based on the association of Mr. Hollman and Ms. Carman on LinkedIn.com and the fact that a handful of other attorneys left their congratulations on Ms. Carman's LinkedIn page. (*See id.* at 11–12; Doc. 74-2.) These

facts are far too inconsequential to support the serious allegation that Defendants waited more than a year to bring the instant Motion.

By contrast, Defendants have presented the declaration of Mr. Hollman, who declared under penalty of perjury that he "first learned of Ms. Carman's move to GrayRobinson on December 23, 2021." (Doc. 73-1 ¶ 9.) As Defendants state, "FLVS has not made and cannot make [the] showing" that the attorneys actually knew "of Ms. Carman's prior representation of K12 and GrayRobinson's current representation of FLVS adverse to K12." (Doc. 78 at 5.) In light of Mr. Hollman's declaration (Doc. 73-1) and the absence of anything but the tenuous inference Plaintiff offers, the undersigned declines to adopt the timeline Plaintiff proposes.

The undersigned also does not find that Defendants waived their right to move to disqualify as a result of the three-month delay. Defendants state that, after the December holidays, they attempted to obtain GrayRobinson's voluntary withdrawal. (Doc. 73 at 7–8.) Following a few weeks of correspondence, Defendants then requested from Hogan Lovells all electronic records maintained by Ms. Carman during the course of her representation. (*Id.* at 8; Doc. 73-1 ¶ 14.) After reviewing these records, Mr. Hollman renewed his request for GrayRobinson's voluntary withdrawal, resulting in a meet and confer process that culminated in a Zoom call on March 7, 2022. (Docs. 73 at 9–10; 73-1 ¶¶ 20–22.) While this process was somewhat protracted, the undersigned does not find that a three-month delay accompanied by a detailed explanation accounting for the delay warrants a finding of untimeliness. Judges in this District have found that a movant who waits approximately five months before

moving to disqualify has waived its right, if it provides either no explanation or an unconvincing explanation for the delay. *See TMH Med. Servs., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 6:17-cv-920-Orl-37DCI, 2018 WL 6620891, at *5 (M.D. Fla. Sept. 18, 2018) (finding motion to disqualify untimely where movant waited six months, did not explain delay, and discovery and dispositive motions deadlines had passed); *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, No. 8:16-cv-1477-T-36CPT, 2018 WL 4561783, at *6 (M.D. Fla. Aug. 10, 2018) (delay of about seven months operated as waiver where movants waited for summary judgment to be briefed before filing motion and did not explain delay); *Concerned Parents*, 934 F. Supp. at 408 (motion to disqualify untimely where movant waited five months to file motion, discovery deadline was two months away, and movant did not explain delay). The undersigned finds that the three-month delay here, accompanied by an explanation accounting for the delay and evidence of Defendants' efforts to resolve this matter without this Court's intervention, should not result in the waiver of Defendants' right to object.

### B. Motion to Disqualify

Defendants cite to Rules 4-1.9 and 4-1.10 of the Rules Regulating the Florida Bar, and Local Rule 2.01(e) (stating that the rules regulating the Florida Bar apply to lawyers appearing in the Middle District) in support of their Motion. (Doc. 73 at 10–11.) Rule 4-1.9 provides in relevant part:

> A lawyer who has formerly represented a client in a matter must not afterwards:
>
>> (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>>
>> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known.

Fla. Bar. R. 4-1.9. Rule 4-1.10 states in relevant part:

>> (a) Imputed Disqualification of All Lawyers in Firm. While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.
>>
>> (b) Former Clients of Newly Associated Lawyer.  When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 41.9(b) and (c) that is material to the matter.

Fla. Bar. R. 4-1.10.

Plaintiff argues that the applicable rule is 4-1.10(b), stating, "'[W]hen a lawyer moves from one firm to another, the situation is governed by the Florida Bar Rule pertaining to imputed disqualification, and not by the rule pertaining to conflict of

interest.'" (Doc. 74 at 5) (quoting *McCarthy v. Sherwin-Williams Co.*, No. 2:05-cv-61-FtM-33SPC, 2005 WL 8159488, at *1 (M.D. Fla. Sept. 14, 2005). Even so, the Comment to Rule 4-1.10 states that subdivision (b) of the rule operates only to disqualify a firm when the lawyer involved has actual knowledge of relevant information protected by rules 4-1.6 and 4-1.9(b) and (c). *See* Comments to Florida Bar Rule 4-1.10. Thus, while the undersigned considers the purported conflict under Rule 4-1.10(b), the undersigned notes that Rule 4-1.9 is relevant to this consideration. Moreover, although Plaintiff contends that Defendants' motion fails to analyze the relevant rule, both parties properly center their argument on whether Ms. Carman acquired information that is material to the present litigation, and whether the 2011 Litigation is substantially related to the present litigation. (*See* Docs. 73 at 12–19; 74 at 5–10.) The undersigned discusses each issue in turn.[1]

### i. *Material Information*

As Defendants highlight in their reply, the relevant question is whether Ms. Carman acquired information protected by Rules 4.1-6 and 4.1-9(b) and (c), not whether Ms. Carman presently possesses information that is material to the instant action. (Docs. 74 at 8–10; 78 at 2–3.) Because Defendants seek vicarious

---

[1] Rule 4-1.10(b) also requires that the client who was previously represented have interests materially adverse to the current client. As Defendants state, "FLVS's interests are glaringly adverse to K12's interests in the current matter. . . . [the] complaint alleges that K12 breached FLVS's interpretation of the 2015 Settlement Agreement that resolved the issues in the 2011 Litigation, in which K12 raised many of the same defenses as it does in the 2020 Litigation." (Doc. 73 at 19.) The undersigned agrees that the interests are materially adverse, and Plaintiff does not dispute this in its response.

disqualification of GrayRobinson through Ms. Carman, there "must be a showing that the newly associated attorney acquired confidential information during [her] prior representation." *Gaton v. Health Coal., Inc.*, 745 So. 2d 510, 511 (Fla. Dist. Ct. App. 1999).

Defendants state that in the 2011 Litigation, Ms. Carman "was a signatory on dispositive motions and was the only attorney to attend the case management conference in person." (Doc. 73 at 13.) Defendants note that "the approximately 22 documents she filed in the 2011 Litigation were filed under Rule 11." (*Id.*) Additionally, Defendants assert that Ms. Carman was copied on "strategic communications as well as work product reflecting privileged information," including: "a June 15, 2012 memorandum regarding FERPA research"; "a July 16, 2015 work product analysis of issues for discussion with opposing counsel"; "a September 16, 2015 email from Ms. Mandel to Ms. Carman containing commentary concerning Stephen Luther statements and FLVS's settlement position"; "an October 9, 2015 email from Ms. Mandel forwarding to Ms. Carman and others an email to the client previewing major open settlement issues"; and was on a 2017 call with Stephen Luther "regarding a perceived issue involving enforcement by FLVS of the Settlement Agreement." (*Id.* at 13–14; 73-1 ¶¶ 18–19.) Defendants also cite to Ms. Carman's "contemporaneous time entries contained in billing records" stating that she "[r]eview[ed] correspondence regarding strategy and discovery matters," conferred with other attorneys "regarding strategy for case and trial," conferred with other attorneys "regarding strategy for discovery and expert reports," and "[r]eview[ed]

correspondence regarding settlement." (Docs. 73 at 14–15; 73-1 ¶ 17.)

In light of these representations, the undersigned finds that Defendants have more than established the requisite *prima facie* case by showing that Ms. Carman "acquired confidential information in the course of [her] prior representation." *Scott v. Higginbotham*, 834 So. 2d 221, 223 (Fla. Dist. Ct. App. 2002); *see also Gaton*, 745 So. 2d at 511. The burden thus shifts to Plaintiff to demonstrate that Ms. Carman "has no actual knowledge of any confidential information material to the case." *Gaton*, 745 So. 2d at 511.

Plaintiff first references Ms. Carman's declaration that she "has no confidential or privileged information in her possession relating to the 2011 Litigation." (Docs. 74 at 8; 74-6.) Plaintiff contends that this declaration alone should be sufficient to establish the absence of a conflict. (Doc. 74 at 9.) However, Plaintiff's argument hinges on the *present* possession of confidential or privileged information. (*See id.* at 8–9; Doc. 74-6.) The undersigned is unpersuaded by this technical argument that only present possession is dispositive. As Defendants point out, this Court has explicitly found that a "claim[] to have no recollection of that [confidential] information now is of no moment." *Becker Designs, Inc. v. Biker Design, Inc.*, No. 6:06-cv-56-Orl-22DAB, 2006 WL 8448597, at *4 (M.D. Fla. Dec. 13, 2006). Similarly, here, Ms. Carman's claim that she does not presently have any confidential or privileged information regarding the 2011 Litigation or the 2015 Settlement Agreement does nothing to negate Defendants' showing that she at some point acquired confidential information during her representation. (*See* Doc. 74-6.) Indeed, Ms. Carman's "failure to rebut the clearly

set-out assertions of the client establishes that [she] received confidential information." *Becker Designs, Inc.*, 2006 WL 8448597 at *4; *see U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 101 F. Supp. 3d 1268, 1277–78 (S.D. Fla.), *aff'd*, 101 F. Supp. 3d 1280 (S.D. Fla. 2015) ("Eastin contends that he cannot remember the substance of these conversations and thus the Court cannot find that he has actual knowledge of confidential information. . . . Merely contending that he has no recollection of receiving any information is insufficient to oppose evidence to the contrary."); *Gaton*, 745 So. 2d at 511–12 ("A failure to remember, however, does not rebut clearly set-out assertions, as here.").

Plaintiff next argues that Ms. Carman's "limited role in the 2011 Litigation" demonstrates her "lack of confidential or privileged information." (Doc. 74 at 9.) The undersigned finds this argument equally unpersuasive. Plaintiff notes that Ms. Carman was "one of seven attorneys" representing K12 in the litigation. (*Id.*) However, the undersigned cannot glean from Plaintiff's argument how the number of attorneys working on a case impacts the attorneys' acquisition of confidential or privileged information. Plaintiff also attempts to emphasize Ms. Carman's apparently junior role, stating that she was an associate serving as local counsel who was "under the supervision of other attorneys" and following "the direction of the other six, Washington, D.C. based attorneys." (*Id.*) Plaintiff thus states Ms. Carman had "no independent contact with K12 and was not responsible for the client relationship." (*Id.* at 10.) Again, it is unclear to the Court how these assertions demonstrate that Ms. Carman did not acquire any confidential or privileged information. Accordingly,

Plaintiff has failed to actually rebut any of the evidence Defendants presented in their *prima facie* case, and the undersigned finds that Plaintiff has not met its burden of demonstrating that Ms. Carman did not acquire confidential information while working at Hogan Lovells.

Additionally, the undersigned considers whether the confidential information Ms. Carman acquired is material to the current matter. As discussed below, Count VIII of the instant complaint alleges that Defendants breached the 2015 Settlement Agreement that resolved the 2011 Litigation. (Doc. 1 at 19.) Thus, Ms. Carman's review of correspondence regarding the settlement agreement and participation in a 2017 call with Stephen Luther "regarding a perceived issue involving enforcement by FLVS of the Settlement Agreement" demonstrate to the undersigned that the information Ms. Carman acquired is also material to this action. (Docs. 73 at 13–15; 73-1 ¶¶ 17–19.)

### ii. Substantially Related

The undersigned next considers whether the 2011 Litigation is substantially related to the present litigation for purposes of Rule 4-1.10(b). As stated above, Rule 4-1.10(b) applies to situations where a firm knowingly represents a person in "the same or a substantially related matter" in which the newly associated lawyer had "previously represented a client whose interests are materially adverse to that person." (Doc. 74 at 5) (citing Fla. Bar. R. 4-1.10(b)). The Court notes that the quoted language tracks the language of Rule 4-1.9(a) and finds the Comment to Rule 4-1.9(a) instructive in defining "substantially related":

> Matters are "substantially related" for purposes of this rule if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client. For example, a lawyer who has previously represented a client in securing environmental permits to build a shopping center would be precluded from representing neighbors seeking to oppose rezoning of the property on the basis of environmental considerations; however, the lawyer would not be precluded, on the grounds of substantial relationship, from defending a tenant of the completed shopping center in resisting eviction for nonpayment of rent.

*See* Comments to Florida Bar Rule 4-1.9.

Indeed, the cases Plaintiff cites for support utilize the "substantially related" analysis of Rule 4-1.9(a) in considering disqualification under Rule 4-1.10. (*See* Doc. 74 at 6) (citing *Smalley Transp. Co. v. Prime Computer, Inc.*, 137 F.R.D. 397, 399 (M.D. Fla. 1991) and *Larson v. Correct Craft, Inc.*, No. 6:05-cv-686-Orl-31JGG, 2005 WL 8159791, at *6 (M.D. Fla. Sept. 8, 2005)). Accordingly, the undersigned follows suit. As this Court has previously stated, "[f]or matters to be substantially related, they need only be akin to the present action in a way reasonable people would understand as important to the issues involved." *Larson*, 2005 WL 8159791 at *6 (internal quotations and citation omitted). Because "a mere superficial resemblance between the present and prior representations will not suffice," the Court looks beyond "facial similarities, and instead focus[es] on the precise nature of the subject matters involved in the two representations." *Id.* (internal quotations and citations omitted). However, "[c]lose cases under Rule 4-1.10(b) will be decided in favor of disqualification to preserve the integrity of a fair adversary system." *Becker Designs, Inc.*, 2006 WL 8448597 at *3.

Plaintiff acknowledges that "pursuant to former Local Rule 1.04(d) the 2011 Litigation was deemed to be related to the present litigation," but argues that the similarities stop there.[2] (Doc. 74 at 7–8.) Plaintiff states the present case and the 2011 Litigation are not substantially related because the 2011 Litigation was "completely resolved by the Parties' November 3, 2015 Settlement Agreement." (*Id.* at 7.) Plaintiff asserts that the "present case deals with circumstances following the November 3, 2015 Settlement, and thus different underlying facts." (*Id.*) Plaintiff notes the "trademarks at issue are also different" and that the cases "also have different causes of action." (*Id.*) The undersigned is not convinced.

Although Plaintiff states the "two cases also have different causes of action," this is to be expected, as one of the differing counts Plaintiff highlights is "breach of the 2015 Settlement Agreement." (Doc. 74 at 7.) It is axiomatic that the 2011 Complaint could not have brought a count for breach of a settlement agreement that would not exist for another four years. Yet a review of the 2011 Complaint reveals several of the same causes of action as the instant complaint, a fact that Plaintiff does not address. For example, both complaints bring counts for infringement of registered marks under the Lanham Act. (*See* Case No. 6:11-cv-831-Orl-31KRS, Doc. 1 at 7–8; Doc. 1 at 12–16.) The instant complaint brings counts for common law trademark infringement and common law unfair competition, with the 2011 Complaint similarly bringing counts for common law service mark infringement and unfair competition.

---

[2] The undersigned agrees that relatedness under Local Rule 1.04(d) is not necessarily the same as relatedness under the Rules Regulating the Florida Bar.

(*See* Case No. 6:11-cv-831-Orl-31KRS, Doc. 1 at 11; Doc. 1 at 18.)

But perhaps most revealing of the substantial relatedness of the matters is that Plaintiff's instant complaint (Doc. 1) relates the instant action to the 2015 Settlement Agreement and 2011 Litigation. Plaintiff uses several paragraphs of the instant complaint to detail the 2011 Litigation and resulting settlement agreement. (Doc. 1 ¶¶ 28–40.) In fact, as stated above, Count VIII of the Complaint is for breach of the settlement agreement, alleging that Defendants "materially breached the Settlement Agreement by continuing to market and promote their services using certain Asserted Marksand [sic] confusingly similar variations thereof and by other acts as alleged above." (*Id.* ¶ 141.) Thus, Plaintiff's contention that these matters are not substantially related is unpersuasive in light of Plaintiff's own references relating the matters in its Complaint. (*Id.* ¶¶ 28–40, 138–143.) "[R]easonable people would understand" that the prior litigation purportedly resolved by a settlement agreement would be "important to the issues involved" in determining whether that settlement agreement has been breached. *Larson*, 2005 WL 8159791 at *6 (quoting *Gen. Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1340 (S.D. Fla. 2001)). Thus, the undersigned finds that the matters are "substantially related" for purposes of Rule 4-1.10(b).

## IV. RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that Defendants' Motion to Disqualify Counsel (Doc. 73) be **GRANTED** and that the law firm of GrayRobinson, P.A., be disqualified as counsel for Plaintiff.

### NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on April 20, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE