## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

          **Plaintiff,**          **Case No.: 6:20-cv-02354-GAP-EJK**

**vs.**

**STRIDE, INC., formerly known as**
**K12 INC., and K12 FLORIDA LLC,**

          **Defendants.**
_____/

## DEFENDANTS' MOTION FOR RULE 11 SANCTIONS AND
## MEMORANDUM OF LAW IN SUPPORT

Defendants Stride, Inc., and K12 Florida LLC, (together, "Stride"), submit the following Motion for Rule 11 Sanctions because Plaintiff Florida Virtual School refused to withdraw claims for damages outside of Florida for which it lacks evidentiary support within 21 days after Stride's request that it do so. *See* Fed. R. Civ. P. 11(c)(2); Ex. A (Notice of Motion for Sanctions).

### INTRODUCTION

Stride brings this Motion because Plaintiff has persisted in prosecuting baseless and demonstrably false claims for damages, lost profits, and injunctive relief relating to challenged conduct of Stride that involve services offered to Stride's school district customers outside the State of Florida.

In its Complaint, Plaintiff alleged it had been – and continues to be – damaged and irreparably harmed by Stride's discontinued use of the program name "Florida Online School" and the acronym "FLOS" to describe its program offered to Florida students through the Hendry County School District; by Stride's discontinued use of generic and descriptive terms to describe its online educational services offered in Florida to Florida students; and by Stride's including a link to a pdf of a comparison checklist document on its website with instructions that initially referred to Plaintiff, but were removed after Plaintiff complained.  Plaintiff has maintained from this case's inception that Stride's challenged actions caused Plaintiff monetary and irreparable injury, not only within Florida but also nationally and even globally.

In discovery, Stride probed the bases for Plaintiff's claimed injury and damages outside of Florida.  In its sworn interrogatory responses, Plaintiff stated it had sustained and would continue to sustain monetary and irreparable harm outside of Florida.  Plaintiff even moved to compel broad and far reaching discovery into Stride's competitively sensitive and proprietary national financial information, arguing it expected "substantial" evidence of misconduct outside the State of Florida that it needed to measure the extent of its claimed injury.  Plaintiff met Stride's protests over this intrusive discovery by noting that Stride could later try and limit the dispute solely to Florida "[o]nce discovery is in."  Dkt. 52 at 2-3.

But now that discovery has closed, it is clear these claims regarding harm and damages outside of Florida have no evidentiary basis—and they never did.  After years in discovery, during which Plaintiff imposed substantial and intrusive discovery burdens on Stride in response to its sweeping damages claims, not a single document or witness (corporate representative, fact, or expert) has identified a penny of damage or any injury actually suffered by Plaintiff as a consequence of any point of sale confusion or material deception resulting in revenue loss that Plaintiff can prove was proximately caused by Stride's challenged conduct outside of Florida.

This should have been no surprise to Plaintiff and its counsel before they brought this action, had the sweeping claims of national injury been well-founded in fact based on a reasonable investigation.  Neither Stride nor Plaintiff even uses Florida-branded material outside of Florida, and Plaintiff itself recognizes that its marks have little – if any – recognition outside of the state.

Given that Plaintiff had good reason to know its allegations of harm and damages outside of Florida were baseless at the outset, and given that no evidentiary support for those claims has surfaced after nearly two years of discovery, it was objectively unreasonable for Plaintiff and its counsel to prosecute and maintain such claims, while at the same time imposing unnecessary and undue burdens on Stride.

Because Plaintiff has refused to take necessary corrective measures regarding these unfounded claims, Stride now seeks appropriate relief from the Court.

## BACKGROUND

**A.   Plaintiff Seeks Nationwide Lost Profits And Disgorgement Damages Based On Allegations That Stride Infringed On Plaintiff's Marks And Falsely Advertised.**

Plaintiff filed its Complaint in this case on December 22, 2020, alleging trademark infringement, unfair competition, false advertising, and breach of contract against Stride.  Dkt. 1.  Plaintiff's infringement allegations stemmed from Stride's use of the FLORIDA ONLINE SCHOOL and FLOS program names for the online educational services program it offers to Florida students through the Hendry County School District in Florida.  *See* Dkt. 1 ¶¶ 41-52.[1]  Plaintiff's false advertising allegations centered on a comparison checklist (the "Checklist") buried deep on Stride's "About" webpage that encouraged parents to compare Stride's offerings to those of other online education services providers, including FLVS, before making a decision on where to send a student to school online.[2]

Based on these allegations, Plaintiff sought nationwide damages from Stride for the alleged conduct on the basis of its bare, conclusory, and self-serving allegation that Plaintiff's marks are "known to purchasers throughout the United

---

[1] Prior to Plaintiff's filing this lawsuit, Stride was already in the process of renaming the FLOS online program to assuage Plaintiff's stated concerns, despite Stride's position that the FLORIDA ONLINE SCHOOL and FLOS names did not infringe FLVS's mark with "VIRTUAL" as the key element.  Stride ultimately selected DIGITAL ACADEMY OF FLORIDA and the acronym DAOF as the new name for its Hendry County online program.

[2] Prior to Plaintiff's filing this lawsuit, Stride removed the reference to FLVS from the Checklist, as  Plaintiff acknowledged in its Complaint.  Dkt. 1 ¶ 58.

States and are associated with [Plaintiff's] services." *Id*. ¶ 78.  Plaintiff alleged Stride used the FLOS program names in interstate commerce in a manner likely to cause confusion; that Stride did so willfully in order to trade off the good will Plaintiff claimed existed nationwide in its marks; that Stride's actions had caused Plaintiff extensive monetary injury; and that these actions had caused and would "continue to cause irreparable harm" to Plaintiff.  *Id.*  ¶¶ 72, 80-83, 91-94, 104-107, 113-15, 119-124, 129, 130, 135, 136, 142 & 143.

After Stride initially objected to Plaintiff's discovery requests seeking information relating to Stride's financial operations outside of Florida, Plaintiff filed a motion to compel on December 8, 2021, expressly stating it "expect[ed] that discovery will disclose *substantial additional evidence* of infringement, false advertising and other misconduct outside of the State of Florida."  Dkt. 52 at 2 (emphasis added).[3]  While Plaintiff argued it was then "premature" to limit Plaintiff's claims solely to Florida, it offered that Stride could do so "[o]nce discovery is in." *Id*. at 3.[4]

---

[3] Plaintiff insisted that its in-house counsel, who are involved in competitive decision-making, enter appearances in the case, affording them access to sensitive financial information denominated as "Highly Confidential" or "Attorneys' Eyes Only."  These attorneys refused to give assurances that the competitively sensitive information would not be used for Plaintiff's commercial advantage. *See* Dkt. 57

[4] While Stride opposed Plaintiff's motion to compel discovery outside of Florida (Dkt. 54), the Court granted Plaintiff's motion in part.  Dkt. 65.

Now that discovery is indeed "in" (it closed on February 1, 2023 (Dkt. 116)), Stride is doing just what Plaintiff invited it to do long ago.

**B.     Stride Did Not And Does Not Use Florida-Centric Branding Outside Florida, And Plaintiff Has No Evidentiary Support To The Contrary.**

Stride's branding and advertising are driven by its "K12" and Stride brands, not school or state-specific programs.  This is particularly so for its branding and advertising outside of Florida.  Todd Goldthwaite, Managing Director at Stride (and also a Rule 30(b)(6) representative), explained in a sworn declaration *nearly 14 months ago,* at the outset of discovery that "K12 limited the use of FLOS, FLORIDA ONLINE SCHOOL, and Florida-centric branding to the state of Florida because K12 is only authorized to enroll students in the Hendry County program and other Florida programs if those students are qualified to attend Florida public K-12 schools."  Dkt. 54-2 ¶ 5.  Consequently, Stride regarded the use of FLORIDA ONLINE SCHOOL or FLOS program names, or any other Florida-reference in its marketing and promotion outside of Florida, to be "pointless," and Stride did not use them for such marketing and promotion.  *Id*. ¶¶ 6-8.

At his Rule 30(b)(6) deposition on behalf of Stride, Mr. Goldthwaite confirmed that Stride does not use Florida-centric or FLOS-specific branding outside of Florida.  When even asked if Stride takes steps to "prevent people from outside the state of Florida from seeing its Florida Online School material online," Mr. Goldthwaite responded yes, because when "[y]ou go to K12.com, and you put in

your zip code . . . .  If you put in a zip code that's not associated with Florida, you see other schools."  Ex. B (Goldthwaite Dep. Tr.) at 349:19-350:4.

**C.     There Is No Evidence Plaintiff's FLORIDA VIRTUAL SCHOOL and FLVS Marks Are Even Recognized Outside Of Florida.**

Plaintiff's marks are not recognized outside the state of Florida and lack any cognizable distinctiveness or identity.  Kate Lysaught, Plaintiff's Senior Director of Marketing and Communications, ██████████████████████████████████ ██████████████████████████████████ Ex. C (Lysaught Dep. Tr.) at 106:22-107:6; *see also* Ex. S (Pltf's. Third Rule 30(b)(6) Dep. Tr. at 70:12-71:7) ████████████████████████████████ ██████████████████████████████████.  And when asked about Plaintiff's brand strength outside of Florida, Plaintiff's former Senior Digital Strategy Manager, Marissa Draeger, testified that use of Plaintiff's current marks "was a challenge with the geographic limitations but, also . . . there wasn't as high awareness as we'd like outside the state of [the Florida Virtual School] name."  Ex. D (Draeger Dep. Tr.) at 47:17-48:1.

Likewise, Rebecca Kelley, Assistant to the Superintendent of the Wattsburg Area School District in Pennsylvania, testified she had never even heard of Plaintiff or its services when conducting extensive research for an online school provider for her district.  Ex. E (Kelley Dep. Tr.) at 13:19-14:5.

██████████████████████████████████



Ex. F at FLVS00247449; *see also* Ex. D (Draeger Dep. Tr.) at 50-58.

Ex. F at FLVS00247449-50.

*Id.* at FLVS00247449.

[5]

---

[5] Former Executive Director of Global Services for Plaintiff, Courtney Calfee, testified that Plaintiff's use of "Florida Virtual School" outside of Florida was problematic.  She explained that the word "Florida" was "problematic because many customers assumed that it would not meet their own State's standards.  'Virtual' became problematic because we had many customers that wanted to use it in a blended environment and not necessarily a virtual school. And then 'School' became problematic because we were licensing/process curriculum, and really acting as a curriculum provider versus just a school of record, or a school."  Ex. G at 35:5-19.

Given its wholly underwhelming brand recognition and the limiting nature of its trademarks in conducting business outside of Florida, Plaintiff publicly announced the re-branding of its global services to FlexPoint Education Cloud on October 6, 2021.[6]

Notably, Plaintiff did not conduct any secondary meaning survey to demonstrate the name recognition outside of Florida that it self-servingly claimed in its Complaint, and it likewise chose not to conduct any confusion survey to demonstrate likely confusion among non-Florida customers.[7]

### D.   Plaintiff Has No Evidence For Any Claim Of Monetary Loss Outside Of Florida Arising From Stride's Use Of the FLOS Program Name.

Plaintiff does not have – and it never has had – any evidence that it suffered any monetary loss outside of Florida as a consequence of Stride's use of the FLORIDA ONLINE SCHOOL and FLOS program names or any other Florida-related terms in its non-Florida advertising or promotion efforts.

---

[6]  News Release, *Florida Virtual School Launches FlexPoint Education Cloud - a New Brand Offering Services to Kindergarten-12th Grade School Districts Outside of Florida* (Oct. 6, 2021), https://www.flvs.net/about/newsroom/news-releases/2021/10/06/florida-virtual-school-launches-flexpoint-education-cloud---a-new-brand-offering-services-to-kindergarten-12th-grade-school-districts-outside-of-florida.

[7]  ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████ Ex. H at FLVS0039292 (emphasis added); *see also* Ex. C (Lysaught Dep. Tr.) at 103:1-9. ████████████████████████████████████████
██████████████████████████████████████████████████████
███████████████████████████████████████ Ex. I at FLVS00469980; *see also* Ex. D (Draeger Dep. Tr.) at 61:2-10; Ex. F at FLVS00247455 ███████████████
████████████████████████████.

Sam Verghese, Plaintiff's Chief Operating Officer, testified as Plaintiff's Rule 30(b)(6) representative that Plaintiff is wholly relying on the report of its "damages" expert Daniel Gallogly for the proposition that Plaintiff has suffered monetary loss outside of Florida.  Ex. J (Pltf's. Second Rule 30(b)(6) Dep. Tr.) at 20:19-21:7.  Mr. Verghese also made clear that Plaintiff is relying on Mr. Gallogly's report for the "proposition that K12's use of the Florida Online School and FLOS has caused injury to FLVS including the basis for the allegation that the injury includes the lost revenue from consumers[.]"  *Id*. at 23:10-21.

But Plaintiff cannot rely on Mr. Gallogly for any factual or evidentiary support for injury it claims to have sustained outside of Florida because ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████ According to Mr. Gallogly,

███████████████████████████████ Ex. K (Gallogly Dep. Tr.) at 282:3-6.[8]

---

[8] *See also* Ex. K (Gallogly Dep. Tr.) at 35:1-3, 166:4-13 ████████████████████

████████████████████████████████████████████

Moreover, despite Plaintiff listing current or former employees of Plaintiff as witnesses in its Rule 26 initial disclosures as having knowledge of "[t]he injury suffered by FLVS *resulting from the acts complained of in the Complaint*," not a single listed witness identified by Plaintiff stated in deposition testimony that the witness had any knowledge of Plaintiff having sustained any actual injury outside of Florida as a result of Stride's actions.  Ex. L (FLVS Amended Initial Disclosures).[9] For example, Courtney Calfee, former Executive Director of Global Services for Plaintiff, testified she was "not aware" of Plaintiff "having lost any money as a result of confusion between the name FLOS and FLVS."  Ex. G (Calfee Dep. Tr.) at 112:22-25. ███████████████████

███████████████████████

██████████████████ *Id.* at 131:17-21.



███████████████████
███████████ 173:2-7 █
███████████████████
████ 173:15-20 ███████
███████████████████
281:25-282:17 █████████
███████████████████
███████████████████
███████████████████
█████████████████.

───────────
[9] This appears to have been a principal driver for Plaintiff's eleventh-hour request to conduct additional depositions of purported "confusion" witnesses, none of whom subsequently identified any point of sale confusion resulting in monetary loss to Plaintiff.  *See* Dkt. 101 & 105.

The other witnesses Plaintiff disclosed, Ashley Reyes, Tonia Clow, Kate Lysaught, also could not articulate any actual harm or damage suffered by Plaintiff due to Stride's conduct outside the State of Florida.  Ex. M (Reyes Dep. Tr.) at 26:20-28:2; Ex. N (Clow Dep. Tr.) at 122:1-6, 125:23-126:21 & 148:18-149:9; Ex. C (Lysaught Dep. Tr.) at 204:7-11 ("Q: Are you able to testify to any injury that FLVS claims to have suffered as a consequence of the actions that are the subject of this lawsuit?"  A: No.").

In sum, Plaintiff has neither survey evidence nor evidence of actual point-of-sale monetary loss and causation attributable to Stride as a basis for its non-Florida claim of trademark injury.

**E.  Plaintiff Has No Evidentiary Support For Any Claim Of Monetary Loss Outside Of Florida Based On Stride's Advertising Or Its Inclusion Of A Link To The Checklist On Its Website.**

Plaintiff's claim that it suffered monetary loss outside of Florida because of Stride's advertising practices also lacks any factual support.  When asked in interrogatories to explain the basis for Plaintiff's allegation that it had been damaged by the alleged false representations in Stride's advertisements, and *how* Plaintiff contends it has been damaged, Plaintiff could not point to any specific evidence and instead stated that a response "may be determined" by reviewing Mr. Gallogly's expert reports.  Ex. O (Pltf's. Supp. Resp. to Stride's Rog. No. 10).  Plaintiff's Rule 30(b)(6) representative testified the same.  Ex. J (Pltf's. Second Rule 30(b)(6) Dep.

Tr.) at 20:19-21:7. ████████████████████████████████

████████████████████████████████████████████ Ex.

K at 284:17-22 (███████████████████████████████████

██████████████████████████████████████████).

Moreover, Plaintiff chose not to conduct any deception survey of consumers outside of Florida.  Instead, Plaintiff's survey expert, Dr. Jeffrey Stec, conducted a survey limited to a Florida consumer universe: *Florida* parents with children in *Florida*—not anywhere else.  Ex. P (Stec Dep. Tr.) at 143:24-144:8 ("Q: Are you offering any opinions as to whether the results of your survey of Florida parents have statistically and methodologically correct application to a universe outside of Florida?  A: So I have not been asked to do that one way or the other.  So that's not an opinion I take in my report.").[10]

Furthermore, Stride's own website traffic analytics for 2022 demonstrate that typically there are ████████████████████████████████████████

████████████████████████████████████████████████

██ ██ ████ █ ███ ████ ████ ██ ████ ████ ██ Ex.  R

---

[10]  Even if Plaintiff's Florida deception survey had been conducted of respondents outside of Florida, it would have made no difference.  Just *within* Florida, Dr. Stec reported that only 14.3% of his Florida survey respondents indicated that they were likely to be influenced by any alleged misleading statements in the Checklist.  Ex. P at 208:20-25 & 217:12-14.  The Florida survey data demonstrated that less than 7% of respondents named FLVS as the competitor being compared to Stride in the Checklist.  *See* Ex. Q (Butler Dep. Tr.) 104:10-13.

(STRIDE0031274).  Sarah Butler, Stride's survey rebuttal expert, confirmed "visits to the [About K12] page that contains the view checklist, are a tiny proportion of overall visits . . . .  And the viewed checklist is even a smaller proportion of that." Ex. Q (Butler Dep. Tr.) at 42:11-17.  Thus, even if the Checklist had been widely distributed or viewed outside of Florida (it was not), there is no evidence –survey or otherwise) that it created any deception that caused Plaintiff to suffer monetary loss.

Finally, since reference to "FLVS" was removed from the Checklist after Plaintiff complained to Stride in August 2020 – four months before Plaintiff even filed the lawsuit – there is no evidence that any consumer seeing the Checklist without reference to "FLVS" would recognize the document as impliedly referring to or comparing with Plaintiff.

## STANDARD

Rule 11 serves a purpose fundamental to the fair and proper functioning of our federal civil litigation system: "to deter baseless filings in the district court" that are prejudicial and waste the court's and the parties' time and resources.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).  Accordingly, anyone who files a "pleading, written motion, or other paper" is duty-bound to ensure that its factual contentions are grounded in evidentiary support or will have such support "after a reasonable opportunity for further investigation or discovery."  Fed. R. Civ. P. 11(b)(3); *see also Massengale v. Ray*, 267 F.3d 1298, 1301-02 (11th Cir. 2001).

That means a party and its counsel may be sanctioned "for insisting upon a position after it is no longer tenable," since "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11, Notes of Advisory Cmte.—1993 Amend.; *see also Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022) ("[A]n attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court.").

Violations of this basic requirement are sanctionable based on an objective standard of reasonableness. *See Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089, 1091 (11th Cir. 1994); *NCM of Collier Cnty., Inc. v. Durkin Grp., LLC*, No. 2:11-CV-558-FTM-99DN, 2012 WL 2792802, at *1-3 (M.D. Fla. July 9, 2012) (Presnell, J.). Applying these standards, the Court should grant Stride's Motion.

## ARGUMENT

Plaintiff's Complaint contains core allegations and claims of injury and damages outside of Florida that had no evidentiary basis at the time they were filed,and still do not now, after years of "further investigation [and] discovery." *See* Fed. R. Civ. P. 11(b)(3). It was unreasonable for Plaintiff and its counsel to file, and subsequently continue to maintain, such "objectively frivolous" claims, while

wasting Stride's time and resources defending against them.   *See NCM of Collier Cnty., Inc.*, 2012 WL 2792802, at \*1-3 (granting Rule 11 motion where "Plaintiffs did not amend their complaint, or rethink the legal sufficiency of their claims" that were "objectively frivolous").

There can be little question that Plaintiff acted unreasonably in filing and prosecuting claims based on injury and damage outside of Florida.   Plaintiff specifically alleged Stride caused Plaintiff to suffer damages and "irreparable harm" from alleged trademark infringement, false advertising, and unfair competition outside the State of Florida.  Dkt. 1 ¶¶ 72, 81, 82, 92, 93, 105, 106, 113, 114, 129, 130, 135, 136, 142 & 143.  But "even the most minimal investigation would have alerted" Plaintiff and its counsel that these claims were utterly baseless.   *See Gulisano*, 34 F.4th at 944 (quoting *Worldwide Primates, Inv. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).  After all, it was clear well before Plaintiff filed its Complaint in December 2020 that only *Florida* students could enroll in Stride's FLOS (n/k/a DAOF) program; that Stride did not use Florida-centric branding outside of Florida; and that ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  *See* Ex. F (FLVS00247448).

Nevertheless, Plaintiff filed the claims and later told the Court it "expect[ed] that discovery will disclose substantial additional evidence of infringement, false

advertising and other misconduct outside of the State of Florida." Dkt. 52 at 2.  With discovery now closed, it is clear that Plaintiff over-pleaded and over-promised, and the promised evidentiary foundation for its inflated damage claim never materialized.  There is no documentary or testimonial evidence whatsoever that Plaintiff has suffered any monetary loss or harm outside of Florida based on Stride's use of the FLORIDA ONLINE SCHOOL and FLOS program names or any other marks; based on Stride's advertising practices; or even based on Stride's inclusion of a link to the Checklist on its "About" webpage.

Plaintiff's claims for relief based on conduct outside of Florida lacked merit from inception, and there is no evidence to support them now.  Plaintiff should not be permitted to pursue them any further.  As the Eleventh Circuit repeatedly has held, "[t]hat the contentions in the complaint were not frivolous at the time it was filed does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable."  *Gulisano*, 34 F.4th at 942-43 (affirming sanctions); *see also, e.g.*, *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (affirming sanctions when plaintiff's counsel knew at the time of filing, at a pretrial conference, and after depositions "that the case was without a factual basis but failed to dismiss it, thereby forcing [defendant] (and the court) to expend time and money on a summary judgment motion"); *Worldwide Primates*, 26 F.3d at 1091-93

(affirming Rule 11 sanctions where "[t]he evidence shows [plaintiff] knew from the beginning that the letters had not harmed its business relationship with Delta" and plaintiff pursued the claim "when it knew, or should have known, that its claim was legally and factually baseless").

Here, by filing and pressing baseless claims regarding conduct and damages outside of Florida, Plaintiff has harmed and prejudiced Stride, including by forcing it needlessly and unfairly to expend considerable time and resources defending against such baseless claims. Sanctions are necessary and appropriate to redress Plaintiff's misconduct. *See Turner*, 91 F.3d at 1422.

## <u>CONCLUSION</u>

Because Plaintiff has refused voluntarily to withdraw its claims for lost profits and monetary damages outside of Florida, the Court should grant this Motion, dismiss with prejudice Plaintiff's claims for relief and damages based on injury and loss outside of Florida, and award Stride appropriate sanctions against Plaintiff and its counsel for advancing and persisting in maintaining claims for which it has no evidentiary support.

The Court should further award Stride its reasonable expenses including costs and attorneys' fees, incurred to prosecute this Motion and otherwise to defend against Plaintiff's unsupported claims referred to in this Motion. Fed. R. Civ. P. 11(c)(2).

Dated:  March 1, 2023                    /s/  *Steven P. Hollman*_____

Steven P. Hollman (admitted *pro hac vice*)
   Trial Counsel
Abraham Shanedling (admitted *pro hac vice*)
   Trial Counsel
Charles Spencer-Davis (admitted *pro hac vice*)
   Trial Counsel
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1941
Fax (202) 747-3012
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
cspencerdavis@sheppardmullin.com

Daniel C. Johnson, Trial Counsel
Florida Bar No. 522880
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801-3456
Tel. (407) 849-0300
Fax (407) 648-9099
djohnson@carltonfields.com
Secondary:  dcarlucci@carltonfields.com
Secondary:  orlecf@cfdom.net

**Attorneys for Defendants**
**Stride, Inc., and K12 Florida LLC**

## <u>LOCAL RULE 3.01(g) AND CERTIFICATION</u>

In accordance with Local Rule 3.01 as well as Fed. R. Civ. P. 11(c), the undersigned certifies that: (1) a copy of this motion was *served* upon Plaintiff by serving its counsel in accordance with Rule 11(c)(2) by email and U.S. Mail on February 3, 2023 and (2) on February 24, 2023, Plaintiff's counsel emailed that it is refusing to consent to the relief sought herein.

*/s/ Stephen P. Hollman*
Steven P. Hollman

1

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I served unredacted versions of Stride's Motion for Rule 11 Sanctions and supporting exhibits via mail and electronic mail on the following:

Stephen H. Luther
Trial Counsel
Florida Bar No. 528846
LUTHER LAW PLLC
4767 New Broad Street, # 1029
Orlando, FL 32814
407 501-6711 x101 (Main)
407 501-7049 (Direct)
sluther@lutherlawgroup.com

David J. D'Agata, Esq.
General Counsel
Florida Bar No. 663891
Luis R. Guzman, Esq.
Sr. Asst. General Counsel
Florida Bar No. 570613
Florida Virtual School
2145 Metrocenter Blvd., Suite 100
Orlando, Florida 32835
Office: 407-513-3451
ddagata@flvs.net
luguzman@flvs.net

Thomas E. Bishop
BISHOP & MILLS, PLLC
Florida Bar No. 956236
510 N. Julia Street
Jacksonville, FL 32202
Tel. (904) 598-0034
Fax. (904) 598-0395
tbishop@bishopmills.com

Suzanne Barto Hill
Florida Bar No. 0846694
E-mail: shill@rumberger.com
Sally R. Culley
Florida Bar No. 0095060
E-Mail:  sculley@rumberger.com
RUMBERGER, KIRK &
CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

Leonard J. Dietzen
Florida Bar No.:  0840912
E-mail:  ldietzen@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

*/s/ Steven Hollman*
Steven P. Hollman

(admitted *pro hac vice*)
Trial Counsel
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
2099 Pennsylvania Ave., N.W., Ste
100
Washington, D.C. 20006-6801
Tel. (202) 747-1941
Fax (202) 747-3012