# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

      **Plaintiff,**

**vs.**

                                  **Case No.: 6:20-cv-2354- GAP-EJK**

**STRIDE, INC., formerly known as**
**K12 INC., and K12 FLORIDA LLC**

      **Defendants.**

_____/


# MOTION OF DEFENDANTS STRIDE, INC. AND
# K12 FLORIDA LLC FOR SUMMARY JUDGMENT AND
# <u>MEMORANDUM OF LAW IN SUPPORT</u>

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND.......................................................................4

    A.    *Evolution Of The Parties' Business In Florida And Elsewhere.*
        *............................................................................................. 4*

    B.    *The Parties' Prior Lawsuit And Settlement Agreement.* ................... 5

    C.    *Adopting Florida Online School, And FLVS's Knowledge Of*
        *The Same.* .......................................................................... 6

    D.    *Notice Of Challenged Conduct And Stride's Voluntary*
        *Cessation.* .......................................................................... 7

    E.    *FLVS Sues Stride For Trademark Infringement, Unfair*
        *Competition, False Advertising, And Breach Of Settlement*
        *Agreement.* .......................................................................... 9

ARGUMENT................................................................................................10

    I.    *As A Matter of Law, FLVS Cannot Show That It Suffered*
        *Monetary Loss As A Proximate Consequence Of The Alleged*
        *Infringement.* .................................................................... 11

    II.    *Stride Is Entitled to Summary Judgment On FLVS's False*
        *Advertising Claim (Count V)*.................................................. 13

        A.    The Checklist Is Not Commercial Advertising Or
            Promotion. .............................................................. 13

        B.    FLVS Cannot Establish Any Injury Caused By The
            Checklist. .............................................................. 14

        C.    FLVS Cannot Satisfy The Other Elements Of False
            Advertising. ............................................................ 17

    III.    *Stride Is Entitled To Summary Judgment On FLVS's*
        *Trademark Infringement And Unfair Competition Claims*
        *(Counts I-IV & VI-VII).* ...................................................... 19

    IV.    *FLVS Is Not Entitled To An Award Of Stride's Profits.*................... 29

    V.    *Stride Is Entitled to Summary Judgment On FLVS's Claim For*
        *Breach Of The Settlement Agreement (Count VIII).* ........................ 32

    VI.    *FLVS's Claims Are Barred Because It Failed To Mitigate*
        *Damages.* .......................................................................... 33

CONCLUSION & PRAYER .......................................................................34

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>Cases</u>

*Air Turbine Technology v. Atlas Copco AB*
  295 F. Supp. 2d (2003) ...............................................................................16, 17

*Ameritox, Ltd. v. Millennium Labs., Inc.*
  No. 8:11–cv–775–T–24–TBM, 2014 WL 1456347 (M.D. Fla. Apr. 14,
  2014) ...............................................................................................15, 16, 17

*Aronowitz v. Health-Chem Corp.*
  513 F.3d 1229 (11th Cir. 2008) ................................................................20, 25

*Babbit Elecs., Inc. v. Dynascan Corp.*
  38 F.3d 1161 (11th Cir. 1994) ...........................................................................15

*Burger King Corp. v. Mason*
  710 F.2d 1480 (11th Cir. 1983) ...............................................................30, 33

*Compulife Software Inc. v. Newman*
  959 F.3d 1288 (11th Cir. 2020) .......................................................................13

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*
  508 F.3d 641 (11th Cir. 2007) ...................................................................28, 29

*DeMarco v. T.D. Bank, N.A.*
  No. 16-80442-Civ, 2017 WL 2892255 (S.D. Fla. Apr. 26, 2017) ....................33

*Donut Joe's, Inc. v. Interveston Food Servs.*
  101 F. Supp. 3d 1172 (N.D. Ala. 2015)......................................................25, 29

*EarthCam, Inc. v. OxBlue Corp.*
  49 F. Supp. 3d 1210 (N.D. Ga. 2014), *aff'd,* 703 F. App'x 803 (11th Cir.
  2017) ................................................................................................................14

*Edmondson v. 2001 Live, Inc.*
  No: 8:16-cv-03243-T-17AEP, 2019 WL 670201 (M.D. Fla. Jan. 15,
  2019)
  ..................................................................................................................17, 18

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*
    830 F.3d 1242 (11th Cir. 2016) ...................................................................passim

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*
    91 F.Supp.3d 1265 (S.D. Fla. 2015) ....................................................................20

*Glover v. Gentiva Health Servs.*
    No. 6:10-cv-1619-Orl-28KRS, 2012 WL 1389624 (M.D. Fla Apr. 20,
    2012) ...............................................................................................................32, 33

*Graphic Assocs., Inc. v. Riviana Rest. Corp.*
    461 So. 2d 1011 (Fla. Dist. Ct. App. 1984) ..........................................................34

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*
    921 F.3d 1343 (11th Cir. 2019) ......................................................................13, 25

*HBP, Inc. v. Am. Marine Holdings, Inc.*
    290 F. Supp. 2d 1320 (M.D. Fla. 2003) *aff'd sub nom.*, 129 F. App'x 601
    (11th Cir. 2005) .....................................................................................................23

*John H. Harland Co. v. Clarke Checks, Inc.*
    711 F.2d 966 (11th Cir. 1983) ..............................................................................22

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*
    299 F.3d 1242 (11th Cir. 2002) ......................................................................18, 19

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
    543 U.S. 111 (2004)...................................................................................20, 25, 34

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 (2014)...............................................................................................14

*Meadows v. English, McCaughan & O'Bryan, P.A.*
    909 So.2d 926 (Fla. 4th DCA 2005)......................................................................33

*Messer v. E.F. Hutton & Co.*
    833 F.2d 909 (11th Cir. 1987) ..............................................................................34

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*
    745 F. Supp. 2d 1359 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir.
    2012) ...............................................................................................................17, 18

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*
No. 9:09-cv-80918, 2009 WL 6812111 (S.D. Fla. 2009)....................................23

*MPS Ent., LLC v. Abercrombie & Fitch Stores, Inc.*
No. 1:11-cv-24110-JJO, 2013 WL 3288039 (S.D. Fla. June 28, 2013).............18

*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*
217 F. App'x 899 (11th Cir. 2007) ...............................................................29, 30

*Optimum Techs, Inc. v. Home Depot USA, Inc.*
No. 1:04-CV-3260, 2005 WL 3307508 (N.D. Ga. 2005), *aff'd*, 217 F.
App'x 899 (11th Cir. 2007) ...................................................................13, 30, 31

*Snac Lite, LLC v. Nuts 'N More, LLC*
No.: 2:14-cv-01695-RDP, 2016 WL 6778268 (N.D. Ala. Nov. 16, 2016)........15

*St. Charles Mfg. Co. v. Mercer*
737 F.2d 891 (11th Cir. 1983) ...............................................................11, 12, 31

*State ex rel. Dresskell v. City of Miami*
13 So. 2d 707 (Fla. 1943) ............................................................................33

*Suntree Techs., Inc. v. EcoSense Int'l, Inc.*
693 F.3d 1338 (11th Cir. 2012) .......................................................13, 14, 19, 20

*Suntree Techs., Inc. v. EcoSense Int'l, Inc.*
802 F. Supp. 1273 (M.D. Fla. 2011).......................................................14, 17, 18

*Yellowfin Yachts, Inc. v. Barker Boatworks*
LLC, 237 F. Supp. 3d 1230 (M.D. Fla. 2017), aff'd, 898 F.3d 1279 (11th
Cir. 2017) ............................................................................................29

## **Statutes**

15 U.S.C. § 1117(a) ...........................................................................29, 31

15 U.S.C. § 1125(a)(1)(B) .........................................................................13

Fla. Stat. §§ 1002.45(1)(a)(3) & (b)(1).............................................4, 6, 24

Lanham Act...............................................................................passim

**<u>Other Authorities</u>**

Federal Rules of Civil Procedure Rule 56 ...........................................................1, 10

6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §
32:193 (5th ed. 2022).......................................................................16, 23, 24, 27

## SUMMARY JUDGMENT EVIDENCE

| Exhibit A | Declaration of Steven Hollman in Support of Motion for Summary Judgment |
|---|---|
| Exhibit B | Document beginning BATES FLVS00150033 |
| Exhibit C | Document beginning BATES FLVS00469969 |
| Exhibit D | Document beginning BATES FLVS00053672 |
| Exhibit E | List of Publicly Available Virtual/Online Education Providers |
| Exhibit F | Settlement Agreement, beginning BATES FLVS00135353 |
| Exhibit G | Deposition Transcript of Mike Swindle |
| Exhibit H | Stride Agreement with Hendry County School District, beginning BATES STRIDE0003215 |
| Exhibit I | Email beginning BATES FLVS00008442 |
| Exhibit J | Deposition Transcript of former Board Member, and Interim President and CEO of FLVS Dhyana Ziegler |
| Exhibit K | Deposition Transcript of former FLVS employee Courtney Calfee |
| Exhibit L | Email beginning BATES FLVS00251632 (and attachment FLVS00251635) |
| Exhibit M | Email beginning BATES FLVS00154307 (and attachment FLVS00154309) |
| Exhibit N | Email beginning BATES FLVS00152562 (and attachment FLVS00152563) |
| Exhibit O | Deposition Transcript of former FLVS employee Marissa Draeger |

| Exhibit P | Email beginning BATES FLVS00468852 (and attachments FLVS00468853 & FLVS00468879 & FLVS00468885 & FLVS00468893 & FLVS00468895) |
|---|---|
| Exhibit Q | Stride's Comparison Checklist ("Checklist") and Website |
| Exhibit R | Survey Rebuttal Report of Stride's expert Sarah Butler |
| Exhibit S | FLVS's Amended Rule 26 Disclosures |
| Exhibit T | Deposition Transcript of FLVS employee Ashley Reyes |
| Exhibit U | Deposition Transcript of FLVS employee Tania Clow |
| Exhibit V | Deposition Transcript of FLVS employee Yekaterina Lysaught |
| Exhibit W | FLVS's verified Answers and Objections to Defendants' First Set of Interrogatories and Supplemental Answers and Objections to Defendants' First Set of Interrogatories |
| Exhibit X | Deposition Transcript of FLVS 30(b)(6) corporate representative Samuel Verghese, Part II |
| Exhibit Y | Deposition Transcript of FLVS expert Daniel Gallogly |
| Exhibit Z | Deposition Transcript of Casey Kalajian a/k/a Casey A. Costa |
| Exhibit AA | Deposition Transcript of Lisa Kornheisl |
| Exhibit BB | Deposition Transcript of Dan Smith |
| Exhibit CC | Documents beginning BATES STRIDE0031274 & STRIDE0030643 |
| Exhibit DD | Deposition Transcript of Stride's expert Sarah Butler |
| Exhibit EE | Deposition Transcript of FLVS expert Dr. Jeffery Stec |
| Exhibit FF | Deposition Transcript of FLVS 30(b)(6) corporate representative Samuel Verghese, Part I |

| **Exhibit GG** | Email beginning BATES FLVS00247448 (and attachment FLVS00247449) |
|---|---|
| **Exhibit HH** | Deposition Transcript of FLVS 30(b)(6) corporate representative Ashley Reyes |
| **Exhibit II** | Document beginning BATES FLVS00392091 |
| **Exhibit JJ** | Email beginning BATES FLVS00007700 |
| **Exhibit KK** | Email beginning BATES FLVS00149917 |
| **Exhibit LL** | Deposition Transcript of Stride employee Clark Berry |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Stride Inc. and K12 Florida LLC (collectively "Stride") hereby move for summary judgment on all claims asserted by Plaintiff Florida Virtual School ("FLVS").

## **INTRODUCTION**

After sitting on its rights for over a year before uttering a word of discontent with conduct it now claims caused it irreparable injury, FLVS proceeded to file its Complaint, representing that it suffered considerable damage despite the fact that Stride willingly halted the challenged conduct once FLVS troubled itself to give notice of its apparent unhappiness. To justify its inflated damages claims, FLVS made hyperbolic allegations that it lost millions of dollars in student enrollments and that Stride somehow was unjustly enriched, but it has not produced a shred of evidence to substantiate either such losses or any undue gain by Stride.

In fact, there is no evidence – *none* – of any causative monetary loss at all. Instead, FLVS relies on purported confusion by non-customers plus three claimed instances of purported enrollment confusion involving parents who, viewed in the light most favorable to FLVS, had initial interest confusion that resulted in neither monetary loss to FLVS nor any gain to Stride. This is the thin reed upon which FLVS builds its claim for millions of dollars in disgorgement damages.

It is undisputed the parties entered into a Settlement Agreement in 2015 to resolve a similar dispute in this very Court, under which the parties released any

liability for prior conduct, expressly permitted descriptive use of generic terms such as "Florida" and "Virtual," and did not prohibit Stride's prospective use of FLORIDA ONLINE SCHOOL ("FLOS") for an online education program in Florida. There also is no dispute that Stride launched FLOS in Hendry County in 2019, and FLVS's senior management was well aware of the use almost immediately. But FLVS uttered not a word of protest for more than a year, waiting until August 2020 to bring its concerns to Stride's attention. And as soon as FLVS raised concerns with Stride about the name and various other conduct, Stride remedied *all* challenged conduct as promptly as practicable, despite disagreeing with FLVS's contentions, in hopes of avoiding a needless dispute.

It is also undisputed that FLVS's marks are weak and generic. ███████

██████████████████████████████████████████████████████████████

FLVS even had to agree as a condition to registration expressly to disclaim the use of "VIRTUAL SCHOOL" in its trademark registrations apart from use in the marks.

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ FLVS's brand recognition was even so weak outside of Florida that it changed the name of its national service branding to FlexPoint Education Cloud. Stride itself does not use state or school specific branding for its programs outside of Florida.

FLVS's claims are ripe for summary judgment.  As an initial matter, FLVS cannot show it suffered monetary loss as a proximate consequence of Stride's alleged infringement.  It has not presented evidence of actual damages *or* lost profits, and it cannot show likely confusion among customers to justify disgorgement of Stride's profits either.  Courts in this Circuit have often granted summary judgment under similar circumstances.

FLVS likewise cannot satisfy its burden on its claim for false advertising. Stride's Comparison Checklist ("Checklist") that FLVS challenges is literally true and not misleading.  And even if it could be found to be misleading, there is no evidence of widespread distribution, material reliance on its contents, or *any* injury to FLVS resulting from its existence.  These facts prove fatal to FLVS's claim.

FLVS also has failed to meet its burden for trademark infringement and unfair competition.  The two most important factors considered in this Circuit's likelihood of confusion test overwhelmingly favor Stride.  The asserted marks are weak and descriptive, and the evidence shows widespread generic use of "Florida," "Virtual," and "School" by numerous competitors, the Florida Department of Education ("FLDOE"), and even FLVS itself.  Nor can FLVS present any evidence of point of sale confusion resulting in either loss to itself or undue gain to Stride.

FLVS's claim for breach of the Settlement Agreement fares no better because, at minimum, it lacks *any* evidence of injury resulting from any alleged breach by

Stride.  But even if such injury could be proven, the undisputed facts show FLVS

failed to mitigate any of its claimed damages, despite being fully aware of Stride's

conduct.

Because there is no genuine issue as to any fact material to these missing

elements, Stride is entitled to judgment as to each claim as a matter of law.

## FACTUAL BACKGROUND

**A.    Evolution Of The Parties' Business In Florida And Elsewhere.**



*See* Ex. B at FLVS00150034; Ex. C at FLVS00469979.

Ex. D at FLVS00053684.  FLVS's enacting statute also

mandated that every school district in Florida offer a "virtual instruction program."

Fla. Stat. §§ 1002.45(1)(a)(3) & (b)(1).   The Florida Department of Education

("FLDOE") also frequently refers to those programs as "virtual schools" to describe

online school programs nationally and in Florida.  Ex. E.[1]

In 2003, Stride entered the Florida online education market through a contract

with FLDOE, initially to serve the primary school market.  Stride disclosed to

---

[1]  *See also* FLDOE Website, Virtual Education, at https://www.fldoe.org/schools/school-choice/virtual-edu/ (last visited March 1, 2023).

FLDOE that its programs would operate under the names FLORIDA VIRTUAL
ACADEMY and FLORIDA VIRTUAL PROGRAM.

In 2009, FLVS filed for, and later obtained, federal registration for the mark
FLORIDA VIRTUALSCHOOL and the corresponding acronym or "pseudo-mark"
FLVS.  Dkt. 1, (Cmplt.), Exs. A-B.  Following a descriptiveness rejection by the
U.S. Patent & Trademark Office, FLVS submitted declarations supporting acquired
distinctiveness, averring that it had been serving the K-12 market, including the
primary school market, continuously and exclusively since at least 2002—even
though that was not in fact true.  FLVS further agreed to disclaim the generic
"VIRTUAL SCHOOL" element apart from the mark as shown.  Cmplt., Ex. A.

## B.    The Parties' Prior Lawsuit And Settlement Agreement.

Promptly after securing its registrations, FLVS asserted the marks in an
infringement lawsuit against Stride for its use of FLORIDA VIRTUAL ACADEMY
and FLORIDA VIRTUAL PROGRAM.  Cmplt. ¶ 29.  The Parties settled the prior
dispute in 2015.  Ex. F.  The Settlement Agreement includes:

- Acknowledgment that the settlement was a compromise of disputed claims with "no admission of fault or liability," *id*. ¶ 10;

- "Release by FLVS" of Stride from any liability "in equity or otherwise" relating to Stride's use of the FLVA/FLVP marks and acronyms, *id*. ¶ 6(a);

- Transfer of Stride's domain names, including flva.com, following a transitional period during which Stride could continue to use the domains as redirect links to its new websites, *id*. ¶ 5(b)(3);

- Explicit language that Stride was "not prohibit[ed] . . . from using the word 'Florida' or the word 'Virtual' individually in a mark (i.e., by using 'Florida' in a mark or 'Virtual' in a mark so long as the mark does not contain both words) or from making non-trademark usage of the words 'Florida' and 'Virtual' in combination, such as by referring to the Florida Virtual Instruction Program established by Florida Statutes § 1002.45," *id*. ¶ 5(d);

- A list of Approved Marks (three of which contain the words "Florida" and "Online" together) and a list of Prohibited Marks (which does *not* include Florida Online School), *id.* App'x A;

- Agreement that Stride was "not required to select a mark listed on Appendix A, and that there shall be no presumption against [Stride's] choice of a mark not listed," *id*. ¶ 5(e); and

- A requirement that the Parties confer prior to litigation to "negotiate in good faith in an effort to resolve [a dispute] without litigation," *id.* ¶ 14.

## C. Adopting Florida Online School, And FLVS's Knowledge Of The Same.

***Florida Online School ("FLOS").*** In 2019, Stride negotiated with Hendry County School District ("Hendry") to offer statewide online educational services. After deciding upon the name Florida Online School – a name not prohibited by the Settlement Agreement with FLVS – Stride presented the FLOS program and name to Hendry's Board for approval. *See* Ex. G at 8:11-18. Then, after review by Hendry's own counsel, on April 23, 2019, Hendry approved the agreement with Stride to offer online learning solutions through the Florida Online School program. *Id*. at 8:19-9:13 & 12:5-13:11; *see also* Ex. H. Stride publicly opened the FLOS Hendry program on June 12, 2019. Dkt. 29-2.

*FLVS's Knowledge of the FLOS Program.*    FLVS's CEO and senior management became fully aware of Stride's use of FLOS as soon as the program was launched.  On June 20, 2019, FLVS's then Interim President and CEO Dhyana Ziegler was informed by her team of FLOS's launch, but she raised no issue. Ex. I at FLVS00008442; Ex. J at 58:25-59:6.  Louis Algaze, who became CEO of FLVS in July 2019, after Ms. Ziegler and other FLVS senior management were removed,

███████████████████████████████████████████████████████████████

████    Ex. K at 119:3-14; Ex. L at FLVS00251632.

*FLVS Enrollments Skyrocket Due to The Pandemic.*    After COVID-19 forced primary and secondary school students into online education, both FLVS and FLOS saw record enrollment figures.  FLVS's enrollment as of February 2021 across all its offerings was ██████████████████████████████████

██████████████████████████████████████████████.   Ex.  M  at FLVS00154311; *see also* Ex. N at FLVS00152563; Ex. O at 87:20-88:3. ████████

███████████████████████████████████████████████████████████████

████████████    *Id.* at 124:24-125:1; Ex. P at FLVS00468879. ████████████

████████████████████████████████████████████████████    *Id.*

**D.    Notice Of Challenged Conduct And Stride's Voluntary Cessation.**

On August 3, 2020 – more than a year after Stride launched its FLOS program – FLVS's counsel sent a demand letter to Stride challenging the use of the name

FLORIDA ONLINE SCHOOL and FLOS for the Hendry program and descriptive, non-trademark references to the program as the "Florida virtual school powered by K12." Cmplt. ¶¶ 36-37. FLVS's counsel later sent a demand letter on August 26, 2020, challenging Stride's continued use of the flva.com domain as a redirect. *Id.* ¶ 37. FLVS also challenged Stride's use of a PDF on its website titled "K12 vs. Competitors," that included the Checklist, which invited consumers to undertake their own comparison between attributes of "K12-Powered Schools" and those of "Other Online Learning Solutions," with FLVS as a program to compare. Ex. Q. FLVS argued the Checklist misled readers into believing FLVS lacked all attributes listed in the unchecked boxes under the heading "Other Online Learning Solutions." Cmplt. ¶ 55.

While Stride disagreed with FLVS's contentions, it timely ceased all actions and conduct FLVS challenged to avoid any further dispute. Though the FLOS name did not violate any Settlement Agreement provision or restriction, Stride undertook a rebrand for the Hendry program to DIGITAL ACADEMY OF FLORIDA ("DAOF"), which became effective on February 2, 2021, following Hendry's Board approval, as an immediate name change during the school year would have been impracticable and caused unnecessary confusion (and FLVS's own delay suggested lack of urgency). Ex. G at 19:9-22:22; Ex. LL at 16:10-17:1. Though the Settlement Agreement explicitly permitted descriptive, non-trademark usage of the words

"Florida" and "Virtual" in combination, Stride removed those references prior to FLVS filing its Complaint.  Cmplt. ¶ 38.  And Stride promptly took steps to coordinate with FLVS to transfer the flva.com domain after it was brought to Stride's attention.  *Id.* ¶ 61.  Stride's Checklist was clearly a non-misleading invitation to compare the attributes of Stride's programs to those of other online education providers. Dkt. 1-1 at 29; Ex. R ¶ 72. Nonetheless Stride removed references to FLVS from the Checklist.  Cmplt. ¶ 58.

## E.    FLVS Sues Stride For Trademark Infringement, Unfair Competition, False Advertising, And Breach Of Settlement Agreement.

Despite Stride's good faith actions and efforts to avoid this dispute, including addressing *all* of FLVS's stated concerns with Stride's actions, FLVS filed the instant lawsuit on December 22, 2020, more than three months after the parties' conferences, citing Stride's refusal to "rectify the considerable market confusion and damage to FLVS which they have caused by their violations." Cmplt. ¶ 39.  Its Complaint seeks millions of dollars based on claims arising from trademark and false advertising allegations and for breach of the parties' Settlement Agreement—all premised on widespread market confusion/deception and purported injury resulting to FLVS.  It also seeks injunctive relief for conduct that Stride voluntarily ceased.

## **ARGUMENT**

Stride seeks summary judgment in its favor on all of FLVS's claims because there are no genuine disputes over any material facts, and Stride is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

*First*, not a single witness has identified any monetary loss sustained by FLVS as a consequence of any alleged trademark infringement. Nor is there any evidence (by document or witness) of anyone who enrolled a child in a Stride program as a result of confusion which caused any revenue loss to FLVS. This dooms FLVS's claim for actual trademark damages and undercuts a critical element for a disgorgement remedy: point-of-sale customer confusion causing loss to FLVS.

*Second*, FLVS's false advertising claims fails because the challenged Checklist was not disseminated sufficiently to constitute advertising; it is literally true; there is no evidence of any injury resulting from its use; and there is no evidence that it materially impacted enrollment decisions anywhere.

*Third*, FLVS cannot show a likelihood of confusion because the two most important factors in the confusion analysis – weakness of the mark and absence of actual consumer confusion at the point of sale – weigh decidedly against FLVS, and a balancing of the other confusion factors cannot overcome this deficit.

*Fourth*, FLVS cannot meet its burden of demonstrating any of this Circuit's necessary factors for a disgorgement remedy: there is no evidence of intentional

infringement; there is no evidence of any unjust enrichment for Stride; and a disgorgement award is not necessary for deterrence and would be an impermissible punishment, particularly in the face of Stride's voluntary cessation.

*Fifth*, FLVS's breach of contract claim is not actionable because FLVS cannot demonstrate any remediable injury sustained from any alleged breach.

*Finally*, FLVS's claims are barred by its own failure to mitigate its claimed damages while it delayed in asserting its claims and pursuing recovery.

For all these reasons, discussed more fully below, Stride is entitled to summary judgment.

## I.    As A Matter of Law, FLVS Cannot Show That It Suffered Monetary Loss As A Proximate Consequence Of The Alleged Infringement.

FLVS is not entitled to monetary recovery for its trademark infringement claims because it has no evidence that it suffered any injury caused by the allegedly infringing conduct. *See St. Charles Mfg. Co. v. Mercer*, 737 F.2d 891, 893 (11th Cir. 1983). While FLVS claims Stride's use of FLOS has caused "considerable market confusion" and that "FLVS has been damaged by Defendant's infringement," Cmplt. ¶¶ 39 & 81, the record has not shown that FLVS lost a single enrollment it otherwise would have gotten as a consequence of any claimed confusion attributable to the FLOS marks.

Notably, FLVS made no attempt to measure or show likelihood of confusion. Moreover, none of the individuals identified by FLVS as fact witnesses with

knowledge of "[t]he injury suffered by FLVS resulting from the acts complained of in the Complaint" could testify that they had any knowledge that FLVS had sustained any actual monetary injury as a result of Stride's use of the FLOS marks. Ex. A ¶¶ 2-8; Ex. S at 6-8; *see also* Ex. T at 26:20-28:2; Ex. U at 122:1-6, 125:23-126:21 & 148:18-149:9; Ex. V at 204:7-11.

Both the testimony of FLVS's corporate representative and FLVS's interrogatory answers also confirm that FLVS is attempting to rely solely on the expert report of Mr. Gallogly to support its claim that the FLOS marks have caused injury to FLVS, including lost revenue. *See* Ex. W at 7-8; Ex. X at 22:22-23:21.

██████████████████████████████████████████

███████████████████████████████. Ex. Y at 282:3-6; Dkt. 137 at 10.

Nor could a single one of FLVS's "confusion" witnesses testify to any actual confusion between FLVS and FLOS *caused* by Stride and resulting in any loss to FLVS or gain by Stride. *See* Ex. Z at 23:24-24:23; Ex. AA at 29:17-31:5; Ex. BB at 38:6-39:3.

Because it has no evidence of any loss, FLVS's claim for lost profits recovery is meritless. *See St. Charles*, 737 F.2d at 893.

To the extent FLVS attempts to seek disgorgement as a remedy, because it cannot prove actual damages, it is not entitled to a jury trial on its Lanham Act

claims. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1348

(11th Cir. 2019). ("[A] plaintiff seeking the defendant's profits in lieu of actual

damages is not entitled to a jury trial"). Given FLVS has not shown any basis for

recovering actual damages, the Court should grant judgment in favor of Stride on

FLVS's claim for a lost profits recovery and accordingly strike FLVS's jury demand.

## II.    Stride Is Entitled to Summary Judgment On FLVS's False Advertising Claim (Count V).

For its false advertising claim, FLVS has the burden to prove: (1) Stride's

advertisements were false or misleading; (2) the advertisements deceived, or had the

capacity to deceive, consumers; (3) the deception had a material effect on purchasing

decisions; (4) the misrepresented product or service affects interstate commerce; and

(5) FLVS has been, or is likely to be, injured as a result of the false advertising. *See*

*Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1316 (11th Cir. 2020).

However, as a threshold matter, a plaintiff must show the defendant engaged "in

commercial advertising or promotion." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*,

693 F.3d 1338, 1349 (11th Cir. 2012) (quoting 15 U.S.C. § 1125(a)(1)(B)). FLVS

cannot establish all of these necessary elements.

### A.    The Checklist Is Not Commercial Advertising Or Promotion.

To constitute "commercial advertising or promotion," a statement "must be

disseminated sufficiently to the relevant purchasing public." *Suntree*, 693 F.3d at

1349; *see also Optimum Techs, Inc. v. Home Depot USA, Inc.*, No. 1:04-CV-3260,

2005 WL 3307508, at *5 (N.D. Ga. 2005) ("In order to qualify as advertising or promotion, statements must be widely disseminated and part of an organized campaign to penetrate the relevant market."), *aff'd*, 217 F. App'x 899 (11th Cir. 2007). However, here, as in *Suntree*, FLVS has "fail[ed] to put forward any evidence regarding the number of potential consumers . . . to whom the statements [on the Checklist] were disseminated, thus failing to demonstrate that a reasonable jury could find [the statements] to constitute 'commercial advertising or promotion.'" 693 F.3d at 1349.

████████████████████████████████████

██████████████████████████████████. Ex. CC; Ex. DD at 46:8-47:10. But surely, this cannot "result in sufficient dissemination to the relevant purchasing public" – which FLVS has not even attempted to quantify. *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 1273, 1287 (M.D. Fla. 2011); *see also EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1243 (N.D. Ga. 2014) (granting summary judgment on false advertising claim), *aff'd,* 703 F. App'x 803 (11th Cir. 2017).

## B.    FLVS Cannot Establish Any Injury Caused By The Checklist.

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff must . . . ultimately prove . . . an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*

*Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014); *see also*

*Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994).  Further,

a plaintiff is "not entitled to disgorgement until the plaintiff has proved causation,"

that is, "providing evidence to establish that the false advertising caused some injury

to the plaintiff."  *Snac Lite, LLC v. Nuts 'N More, LLC*, No.: 2:14-cv-01695-RDP,

2016 WL 6778268, at *14 (N.D. Ala. Nov. 16, 2016) (citing *Ameritox, Ltd. v.*

*Millennium Labs., Inc.*, No. 8:11–cv–775–T–24–TBM, 2014 WL 1456347, at 9

(M.D. Fla. Apr. 14, 2014)).

   ***No Damage Outside of Florida.***  There is no evidence FLVS has suffered

injury outside of Florida proximately caused by Stride's use of the Checklist

document.  FLVS conducted no survey of customers outside of Florida, nor is there

any fact witness testimony to support a claim of injury.  In fact, the *only* basis for

FLVS's claim of damages is an "examination" of the damages expert reports

furnished by Mr. Gallogly.  Ex. W at 7; Ex. X at 20:19-21:7.  ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. Y at 284:17-22.  That is all FLVS has.  It chose not to conduct a survey for any

deception potentially caused by the Checklist outside of Florida or for materiality,

instead limiting its survey expert's canvas to a Florida consumer universe.  Ex. EE

at 143:24-144:8.  Given the complete lack of an evidentiary "link" between Stride's alleged false advertising and a subsequent injury, FLVS's false advertising claim necessarily fails outside Florida.  *Air Turbine*, 295 F. Supp. 2d at 1344.  And because FLVS has no evidence that the alleged false advertising caused *some* injury, it cannot recover Stride's profits.  *See Ameritox*, 2014 WL 1456347, at *9.

***No Damage Within Florida.***  FLVS fares no better demonstrating injury within Florida.  FLVS has no evidence of causative loss because virtually no one ever saw the Checklist document: ████████████████████████████

████████████████████████████████████████████

████████████████████████████████. Ex. CC; Ex. DD at 46:8-47:10.  Moreover, the only potential showing of injury within Florida is a survey offered by FLVS expert, Dr. Jeffrey Stec, but he found that only 14.3% of respondents who saw the Checklist, who then identified it as referring to FLVS, would be influenced by it.   Ex. EE at 208:20-25 & 217:12-14.  Dr. Stec's survey demonstrated that less than 7% of respondents even named FLVS as the competitor being compared to Stride in the Checklist.  Ex. DD at 104:10-13; Ex. R at ¶ 10.

Thus, even if the Court were to accept Dr. Stec's flawed survey results, the number of consumers purportedly found to have been affected by the Checklist in a way that could injure FLVS is less than the threshold for probative evidence.  *See* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:193

(5th ed. 2022) ("*McCarthy on Trademarks*") (collecting cases on sufficient survey figures).    And, again, ████████████████████████████████

████    Ex. Y at 284:17-22, so evidence linking Stride's Checklist to *any* injury to FLVS simply does not exist.  *See Air Turbine*, 295 F. Supp. 2d at 1344; *Ameritox*, 2014 WL 1456347, at *9.

### C.    FLVS Cannot Satisfy The Other Elements Of False Advertising.

***False or Misleading.***  Where an advertisement is not literally false, but may be misleading, plaintiff must present evidence of consumer deception "in the form of consumer surveys, market research, expert testimony, or other information." *Edmondson v. 2001 Live, Inc.*, No: 8:16-cv-03243-T-17AEP, 2019 WL 670201, at *5 (M.D. Fla. Jan. 15, 2019).  If a consumer survey is not available, "the Plaintiff must still provide some sort of expert testimony or similar evidence."  *Suntree Techs., Inc.*, 802 F. Supp. 1273, 1288 (M.D. Fla. 2011), *aff'd*, 693 F.3d 1338 (11th Cir. 2012).  Other evidence of deception may include statements from consumers who viewed the advertisement and were deceived by it.  *Edmonson*, 2019 WL 670201, at *6.  But presenting only "anecdotal evidence" is insufficient.  *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1377 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012).

The evidence here shows Stride's Checklist is neither false nor misleading and did not have the capacity to deceive.  Indeed, FLVS's corporate representative

testified that nothing in the Checklist is "literally false." Ex. FF at 198:13-202:13.

When read in context, the Checklist clearly invites readers to do their own research

into the attributes of various online educational provider offerings. Ex. Q; Ex. R at

¶ 72. It does *not* state that Stride's programs possess all of the attributes, whereas

others, such as FLVS, possess none, and there is no reason to presume that any

reasonable consumer would interpret the instructions and Checklist that way. And

any consumer conducting reasonable diligence would be able to determine in

minutes from the websites of other program offerings that those programs *do* have

attributes enumerated on the Checklist.

Further, FLVS has not presented *any* evidence that consumers were deceived.

*See Miller's Ale House, Inc.*, 745 F. Supp. 2d at 1377. That dooms FLVS's false

advertising claim. *See Edmondson*, 2019 WL 670201, at *5; *Suntree Techs., Inc.*,

802 F. Supp. at 1288; *MPS Ent., LLC v. Abercrombie & Fitch Stores, Inc.*, No. 1:11-

cv-24110-JJO, 2013 WL 3288039, at *15 (S.D. Fla. June 28, 2013).

**Material Effect.** A plaintiff must establish that the "defendant's deception is

likely to influence the purchasing decision." *Johnson & Johnson Vision Care, Inc.*

*v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002). The materiality

requirement is "based on the premise that not all deceptions affect consumer

decisions" and may be satisfied by evidence that the defendant misrepresented "an

inherent quality or characteristic" of plaintiff's product or service. *Id.*

FLVS cannot demonstrate that Stride's Checklist misrepresented any inherent quality of FLVS's services, nor can it show that the Checklist would be likely to motivate consumer decisions. An inconsequential number of Florida survey respondents stated they would likely be influenced by any alleged misleading statements in the Checklist, and fewer still considered the Checklist to be referencing FLVS *and* indicated they would select FLOS over FLVS because of the Checklist. Ex. EE at 208:20-25 & 217:12-14; Ex. R at 7; Ex. DD at 104:10-13. But even if the Court were to consider those figures significant, FLVS has no evidence that the Checklist misrepresents *any* quality or characteristic of its services; it simply invites readers to use the Checklist to "weigh [their] options" and to "compar[e]" programs. *See* Ex. Q. Simply, FLVS has not shown the use of unchecked boxes on the Checklist was material to consumer decisions. *See Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1250.

## III.  Stride Is Entitled To Summary Judgment On FLVS's Trademark Infringement And Unfair Competition Claims (Counts I-IV & VI-VII).

For its claims of trademark infringement and unfair competition, FLVS must show that Stride "adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Suntree*, 693 F.3d at 1346.[2] Although courts in the Eleventh Circuit consider seven factors in assessing

---

[2] Trademark infringement claims under the Lanham Act, the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and Florida common law are analyzed under the same trademark

whether there is likelihood of confusion, the "most important" of these factors are "the type of mark and the evidence of actual confusion." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) ("*FIU*"); *see also Suntree*, 693 F.3d at 1346; *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir. 2008). Plaintiff bears the burden of proving likelihood of confusion by a preponderance of evidence. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004). Courts also must be mindful that "sophisticated consumers of [complex goods or services] . . . are less likely to be confused than casual purchasers of small items." *FIU*, 830 F.3d at 1256.[3]

In its Complaint, FLVS averred that Stride's use of the challenged marks already had caused "considerable market confusion and damage." Cmplt. ¶ 39. But FLVS conducted no confusion survey. Instead, while it listed current or former employees as fact witnesses to the confusion and resulting injury, their testimony established that they lacked knowledge to substantiate the claims. Ex. A ¶¶ 2-8. FLVS's Rule 30(b)(6) witness also could not identify any injury and instead referred

---

infringement standard. *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012). Likewise, "the test for Florida and common law trademark infringement and unfair competition is the same as that for federal trademark infringement and unfair competition." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 91 F.Supp.3d 1265, 1288 (S.D. Fla. 2015).

[3] The Eleventh Circuit has further recognized that the selection of an education provider generally involves a "degree of care and thought" that is "undoubtedly higher than that required for most purchases." *FIU*, 830 F.3d at 1256. Indeed, in a market, "where the primary consumers—potential students (and likely their parents too)—generally spend a substantial amount of time and energy learning about their options before choosing a school, [they] are, therefore, unlikely to be confused by similar names." *Id*. at 1261.

to the report of its damages expert, Mr. Gallogly.  Ex. X at 20:19-23:21.  ████

████████████████████████████████████████████████████████████████

████████████████████████████████  Ex. Y at 166:4-13.

Aware of its evidentiary deficit, FLVS later produced an updated interrogatory answer.  Ex. W.  This necessitated a second 30(b)(6) deposition, where Mr. Verghese acknowledged that he could not identify a single instance cited in that amended interrogatory answer that would support a claim of monetary loss to FLVS or undue gain to Stride.  Ex. X at 20:19-23:21.  He likewise admitted that the overwhelming bulk of FLVS's claimed instances of confusion did not involve actual customers at all but instead largely involved errant transcript requests by school registrars for already-enrolled students or young students already enrolled in Stride programs who erred in filling out assessment forms.  *Id.* at 52:7-55:3 & 58:7-59:13.

FLVS then begged the Court to conduct out of time, additional depositions of purported new "confusion" witnesses not previously disclosed in FLVS's initial or supplemental initial disclosures or interrogatory answers.  Dkt 101.  But even this dilatory effort produced only two purported witnesses of alleged customer confusion—one of whom testified she is legally blind, and both of whom admitted that they quickly identified the enrollment error and promptly unenrolled before their children attended a single day of classes in a Stride program.  Ex. AA at 21:6-22:19; Ex. Z at 23:23-24:13.  Thus, there is not a shred of evidence to substantiate the

"considerable market confusion and damage" that FLVS claimed. Even viewing this record in the light most favorable to FLVS, there were only two instances of initial interest confusion, each of which was promptly remedied. In short, FLVS has no evidence of actual point of sale confusion resulting in injury to itself or benefit to Stride. Because FLVS cannot meet its evidentiary burden on the confusion issue, Stride is entitled to summary judgment on Counts I-IV & VI-VII. [4]

***FLVS's Marks Are Weak And Descriptive***. The Eleventh Circuit recognizes a spectrum of protection spanning four categories of marks: (1) generic; (2) descriptive; (3) suggestive; and (4) arbitrary. *FIU*, 830 F.3d at 1256. Courts also consider "the degree to which third parties make use of the mark," *id.* at 1257, and the Eleventh Circuit places a great deal of weight on use by third parties: "a 'strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties.' " *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983)).

FLORIDA VIRTUAL SCHOOL unquestionably is a weak and diluted mark. Because the word "FLORIDA" geographically describes exactly where FLVS

---

[4] Stride has also raised serious question as to whether FLVS committed fraud on the U.S. Patent & Trademark Office by falsely presenting sworn statements to overcome a descriptiveness rejection asserting that FLVS had continuous use of the applied-for marks in the primary school market years before it had any legislative authorization to serve that market. *See* Dkt. 133.

operates,[5] the name is entitled to minimal protection.  *See Miller's Ale House, Inc.
v. Boynton Carolina Ale House, LLC*, No. 9:09-cv-80918, 2009 WL 6812111, at *8
(S.D. Fla. 2009); *HBP, Inc. v. Am. Marine Holdings, Inc.*, 290 F. Supp. 2d 1320,
1330-32 (M.D. Fla. 2003) *aff'd sub nom.*, 129 F. App'x 601 (11th Cir. 2005).  The
word "SCHOOL" describes exactly what FLVS provides.  S*ee* Cmplt. ¶ 2.  And
"VIRTUAL" describes FLVS's method of delivery for its educational services.
Indeed, FLVS disclaimed the terms "VIRTUAL" and "SCHOOL" in its mark
registrations *because* the terms are descriptive.  Cmplt. at Exs. A, C, F, & G.

        FLVS also operates in a "crowded field of similar names," *FIU*, 830 F.3d at
1258, which indicates "customers will not likely be confused between any two of
the crowd."  *McCarthy on Trademarks* § 11:85.  Indeed, the terms "Florida,"
"Virtual," "Online," and "School" are regularly used throughout the market as
names for various online school options as well as descriptively. Ex. AA at 29:17-
31:5; Ex. HH at 30:6-21; Ex. O at 131:7-133:21; Ex. E.  Internally, ███████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  Ex. C at FLVS00469977 (emphasis added); Ex. HH at
29:11-32:8; Ex. GG at FLVS00247449.  Even the Florida legislature's denomination

---

[5] ████████████████████████████████████████████████████████████
████████████████████████████████████████████ x. GG at FLVS00247449; Ex. R at 58
(████████████████████████████████████████████████).

of online school programs as "virtual instruction programs," Fla. Stat. §

1002.45(1)(a)(3), effectively assures widespread generic use within Florida of

"virtual school."

FLVS's marks also have limited "commercial strength."  See *FIU*, 830 F.3d

at 1258-59; *McCarthy on Trademarks* § 11:80. ██████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████  Ex. II at FLVS00392092 (emphasis added). ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████  Ex. C at

FLVS00469980; Ex. HH at 41:19-43:21.

These facts make *this* case indistinguishable from the *FIU* case, where the

Eleventh Circuit affirmed that FLORIDA INTERNATIONAL UNIVERSITY and

the acronym, FIU, consisted of "generic or descriptive" terms, making the mark

"relatively weak."  *FIU*, 830 F.3d at 1256-60.

***FLVS Cannot Establish Actual Confusion In The Marketplace***.  Evidence

of actual confusion in the marketplace is probative of a likelihood of confusion, but

"[i]n assessing the weight of evidence of actual confusion"  it is important "<u>who</u> was

confused and <u>how</u> they were confused."  *FIU*, 830 F.3d at 1264.  To that end, "[s]hort

lived confusion or confusion of individuals casually acquainted with a business is
worthy of little weight." *Id.* Whether "actual customers" were confused by the use
of the mark "as opposed to other categories of people" carries the most weight. *Id.*
(quoting *Aronowitz*, 513 F.3d at 1239-40). If consumers have been exposed to two
allegedly similar marks with little or no actual confusion, that serves as a "powerful
indication" that the junior mark "does not cause a meaningful likelihood of
confusion." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362
(11th Cir. 2019); *see also Donut Joe's, Inc. v. Interveston Food Servs.*, 101 F. Supp.
3d 1172, 1185 (N.D. Ala. 2015) (finding five confusion instances in three years
insufficient to support a likelihood of confusion).

The common law tolerates a certain amount of confusion in cases where "an
originally descriptive term was selected to be used as a mark" in order to prevent the
undesirable outcome of "allowing anyone to obtain a complete monopoly on use of
a descriptive term by simply grabbing it first." *KP Permanent*, 543 U.S. at 122.
"The Lanham Act adopts a similar leniency, there being no indication that the statute
was meant to deprive commercial speakers of the ordinary utility of descriptive
words… If any confusion results, that is a risk the plaintiff accepted when it decided
to identify its product with a mark that uses a well known descriptive phrase." *Id.*

Here, FLVS is not entitled any recovery outside of Florida for any of its
infringement or unfair competition claims. *See* Dkt. 137. FLVS itself abandoned its

marks outside of Florida and switched to FlexPoint Education Cloud.  Ex. FF at 122:13-123:19.



*See* Ex. GG.

*Id.* at FLVS00247449.

*Id.*

Further,  FLVS did not even attempt to test for or measure the existence of confusion outside of Florida.  Rather, FLVS is attempting to rest its infringement claim on a record that includes only a few sporadic instances of alleged post-enrollment confusion by individuals who are not customers.  And none of the witnesses whom FLVS presented in its disclosures as having knowledge of "[t]he injury suffered by FLVS *resulting from the acts complained of in the Complaint*" testified they had any knowledge of FLVS having sustained any actual injury as a result of Stride's actions.  Ex. A ¶¶ 2-8.

There also is no evidence of actual point-of-sale confusion in Florida.  FLVS could have conducted a confusion survey to demonstrate and measure claimed point-of-sale confusion between the marks at issue in this case.  It chose not to do so. Instead, it opted to rely on a record of sporadic instances of initial interest or post-

sale confusion by individuals who are not customers.  FLVS has no evidence of

enrollment confusion leading to loss based on Stride's use of FLOS or other marks.

At most, FLVS can present one or two cases of "initial interest confusion" corrected

before any student ever attended a Stride class.  Ex. Z at 23:23-24:13; Ex. AA at

21:6-22:19. The other instances FLVS has presented as evidence of "confusion" do

not involve actual customer confusion or relate to descriptive use that does not

demonstrate confusion at all.  *See, e.g.*, Ex. X at 46:22-47:25 & 55:21-59:13; Ex. JJ

at FLVS00007700.

Based on the current factual record, FLVS cannot establish confusion among

members of the actual consuming public (*i.e.*, customers)—the only relevant

"confusion" here.  *See FIU*, 830 F.3d at 1264.

As described above, ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████  Ex. AA at 29:17-31:5; Ex. HH at 30:6-21;

Ex. O at 131:7-133:21; Ex. K at 143:1-145:21.   The widespread generic or

descriptive use of the terms that make up the parties' marks creates significant

"noise" confusion in the marketplace.  *See McCarthy on Trademarks* § 32:187

(discussing the effect of "background noise" confusion in trademark law).  FLVS

further has admitted that it believes there is residual confusion in the marketplace

from the use of marks that were at issue in the prior litigation between the parties.

*See* Ex. FF at 40:14-22 (discussing an instance of a newspaper referring to FLVS as

FLVA in 2020). FLVS seeks to recover for this released putative confusion in this

action, even citing an alleged instance of confusion between FLVA and FLVS in a

recent motion (Dkt. 101 at 5). However, FLVS unambiguously released any claim

or "obligations… disgorgement, restitution, or demands" against Stride "arising out

of or relating in any way" to the claims in the prior litigation. Ex. F ¶ 6(a). FLVS

therefore cannot claim any recovery associated with confusion that it has attributed

to the prior marks, especially when it chose not to even conduct a survey that could

have separated out any noise confusion or confusion attributed to released conduct.

   ***The "Similarity" Factors Do Not Clearly Favor One Party Or Another.*** The

similarities and differences between the parties' marks, products, retail outlets and

customers, and advertising media do not move the needle on whether or not there is

a likelihood of confusion between FLVS's marks and Stride's FLOS program name.

*See FIU*, 830 F.3d at 1260-61; *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,

508 F.3d 641, 648 (11th Cir. 2007). Ultimately, the likelihood of confusion

determination will rest on the weakness of FLVS's marks and the lack of actual

point-of-sale customer confusion.

   ***There Is No Likelihood Of Confusion Between The FLVS And FLOS***

***Marks.*** Despite the facial appeal of FLVS's claim that the FLOS marks are

confusingly similar to its own, a close analysis of the factors presented above shows

that FLVS's marks are weak and entitled to little protection, that the marks are not confusingly similar to the purchasing public, and critically, that there is no record of actual confusion by customers that supports the FLVS claim that it has suffered widespread damage. The factual record is devoid of evidence that the "widespread confusion" FLVS claimed in its Complaint has caused either harm to itself or unjust enrichment to Stride. Summary judgment therefore is appropriate on FLVS's claims for trademark infringement. *See FIU*, 830 F.3d at 1265; *Custom Mfg. & Eng'g*, 508 F.3d at 645; *Donut Joe's*, 101 F. Supp. 3d at 1185.[6]

## IV.    FLVS Is Not Entitled To An Award Of Stride's Profits.

FLVS claims that it is entitled to an award of Stride's profits if it succeeds on its Lanham Act trademark infringement claims. *See* Cmplt., Prayer; 15 U.S.C. § 1117(a). But "an accounting of a defendant's profits is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct." *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899, 902 (11th Cir. 2007).

***Willfulness.*** A willful violation of a trademark occurs when a party was "knowingly and deliberately cashing in on the good will of the trademark owner."

---

[6] To the extent FLVS alleges Stride's use of blue colors with FLOS "deepens the confusion," Cmplt. ¶ 47, FLVS has not made a trade dress claim and could not survive summary judgment even if it had because FLVS cannot "identify and describe a distinctive, aesthetic feature" of the trade dress. *Yellowfin Yachts, Inc. v. Barker Boatworks*, LLC, 237 F. Supp. 3d 1230, 1235 (M.D. Fla. 2017), aff'd, 898 F.3d 1279 (11th Cir. 2017). In any event, ███████████████████ ████████████████████████████████████. S*ee* Ex. F ¶ 5(g); Ex. KK at FLVS00149917.

*Id*. at 903 (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983)).   On the other hand, evidence that infringement was "unintentional and remedied upon notification of the improper uses of the marks" supports a finding that the defendant was *not* willful and does not support a disgorgement remedy. *Optimum*, 2005 WL 3307508, at *3.   That is precisely the case here.

There is no evidence that Stride intended to infringe on FLVS's marks when it selected the FLOS name.   To the contrary, after FLVS demanded Stride cease its use of the FLOS marks, Stride promptly agreed to do so for the upcoming school year, which it did.   Ex G at 19:9-22:22; Ex. LL at 16:10-17:1.   Just as in *Optimum*, Stride "began to rectify the situation before this lawsuit was filed and continued the process until" the Hendry program was changed from FLOS to DIGITAL ACADEMY OF FLORIDA ("DAOF").   *See Optimum*, 217 F. App'x at 903. While FLVS "may have wanted this process to go at a faster pace, that is not evidence that [Stride's] alleged infringement was willful." *Id.*

***Unjust Enrichment.***   Unjust enrichment "would exist if [Stride's] sales were attributable to its alleged infringing use" of FLVS's marks.   *See Optimum*, 2005 WL 3307508, at *3.   "The burden is on the *plaintiff* to prove this connection by pointing to evidence of *actual* consumer confusion." *Id.* (emphasis added).   For the reasons discussed above, FLVS cannot meet this burden.   The record does not reflect any lost enrollments by FLVS or gained enrollments by Stride connected to the use of

the FLOS marks with any attributable revenue to Stride.  Therefore, an award of Stride's profits is not justified under a theory of unjust enrichment.

*Deterrence.*  Disgorgement of Stride's profits also is not necessary to deter future infringement by Stride, and stripping Stride of profits for conduct unrelated to its branding or advertising practices and untethered to any provable injury would be an impermissible punishment. *See St. Charles*, 737 F.2d at 892; *Optimum*, 2005 WL 3307508, at *3 (denying an award of defendant's profits because it would be an "impermissible penalty" under the Lanham Act); 15 U.S.C. § 1117(a).  There is no evidence that Stride purposefully used FLVS's marks (it did not even use FLVS's marks).  *See id.* (deterrence was not needed where defendant was not purposefully using the allegedly infringing mark).  The FLOS name was not on the list of prohibited marks in the parties' Settlement Agreement, and Stride was permitted that choice without any presumption that exercising the choice would support a claim for intentional infringement.  Ex. F ¶ 5(e).  Moreover, as soon as FLVS complained about the FLOS name, Stride took swift actions to change the name to DIGITAL ACADEMY OF FLORIDA ("DAOF").  Ex. G at 19:9-22:22; Ex. LL at 16:10-17:1. Under these circumstances,  "awarding profits under the deterrence rationale would serve as an impermissible penalty." *Optimum*, 2005 WL 3307508, at *3.

## V.     Stride Is Entitled to Summary Judgment On FLVS's Claim For Breach Of The Settlement Agreement (Count VIII).

For a breach of contract claim, Florida law requires a plaintiff establish: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Glover v. Gentiva Health Servs.*, No. 6:10-cv-1619-Orl-28KRS, 2012 WL 1389624, at *4 (M.D. Fla Apr. 20, 2012).  Stride does not dispute that the Settlement Agreement was a valid contract.  But to the extent FLVS claims that what it alleges was false advertising and trademark infringement also constituted breach of the Settlement Agreement, *see* Cmplt. ¶ 141, then for the all of the reasons discussed above, there was no material breach.  Moreover, the name "Florida Online School" is not prohibited under the Settlement Agreement; there is no "presumption against [Stride's] choice of a mark not listed in Appendix A"; and FLOS does not use "Florida" and "Virtual" as source identifiers in any mark.  Ex. F ¶¶ 5(d)-(e).   As discussed above, descriptive, non-trademark use of the terms "Florida" and "Virtual" are expressly permitted, and FLVS cannot claim such use violates the terms of the Settlement Agreement.  *See* Ex. F ¶ 5(d).  Finally, Stride's continued use of the flva.com domain was inadvertent and timely remedied when brought to Stride's attention, s*ee* Ex. FF at 72:6-78:12, and any claimed harm was avoidable.[7]

---

[7]  Nor can FLVS claim that Stride's use of a blue color violates the settlement ███████████
██████████████████████.  *See* Ex. KK at FLVS00149917.

Even if Stride's conduct somehow constituted a breach (it did not), FLVS cannot show, as it must, that the breach *caused* it any damages. *See, e.g.*, *Glover*, 2012 WL 1389624, at *4 (granting summary judgment dismissing breach claim where "Plaintiff has failed to present any evidence that any alleged breach by [defendant] caused her any damages"); *DeMarco v. T.D. Bank, N.A.*, No. 16-80442-Civ, 2017 WL 2892255, at *5 (S.D. Fla. Apr. 26, 2017) (same). Its only claimed damages are "conclusory," wholly "speculative," and/or explained by FLVS's own conduct. *See id*. Indeed, ████████████████████████████

███████████████████████████. Ex. Y at 284:17-22. Without any evidence of causative damages, FLVS's breach of contract claim is meritless, and at minimum "not proper for jury consideration." *Meadows v. English, McCaughan & O'Bryan, P.A.*, 909 So.2d 926, 928 (Fla. 4th DCA 2005).[8]

## VI.    FLVS's Claims Are Barred Because It Failed To Mitigate Damages.

The doctrine of avoidable consequences "finds its application in virtually every type of case in which the recovery of a money judgment or award is authorized." *State ex rel. Dresskell v. City of Miami*, 13 So. 2d 707, 709 (Fla. 1943). Failure to mitigate damages prevents a party from recovering those damages which would have been avoided with ordinary reasonable care and "without undue risk,

---

[8] FLVS cannot seek disgorgement of Stride's profits as damages either because that "is not the remedy for breach of contract." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1494 (11th Cir. 1983).

burden, or humiliation." *Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. Dist. Ct. App. 1984); *see Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 921 (11th Cir. 1987); Dkt. 29 at 30 (Stride's Eighth Affirmative Defense).[9]

It is undisputed that FLVS senior leadership was fully aware of Stride's adoption of the FLOS marks as early as June 2019. Ex. I at FLVS00008442; Ex. J at 55:18-59:6; *see also* Ex. V at 71:5-11 (███████████████████ ███████████████████). And it is undisputed that FLVS took no action regarding the FLOS marks until it sent demand letters to Stride in August 2020, over a year later. Instead, FLVS opportunistically sat back in what appears to have been a strategic decision to allow its claimed damages to accrue in an attempt to justify a larger payout from Stride. FLVS should not be permitted to profit from its own failure to "exercise [ ] reasonable care and diligence" regarding a competitor's use of a mark it now alleges was causing it "irreparable harm." *Messer*, 833 F.2d at 921; Cmplt. ¶ 72.

## CONCLUSION & PRAYER

The Court should grant Stride's Motion and enter an order GRANTING Stride summary judgment:

(1) On FLVS's claim for lost profits recovery, and striking FLVS's jury demand;

---

[9] Affirmative defenses to trademark infringement apply even where there may be some likelihood of confusion shown by the plaintiff. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004).

(2) On FLVS's claim for false advertising (Count V);

(3) On FLVS's claims for trademark infringement and any claim for trade dress infringement (Counts I-IV & VI);

(4) On FLVS's claim for unfair competition (Count VII);

(5) On FLVS's claims for breach of the parties' Settlement Agreement (Count VIII).

(6) That FLVS failed to mitigate any claimed damages, precluding any recovery.

Dated:  March 1, 2023      /s/  *Steven P. Hollman*

Steven P. Hollman (admitted *pro hac vice*)
   Trial Counsel
Abraham Shanedling (admitted *pro hac vice*)
   Trial Counsel
Charles Spencer-Davis (admitted *pro hac vice*)
   Trial Counsel
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Ave., N.W., Suite 100
Washington, D.C. 20006-6801
Tel. (202) 747-1941
Fax (202) 747-3012
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com

Daniel C. Johnson, Trial Counsel
Florida Bar No. 522880
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801-3456
Tel. (407) 849-0300
Fax (407) 648-9099
djohnson@carltonfields.com
Secondary:  dcarlucci@carltonfields.com
Secondary:  orlecf@cfdom.net

Eleanor M. Yost, Trial Counsel
Florida Bar No. 1003178
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5780
Tel. (813) 229-4395
Fax (813) 229-4133
eyost@carltonfields.com

**Attorneys for Defendants**
**Stride, Inc., and K12 Florida LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2023, I served unredacted versions of Stride's

Motion for Summary Judgment and supporting exhibits via mail on the following:

Stephen H. Luther
Trial Counsel
Florida Bar No. 528846
LUTHER LAW PLLC
4767 New Broad Street, # 1029
Orlando, FL 32814
407 501-6711 x101 (Main)
407 501-7049 (Direct)
sluther@lutherlawgroup.com

David J. D'Agata, Esq.
General Counsel
Florida Bar No. 663891
Luis R. Guzman, Esq.
Sr. Asst. General Counsel
Florida Bar No. 570613
Florida Virtual School
2145 Metrocenter Blvd., Suite 100
Orlando, Florida 32835
Office: 407-513-3451
ddagata@flvs.net
luguzman@flvs.net

Thomas E. Bishop
BISHOP & MILLS, PLLC
Florida Bar No. 956236
510 N. Julia Street
Jacksonville, FL 32202
Tel. (904) 598-0034
Fax. (904) 598-0395
tbishop@bishopmills.com

Suzanne Barto Hill
Florida Bar No. 0846694

E-mail: shill@rumberger.com
Sally R. Culley
Florida Bar No. 0095060
E-Mail:  sculley@rumberger.com
RUMBERGER, KIRK &
CALDWELL, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

Leonard J. Dietzen
Florida Bar No.:  0840912
E-mail:  ldietzen@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783


*/s/ Steven Hollman*
Steven P. Hollman

(admitted *pro hac vice*)
Trial Counsel
SHEPPARD, MULLIN, RICHTER &
 HAMPTON LLP
2099  Pennsylvania  Ave.,  N.W.,  Ste
100
Washington, D.C. 20006-6801
Tel. (202) 747-1941
Fax (202) 747-3012