UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

    **Plaintiff,**

vs.                                      CASE 6:20-CV-02354-GAP-EJK

**K12, INC., and K12 FLORIDA, LLC,**

    **Defendants.**
_____/

**PLAINTIFF'S OPPOSITION TO
K12'S MOTION FOR SUMMARY JUDGMENT [Doc. 139]**

Plaintiff, Florida Virtual School ("FLVS"), hereby submits its Opposition to the Motion for Summary Judgment (Doc. 139, the "MSJ" or "Motion") filed by Defendants, K12, Inc., and K12 Florida, LLC (collectively "K12").

**I.    INTRODUCTION**

K12's MSJ should be denied because it relies on: (1) purported "facts" that do not exist in the record before this Court, (2) facts that do exist in the record, but are mischaracterized; and (3) legal conclusions which are unsupported by applicable legal authority. For instance, K12 *claims* that a broadly-advertised and *literally false* "Checklist" comparison of services offered by K12 and FLVS is not evidence of false advertising. K12 also claims it is entitled to judgment on "likelihood of confusion" claims which rest upon a well-settled factorial test, the application of which obviously favors FLVS. And its Motion simply regurgitates incorrect statements of law that are

calculated to entirely avoid damages on a record that presents, at a bare minimum, substantial and material questions of fact as to *how much* injury was visited upon FLVS (and, by extension, Florida students and taxpayers) due to K12's infringing and deceptive activities in the online education marketplace. None of the issues raised by K12 warrant summary judgment in its favor. Rather, summary judgment is warranted for FLVS.

## II.   ARGUMENT

### A.   FLVS HAS AMPLE EVIDENCE OF MONETARY LOSS.

#### 1.   *The Lanham Act Provides An Array of Alternative Damages Models.*

Damages for trademark infringement claims under the Lanham Act may include: (1) defendant's profits, (2) any loss sustained by the plaintiff, and (3) costs incurred by bringing the action. 15 U.S.C. §1117(a). As the Eleventh Circuit Court of Appeals has observed, such damages may be awarded "upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986)*; see also Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008). Indeed, even "crude" measures of damages may be "based upon reasonable inferences so long as those inferences are neither inexorable... [nor] fanciful." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012). "[I]n trademark cases courts draw a sharp distinction between proof of the fact of damage and proof of the amount of damage" because those damages are rarely susceptible to exact proof as to

the amount. *Broan Mfg. Co., Inc. v. Associated Distributors, Inc.*, 923 F.2d 1232, 1235 (6th Cir. 1991). Thus, the "plaintiff is held to a lower burden of proof in ascertaining the exact amount of damages because, '[t]he most elementary conceptions of justice and public policy require that <u>the wrongdoer shall bear the risk of the uncertainty which his own wrong has created</u>.'" *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir. 1985) (emphasis added) (quoting *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 267 (1946)).

  **2.** ***There is Ample Evidence of Actual Confusion.***

K12 erroneously claims "the record has not shown that FLVS lost a single enrollment it otherwise would have gotten as a consequence of any claimed confusion attributable to the FLOS marks," and FLVS has "made no attempt to measure or show likelihood of confusion." MSJ at p.11. To the contrary, there is uncontroverted record evidence demonstrating *both* actual confusion *and* monetary loss caused by K12. The following are but a few examples:

- Casey Kalajian testified that the "similarity in the names" FLVS and FLOS was "why I was confused" when she enrolled her daughter in FLOS (Deposition of Casey Kalajian at **Exhibit 1** hereto at 15:15-21); after discovering she had been misled, "she [her daughter] never went forward with FLVS" (*Id.* at 17:8-12), demonstrating monetary loss to FLVS;

- Lisa Kornheisl mistakenly enrolled her son/daughter with FLOS because "FLOS and FLVS is [sic] very similar." Deposition of Lisa Kornheisl, 15:18 – 17:16, attached hereto as **Exhibit 2**.

- Elizabeth Jones, an FLVS social media support specialist, identified many postings in online forums showing confusion (Deposition of Elizabeth Jones, 53:5 -- 114:22, attached hereto as **Exhibit 3**, and Exhibits 2 to 8 thereto (Doc 144-7 through 144-14); with 107:10-24 and 109:15 – 114:20 in particular showing monetary loss to FLVS; and

2

- K12 employee, Kimberly Kershner, admitted that confusion is widespread: "FLVS is actually a different school. <u>Our school gets mixed up all the time with this one lol</u>." Deposition of Kimberly Kershner, 15:6-18:5, attached hereto as **Exhibit 4**, and Exhibit 6 thereto, Doc. 144-24 (emphasis added).

*See also* FLVS's Response and Supplemental Response to K12's Interrogatory No. 7, Doc 144-2. K12 argues that the many instances of confusion here are not enough, but that is simply wrong. Rather, this evidence is "highly probative of likelihood of confusion," *see Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 104 F. Supp. 2d 427, 461 (D.N.J. 2000), given that confused consumers may not come forward for many reasons, including because they do not discover the confusion or assume nothing can be done about it. FLVS also relies on its damages expert, Dan Gallogly, to quantify damages, not prove causation. Asking FLVS's witnesses questions loaded with legal jargon that improperly attempt to limit damages solely to lost enrollments does not establish that FLVS suffered no injury. This is particularly so where actual customers like those above testified to the injury they suffered from K12's actions, and K12's own employee admits that this happens "all the time." Kershner Depo at Exhibit 4, 15:6-18:5. The fact of damage to FLVS is established, and the amount of that damage is a question FLVS is entitled to present to the jury. *See ITT Corp. v. Xylem Group, LLC*, 963 F. Supp. 2d 1309, 1329 (N.D. Ga. 2013).

**B.    THE CHECKLIST IS LITERALLY FALSE ADVERTISING THAT INJURES FLVS.**

K12 seeks summary judgment for the Checklist claim on the grounds that it is not false, that the thousands who have seen it do not constitute enough people to matter, and it did not injure FLVS. None of these arguments withstand scrutiny.

3

1. *The Checklist is Commercial Advertising or Promotion.*

K12 is correct that an advertisement must be sufficiently disseminated to constitute commercial advertisement. MSJ at p.13. The Eleventh Circuit has adopted the four-factor Gordon and Breach test to determine whether material satisfies the commercial advertising or promotion test. *Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1349 (11th Cir. 2012). The only argument K12 makes is on the fourth factor (extent of distribution), as it must necessarily concede the first three. The Checklist and its introductory instructions are on K12's main national website at www.k12.com[..]k12-vs-online-solutions.html (MSJ, Ex. CC, identifying traffic by domain names), and K12 has presented it as an "invitation to consumers to [..] compare the attributes of K12's competitors to those of K12." Doc. 17 at p.10. It is, therefore, commercial speech (factor 1) by an FLVS competitor (factor 2) for the purpose of influencing consumer purchasing decisions (factor 3). These factors show that the Checklist is nothing like the "maintenance presentation" created "for training customers who had already purchased the product" in *Suntree* that did not constitute commercial advertising or promotion. *Suntree*, 693 F.3d at 1349.

K12's argument on the fourth factor (extent of distribution) is that FLVS has not produced sufficient evidence of the number of people who saw the Checklist to constitute commercial distribution. MSJ at p.14. Evidence of who saw the website could only come from K12, and K12 only had data for 2022. *See* paragraph 4 in the attached e-mail from K12's counsel, attached hereto at **Exhibit 5**. The 2022 data alone,

however, shows sufficient dissemination. Even if it did not, K12 should not be allowed to benefit from its own failure to track data, a holding that would only encourage others to avoid tracking "hits" to conceal their false advertising.

For 2022, K12 argues that "46 visits a month" is not enough, without citing any authority on what number would be sufficient. MSJ at p.14. Indeed, the authority K12 cites notes that material "distributed to a few customers (or even one)" may be enough, depending on the market at issue. *Suntree* 693 F.3d at 1349 (internal citation omitted); *see also Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (presentation to "eleven 'cross-franchise' bottlers" constitutes commercial advertising or promotion).

Instead of just one or 11, at least 46 people viewed the Checklist in a single month. MSJ at p.14. In 2022, at least[1] 313 people viewed the Checklist. *See* MSJ, Ex. CC, citing traffic on the "k12-vs-online-solutions" page where the Checklist is located. Comparisons to traffic on K12's main page are irrelevant; what is relevant is that hundreds of people saw this Checklist in a single year. FLVS knows that the Checklist has been available on its website since at least August of 2020 (MSJ at pp.7-8), and K12's representative testified it has been available since December of 2016. Deposition of Todd Goldthwaite, 173:8-174:3, attached hereto as **Exhibit 6**.

Moreover, those views are solely for the Checklist. Far more consumers saw the deceptive instructions priming consumers to look for "[w]hat makes K12-powered

---

[1] The dates in Exhibit CC only cover January 6 to December 13.

5

schools different" and "[w]hat sets K12 apart?" when, in reality, there is nothing that sets K12 apart from FLVS for these criteria. *See* K12's Response to FLVS's Request for Admissions 1-12, attached hereto as **Exhibit 7**, where K12 could not deny that FLVS provides each item; *see also* Doc. 157-2: Clark Berry Dep. at 107:2-112:3; Doc. 157-3: Sam Verghese Dep. at 197:13-199:20; and Doc. 157-1: Kate Lysaught Dep. at 184:23-185:24. There were 2,134 views in 2022 alone for the "Why K12" instructions leading to the Checklist. MSJ, Ex. CC. Where the instructions tout K12's advantages and assert that FLVS is missing these, many consumers might not even consult the Checklist. The damage to FLVS has still occurred, though. Instead of granting K12's requested relief, the Court should hold, as a matter of law, that the Checklist and its instructions constitute commercial advertising or promotion.

**2.     *The Extent of Injury the Checklist Caused is a Jury Issue.***

K12 argues FLVS has not shown injury caused by the Checklist. MSJ at pp. 14-17. The survey by FLVS's expert, Dr. Jeffery Stec, is sufficient for the jury to find a violation where he found that "18.35 of respondents believed" K12 had features its competitors did not, thus showing "it is likely that the K12 Defendants' customers were misled by the K-12 Defendants' sales practices." Doc. 157-7: Expert Report of Jeffery A. Stec, Ph.D., at p.27. K12 cites the McCarthy treatise to argue that the percentages of confused people in his survey are not sufficient, but the passage it cites notes that the "courts have not established any percentage that will suffice."  6 McCarthy § 32:193 (5th ed.). K12 argues that few respondents identified FLVS as a competitor, while ignoring that K12 ran a separate version of the Checklist (that was

6

not tested) specifically identifying FLVS as a competitor. Doc. 157-1: Lysaught Dep., Ex. 31. K12 also ignores the law holding that injury will be presumed when a statement is literally false, and, as explained below, a jury should find it is in this case. *See, e.g., Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 260 (2d Cir. 2014); *see also* Doc. 157, pp.9-14. How extensive the violation is and what geographic area it covers are jury questions. *Broan* 923 F.2d at 1235. This is particularly so where K12 failed to identify any evidence demonstrating consumers outside of Florida would be less likely to be confused than those in Florida.

### 3. *K12's Checklist is False and Misleading.*

K12 asks the Court to hold, as a matter of law, that nothing about the Checklist or its instructions could possibly deceive consumers. MSJ at p.17. The Court already rejected this argument in denying K12's Motion to Dismiss, ruling it would be improper to "have the Court determine whether any 'parent would be misled' by K12's checklist." Doc 25, p.11. K12 seeks judgment, in part, because some witnesses testified that the Checklist is not "literally false," but even K12 concedes false advertising is actionable where "advertisements were false or misleading." MSJ at p. 13 (emphasis added).

K12 argues the Checklist claim is "doom[ed]" for lack of actual confusion evidence. MSJ at p.18. K12 itself, however, concedes that FLVS may produce "evidence of consumer deception 'in the form of consumer surveys, market research, expert testimony, or other information.'" MSJ at p.17 (emphasis added). FLVS has survey evidence showing the Checklist is confusing in addition to other evidence. *See,*

7

*e.g.*, Doc. 157-7: Dr. Stec Report; Doc. 157-1: Lysaught Dep. 189:11 – 190:4; Deposition of Tania Clow, 119:6-21, attached hereto as **Exhibit 8**; Deposition of Ashley Reyes, 84:12 – 86:22, attached hereto as **Exhibit 9**.

K12 claims the Checklist is truthful and "does not state that Stride's programs possess all of the attributes." MSJ at p.18. Of course it does. The Checklist has every box checked on the K12 side. Any reasonable consumer would conclude this means K12 has each checked item. K12 also argues consumers would not interpret the instructions and Checklist as an assertion that FLVS is missing qualities K12 possesses. MSJ at p.18. That is the only way the Checklist can be interpreted after K12 repeatedly tells the consumer they should investigate "[w]hat makes K12-powered schools different from…FLVS" and "What Sets K12 Apart?" from "other online solutions, like…FLVS" (*see* Exhibit 31 to Kate Lysaught's deposition, Doc. 157-1), when, in reality, there is nothing different.

The problem is not cured because K12 later tells consumers to "use this checklist to weigh your options." *Id.* Just as disclaimers do not cure other confusion,[2] this statement is not sufficient to cure the numerous false claims that precede it, and it does not even try. A statement instructing consumers that FLVS and K12 are the same with respect to every listed item would come closer to dispelling the false statements. Merely asking consumers to "weigh your options" does nothing to dispel confusion when what they have been told to "weigh" are the differences between K12 and FLVS.

---

[2] *Univ. of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1547 (11th Cir. 1985) ("Not associated with the University of Georgia" disclaimer not sufficient to dispel confusion).

8

Where K12 repeatedly tells consumers that there are differences between FLVS and K12 with respect to each attribute on the Checklist that do not exist, that statement is literally false. Even if it were not, whether it is misleading is, at a bare minimum, a jury question.

K12 also claims the Checklist is not material to purchasing decisions. MSJ at pp.18-19. That argument is belied by the fact that K12 has maintained the Checklist on its main website for years, despite FLVS's objections. *See* **Exhibit 5**: Goldthwaite Dep., 173:8 – 174:3. Moreover, K12 is not arguing (nor could it argue) that these crucial features, e.g., whether "[g]rades K-12 are offered," whether the degree will be "recognized by colleges," and whether "STEM education" is available, do not matter to consumers. They clearly do. *See* Doc. 157-1, Ex. 31; **Exhibit 5**: Goldthwaite Dep., 174:13 – 176:7. Instead of addressing whether these features are material, K12 merely reargues its claim that its Checklist is not deceptive, but the very authority it cites when making this argument establishes that this is error in explaining that the "district court appears to have conflated the element of consumer deception with the element of materiality." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1250 (11th Cir. 2002). Where K12 does not raise any materiality argument, there is no basis for finding a lack of materiality.

9

## C. K12 IS NOT ENTITLED TO SUMMARY JUDGMENT ON FLVS'S TRADEMARK AND UNFAIR COMPETITION CLAIMS.

Despite a majority of the likelihood of confusion factors weighing undisputedly in FLVS's favor (*see* Doc. 143 at p.28), K12 seeks summary judgment on this basis. The factors do not favor K12. On K12's best day, there are facts very much in dispute.

### 1. *Recycling Damages Arguments Does Not Disprove Actual Confusion.*

As K12 did in its Rule 11 Motion, K12 improperly limits damages solely to point of sale confusion by arguing "confusion did not involve actual customers" and that "FLVS has no evidence of actual point of sale confusion resulting in injury." MSJ at pp.21-22. Actionable confusion extends far beyond just actual customers at the point of sale and matters with "customers and potential customers.'" *Hidalgo Corp. v. J. Kugel Designs, Inc.*, 509 F. Supp. 2d 1247, 1261 (S.D. Fla. 2007) (emphasis added; internal citations omitted). Moreover, "point of sale confusion does not mark the outer boundaries of trademark infringement," as the "vast majority of courts recognize post-sale confusion,"[3] and initial interest confusion remains an open question in the Eleventh Circuit, as the Court has noted. Doc. 25, pp.7-8. K12's arguments also ignore the fact that confusion matters not only as to source (e.g., a customer believes FLOS is FLVS) but also to affiliation or endorsement as explained in the *Hidalgo* case, where

---

[3] 4 McCarthy on Trademarks and Unfair Competition § 23:5 (5th ed.); *see also United States v. Torkington*, 812 F.2d 1347, 1352 (11th Cir. 1987) (confusion actionable "in a post-sale context").

10

a consumer knows they are different but believes there is a relationship that does not exist.

FLVS has evidence of confusion at all of these levels and among actual and potential consumers. *See e.g.,* Section I. K12 has not even attempted to explain away these highly relevant examples of confusion, and has, therefore, failed to establish that there is no actual confusion. K12's dismisses post-sale confusion from customers seeking transcripts from the wrong school as if it does not matter; but, if consumers are still confused after enrolling and going through an entire course, that confusion is highly relevant. Confusion also matters among the news media such as the story wrongly stating that Education Secretary Devos visited FLVA in 2020 when she actually visited FLVS. *See* Dkt. 101 at 5. The story was later corrected, but not before large numbers of people had seen it and likely reached the incorrect conclusion that FLVA and FLVS are the same. K12 dismisses this as residual confusion from the prior case on which FLVS has granted a release, but it could just as easily have resulted from K12's continued use through 2020 of the FLVA domains as redirects to its businesses. This is an issue for the jury to resolve. K12 also points to cases holding that a limited number of instances of confusion, such as five or less, may not be enough,[4] but FLVS has identified far more instances than this. *Id.*

---

[4] MSJ at p. 25.

## 2. *K12 Cannot Establish That FLVS's Marks Are Weak.*

K12 is barred from arguing that FLVS's first two registered marks (U.S. Trademark Registration No. 3,830,765 for the Florida Virtual School mark and No. 3,873,393 for the FLVS mark) and the common law rights for each are descriptive or otherwise weak as it surrendered all such arguments in settling the prior lawsuit. As explained in FLVS's Motion to Dismiss K12's Counterclaim (at Section II(B)), both marks were asserted in the prior litigation and were challenged as descriptive. At the end of the litigation, K12 released all claims "arising out of or in any way relating to" that litigation, "whether known or unknown" (Settlement Agreement, Section 6(b)) and that case and the related cancellation petition were dismissed with prejudice. K12 is, therefore, barred from arguing that either of these marks are descriptive or otherwise weak. Both marks are also incontestable registrations (*see* Doc. 144-1, ¶ 7), and where a "mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark." *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989). Where both marks are strong, incontestable marks that K12 cannot challenge, FLVS's trademark rights are undisputedly strong.

K12 claims the Florida Virtual School marks are entitled to little protection because they are allegedly descriptive and not inherently distinctive (MSJ at pp.22-24), but makes no argument that the FLVS acronym is descriptive because there is no argument it could make (*see* Doc. 143 at II(D)(5)). Further, K12 makes no argument regarding the non-trademark unfair competition issues in Count VII.

K12 makes no arguments that FLVS has failed to acquire secondary meaning to make its Florida Virtual School marks strong. Trademarks may be either inherently distinctive or have acquired strength through secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Some of the most recognizable and, hence, strong marks in the world are marks that have acquired strength through secondary meaning— *e.g.*, Citibank®, International Business Machines®, and Coca-Cola®— and FLVS has presented ample evidence of the decades of use, millions in advertising spending, millions of enrollments, and long list of awards and recognition that establish strength for the Florida Virtual School marks. Doc. 143 at II(C)(1). Arguing that individual words are in use elsewhere is irrelevant where trademark "validity is not judged by an examination of its parts [but] by viewing the trademark as a whole." *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1455 (9th Cir. 1985). Nor is there any basis for arguing FLVS changed branding outside Florida because its trademarks are weak or that it abandoned rights outside Florida. FLVS made the change for non-strength-related issues such as to avoid repeated questions it was receiving about whether Florida-branded courses would meet other state's requirements; and it was using its prior marks outside Florida when K12 was using its FLOS marks and uses them today. (*See e.g.,* **Exhibit 8**: Deposition of Ashley Reyes, 88:6 – 89:1). The only finding that could be made on strength is that FLVS's marks are strong.

### 3. *The "Similarity" Factors Undisputedly Favor FLVS.*

K12 makes no argument that the similarity of the parties' marks, products, retail outlets and customer factors favor K12, because there is no argument to be made on these factors; they undisputedly favor FLVS. The most K12 can argue is that they "do not move the needle." MSJ at p.28. Of course they do. They are four of the seven factors in the likelihood of confusion test and, hence, a majority of the factors. The authority K12 cites for its argument demonstrates that it is possible for a plaintiff to lose while prevailing on some of these factors, but those cases do not involve the strong evidence FLVS has on the remaining factors.

### 4. *Likelihood of Confusion Weighs Overwhelmingly in FLVS's Favor.*

A majority of the factors are undisputedly in FLVS's favor. K12's claim that there is no evidence of confusion is factually incorrect; it is precluded from arguing that FLVS's first two registrations are anything other than strong, incontestable registrations; and FLVS has compelling evidence that its remaining marks have achieved widespread recognition and strength. On this record, summary judgment should be entered in FLVS's favor, not K12's, on likelihood of confusion.

## D. FLVS IS ENTITLED TO AN AWARD OF K12'S PROFITS.

After ignoring the standard for awarding K12's profits in its Rule 11 briefing, K12 now recites the correct factors for awarding K12's profits, i.e., that it "is appropriate where: (1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct." MSJ at p.29.

1. *K12 Intentionally Infringed on FLVS's Marks.*

K12 claims there is no evidence it "intended to infringe on FLVS's marks when it selected the FLOS name" because it changed its infringing name after being caught. MSJ at pp.29-30. In support of its argument, K12 cites a case in which "Home Depot's action consisted of having outdated shelf tags with Optimum's Lok–Lift mark" that it removed after notice. *Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 Fed. Appx. 899, 903 (11th Cir. 2007). These facts are far removed from this case where K12 never had a license to use FLVS's marks, selected the infringing marks itself, and only began changing its marks in March of 2021, more than half a year after FLVS's demand letter. **Exhibit 5**: Goldthwaite Dep., 332:22 – 333:18. *Optimum* also did not involve a serial infringer like K12 that has copied FLVS's marks in nearly identical fashion three different times over the course of a decade. Doc. 144-1: Verghese Decl. at ¶ 14. On these facts, a jury can and should find K12's infringement was intentional.

2. *FLVS has Evidence of Unjust Enrichment.*

K12's claims that the "record does not reflect any lost enrollments by FLVS or gained enrollments by Stride connected to the use of the FLOS marks" (MSJ at pp.30-31), fails to acknowledge evidence in the case where customers such as Casey Kalajian were confused into attending FLOS and never attended FLVS. *See* Section I above. Once FLVS establishes the fact of injury resulting in unjust enrichment to K12, the amount of the injury is a jury question.

15

### 3. *K12 Must be Deterred From Future Infringement.*

After settling the prior lawsuit (where, like here, K12 infringed on FLVS's marks with marks that involved two of the three words in FLVS's marks and a synonym for the third and then copied three of the four letters of FLVS's acronym each time (*see* Doc. 143 at p. 17), FLVS had hoped these issues were finally resolved. K12, however, went on to infringe again and came back with yet more marks – Florida Online School and FLOS – that included two of the three words and a synonym for the third, and yet another acronym with three of FLVS's four letters. Where K12 has shown a pattern of infringing over more than a decade, K12 cannot be heard to complain that there is no need for deterrence.[5] It is hard to imagine a stronger case for needing to deter future infringement. Even if there were not, the issue is, at minimum, a jury question.

### E. K12 IS NOT ENTITLED TO SUMMARY JUDGMENT ON BREACH OF CONTRACT.

K12 violated the Settlement Agreement by continuing to use the FLVA domains as redirects for years after it promised to stop, and these redirects drove business to K12. Doc. 143 at pp.12-13; Doc. 144-17: K12's Rog Response, No. 12. K12 agreed that any violations of this type "will cause substantial and irreparable injury" (Settlement Agreement, Section 15) and is estopped from denying that now. FLVS is entitled to seek damages for these breaches. Whatever criticism K12 might

---

[5] K12 also cites the *Optimum* case again to argue that there is no need for deterrence. As explained above, the facts of that case are far removed from those at issue here.

advance as to the amount of damages, FLVS is, at a minimum, still entitled to at least nominal damages. *See Transformations Int'l Inc. v. Ohio Security Ins. Co.*, No. 6:20-cv-2296, 2022 WL 1619400, *7 (M.D. Fla. January 26, 2022) ("[O]nce a breach of contract is established, the jury may award nominal damages, even if the plaintiff offers no evidence on the extent of damages."). The amount of damages FLVS has suffered from K12's undisputed breach is a jury question.

### F. THERE IS NO BASIS FOR REDUCING FLVS'S DAMAGES FOR FAILURE TO MITIGATE.

As a government agency and a steward of taxpayers' dollars, FLVS should not be required to sue at the first sign of any infringement. Instead, "[a]lthough a plaintiff cannot simply sleep on his rights, he 'has no obligation to sue until the likelihood of confusion looms large' and his 'right to protection [has] clearly ripened.'" *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002) (internal citation omitted). Here, K12 went to Hendry County, a small rural school district in Florida, to open a school. *See* Deposition of Corporate Representative of K12, Inc., 200:13-19; 205:17-22, attached hereto as **Exhibit 10**. If K12 had enrolled students in numbers anything like the number of students that had historically attended school online in Hendry County, the numbers would have been extraordinarily small. Instead, K12 made very effective use of its infringement of FLVS's marks and drove enrollments that outstripped the brick-and-mortar Hendry enrollments. FLVS could not have known the impact of this, though, until the 2019-2020 school year enrollments were calculated. When the enrollments proved to be

17

substantial, FLVS sued in the very next school year. On these facts, there is no basis for reducing FLVS's damages, much less reducing them as a matter of law.

WHEREFORE, for the reasons set forth above, FLVS respectfully requests that the Court deny K12's Summary Judgment Motion.

Dated: April 3, 2023

/s/Stephen H. Luther
Stephen H. Luther
Trial Counsel
Florida Bar No. 528846
LUTHER LAW PLLC
4767 New Broad Street, # 1029
Orlando, FL 32814
407 501-6711 x101 (Main)
407 501-7049 (Direct)
sluther@lutherlawgroup.com

Thomas E. Bishop
Florida Bar Number 956236
Katharine N. Roth
Florida Bar Number 106692
Bishop & Mills PLLC
510 N. Julia Street
Jacksonville, Florida 32202
(904) 598-0034/(904) 598-0395 (facsimile)
tbishop@bishopmills.com
kroth@bishopmills.com
service@bishopmills.com

David J. D'Agata, Esq.
General Counsel
Florida Bar No. 663891
Luis R. Guzman, Esq.
Sr. Asst. General Counsel
Florida Bar No. 570613
Florida Virtual School
5422 Carrier Drive, Suite 201
Orlando, Florida 32819
Office: 407-513-3451
ddagata@flvs.net

luguzman@flvs.net
Leonard J. Dietzen
Florida Bar No.: 0840912
E-mail: ldietzen@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783
Suzanne Barto Hill
Florida Bar No. 0846694
E-mail: shill@rumberger.com
Sally R. Culley
Florida Bar No. 0095060
E-Mail: sculley@rumberger.com
Rumberger, Kirk & Caldwell, P.A.
300 South Orange Avenue, Suite 1400
Orlando, Florida 32801
Tel: 407.872.7300
Fax: 407.841.2133

*Attorneys for Plaintiff, Florida Virtual School*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 3, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

***/s/ Stephen H. Luther***