**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

      Plaintiff,

v.                                                                    Case No:   6:20-cv-2354-GAP-EJK

K12, INC. and K12 FLORIDA, LLC,

      Defendants

---

**ORDER**

This cause came before the Court for consideration on Defendants' Motion to Exclude Testimony of Daniel Gallogly (Doc. 267) and Plaintiff's Response in Opposition (Doc. 274).[1] At a hearing on August 22, 2023, the Court ruled that the Motion will be granted in part.

## I.    Background

In this round of litigation between two competitors in the online education services market, Plaintiff Florida Virtual School[2] ("Plaintiff") sues Defendants

---

[1] Unredacted versions of Defendants' Motion, Plaintiff's Response, and the exhibits thereto are filed under seal at Doc. 268 and Doc. 273, respectively.

[2] Plaintiff is an agency of the Florida state government, formed under Fla. Stat. § 1002.37. *See* Doc. 1, ¶¶ 2, 7-8; Doc. 155 ¶ 6.

K12, Inc. and K12 Florida, LLC, dba Stride, Inc.,[3] ("Defendants") for trademark infringement, unfair competition, and false advertising,[4] in addition to breach of a 2015 Settlement Agreement executed by the parties. Doc. 1; *see also* Doc. 155, ¶ 17. The parties' present dispute primarily relates to Defendants' allegedly improper use of certain marks registered to Plaintiff in 2010 and 2017. Doc. 1, ¶¶ 41-46; *see also* Doc. 1-1 at 1-19.

In the instant Motion, Defendants move to strike the expert report and testimony of Daniel Gallogly ("Mr. Gallogly"), Plaintiff's damages expert, arguing that his conclusions regarding Plaintiff's lost profits are impermissible under *Daubert* because they are based on speculation and conjecture and are otherwise flawed, unreliable, and unhelpful.[5] Doc. 267 at 12. Defendants primarily take issue with the fact that, throughout his lost profits analysis, Mr. Gallogly assumed all of Defendants' students would have registered as Plaintiff's students but for Defendants' alleged misconduct. *See id.* at 12-26. In response, Plaintiff contends that Mr. Gallogly's

---

[3] Defendants are a for-profit, nationwide provider of online and blended learning programs for public and private schools, school districts, and charter boards. Doc. 155, ¶¶ 3-4.

[4] The Court has already granted summary judgment against Plaintiff on its false advertising claim. *See* Doc. 261.

[5] The Court recognizes that Defendants also made arguments regarding Mr. Gallogly's disgorgement analysis and opinions. However, because disgorgement is an equitable remedy, the Court will not address those arguments at this time.

- 2 -

"limited role as a damages expert entitles him to assume liability and causation."

Doc. 274 at 11.

## II.    Legal Standard

Federal Rule of Evidence 702 governs the admission of expert witness testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact at issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

When applying this rule, the Court plays an important "gatekeeping" function to ensure that proposed expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). "District courts are charged with this gatekeeping function to ensure that speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation, expert testimony." *Hughes v. Kia Motors Corp.*, 766 F.3d 1317, 1328–29 (11th Cir. 2014) (internal citations omitted).

The *Daubert* court identified four factors that district courts should consider when assessing the reliability of an expert's testimony: (1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *See id.* at 593–94. However, the Supreme Court has emphasized that these factors are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999).

## III.    Analysis

Although Mr. Gallogly is qualified to testify as a damages expert, his lost profits opinion fails to meet even basic standards of reliability and helpfulness. While a damages expert may generally assume that a plaintiff will prevail on each of its *separate* claims when calculating actual damages, the expert cannot also assume that Plaintiff would have obtained *all* of Defendants' student registrations had Defendant not engaged in allegedly unlawful conduct. *See* Corrected Amended Expert Report of Daniel J. Gallogly, CPA, CFF (filed under seal at Doc. 268-1, pages 15-16); *see also Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-CV-2376-TWT, 2011 WL 1004657, at *2–3 (N.D. Ga. Mar. 17, 2011) ("It is not necessary that the Plaintiff

- 4 -

allocate damages between legal and actionable conduct with exact certainty. To be admissible, however, [Plaintiff's expert] cannot assume that *all* lost profits were attributable to the Defendant's infringement."). At a minimum, Mr. Gallogly (or any other damages expert) must prove the amount of actual damages that Plaintiff suffered *because of* Defendants' alleged misconduct on a claim-by-claim basis.[6] *See Oakwood Ins. Co. v. N. Am. Risk Servs., Inc.*, No. 6:18-cv-437-Orl-31LRH, 2020 WL 10456817, at *2 (M.D. Fla. Sept. 22, 2020).

Indeed, Mr. Gallogly's lost profits opinion does not rely on any economic, technical, or other specialized knowledge. To reach the same result that he reached regarding Plaintiff's lost profits, one need only rely on simple math: first, *assume* that *all* of Defendants' student registrations during the relevant two-year period were "stolen" from Plaintiff through various means (trademark infringement, false advertising, unfair competition, *and/or* breach of contract); then, multiply that number by the average amount of tuition Plaintiff charges per student; and finally, multiply the prior outcome by a twenty-two percent profit margin. Voilà—the

---

[6] The fact that Mr. Gallogly did not calculate the damages attributable to each claim further increases the unreliability and unhelpfulness of his Report. *See* Gallogly Deposition (filed under seal at Doc. 268-2, pages 286-292 ("I have not allocated the revenue based on claims. So I can't sit here today and say how much would be excluded because there are other claims in the case.")).

resulting number equals Plaintiff's lost profit damages as "calculated" by Mr. Gallogly.

Mr. Gallogly's assumption that *all* of Defendants' students would have registered instead as Plaintiff's students is entirely speculative because there is absolutely *no* evidentiary support for it.[7] Notably, Defendants' rebuttal expert, Shirley Webster, recognized that causation is a critical element in an economically sound calculation of actual damages. *See* Supplemental Expert Rebuttal Report of Shirley Webster (filed under seal at Doc. 268-3). Consequently, because Mr. Gallogly's lost profits opinion is wholly deficient, Plaintiff has *zero* evidence of actual damages, and there is nothing for a jury to consider regarding this issue.

The Court recognizes that proving lost profit damages in a trademark infringement case is often difficult. *See Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353–54 (11th Cir. 2019). But that does not permit Mr. Gallogly (or any other damages expert) to simply ignore the critical element of causation. Rather, the Lanham Act provides Plaintiff with "a broad menu of remedies," including disgorgement. *Id.*; *see* 15 U.S.C. §§ 1116(a), 1117(a). Any disgorgement remedy, if

---

[7] The absurdity of Mr. Gallogly's methodology (or lack thereof) is compounded by his assumption that Plaintiff's "lost profits" can be extrapolated out over the next ten years—thru *2033*—notwithstanding the fact that Plaintiff has no claim of infringement beyond *2022*—the year that Defendants rebranded their product in response to Plaintiff's complaint.

applicable, will be resolved at a bench trial.[8] *See Hard Candy*, 921 F.3d at 1364 (11th Cir. 2019) ("The historical evidence reveals that the particular remedy sought by [the plaintiff]—an accounting and disgorgement of [the defendant's] profits as an alleged infringer—is a creature of equity. For that reason the Seventh Amendment's guarantee of a jury trial does not apply."); *see also Superior Consulting Servs., Inc. v. Shaklee Corp.*, No. 6:16-cv-2001-Orl-31GJK, 2018 WL 3155731 (M.D. Fla. June 28, 2018), *aff'd*, No. 19-10771, 2021 WL 4438518 (11th Cir. Sept. 28, 2021).

## IV.   Conclusion

Accordingly, it is **ORDERED** that Defendants' Motion to Exclude Testimony of Daniel Gallogly is **GRANTED in part.** Mr. Gallogly's Report with respect to lost profits is hereby **STRICKEN**, and Mr. Gallogly will not be allowed to testify in that regard.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 25, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[8] The Court reserves ruling on any opinion testimony that Mr. Gallogly may be asked to present with respect to disgorgement.