**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

        Plaintiff,

v.                                    Case No:   6:20-cv-2354-GAP-EJK

K12, INC. and K12 FLORIDA, LLC,

        Defendants

## ORDER

This cause is before the Court upon Plaintiff's and Defendants' cross-motions for summary judgment on Defendants' Counterclaim (Docs. 249, 250). The Court has likewise considered the parties' responses in opposition, replies, and Plaintiff's sur-reply (Docs. 270, 271, 276, 277, 280).

### I.    Background

Plaintiff Florida Virtual School[1] ("Plaintiff") sued Defendants K12, Inc. and K12 Florida, LLC, dba Stride, Inc.[2] ("Defendants"), for trademark infringement,

---

[1] Plaintiff is an agency of the Florida state government, formed under Fl. Stat. § 1002.37. Doc. 155, ¶ 6.

[2] Defendants are a for-profit, nationwide provider of online and blended learning educational programs for public and private schools, school districts and charter boards. Doc.

unfair competition, and false advertising, in addition to breach of a 2015 Settlement

Agreement ("Settlement Agreement") resolving prior litigation between the parties.

Doc. 1. The dispute stems from Defendants' alleged improper use of certain marks

registered to the Plaintiff in 2010 and 2017. *Id.*, ¶¶ 41-46; *see also* Doc. 1-1 at 1-19. The

parties are competitors in the online educational services market. Doc. 155, ¶ 17.

The Settlement Agreement resolved a prior dispute[3] between these parties

involving two of the marks at issue in the present litigation—trademark

registrations No. 3,830,765 and No. 3,873,393. *See* Doc. 250-1. In addition to federal

trademark infringement claims, Plaintiff's prior complaint asserted claims for

service mark infringement and false designation of origin under the Lanham Act,

and common law infringement and unfair competition under Florida law. *See id.*, ¶

A. While that litigation was pending, Defendants filed a Petition for Cancellation of

Plaintiff's marks ("Cancellation Proceeding") at the U.S. Patent & Trade Office's

("PTO's") Trademark Trial and Appeal Board ("TTAB"). *Id.* The parties ultimately

filed a joint stipulation of dismissal with prejudice after settling their dispute. *See*

*id.*; *see also Florida Virtual School v. K12, Inc. and K12 Florida, LLC*, 6:11-cv-831-Orl-

KRS, Doc. 130 (M.D. Fla. May 18, 2015). The Settlement Agreement's release clauses

---

155, ¶ 4.

[3] *See Florida Virtual School v. K12, Inc. and K12 Florida, LLC*, 6:11-cv-831-Orl-KRS, Docs. 1,
130 (M.D. Fla. May 18, 2015).

excused both parties from any future liability for any and all claims "arising out of or relating in any way to" the aforementioned litigation and Cancellation Proceeding. *Id.*, ¶¶ 6(a)-(b).

The instant case was filed on December 22, 2020, after Plaintiff determined that Defendants had breached the Settlement Agreement and were infringing on its rights. *See* Doc. 1. After litigating the instant case for nearly two years, Defendants discovered during deposition testimony of Plaintiff's executives and former executives that Plaintiff had not been using its marks in commerce to serve the pre-k and primary school markets since 2002, as its trademark registration applications had attested. Doc. 133 at 7-9. Defendants subsequently filed a Petition for Cancellation of Plaintiff's marks with the TTAB on January 11, 2023. *Id.* at 9-10. On February 21, 2023, Plaintiff filed a motion to suspend the TTAB proceeding in deference to the "parallel" proceeding unfolding in this Court, which the TTAB granted on March 7, 2023. Doc. 133 at 10; Doc. 152-1.

Upon receiving permission from the Court, Defendants then amended their Answer on March 13, 2023, to include the instant Counterclaim. *See* Doc. 153; *see also* Doc. 155. Defendants' Counterclaim seeks to cancel Plaintiff's registered marks on the basis of alleged fraudulent representations it made to the PTO during the application process. Doc. 155, ¶ 55. The Counterclaim avers that Plaintiff made materially false representations that its marks were used in connection with

- 3 -

services, namely to the pre-kindergarten ("pre-k") and kindergarten through fifth grade ("primary") markets, dating back to at least 2002 when, in fact, Plaintiff did not offer such services to those markets at that time. *Id*. After this Court denied Plaintiff's motion to dismiss (Doc. 234), the parties filed cross motions for summary judgment. *See* Docs. 234, 249, 250. Upon review of the parties' extensive briefing and oral argument, the matter is ripe for decision.

## II.     Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. When considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). The court is not, however, required to accept all of the

- 4 -

non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994).

### III.   Analysis

*A. Plaintiff's Defenses*

#### 1.   Sovereign Immunity

Plaintiff first argues, for the second time, that Defendants' Counterclaim is barred by sovereign immunity. Doc. 250 at 6-12. The Court already considered this argument and found that Plaintiff has waived sovereign immunity by its litigation conduct. *See* Doc. 234 at 6-12; *see also Lapides v. Board of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 619 (2002) ("[A] State's voluntary appearance in federal court amount[s] to a waiver of its Eleventh Amendment immunity."); *Frederick v. U.S.*, 386 F.2d 481, 488 (5th Cir. 1967) ("As defined in 13(c), a counterclaim may diminish or defeat the recovery sought by the opposite party—this far the government's waiver goes.").

Though a state "can retain immunity from liability for a particular claim even if it waives its immunity from suit in federal courts," there is no analog in this case to Alabama's "nearly impregnable" immunity under the ADEA. *Stroud v. Mcintosh*, 722 F.3d 1294, 1301, 1303 (11th Cir. 2013). Moreover, after voluntarily invoking this Court's jurisdiction and persuading the TTAB to suspend Defendants' cancellation proceedings in deference to the instant one, Plaintiff cannot employ a "selective use

- 5 -

of immunity to achieve litigation advantages." *Id.* at 1302; *see also Lapides*, 535 U.S. at 619-620 ("[A]n interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to achieve litigation advantages."). It did not raise the defense of sovereign immunity in the TTAB and its attempt to do so here after successfully suspending those proceedings contradicts the reasoning set forth in *Lapides* and *Stroud*. Doc. 271 at 9; *see also* Docs. 152, 152-1; *Lapides*, 535 U.S. at 619-20; *Stroud*, 722 F.3d at 1302.[4]

### 2. *Res Judicata*[5]

---

[4] The Court acknowledges Plaintiff's citations to cases like *Nasalok* for the proposition that, in some cases, counterclaims for cancellation and underlying actions for infringement arise under distinct "transactions or occurrences" under Fed. R. Civ. P. 13(a). *See* Doc. 250 at 9-12; *see also Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320 (Fed. Cir. 2008). However, neither *Nasalok*, nor the other cases cited by Plaintiff, involved a state agency initiating an infringement suit in federal court, successfully moving to suspend a parallel TTAB cancellation proceeding of the relevant marks, and then asserting sovereign immunity as a defense to the cancellation claim when it is brought as a counterclaim in federal court. 522 F.3d at 1325-26; *see also* Doc. 250 at 9-12. The facts in this matter are distinguishable from those cases.

[5] At the motion to dismiss stage of this lawsuit, bound by the four corners of Defendants' Amended Answer, this Court determined that Defendants' assertions of fraud could not be released under Florida contract law. Doc. 234 at 15-16. With the benefit of the complete record now before the Court, however, the issue has crystalized. Plaintiff persuasively argued that Defendants have not asserted a fraudulent inducement defense to Plaintiff's claims for breach of the Settlement Agreement here; they have asserted a Counterclaim for cancellation of a trademark registration. *See* Doc. 155, ¶¶ 54-75. The exception for fraud claims outlined in *Viridis* which this Court relied upon is therefore inapposite here. *See* Doc. 234 at 15-16; *see also Viridis Corp. v. TCA Global Credit*

Plaintiff argues that Defendants' instant Counterclaim is based on the same facts and filings which formed the basis for its prior Cancellation Proceeding and is therefore precluded. Doc. 250 at 12-13. "*Res judicata*, or claim preclusion, bars relitigation of matters that were litigated or could have been litigated in an earlier suit." *Manning v. City of Auburn*, 953 F.2d 1355 (11th Cir. 1992) (quoting *Nevada v. United States*, 463 U.S. 110, 130 (1983)). "A claim is barred by res judicata, i.e., claim preclusion, when (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Consumer Fin. Prot. Bureau v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1083 (11th Cir. 2022) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)) (internal quotation marks omitted). Importantly, "*res judicata* applies not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.*

The Eleventh Circuit has held that "when two parties settle a lawsuit, that suit's *res judicata* effect is 'controlled by the Settlement Agreement into which the parties entered.' " *Ocwen Finanical*, 30 F.4th at 1083 (quoting *Norfolk Southern Corp.*

---

*Master Fund, LP*, 721 F. App'x 865, 875-76 (11th Cir. 2018).

*v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004) ("Where the parties consent to such a dismissal based on a settlement agreement…the principles of *res judicata* apply (in somewhat modified form) to the matters specified in the settlement agreement, rather than the complaint."). A dismissal with prejudice based on a settlement "receives its legitimating force from the fact that the parties consented to it." *Norfolk Southern*, 371 F.3d at 1288; *see also Balbirer v. Austin*, 790 F.2d 1524, 1528 (11th Cir.1986) ("[A] consent judgment cannot constitute collateral estoppel unless the party pleading collateral estoppel proves from the record of the prior case or through extrinsic evidence that the parties intended the consent judgment to operate as a final adjudication of a particular issue.").

Here, there is no dispute that the first three elements are satisfied: the dismissal with prejudice constituted a final judgment on the merits,[6] this Court had proper jurisdiction,[7] and both Plaintiff and Defendants were parties to it. *See Florida Virtual School*, 6:11-cv-831-Orl-KRS at Docs. 1, 130; *see also Norfolk Southern*, 371 F.3d at 1288. The question is whether Defendants' Counterclaim seeking to cancel

---

[6] Like in *Norfolk Southern*, here, "a prior action between the same parties had concluded with a settlement agreement and a dismissal with prejudice under [Fed. R. Civ. P.] 41." *Ocwen Financial*, 30 F.4th at 1083; *see Norfolk Southern*, 371 F.3d at 1287; *see also Astron Indus. Assoc., Inc. v. Chrysler Motors Corp.*, 405 F.2d 958, 960 (5th Cir.1968) ("[A] stipulation of dismissal with prejudice ... normally constitutes a final judgment on the merits which bars a later suit on the same cause of action.").

[7] The prior case was likewise brought under federal trademark law pursuant to 28 U.S.C. § 1331. *See Florida Virtual School*, 6:11-cv-831-Orl-KRS at Doc. 1, ¶¶ 1, 6.

Plaintiff's trademark registrations for fraud on the PTO is precluded—as to the 2010 marks—by the Settlement Agreement.

"To determine the preclusive effect of a consent judgment, we must apply traditional principles of contract law to ascertain the parties' intent." *Ocwen Financial*, 30 F.4th at 1084 (citing *Norfolk Southern*, 371 F.3d at 1289)); *see also Feaz v. Wells Fargo Bank, N.A.*, 745 F.3d 1098, 1104 (11th Cir. 2014) ("Traditional contract-interpretation principles make contract interpretation a question of law, decided by reading the words of a contract in the context of the entire contract and construing the contract to effectuate the parties' intent."). Here, the Settlement Agreement included a broad release section whereby Defendants released Plaintiff

> from any and all actions, causes of actions, *counterclaims*…or demands of any kind or nature whatsoever, in equity or otherwise, *whether known or unknown*, which [Defendants] *ever had, now ha[ve], or may hereafter claim to have had*, against [Plaintiff] on or before the Effective Date *arising out of or relating in any way to the Claims or the Litigation*.

Doc. 250-1, ¶ 6(b) (emphasis added). The "Claims or the Litigation" refer to all of Plaintiff's prior infringement claims in addition to the Cancellation Proceeding Defendants initiated at the TTAB on August 7, 2015. *Id.*, ¶¶ A.-C. Defendants' Cancellation Proceeding was grounded, in part, in their contention that Plaintiff committed fraud on the PTO during the application process by falsely declaring substantially exclusive use and right to use. Doc. 250-2, ¶¶ 7, 29-30. The Kruppenbacher Declaration is cited as one source of Plaintiff's knowingly false

statements. *See id.,* ¶ 29.

Plaintiff insists that it is entitled to summary judgment as to the 2010 registrations—No. 3,830,765 & No. 3,873,393—because the Settlement Agreement expressly released it from liability for Defendants' Counterclaim for fraud on the PTO. *See* Doc. 250 at 12. Defendants' Cancellation Proceeding in 2015 alleged Plaintiff committed fraud in its applications to register these marks with the PTO and, in the Settlement Agreement, Defendants agreed to release Plaintiff from liability for any claims—known or unknown—that it ever had relating to that Cancellation Proceeding. *Id.* at 14; *see also* Doc. 250-1, ¶6(b). Moreover, the Kruppenbacher Declaration, which serves as a substantial basis for Defendants' instant Counterclaim, was not only available before the Settlement Agreement was signed, but it served as one of the primary grounds for Defendants' original fraud claim in the 2015 Proceeding. *Id.* at 12-13. Pointing to the complete record now available to the Court on summary judgment, Plaintiff argues that Defendants' Counterclaim clearly arises out of and relates to the same claims that were the subject of the Settlement Agreement and is therefore precluded by *res judicata. Id.* at 12-13.

Defendants counter that they relied on Plaintiff's prior representations in court and PTO filings that Plaintiff offered pre-k and primary school educational services, only to learn pursuant to the present litigation that it has actually never

done so. Doc. 271 at 14-15. These filings Defendants purportedly relied upon, however, were the very same filings from which they deduced other allegations of fraud in 2015. *See* Doc. 250-2 at ¶¶ 29 (citing the Kruppenbacher Declaration, *id.* at 57-58, and the Response to Office Action, *id.* at 60-66). The same documents Defendants now rely on were available before the Settlement Agreement was signed and, as evidenced by their claims in the Cancellation Proceeding, Defendants had every opportunity to investigate and assert their instant claim for fraud in the earlier TTAB action. *See generally id.*; *see also Manning*, 953 F.2d at 1358.

In the absence of any indication to the contrary, courts in Florida interpret contractual terms by their plain meaning. *Parrish v. State Farm Florida Ins. Co.*, 356 So.3d 771, 774-75 (Fla. 2023) (citing *Robbinson v. Central Properties, Inc.*, 468 So.2d 986, 988 (Fla. 1985) ("In construing contracts, the intention of the parties governs, and such intention will be determined from the language used when it is unambiguous.")). The Settlement Agreement, when read in conjunction with the complete record of Defendants' 2015 Cancellation Proceeding in the TTAB, was plainly intended to preclude the instant claim. *See* Doc. 250-1, ¶ 6(b). While Defendants argue they were kept in the dark, standing behind a tree does not leave them blind to the forest. *See* Doc. 271 at 15. Their choice to investigate some of Plaintiff's declarations in its 2010 filings to the PTO but not others cannot supersede the agreement they struck to release Plaintiff from "any and

all…counterclaims…*whether known or unknown*, which [they] ever had, now ha[ve], or may hereafter claim to have had…arising out of or relating in any way to the Claims or the Litigation." Doc. 250-1, ¶ 6(b) (emphasis added). Therefore, Defendants' Counterclaim is precluded by *res judicata* and Plaintiff is entitled to summary judgment as to the 2010 registrations. *See Ocwen Fin. Corp.*, 30 F.4th at 1083 .

### B. Cancellation for Fraud on the PTO

"In any action involving a registered mark the court may…order the cancellation of registrations, in whole or in part" when such action is warranted. *See* 15 U.S.C. § 1119. "One ground on which a party may petition to cancel a registered service mark is that the registration was obtained fraudulently." *Select Export Corp. v. Richeson*, 2011 WL 13135114, *9 (S.D. Fla. May 5, 2011); *see* 15 U.S.C. § 1064(3). Fraud occurs when an applicant "knowingly makes false, material representations of fact in connection with an application for a registered mark." *Sovereign Mil. Hosp. Ord. of Saint John v. Florida Priory of the Knights Hosp. of the Sovereign Ord. of Saint John*, 702 F.3d 1279, 1289 (11th Cir. 2012).

Fraud must be proven "to the hilt" with clear and convincing evidence. *Flame & Wax, Inc. v. Laguna Candles*, 2022 WL 3083070 (T.T.A.B. 2022) (citing *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009)). "To carry this burden, a party alleging fraud must show: (1) the applicant made a false representation to the USPTO; (2)

the false representation was material to the registrability of the mark; (3) the applicant had knowledge of the falsity of the representation; and (4) the applicant made the representation with intent to deceive the USPTO." *Id.* at \*20-\*21. "If fraud can be shown in the procurement of a registration, the entire resulting registration is void." *Nationstar Mortgage LLC v. Mujahid Ahmad*, 112 U.S.P.Q.2d 1361, \*4 (P.T.O. T.T.A.B. 2014).

### 1. 2017 Registrations

#### a. *Infectious Invalidity*[8]

Defendants have presented no authority for their contention that fraud committed while procuring a prior registration necessarily invalidates a subsequent, separately filed registration. *See* Doc. 276 at 7-8. Their citation to cases like *Hachette Filipacchi Presse v. Elle Belle, LLC*, are inapposite—in that case the "revised statements" all existed within the universe of a single trademark registration, not across multiple, distinct registrations. 2007 WL 1144946, \*7 (P.T.O. T.T.A.B. 2007); *see also id.* Indeed, these cases strongly suggest cancellation for fraud

---

[8] This Court's order denying Plaintiff's motion to dismiss stated that it "follows logically that the existence of the first registered trademark played a role in the PTOs assessment of subsequent applications to register marks related to and/or derivative of the original." Doc. 234 at 22-23. However, with the benefit of a more complete record, the Court recognizes that the central issue is, in fact, simply whether Plaintiff's 2016 applications contained fraudulent representations.

is tied only to the infected registration. *See Medinol Ltd. V. Neuro Vasx, Inc.*, *4 (P.T.O. T.T.A.B. 2003) ("If fraud can be shown in the procurement of a registration, the entire resulting registration is void.") (citing *General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car Inc.*, 17 U.S.P.Q.2d 1398, 1401 (S.D. Fla. 1990)). It is ultimately immaterial, however, because Defendants' attempt to cancel Plaintiff's 2010 marks for fraud on the PTO—which would necessarily have to serve as the basis for cancelling the 2017 marks under its theory—has failed.

### b. Registration Numbers 5,113,241 and 5,113,259

Plaintiff is correct that its retreat from asserting pre-k use in the goods and services description—which it has expressly acknowledged was never true[9]—distinguishes the veracity of its 2016 applications from its 2010 applications. *See* Doc. 250 at 22. Moreover, these registrations were procured *after* the Settlement Agreement was reached. *See* Doc. 250 at 12. Consequently, as applied to registration numbers 5,113, 241 and 5,113,259, there is no basis in this record for an allegation of fraud. These registrations do not assert use of the marks in commerce in any markets prior to 2016. *See* Doc. 280-1 at 12, 21. Because there is no dispute that Plaintiff was using these marks in the primary market in 2016, Plaintiff is entitled

---

[9] *See* Doc. 270 at 12 ("[Plaintiff] acknowledges that it has never provided pre-k services, although it has investigated and considered providing such services.").

to summary judgment on Defendants' Counterclaim as it pertains to trademark registration numbers 5,113,241 and 5,113,259.

    *c.   Registration Numbers 5,113,225, 5,113,235, and 5,113,248*

Three of Plaintiff's 2017 registrations,[10] however, claim use in primary education, defined by Plaintiff as kindergarten through eighth grade, in commerce since 2002 and 2008. *See id.*; *see also* Doc. 1-1 at 6, 9, 15. The record shows that whether Plaintiff was operating in that primary market—even by its own definition—is a disputed issue of fact. Doc. 250-3 at 17:13-24 ("As I stated, middle school was our initial launch into primary in *2004*…") (emphasis added) *cf.* Doc. 252-1 (purported records showing over 800 enrollments in "Flex 6-8" from 2002-2003).

Moreover, Defendants dispute whether the term "primary" can be interpreted to include middle school. Doc. 271 at 23-25. They argue—with support from the record—that it means only kindergarten through fifth grade and that, therefore, Plaintiff could not have used these marks in the "primary school (K-5) market before July 31, 2008, *at the earliest*, when it entered into its agreement with

---

[10] Registration numbers 5,113,225 and 5,113,235 state that the mark was first used in commerce "00-00-2002." Doc. 280-1 at 3, 8. Registration number 5,113,248 states that the mark was first used in commerce "1-00-2008." *Id.* at 16. The descriptions state that the marks are associated with the provision of educational services, "namely, providing online courses of instruction at the *primary* and secondary level…" *See id.* at 3, 8, 16.

Connections." [11] Doc. 249 at 11, ¶16 (emphasis original). It follows that the statements that each of those three marks were used in the primary market since "00-00-2002" and "1-00-2008," respectively, may have been false. *See* Doc. 1-1 at 6, 9, 15.

Accordingly, whether these three registrations were fraudulently procured presents disputed questions of material fact regarding falsity, knowledge, and intent.[12] However, the Court recognizes that the materiality prong of this analysis is a question of law that is simply answered in the affirmative—Plaintiff's statements in its filings to the PTO were material. *Nationstar Mortgage*, 112 U.S.P.Q.2d at *3 (P.T.O. T.T.A.B. 2014) ("'An applicant's statements as to its use of a mark for particular goods and services are unquestionably material to registrability."); *see also* TMEP § 1109.03 ("The applicant may not file a statement of

---

[11] The Court notes that whether Plaintiff's agreement with Connections involved using these trademarks is also an issue of disputed, material fact. Defendants state that the 2008 agreement did not authorize Connections to use Plaintiff's marks. Doc. 249 at 5, ¶6. Plaintiff counters that its evidence shows that the marks were used for years to promote Connections courses for students who enrolled in their school. Doc. 270 at 16-17. The contract provides only that *Plaintiff* "will be granted the use of such logos and trademarks so long as the [Plaintiff] shall sign a Trademark License Agreement…" Doc. 249-12 at 7. There is no indication in the contract that Connections would be utilizing *Plaintiff's* marks in 2008. *See generally id.*

[12] The Court acknowledges the holding in *Chutter, Inc. v. Great Mgmt. Grp., LLC*, that, "as a matter of law…reckless disregard satisfies the requisite intent for fraud on the USPTO in trademark matters." Opposition No. 91223018 (P.T.O. T.T.A.B. 2021) (consolidated with *Chutter, Inc. v. Great Concepts, LLC*, Cancellation No. 92061951 (P.T.O. T.T.A.B. 2021)). However, because disputed issues of material fact as to the other elements remain open, the Court defers ruling on this issue until trial.

use until the applicant has made use of the mark in commerce on or in connection with all goods/services specified in the notice of allowance, unless the applicant files a request to divide.").[13]

## 2. Common Law Rights

Defendants contend in their Response that, should Plaintiff's federal trademarks be cancelled, so too should any rights Plaintiff may enjoy to those marks at common law. Doc. 271, n. 7 (citing *Select Export Corp. v. Richeson*, 2011 WL 13135114, *9 (S.D. Fla. May 5, 2011)). Plaintiff, however, correctly argues that cancellation of its federal registrations would provide no basis for cancellation of its common law rights. Doc. 277 at 8. Fraudulent or defective federal registrations of trademarks "have no impact on…common-law trademark rights to the marks." *Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1140 (11th Cir. 2018). Whether or not Plaintiff holds common law rights is a distinct question the Court does not examine here.[14]

---

[13] Indeed, "the law is clear that an applicant may not claim a Section 1(a) filing basis unless the mark was in use in commerce or in connection with *all* the goods or services covered by the Section 1(a) basis as of the application filing date." *Nationstar Mortgage*, 112 U.S.P.Q.2d at *3 (emphasis original). Applicant statements "are a fundamental statutory precondition to the issuance of a registration covering such goods and services and are relied upon by the USPTO's examining attorney in approving a use-based application for publication." *Id.* Moreover, amendments made after publication to cure any such fraud "cannot aid [an] applicant in defense of that claim." *Id.*

[14] "To acquire common-law rights to a trademark, a party must have demonstrated prior

- 17 -

## IV.    Conclusion

Whether Plaintiff committed fraud on the PTO in registering three of its trademarks in 2017—No. 5,113,225, No. 5,113,235, and No. 5,113,248—is a question for the fact finder. However, Defendants' effort to cancel Plaintiff's marks originally registered in 2010— No. 3,830,765, No. 3,873,393—is precluded by the Settlement Agreement. Defendants have additionally failed to present any evidence that Plaintiff's two 2017 registrations—No. 5,113,241 and No. 5,113,259—were obtained fraudulently and Plaintiff is therefore entitled to summary judgment as regards those registrations.

Accordingly, it is **ORDERED** that Defendants' motion for partial summary judgment is hereby **DENIED** and Plaintiff's motion for summary judgment is hereby **GRANTED in part** as applied to trademark registration numbers 3,830,765, 3,873,393, 5,113,241 and 5,113,259, and is otherwise **DENIED.**

---

use of the mark in commerce. Prior use, in turn, is established with "[e]vidence showing, first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark."" *Commodores*, 879 F.3d at 1131 (citing and quoting *Crystal Ent. & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011)) (internal quotations and citations omitted).

**DONE** and **ORDERED** in Orlando, Florida on August 25, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties