**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

      Plaintiff,

v.                                     Case No:   6:20-cv-2354-GAP-EJK

K12, INC. and K12 FLORIDA, LLC,

      Defendants

---

**ORDER**

This cause is before the Court without oral argument on Plaintiff and Defendants' cross motions for summary judgment. Docs. 141, 142, 150; *see also* Docs. 139, 143, 144 (redacted filings). The Court has also considered the parties' responses in opposition and replies. Docs. 171, 176, 182, 185.

**I.      Background**

Plaintiff Florida Virtual School[1] ("Plaintiff") brought suit against Defendants K12, Inc. and K12 Florida, LLC, dba Stride, Inc.[2] ("Defendants"), for trademark

---

[1] Plaintiff is an agency of the Florida state government, formed under Fl. Stat. § 1002.37. Doc. 155, ¶ 6.

[2] Defendants are a for-profit, nationwide provider of online and blended learning educational programs for public and private schools, school districts and charter boards. Doc. 155, ¶ 4.

infringement, unfair competition, and false advertising,[3] in addition to breach of a 2015 Settlement Agreement ("Settlement Agreement") resolving prior litigation between the parties.[4]  Doc. 1; *see also* Doc. 250-1. The dispute stems from Defendants' alleged breach of the Settlement Agreement and infringement upon certain marks registered to Plaintiff in 2010 and 2017. *Id.*, ¶¶ 41-46; *see also* Doc. 1-1 at 1-19. The parties are competitors in the online educational services market. Doc. 155, ¶ 17.

   *A.  The Trademarks*

Plaintiff's marks at issue in this case include federal trademark registrations No. 3,830,765 and No. 3,873,393, which were registered in 2010 and formed the basis of the previous litigation between these parties. *See* Doc. 1-1, *Florida Virtual School v. K12, Inc. and K12 Florida, LLC*, 6:11-cv-831-Orl-KRS, Docs. 1, 130 (M.D. Fla. May 18, 2015). Those two marks have subsequently attained "incontestable status" with the United States Patent and Trademark Office ("PTO"). *See* Doc. 142-1, ¶ 7. Plaintiff's other marks at issue, which were registered in 2017, are: No. 5,113,225, No. 5,113,235, No. 5,113,248, No. 5,113,241, and No. 5,113,259. *See* Doc. 1-1. The PTO has recognized that all of Plaintiff's marks containing the full "Florida Virtual

---

   [3] The Court granted Defendants' motion for summary judgment, in part, on Plaintiff's Count V claim for false advertising in conjunction with its order striking the expert report and testimony of Jeffrey Stec. *See* Doc. 261.

   [4] *See Florida Virtual School v. K12, Inc. and K12 Florida, LLC*, 6:11-cv-831-Orl-KRS, Docs. 1, 130 (M.D. Fla. May 18, 2015).

School" name have acquired secondary meaning under Section 2(F) of the Lanham

Act. *See* Doc. 1-1 at 2, 6, 15, 18; *see also* Doc. 141 at n. 3, 15 U.S.C. § 1052(f). Plaintiff's

marks are listed here:

| Mark | Registration Number |
|---|---|
| FLORIDA VIRTUALSCHOOL | 3,830,765 |
| FLVS | 3,873,393 |
| FLORIDA VIRTUAL SCHOOL | 5,113,225 |
| FLVS | 5,113,235 |
| | 5,113,241 |
| | 5,113,248 |
| | 5,113,259 |

Doc. 141 at 4. Defendants' "Florida Online School" mark has no asserted registration or trademark protection, however, it can be seen in Plaintiff's comparison of the parties' websites, as reproduced here:



*Id.* at 10.

### B. The Present Dispute

In 2019, Defendants negotiated a deal to provide "online learning solutions" in Florida to the Hendry County School District ("HCSD") through an entity they named "Florida Online School," with the acronym "FLOS." Doc. 150 at 6. The school formally began accepting enrollments on June 12, 2019. Doc. 29-2. Plaintiff's Interim President and CEO at the time, Dhyana Ziegler, was notified on June 20, 2019, that FLOS had commenced operations. Docs. 139-9 at 2, 139-10 at 56:5-59:6. No immediate action was taken by Ziegler or her successor. *See* Docs. 139-10 at 58:20-59:6, 150-7 at 2-7.

Following its discovery of FLOS's volume of enrollments during the 2019-2020 school year, Plaintiff's counsel sent a demand letter to Defendants on August 3, 2020, challenging their use of the Florida Online School name and FLOS acronym. Docs. 150 at 7-8, 1, ¶ 37; *see also* Doc. 171 at 17. Plaintiff also demanded that Defendants remove language from their website that it alleged was prohibited by paragraph 5(d) of the Settlement Agreement—namely, the use of the words "Florida" and "Virtual" together. Doc. 150 at 8; *see* Doc. 141 at 8. The same Settlement Agreement allowed Defendants to continue hosting several website domains associated with Plaintiff's marks—such as flva.k12.com or k12.com/flva—as redirects until December 31, 2016. Doc. 250-1, ¶¶ 5(a)(3), 5(b)(3). However, Plaintiff discovered the domains were still redirecting visitors to Defendants' websites and demanded they relinquish control of the domains in a subsequent August 26, 2020, letter. Docs. 142-1, ¶ 15, 142-5 at 202:1-21, 142-6.

Defendants disagreed with Plaintiff's characterization of these alleged breaches but nevertheless acquiesced to its demands "to avoid any further dispute." Doc. 150 at 8-9. In response to Plaintiff's second demand letter, Defendants transferred ownership of the offending domains to Plaintiff on September 21, 2020. *See* Docs. 1, ¶ 61, 141 at 8-9; *see also* Doc. 176 at 19. HCSD and Defendants then embarked on a rebranding effort whereby Florida Online School was renamed the "Digital Academy of Florida." Doc. 150 at 8. This change became effective on

February 2, 2021, after approval from the HCSD Board. *Id.*, *see also* Docs. 139-7 at 19-22, 139-38 at 16.

Despite Defendants' remedial actions, Plaintiff filed the instant lawsuit on December 22, 2020, seeking compensatory damages, disgorgement, attorneys' fees, and a permanent injunction. Doc. 1 at 19-21. After identifying issues of disputed fact in Defendants' Counterclaim[5] (*see* Doc. 155), the Court set a schedule for a bifurcated bench trial. *See* Doc. 293, ¶ 1. The Court now resolves the parties' motions for summary judgment on the central issues of liability for trademark infringement and breach of contract.

## II.    Legal Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[5] After discovering evidence indicating that Plaintiff may have committed fraud on the PTO during the application process for the trademarks underlying this case, Defendants—with leave from the Court—amended their Answer to include a counterclaim seeking cancellation of the marks. *See* Docs. 133, 151, 153, 155. On the parties' motions for summary judgement on the Counterclaim, the Court ruled that there were triable issues of fact pertaining to three of Plaintiff's marks. Doc. 289 at 18. The Court also found that the Counterclaim was precluded by the Settlement Agreement as to Plaintiff's two original 2010 marks and that Defendants did not present any evidence to support their Counterclaim as applied to the remaining two marks. *See id.*

242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. When considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). The court is not, however, required to accept all of the non-movant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458–59 (11th Cir. 1994).

### III.   Analysis

#### *A. Breach of the Settlement Agreement*

Plaintiff contends that Defendants breached the Settlement Agreement by failing to relinquish their infringing domain names on a timely basis. Doc. 141 at 12. Defendants concede that a technical breach occurred but argue that Plaintiff suffered no injury as a result. Doc. 150 at 32. Plaintiff points to Paragraph 15 of the Settlement Agreement for the proposition that Defendants' actions caused *de facto* "substantial and irreparable injury." Doc. 141 at 13. Paragraph 15 merely acknowledges that injunctive relief and specific performance are available remedies

- 7 -

for a breach, however, and since Defendants ultimately performed their obligations, application of that provision has been mooted. *Id.*; *see also* Doc. 1, ¶ 61.

Damages are an essential element of a breach of contract claim. *Rauch, Weaver, Norfleet, Kurtz & Co., Inc. v. AJP Pine Island Warehouses, Inc.*, 313 So.3d 625, 630 (Fla. 4th DCA 2021) ("The three elements of a breach-of-contract actions are: (1) a valid contract; (2) a material breach; and (3) damages."). The Court has found that Plaintiff has offered no evidence of actual damages.[6] *See* Docs. 141 at 12-13, 171 at 16-17; *see also* Doc. 150-13 at 3-5. Accordingly, Plaintiff's breach of contract claim has no merit, and summary judgment will be entered against Plaintiff on this count.

Plaintiff contends that nominal damages are appropriate and requests an award of $1.00. *See* Doc. 182 at 7. Assessment of nominal damages is a matter within the Court's discretion. *See Wilson v. University Cmty. Hosp., Inc.*, 101 So.3d 857, 858-59 (Fla. 2d DCA 2012) (citing *Hutchison v. Tompkins*, 259 So.2d 129, 132 (Fla.1972) ("[T]he Florida Supreme Court has held that nominal damages *may* be recovered in cases where there is proof of injury but there is no evidence or insufficient evidence to show the actual amount of damages.") (emphasis added)). Nominal damages

---

[6] The Court acknowledges that Plaintiff contends that its evidence of confusion is sufficient for a jury to award it damages. Doc. 182 at 7. However, in the absence of any other evidence of injury, reference to a solitary misprinted news article is not sufficient to show damage from Defendants' tardy relinquishment of the FLVA.com domain. *Id.*; *see also* Doc. 101 at 4-5.

may be appropriate to vindicate a right when the harm cannot be measured by economic damages, such as the violation of one's constitutional rights. And the vindication of that right with a nominal damages award may support the award of attorneys' fees or punitive damages. *See, e.g., Lassitter v. International Union of Operating Eng'rs*, 349 So.2d 622, 625-26 (Fla. 1976) ("[T]he establishment of liability for a breach of duty will support an otherwise valid punitive damage award even in the absence of financial loss for which compensatory damages would be appropriate."). Here however, the contractual breach was technical in nature and caused no measurable harm to Plaintiff. And, since the Settlement Agreement has no prevailing party attorneys' fees provision or opportunity for punitive damages, a nominal damages award would serve no purpose in this case. However, when considering taxable costs, Defendants will not be deemed the prevailing party as to this particular claim.

### B. Trademark Infringement and Unfair Competition[7]

A defendant who, without consent, uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" that "is likely to cause

---

[7] In the Eleventh Circuit, "[c]ourts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims of unfair competition." *Suntree Technologies, Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012); *see also Planetary Motion, Inc. v. Techslposion, Inc.*, 261 F.3d 1188, n. 4 (11th Cir. 2001) (citing *Investacorp, Inc. v. Arabian Inv. Banking Corp.* (*Investcorp*) E.C., 931 F.2d 1519, 1521 (11th Cir.), *cert. denied*, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991)).

confusion, or to cause mistake, or to deceive" is liable for trademark infringement under the Lanham Act. 15 U.S.C. § 1114(1); *Florida Int'l Univ. Bd. of Trs. v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) [hereinafter "*FIU Board*"]. "To prevail under this section, a claimant must show (1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

Courts in the Eleventh Circuit consider seven factors when assessing whether a likelihood of consumer confusion exists: "(1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *FIU Board*, 830 F.3d 1255 (citing *Tana v. Dantanna's*, 611 F.3d 767, 774–75 (11th Cir.2010)). The strength of the mark and evidence of actual confusion are the most important factors. *See id.* (citing *Aronowitz v. Health–Chem Corp.*, 513 F.3d 1229, 1239 (11th Cir.2008)).

In some contexts, like the instant case, courts are mindful that "sophisticated consumers of complex goods or services are less likely to be confused than casual purchasers of small items." *Id.* at 1256. Indeed, in *FIU Board*, the Eleventh Circuit held that "students looking for a college to attend are likely to be relatively sophisticated and knowledgeable because of the nature, importance, and size of the investment in a college education." *Id.* The Court recognizes that this case involves the selection of online course material in the K-12 market, as opposed to the collegiate market, however the nature and importance of a parent's choice regarding where and how to educate their children carries comparable weight.

### 1. Strength of the Marks

First, the Court looks to the strength of the allegedly infringed marks. The Eleventh Circuit instructs courts to first classify a mark as "generic, descriptive, suggestive, or arbitrary based on the relationship between the mark and the service or good it describes." *FIU Board*, 830 F.3d at 1256. "Generic marks are the weakest and not entitled to protection" and arbitrary marks are "the strongest of the four categories." *Id.* at 1256-57. Courts then look to the "degree to which third parties make use of the mark." *Frehling*, 192 F.3d at 1335. The more that third parties use the mark, the weaker it is, and the less protection it deserves. *Id.* Furthermore, if a mark has been declared "incontestable" by the PTO, "then the mark's incontestability serves to enhance its strength." *Id.* at 1336.

Plaintiff argues that its marks are at least descriptive, or that they "describe a characteristic or quality of an article or service." *Id.* It contends that its marks have acquired strength and secondary meaning through decades of continuous use, investment in good will, and extensive marketing efforts. Doc. 141 at 14-15. Moreover, it points to the fact that its 2010 marks have been recognized by the PTO as incontestable registrations.[8] *See* Doc. 144-1, ¶ 7; *see also Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) ("Because Dieter's mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark.").

Defendants counter, however, that Plaintiff's marks are inherently weak. Doc. 176 at 13. They argue that "Florida" is geographically descriptive and entitled to minimal protection and that "Virtual" merely describes the method by which Plaintiff delivers its services. Doc. 150 at 23. Indeed, Plaintiff's "Florida Virtual School" registrations—5,113,225 & 3,830,765—explicitly disclaim exclusive right to use the "Virtual School" terms outside of the mark. *See* Doc. 1-1 at 2, 6. Defendants

---

[8] Plaintiff also argues that Defendants are barred from arguing that Plaintiff's 2010 registrations are descriptive or weak because it released any such arguments in the Settlement Agreement. Doc. 171 at 12. However, the strength of the marks does not constitute an "action, cause of action, counterclaim, obligation, suit, debt, [or] cost" subject to the release. Doc. 250-1, ¶ 6(b). Defendants may therefore challenge the strength of these marks when Plaintiff asserts them as a basis for subsequent trademark infringement litigation.

also argue that Plaintiff operates in a "crowded field of similar names"[9] and acknowledges in its own internal documents that "[c]ompetitors frequently use 'Florida', 'Virtual', [and] 'Virtual School' in marketing materials as generic words/phrases to describe their Florida-based schools." *See* Docs. 150 at 23, 150-3 at 10. Defendants further invoke Plaintiff's surveys to indicate that its brand awareness is weak. Doc. 150 at 24.

The incontestability status of two of Plaintiff's marks certainly inures to their strength. *See Dieter*, 880 F.2d at 329. However, that presumption can be rebutted by a showing of "extensive third-party use." *FIU Board*, 830 F.3d at 1257-58 (finding that Florida International University ("FIU") "operat[ed] in a crowded field of three-word university names that involve the words 'Florida' and 'University,' and that th[o]se names…[were] not particularly distinct to consumers"). This case is analogous to *FIU Board* in that the plaintiff there alleged trademark infringement based on its competitor's use in the post-secondary education market of the words "Florida" and "University" in its three-word name. *See id.* at 1257-58.

Here, similarly, the words in the three-word name are "Florida" and "School," and they were allegedly infringed in connection with the K-12 market. *See*

---

[9] *See* Doc. 139-5.

Doc. 1. [10] Unlike the twelve instances of third-party use at play in *FIU Board*, however, Defendants here reference only ten. *See* Doc. 139-5. Moreover, though they state that the list is not exhaustive, at least some of these examples appear to be "franchise[s] of Florida Virtual School," which diminishes any probative value. *See id.*[11] Other outstanding factual questions remain regarding the extent to which Plaintiff's marks have achieved secondary meaning, as well as the full extent of third-party use. Therefore, the Court reserves judgment on the strength of the marks until trial.

## 2. Intent

"If it can be shown that a defendant adopted a plaintiff's mark with the intention of deriving a benefit from the plaintiff's business reputation, this fact alone may be enough to justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. To prevail on this factor, Plaintiff must show that Defendants possessed a "conscious intent to capitalize on [their] business reputation, w[ere] intentionally blind, or otherwise manifested improper intent in

---

[10] The Court acknowledges that Defendants have ceased using the Florida Online School mark, however, the mark is discussed in the present tense for the sake of the reader. *See infra* at 5-6.

[11] For example, compare the "Hillsborough Virtual K-12 program is a franchise of [Plaintiff] . . . [Program acronym is] HVK12," to "Jackson Virtual School is able to offer two (2) different program options, through [Defendants] and [Plaintiff]." Doc. 139-5 at 2.

adopting [the Florida Online School] name and acronym." *FIU Board*, 830 F.3d at 1263 (internal quotation marks omitted).

Plaintiff first argues that Defendants' knowledge of the prior litigation and Settlement Agreement forecloses any innocent explanation for its use of the FLOS marks. *See* Doc. 141 at 21-23. However, as Defendants counter, knowledge alone does not necessarily imply bad faith. *See FIU Board*, 830 F.3d at 1263. Moreover, use of the Florida Online School name was *not* explicitly barred by the Settlement Agreement, and it is telling that Plaintiff does not proceed under that theory. *See* Doc. 250-1 at Appendix A.

Plaintiff also points to Defendants' failure to timely turn over the FLVA domains and use of phrases prohibited by the Settlement Agreement as evidence of its "pattern of copying." Doc. 141 at 22, 182 at 7. However, Defendants contend that they took action to rectify these technical violations upon notice from Plaintiff, which militates against finding intent. Doc. 150 at 29-30; *see also Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F.App'x 899, 903 (11th Cir. 2007) (finding that Home Depot's "slow" response to its notice of infringement was "not evidence that Home Depot's alleged infringement was willful"). Although Plaintiff argues that *Optimum v. Home Depot* is inapposite, the Court finds that, despite factual distinctions, its

holding in this regard is instructive.[12] 217 F.App'x at 902-03. This is especially so in light of this Court's holding that Plaintiff's breach of contract claim has no merit. *See infra* at III.A.

There is no question that these parties have competed fiercely for more than a decade over each other's marks in the online educational services market. *See, e.g.,* Docs. 141 at 3-11, 150 at 4-9. However, Plaintiff's conclusory statements regarding Defendants' intent are not adequately supported by the record, much of which consists of self-serving declarations and cherry-picked excerpts from deposition testimony which require further evaluation at trial.

### 3.  Actual Confusion

"Evidence of confusion by actual or potential customers is, of course, the best evidence of a likelihood of confusion." *FIU Board*, 830 F.3d at 1264. "[T]he quantum of evidence needed to show actual confusion is relatively small." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010) (quotation omitted). But "[s]hort-lived confusion or confusion of individuals casually acquainted with a business is worthy of little weight…while confusion of actual customers of a business is worthy of substantial weight." *Safeway Stores, Inc.*

---

[12] The Court appreciates that this unpublished decision is only persuasive, and not binding, authority.

*v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982). Ultimately, "it is up to individual courts to assess this factor in the light of the particular facts of each case." *Frehling*, 192 F.3d at 1340.

Plaintiff here contends that the record "contains a *wide range* of instances of actual confusion." Doc. 141 at 24 (emphasis added). The Court disagrees. Plaintiff's best evidence of this "wide range" is the deposition testimony of one potential customer, Casey Kalajian ("Kalajian"), who stated that the similarities between the names caused her to mistakenly enroll her child in Florida Online School instead of Florida Virtual School, which was her intent. Doc. 171-1 at 12-17. After the confusion, Kalajian decided to return to brick-and-mortar school and "never went forward with FLVS." *Id.* at 17:16-19. Plaintiff supplements this solitary instance with an email from Defendants' employee to an out-of-state school administrator stating that "[o]ur school gets mixed up all the time with this one lol." Doc. 142-24 at 1. Finally, Lisa Kornheisl testified at a deposition that she confused FLOS and FLVS, but also stated that she was "considered legally blind" and, after she spoke to the FLVS principal where her son was already enrolled, the confusion was resolved. Doc. 142-18 at 17:9-22.

Defendants counter that Kalajian and Kornheisl's children never attended Florida Online School and therefore it gained no revenue from their enrollments. Doc. 176 at 11. They also argue that the employee email noted above originated

from an out-of-state school's transcript request and was therefore not admissible evidence of customer or potential customer confusion. *Id.* at 12. Defendants characterize Plaintiff's other evidence as "rank hearsay" and point out that those examples do not mention Florida Online School or FLOS, take place outside the relevant time frame, and espouse general confusion about the online educational market. *Id.* at 12.

Although Plaintiff has some evidence of actual confusion, it is of questionable effect in light of the extensive competition between the parties during the two-year period in question. And, with its limited proof of actual confusion, the Court finds it odd that Plaintiff conducted no statistical survey to measure the likelihood of confusion, which is typical in cases like this.[13] In any event, the facts are in conflict and the Court must consider the totality of evidence at trial to discern whether these offending marks are likely to deceive members of the public they seek to serve.

### 4. Similarity Factors

#### 1. *Similarity of the infringed and infringing marks*

---

[13] The Court recognizes that survey evidence is not a necessary requirement to show actual confusion in a trademark infringement case. *PlayNation Play Systems, Inc. v. Velex Corp.*, 924 F.3d 1159, 1169-70 (11th Cir. 2019) ("Lack of survey evidence does not weigh against the plaintiff when determining likelihood of confusion."). With no survey, however, Plaintiff faces an uphill battle to demonstrate that one instance of potential customer confusion justifies the millions it seeks in disgorgement damages. *See, e.g.,* Doc. 268, ¶ 23.

"Two marks need not be identical to support a finding of infringement, and the key question remains whether the marks are sufficiently similar 'to deceive the public.' " *FIU Board*, 830 F.3d at 1260 (quoting *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 33 (1900)). The manner in which the marks are used, in addition to "the appearance, sound and meaning of the marks" are relevant points of comparison. *Id.* (quoting *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983)). However, the Court considers "the overall impression created by the marks." *Id.*

Pointing to Defendants' use of two of the three words in its full word marks (Defendants' "Florida Online School" vs. Plaintiff's "Florida Virtual School") and three of the four letters in its acronyms (Defendants' "FLOS" vs. Plaintiff's "FLVS"), Plaintiff argues it is clear that the marks are nearly identical. Doc. 141 at 16-18. Although Plaintiff cites to other instances where marks were found to be indicative of similarity, those cases are distinguishable from the instant matter. *See id.* at 17-18. In *Wreal, LLC v. Amazon.com, Inc.*, for example, the marks were accompanied by their parent brands, consisted of only one word with a single differing letter, and did not involve descriptive terms like "Florida" and "School." *See, e.g., Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 130 (11th Cir. 2022) (holding that FyreTV and fireTV are nearly identical marks).

Plaintiff here has not asserted any visual similarities between the marks apart from vague allegations regarding blue coloring on the websites. *See* Doc. 141 at 10. It alleged that Defendants' website design "prominently featured a blue color scheme similar to the blue color scheme that FLVS uses on its website." *See id.* at 10; *see also* Doc. 141 at 22. Testimony in the record does not make clear whether the blue color used by Defendants was the same as that in Plaintiff's mark. *See* Doc. 142-5 at 6-14. However, the visual appearance of each mark contains plain differences—Defendants' FLOS mark includes the frontal profile of a Florida Panther, emphasizing the word "Florida," while Plaintiff's FLVS mark emphasizes the word, "Virtual," and contains no imagery. *See* Doc. 142-1 at 59, 61.

Plaintiff has instead focused its argument on the textual similarities of the marks. *See* Doc. 141 at 16-18. However, even on the textual front, Plaintiff's trademark registrations include an explicit disclaimer that it makes no claim to the exclusive right to use "VIRTUALSCHOOL" outside of the context of its own marks. *See* Doc. 17-2; *see also, e.g.*, Doc. 142-1 at 10. Moreover, Defendant counters that the parties "both operated in a crowded field of online education providers who also use very similar names and acronyms," pointing to examples in the record. Doc. 176 at 15; *see also infra* at III.B.1., Doc. 139-5. Defendants also emphasize the distinct nature of their primary consumer base, who devote significant time and resources

to diligence when choosing an online education provider. Doc. 176 at 15 (citing *FIU Board*, 830 F.3d at 1260).

"Florida Online School" and "Florida Virtual School" are plainly similar—though not identical—in textual meaning. The key question, however, is whether the marks "are sufficiently similar to deceive the public." *FIU Board*, 830 F.3d at 1260-61. There is evidence that the parties' customer base, like that in *FIU Board*, is sophisticated enough to avoid deception by these similarities. Docs. 139-27 at 13:8-22, 139-7 at 38:2-7, 175-10 at 14:12-16; *see also id.* However, Plaintiff contends that one person's confusion shows that even those who committed significant effort to diligence were still confused. Doc. 182 at 5. This factor must be resolved at trial.

> 2. *Similarity of the goods and services the marks represent*

In analyzing the similarity of the goods and services between the marks, the Court must determine "whether the products are the kind that the public attributes to a single source, not whether or not the purchasing public can readily distinguish between the products of the respective parties." *Wreal*, 38 F.4th at 132. The test is whether, in the reasonable belief of an average consumer, the goods are "so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *FIU Board*, 830 F.3d at 1261. Here, the parties do not dispute that they are competitors in the K-12 online education market. *See, e.g.,* Doc. 171-7 at 4; *see also* Doc. 155, ¶ 17. Defendants, however, argue that they offer significantly

more career readiness and special education offerings than Plaintiff, pointing to

testimony from its former head of school. Doc. 176 at 16. Plaintiff contends that it

also provides those services. Doc. 182 at 4-5. Whether the differences in the services

here is sufficient to tip the balance toward one party over the other is a

determination for the Court at trial.

> 3.  *Similarity of the parties' trade channels and customers*

"The fourth factor takes into consideration where, how, and to whom the

parties' products are sold." *FIU Board*, 830 F.3d at 1261. Defendant reminds the

Court that "[d]issimilarities between the manner of sale and the typical customers

of the parties' services lessen the possibility of confusion." Doc. 176 at 16 (quoting

*FIU Board*, 830 F.3d at 1261). However, Plaintiff counters that the "parties' outlets

and customer bases need not be identical, but some degree of overlap should be

present." Doc. 176 at 17 (quoting *Frehling Enters., Inc. v. International Select Grp., Inc.*,

192 F.3d 1330, 1339 (11th Cir. 1999)).

Plaintiff contends that the parties here clearly sell their products to the same

"educational providers, students and parents." Doc. 141 at 19. But Defendants

identify "critical differences" between the parties' retail outlets and customers. Doc.

176 at 17. These differences include that: FLOS serves special education students

and Plaintiff does not, that FLOS keeps its application period open longer than

Plaintiff, and that Defendants "do not consider parents and students enrolled in the

- 22 -

FLOS program to be its 'customers,' because Hendry County, not its students, is actually 'purchasing products or services from' [Defendants]." Doc. 176 at 17. The Court will resolve this disputed issue of material fact at trial.

### 4. *Similarity of advertising media used by the parties*

The standard for evaluating similarities in the parties' advertising media is "whether there is likely to be significant enough overlap in the [audience of the advertisements] that a possibility of confusion could result." *FIU Board*, 830 F.3d at 1262. Plaintiff argues that both parties advertise though the same forms of media—their respective websites, online search engines, social media, paid advertising, and trade conferences—and therefore this factor weighs in its favor. Doc. 141 at 21. However, Defendants have asserted, through deposition testimony and a declaration, that they do not use the FLOS mark in their advertising, instead advertising under the "Stride" and "K12" brands. Doc. 176 at 17. They further claim, as noted above, that they consider HCSD to be their customer and stated in a deposition that they do not advertise to parents and students in the K-12 market. Doc. 176-3 at 42:21-43:21.

The Court finally notes that, as applied to its analysis of all of these factors, much of the record evidence is restricted to excerpts of deposition testimony—excerpts which frequently raise more questions than answers. *See id.*, Doc. 173. For example, the record contains an excerpt from Todd Goldthwaite's deposition which

- 23 -

includes the aforementioned exchange where he states that Defendants do not advertise to parents and students in the K-12 market. Doc. 176-3 at 43:13-16. However, his response to a follow-up question indicates that Defendants *may*, in fact, advertise to parents and students in some capacity, but the excerpt ends at page 43. *Id.* Therefore, the Court defers resolution until trial.[14]

## IV.    Conclusion

The Court reserves judgment on Plaintiff's remaining arguments regarding Defendants' affirmative defenses until the final pre-trial conference set for October 3, 2023. *See* Doc. 282. The issues surrounding equitable remedies, including potential disgorgement and injunctive relief, will be resolved following completion of the liability stage of the trial. *See* Doc. 293, ¶ 1(b).

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment is hereby **GRANTED in part** as to Plaintiff's breach of contract claim in Count VIII, but, since genuine issues of material fact exist with respect to trademark infringement, otherwise it is **DENIED.** Plaintiff's motion for partial summary judgment is hereby **DENIED**.

---

[14] Plaintiff's state law unfair competition claim will also be resolved at trial. *See infra* at n. 7.

**DONE** and **ORDERED** in Orlando, Florida on September 5, 2023.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties