**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

       Plaintiff,                       Case No.: 6:20-cv-2354-GAP-EJK

v.

K12, INC. and K12 FLORIDA, LLC,

       Defendants.

_____/

**<u>FLORIDA VIRTUAL SCHOOL'S PHASE 1 POST-TRIAL MEMORANDUM</u>**

Pursuant to the Court's instructions, (Doc. 348), Plaintiff, Florida Virtual School ("FLVS"), submits this memorandum regarding Phase 1 of the trial, the cancellation counterclaims by Stride, Inc. and K12 Florida, LLC ("K12").

**I.     PRELIMINARY STATEMENT**

What little remains of K12's cancellation counterclaims have been defeated by the evidence at trial. *Angel Flight* is dispositive here. The Court concluded in summary judgment that FLVS used the marks in connection with the services listed before April 27, 2016. No evidence controverted that at trial. Since "a misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the

filing date," K12 cannot prevail on its trademark cancellation counterclaims. *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008).

K12 also failed to demonstrate by clear and convincing evidence that FLVS even made a false statement, much less intended to defraud the USPTO, because other inferences are equally or more likely. No testimony or document came close to establishing an intent to defraud, including regarding the meaning of the word "primary," or the use of an agreement with Connections Academy to offer courses for kindergarten through fifth grade.

For these reasons, judgment in FLVS's favor on the counterclaims is warranted. Consistent with the Court's request for targeted briefing addressing the "essential" facts and law, those reasons are supported as follows.[1]

## II.     BACKGROUND

Three marks are at issue: Registration Numbers 5,113,225, 5,113,235, and 5,113,248. (PEX 679, 680, 682.) The applications for each were filed on April 27, 2016. Each registration described the services in this manner:

> CLASS 41: Educational services, namely, providing online courses of instruction at the primary and secondary level and distributing course material in connection therewith; conducting distance learning instruction at the primary and secondary level; training of teachers and school

---

[1] Some of which was similarly raised in FLVS's Phase 1 Motion for Judgment on Partial Findings (Doc. 333) and Trademark Cancellation Trial Brief (Doc. 324).

administrators in the field of remote online teaching; educational services, namely, developing curriculum for primary and secondary level school teachers; educational testing services.

(PEX 679, 680, 682.)

## III.    LEGAL STANDARD

"Fraud must be proven 'to the hilt' with clear and convincing evidence." (Agreed Principles of Law ¶ 6 (citing *In re Bose*, 580 F.3d 1240, 1243 (Fed Cir. 2009))). The clear and convincing evidence standard "is necessarily a heavy burden" in the fraudulent trademark cancellation context, and "**any doubt must be resolved against the charging party**." *Sovereign Mil. Hosp. Ord. of St. John v. Fla. Priory of Knights Hosp. of the Sovereign Ord. of Saint John*, 702 F.3d 1279, 1289 (11th Cir. 2012) (emphasis added).[2]

"The declarant-focused text of the application oath requires the signatory's good-faith, subjective belief in the truth of its contents." *Id.* at 1290. Therefore, "subjective intent to deceive is an indispensable element in the fraud analysis." *Id.*

---

[2] During trial, K12 brought to the Court's attention an October 18, 2023 Federal Circuit opinion of which the Court stated it was already aware: *Great Concepts LLC v. Chutter Inc.*, 2023 WL 6854647 (Fed. Cir. 2023) (to be published). That decision changes nothing about the standard here, because the court there did not reach the issue of reckless disregard beyond noting a concession by counsel (not made here), and deciding the matter on other grounds. What remains is the underlying, non-binding TTAB decision, which the Court acknowledged in the Order denying in part K12's counterclaim motion for summary judgment. (Doc. 289 p. 16 n.12). Still binding is *Sovereign Military*, which requires a "subjective intent to deceive." No evidence or testimony, particularly by either Melissa Wurzel or Allison Imber, suggests any level of reckless disregard.

3

(quoting *Bose*, 580 F.3d at 1245 (cleaned up)). This makes it "difficult, if not impossible, to prove objective falsity and fraud so long as the affiant or declarant has an honestly held, good faith belief." *Id.* at 1291 (quoting 6 McCarthy on Trademarks § 31:76). The former standard for what a party "should have known" no longer suffices. *Id*.

"A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the filing date." *Angel Flight*, 522 F.3d at 1210 (quoting *Car Subx Serv. Sys., Inc. v. Exxon Corp.*, 215 U.S.P.Q. 345, 351 (P.T.O. T.T.A.B. 1982)). In *Angel Flight*, the Eleventh Circuit explained:

> The district court found Angel Flight West committed fraud by intentionally providing an incorrect first date of use on its registration application. However, because the uncontroverted testimony established Angel Flight West made valid use of the mark prior to the date it filed its registration application, **the improper first use date contained in the application cannot be a basis for invalidating the registration.**

*Id.* (emphasis added); *see also Commodores Ent. Corp. v. McClary*, 879 F.3d 1114, 1141 (11th Cir. 2018) (reaffirming *Angel Flight*).

## IV.   ARGUMENT

The evidence shows that FLVS provided all the services listed on the relevant trademark applications, including kindergarten through fifth grade

4

education, by the time FLVS applied for the trademarks in 2016. The Court found at summary judgment that "there is no dispute that Plaintiff was using the marks in the primary market in 2016" in connection with the trademark applications for marks 5,113,241 and 5,113,259, which contained the same use in commerce descriptions as the at-issue trademark applications. (Doc. 289 at 14–15; *Compare* PEXs 683, 684 *with* PEXs 678, 679, 782). Indeed, even K12 acknowledged in its Phase I Trial Brief that FLVS offered kindergarten through fifth grade online programs in 2015. (Doc. 323 at 7, bullet point one). Therefore, *Angel Flight* forecloses K12's remaining counterclaims because any purported "improper first use date contained in the application cannot be a basis for invalidating the registration." 522 F.3d at 1210.

K12 attempts to avoid this inevitable conclusion through a series of novel arguments, including that: (1) the 2016 trademark applications had not acquired distinctiveness due to five-years of continuous use in the primary market because the use of the marks in partnership with Connections Academy did not count; (2) the "use in commerce" prong was not met because Connections Academy only had Florida enrollments; (3) K12 was somehow the senior markholder in 2016 due to the FLVA/FLVP marks it assigned to FLVS in the 2015 Settlement Agreement;

and (4) FLVS did not use its marks in connection with developing primary curriculum. Perhaps revealing the "last ditch" nature of these arguments, none of these contentions were pled in K12's Counterclaim or identified as either live questions of fact or law in the Joint Final Pretrial Statement. (*See* Docs. 155, 302). Whatever their procedural propriety, each argument fails.

Under the Lanham Act, "[i]f first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such first use shall inure to the benefit of the registrant or applicant, as the case may be." 15 U.S.C. § 1055. The evidence shows that Connections Academy was expressly licensed to use FLVS's trademarks in the K-5 market under the 2010 contract. (JEX 6). K12's own witness, Clark Berry, testified that FLVS did in fact uses its marks in the K-5 market since 2008 as part of the FLVS-Connections partnership. (Day 1, Volume 1 at 84:9-24). The documentary evidence confirms these facts. (*E.g.*, PEX 324). Sarah Sprinkel testified that FLVS "still very much controlled" the partnership with Connections. (Day 1, Volume 2 at 134:1-8). Jason Schultz similarly testified that FLVS "had oversight of the quality of the courses." (Day 2, Volume 3, 95:22-97:11). Since FLVS had more than five years of trademark use in the K-5 market through its

partnership with Connections and licensee trademark use inures to the benefit of the licensor, FLVS easily met any five-year use requirement for acquired distinctiveness in the primary market, even under K12's definitions.

FLVS also easily meets the "use in commerce" requirement. As Allison Imber testified, "use in commerce" is a bar so low "you can trip over it." (*Id.* 84:9-13); *see Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144, 1150 (11th Cir. 2018) (explaining that "[t]he typical evidence of use in commerce is the sale of goods bearing the mark," that "advertising, publicity, and solicitation can [also] sufficiently meet the public identification prong of the test," and "that use of a mark need not have gained wide public recognition to warrant protection" (quotations omitted)). Use in commerce is established because FLVS sold its services, the "typical evidence of use in commerce," advertised through the internet (an interstate trade channel), competed with nationwide companies like K12, and allowed its students to use its services from anywhere in the country.

K12's argument that it was somehow the senior markholder in the primary market per its FLVA and FLVP marks fails as hopelessly contradictory. As a threshold matter, K12 must first establish that the public was likely to confuse the FLVS, FLVA, and FLVP marks to claim senior markholder status, a position K12

7

strenuously disputed prior to trial (in particular the prior lawsuit). K12 also ignores the fact that FLVS, not K12, owned the FLVA and FLVP marks when FLVS filed its trademark applications on April 27, 2016. (JEX 6). K12's limited rights to use the FLVA and FLVP marks were subject to a contractual license granted by FLVS, and licensee use inures to the benefit of the licensor. *Id.*; 15 U.S.C. § 1055; *Clayton v. Howard Johnson Franchise Sys., Inc.*, 730 F. Supp. 1553, 1560 (M.D. Fla. 1988).

More fundamentally, FLVS believed in good faith that its trademark rights were superior to K12's based on its earlier use of its trademarks and its successful resolution of the prior litigation through the 2015 Settlement Agreement. (Day 1, Volume 2 at 74:17-76:23). Eleventh Circuit precedent is clear that a trademark applicant does not commit fraud when the declarant "could justifiably believe that its marks were superior" despite knowing that another party claimed a superior right to the mark. *Sovereign Mil.*, 702 F.3d at 1292. At the very least, K12's assignment of its trademarks to FLVS gave FLVS a justifiable belief that its trademark rights were superior.

K12's suggestion that FLVS somehow did not develop primary curriculum through its partnership with Connections Academy is squarely contradicted by

8

the evidence. Ms. Imber testified that FLVS had a good-faith basis for claiming development of primary curriculum by hiring a third-party, Connections Academy, to develop curriculum for FLVS students while using FLVS marks. (Day 1, Volume 2 at 96:22-97:6). As the Court aptly noted, "If I'm going to develop a course, I can develop it in-house, or I can contract to someone else to develop it for me," and K12 is "ignoring the ability to contract for something as opposed to doing it in-house." (*Id.* at 102:8-19).

Importantly, both Mr. Berry and Julie Young acknowledged this in using the term "co-branding" to describe the marketing and branding of the Connections program through FLVS. [3] (Day 1, Volume 1 86:1-3 ; Day 2, Volume 3 40:1-5); (*see also* PEX 728, 731, showing FLVS and Connections Academy trademarks presented side-by-side). The evidence was clear that FLVS, through their contract with Connections, developed and delivered primary curricula.

The evidence went well beyond mere reliance on Connections. Ms. Sprinkel testified that FLVS developed courses through its primary program, such as a 2009 physical program named "Captain Cardio," elementary grade "specials" like "art,

---

[3] Ms. Young added, "Logically, we would have allowed them to use some of our branding, and they would have allowed us to use some of their branding, so since we were co-marketing." (Day 2, Volume 3 24:15-18.)

music, [and] PE," and "core subjects, which are reading, math, science, and social studies." (*Id.* at 109:9-111:2).[4] *Cf. Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195–99 (11 Cir. 2001) (as analogous, discussing the low bar for sufficient "use"). And she added that before bringing elementary grades fully "in-house" without Connections Academy, FLVS had a "very robust" Flex program. (*Id.* at 127:9-13). Mr. Berry also acknowledged FLVS's own 2014 pilot program for elementary-age students. (Day 1, Volume 2 15:21–16:7). Such a program would not have happened overnight. As Mr. Schultz explained, bringing courses in-house was "a tremendous effort that took years to move forward with." (Day 2, Volume 3 102:4-5).

K12 put great stock in its assertion that the use of "primary" was intentionally misleading. But the evidence did not support this assertion. Even K12's witnesses were equivocal at best on what "primary" means:

- Mr. Berry described primary as "grades K through 3" and secondary as "grades 6 through 12" (Day 1, Volume 1 51:14-23);

---

[4] As noted by Julie Young, between she and Ms. Sprinkel, Ms. Sprinkel would be the better source of knowledge regarding FLVS's early development of programs for kindergarten through fifth grade. (Day 2 Volume 3, 37:20-25—38:1-6). For the same reason, nothing in Jason Schultz's testimony published by K12 via his deposition changes the outcome here. (*See* Court Exhibit 1).

- Kerrie DeMilio described primary as, "in [her] opinion, it's K through 5" and secondary is "6 through 12" (Day 1, Volume 2 50:6-13);

- Ms. Sprinkel: in her early childhood background, "primary was K through 3, and that intermediate was four, five, six, middle school and high school"; "In the virtual program, you oftentimes heard primary in referring to K— and in the federal outlook, sometimes referring to—from K all the way up to 6", and that secondary "was high school" (Day 1, Volume 2 112:3-14, 112:25—113:1-3).

K12 really only proves that the definition of primary varies. This simply is not evidence of anyone intentionally misleading. Importantly, the relevant definition for the application is FLVS's. On that, Mr. Schultz testified that "primary would have been kindergarten through eighth grade." (Day 2, Volume 3 85:22–87:4.)

Notably, FLVS's provision of sixth grade services qualified as use in primary education under Ms. Sprinkel's definition. Given that K12's own witnesses could not agree on a definition of "primary," Mr. Schultz's explanation that "there's not one clear definition of what primary would mean," that some use the term to refer to "kindergarten through eighth grade," and that FLVS has offered middle school courses since at least 2002 confirms that FLVS possessed a good-faith basis to use

11

the term "primary" in its 2016 trademark applications.[5] (Day 2, Volume 3 at 85:22-87:11).

K12 has not carried its burden of proving by clear and convincing evidence that FLVS made a materially false statement to the USPTO. In particular, neither Melissa Wurzel (the application signatory) or Ms. Imber (the attorney who prepared and submitted the applications) provided any indication that they intended to defraud the USPTO by filing the at-issue trademark applications. To the contrary, Ms. Imber's extensive testimony (a summary of which could overtake the brief) regarding the application Class, sample language from the PTO, listing of services, and knowledge of her responsibilities in submitting the application, among other topics, contain not a hint of an intent to defraud. That testimony alone should defeat any argument by K12 regarding a supposed pattern or history of FLVS listing an allegedly broad category of services.[6]

---

[5] The 2011 Florida Statute that K12 cited—1003.413—was not in effect when FLVS filed the applications relevant here in 2016 (nor the earlier trademark applications no longer at issue), to the extent that one use of the word among others is somehow meaningful.

[6] For clarity, FLVS understands that because it was neither published, raised at trial, or asked of the Court to read, the deposition testimony by Frank Kruppenbacher, though submitted with depositions, is not part of the trial evidence in this case. In any event, his testimony concerned only the 2010 trademark applications, which the Court has granted summary judgment on. Any further use would be in the same vein of the infectious validity argument the Court has already rejected, similar to the argument made by FLVS's counsel at trial regarding an improper "bootstrapping" of corporate conduct. (Day 2, Volume 3 121:16—123:5).

The few quibbles K12 points to do not demonstrate a "subjective intent to defraud" because "any doubt must be resolved against the charging party." *Sovereign Mil.*, 702 F.3d at 1289. More fundamentally, K12 has failed to prove by clear and convincing evidence that FLVS intended to deceive the USPTO. Rather, the evidence establishes that FLVS possessed a good-faith basis to file its 2016 applications, and that an inference of deceptive intent is not justified. *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) (holding that an inference of deceptive intent "must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard"); *Scanner Techs. Corp. v. ICOS Vision Sys. Corp.*, 528 F.3d 1365, 1376 (Fed. Cir. 2008) ("Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.").

Accordingly, judgment in FLVS's favor on the counterclaims is appropriate.

Dated: November 13, 2023                    /s/ Thomas E. Bishop
                                            Florida Bar Number 956236
                                            Katharine N. Roth
                                            Florida Bar Number 106692
                                            Kyle William Mason
                                            Florida Bar Number 1045149

BISHOP & MILLS PLLC
510 N. Julia Street
Jacksonville, Florida 32202
(904) 598-0034/(904)
598-0395 (facsimile)
tbishop@bishopmills.com
kroth@bishopmills.com
kmason@bishopmills.com
service@bishopmills.com

Stephen H. Luther
Trial Counsel
Florida Bar No. 528846
LUTHER LAW PLLC
4767 New Broad Street, # 1029
Orlando, FL 32814
407 501-6711 x101 (Main)
407 501-7049 (Direct)
sluther@lutherlawgroup.com

David J. D'Agata, Esq.
General Counsel
Florida Bar No. 663891
Luis R. Guzman, Esq.
Sr. Asst. General Counsel
Florida Bar No. 570613
Florida Virtual School
5422 Carrier Drive, Suite 201
Orlando, Florida 32819
Office: 407-513-3451
ddagata@flvs.net
luguzman@flvs.net

*Attorneys for Plaintiff, Florida Virtual School*

14