# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

      **Plaintiff,**

**vs.**

                                **Case No.: 6:20-cv-2354- GAP-EJK**

**STRIDE, INC., formerly known as K12 INC., and K12 FLORIDA LLC**

      **Defendants.**

_____/

## POST-TRIAL BRIEF OF DEFENDANTS/COUNTERCLAIM PLAINTIFFS STRIDE, INC. AND K12 FLORIDA LLC ON PHASE 1 OF TRIAL: <u>STRIDE'S COUNTERCLAIM FOR FRAUD ON THE USPTO</u>

## TABLE OF CONTENTS

**Page**

BACKGROUND ...................................................................................................1

ARGUMENT .......................................................................................................2

I.      FLVS's Statements Of Use, Exclusivity, and Acquired Distinctiveness Were False. .............................................................................................3

      A.      "Primary School" Commonly Means Grades K-5 Or Younger............5

      B.      There Is No Evidence Of Use Of FLVS Marks For Primary School Programs Or Curriculum Development Before April 2016. ......................................................................................................5

      C.      *Angel Flight* Is Readily Distinguishable From The Facts Here..........11

II.     FLVS Knowingly Made Its False Statements With Intent To Deceive. .......12

CONCLUSION & PRAYER ...............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*
  522 F.3d 1200 (11th Cir. 2008) ...............................................................................11

*Chutter, Inc. v. Great Conceps, LLC*
  2021 WL 4494251 (P.T.O. T.T.A.B. Sept. 30, 2021), *rev'd on other
  grounds*, 2023 WL 6854647 (Fed. Cir. Oct. 18, 2023) ......................................13

*Drdisabilityquotes.com, LLC v. Charles Krugh*
  2021 WL 877775 (P.T.O. T.T.A.B. 2021) .........................................................12

*Fair Isaac Corp. v. Experian Info.*
  650 F.3d 1139 (8th Cir. 2011) .............................................................................13

*First Int'l Servs. Corp. v. Chuckles Inc.*
  5 U.S.P.Q.2d 1628 (P.T.O. T.T.A.B. 1988) ........................................................4

*Flame & Wax, Inc. v. Laguna Candles*
  2022 WL 3083070 (P.T.O. T.T.A.B. Aug. 1, 2022) .............................................3

*Hachette Fillipacchi Presse v. Elle Belle, LLC*
  2007 WL 1144946 (P.T.O. T.T.A.B. 2007) ........................................................13

*Herbaceuticals, Inc. v. Xel Herbaceuticals, Inc.*
  2008 WL 618623 (P.T.O. T.T.A.B. 2008) ...........................................................4

*Medinol Ltd. v. Neuro Vasx, Inc.*
  67 U.S.P.Q.2d 1205 (P.T.O. T.T.A.B. 2003) ......................................................4

*Nationstar Mortgage LLC v. Mujahid Ahmad*
  112 U.S.P.Q.2d 1361 (P.T.O. T.T.A.B. 2014) ..............................................4, 12

*Select Export Corp. v. Richeson*
  2011 WL 13135114 (S.D. Fla. May 5, 2011) .......................................................3

*Sovereign Mil. Hosp. v. Fla. Priory of Knights Hosp. of the Sovereign Ord.
  of Saint John*
  702 F.3d 1279 (11th Cir. 2012) ...........................................................................3

*Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*
  293 F. Supp. 3d 1334 (M.D. Fla. 2017)..........................................................4, 12

**Statutes**

15 U.S.C. § 1051(a) .................................................................................1, 3, 4

15 U.S.C. § 1051(a)(3)(D) ...............................................................................10

15 U.S.C. § 1064(3) .........................................................................................3

15 U.S.C. § 1119.............................................................................................3

Fla. Stat. § 1002.37(8)(a) (2011) .......................................................................7

Fla. Stat. § 1003.413(1).....................................................................................5

**Other Authorities**

37 C.F.R. § 2.2(k)(1)........................................................................................4

37 C.F.R. § 2.34(a)(1)(i) ...................................................................................4

6 *McCarthy on Trademarks and Unfair Competition*
  § 16:01 (5th ed.)............................................................................................11

6 *McCarthy on Trademarks and Unfair Competition*
  § 31:73 (5th ed.).............................................................................................4

6 *McCarthy on Trademarks and Unfair Competition*
  § 31:74 (5th ed.)............................................................................................11

Defendants/Counterclaim Plaintiffs Stride, Inc. and K12 Florida LLC (collectively "Stride"), hereby submit their post-trial brief in support of their Counterclaim, which was the subject of Phase One of the Trial.[1]

## BACKGROUND[2]

On April 27, 2016, FLVS filed with the USPTO three "use based" trademark applications under Section 1(a)[3]: Application Serial No. 87015611 for the word mark FLORIDA VIRTUAL SCHOOL, which became Registration No. 5,113,225 (the "'**225 Registration**"); Application Serial No. 87015741 for the pseudomark "FLVS," which became Registration No. 5,113,235 (the " '**235 Registration**"); and Application Serial No. 87015917 for a design mark consisting of FLORIDA VIRTUAL SCHOOL in white wording on a blue background, which became Registration No. 5,113,248 (the " '**248 Registration**").  Admitted Fact 16.

Each of these 2016 trademark applications was filed by FLVS's outside trademark counsel, Allison Imber, and contained sworn declarations by Melissa Wurzel, then FLVS's Senior Director of Marketing & Communications.  SE-1; SE-2; SE-3; Dkt. 327-9 at 31:1-33:2.  Wurzel, purporting to have personal knowledge of FLVS's services, swore to the USPTO that FLVS was using the marks in

---

[1] For consistency in labeling, references herein to Joint Exhibits (filed at Dkt. 350) are "JE"; to Stride Exhibits (filed at Dkt. 352) are "SE"; and to FLVS Exhibits (filed at Dkt. 351) are "PE."

[2] Stride incorporates herein, the Parties' agreed Admitted Facts. Dkt. 302 at 15-17.

[3] 15 U.S.C. § 1051(a).

-1-

commerce in connection with the services listed in the application through "providing online courses of instruction," "conducting distance learning instruction," and "developing curriculum" all at the "***primary***" school level. *Id.* Additionally, for the '225 and '248 Registrations, FLVS claimed Section 2(f) acquired distinctiveness "based on Five or More Years' Use," swearing that the marks "ha[d] become distinctive of the good/services through the applicants *substantially exclusive and continuous use of the mark in commerce . . . for at least five years immediately before the date of this statement*" (*i.e.* since April 27, 2011). SE-1.0004-05; SE-3.0005-06 (emphasis added).

FLVS further swore in declarations accompanying each of the April 2016 applications that "no other persons . . . have the right to use the mark in commerce, either in identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, *to cause confusion or mistake or to deceive*." SE-1.0005; SE-2.0005; SE-3.0005 (emphasis added).

On January 3, 2017, the USPTO issued to FLVS the '225, '235, and '248 Registrations (collectively "the 2016 Marks"). Admitted Fact 17.

## ARGUMENT

Stride incorporates herein the Agreed Principles of Law ("POLs"). Dkt. 302. " 'In any action involving a registered mark the court may . . . order the cancellation of registrations, in whole or in part' when such action is warranted."

-2-

POL 3 (quoting 15 U.S.C. § 1119). That includes when a mark was obtained fraudulently. POL 4 (quoting *Select Export Corp. v. Richeson*, 2011 WL 13135114, *9 (S.D. Fla. May 5, 2011)); 15 U.S.C. § 1064(3). "Fraud occurs when a trademark applicant 'knowingly makes false, material representations of fact in connection with an application for a registered mark.'" POL 5 (quoting *Sovereign Mil. Hosp. v. Fla. Priory of Knights Hosp. of the Sovereign Ord. of Saint John*, 702 F.3d 1279, 1289 (11th Cir. 2012)). "[A] party alleging fraud must show: (1) the applicant made a false representation to the USPTO; (2) the false representation was material to the registrability of the mark; (3) the applicant had knowledge of the falsity of the representation; and (4) the applicant made the representation with intent to deceive the USPTO." POL 7 (quoting *Flame & Wax, Inc. v. Laguna Candles*, 2022 WL 3083070, *20-*21 (P.T.O. T.T.A.B. Aug. 1, 2022)).

Here, the record established that FLVS knowingly and deliberately made materially false statements to the USPTO concerning claimed primary school use.[4]

## I.   FLVS's Statements Of Use, Exclusivity, and Acquired Distinctiveness Were False.

"[T]he law is clear that an applicant may not claim a Section 1(a) filing basis unless the mark was in use in commerce or in connection with *all* the goods or

---

[4] The Court already held that FLVS's 2016 "statements in its filings to the USPTO were material." Dkt. 289 at 16. Accordingly, the only remaining issues for trial regarding Stride's counterclaim were whether FLVS's statements to the USPTO were false and whether FLVS had the requisite knowledge and intent. Dkt. 302 at 24 (§ XII.A).

services covered by the Section 1(a) basis as of the application filing date." POL 8 (citing *Nationstar Mortgage LLC v. Mujahid Ahmad*, 112 U.S.P.Q.2d 1361, *3 (P.T.O. T.T.A.B. 2014) & 37 C.F.R. § 2.34(a)(1)(i)). That is so because "use in commerce is an essential element of a trademark application." *Spiral Direct, Inc. v. Basic Sports Apparel, Inc.*, 293 F. Supp. 3d 1334, 1361 (M.D. Fla. 2017) (citing 15 U.S.C. § 1051(a)); *see also* TMEP § 901 (citing 37 C.F.R. §§ 2.2(k)(1), & 2.34(a)(1)(i)). Where a trademark applicant, contrary to its statements to the USPTO, did not in fact use its marks in commerce for a particular segmented service for particular dates, the applicant can be deemed to have made a false representation to the USPTO. *Id*.; *First Int'l Servs. Corp. v. Chuckles Inc.*, 5 U.S.P.Q.2d 1628, *10 (P.T.O. T.T.A.B. 1988); 6 *McCarthy on Trademarks and Unfair Competition* ("*McCarthy*") § 31:73 (5th ed.).

Whether FLVS's 2016 statements of use and acquired distinctiveness in the "primary" school market were false is not a "complicated or highly technical" inquiry: FLVS's marks were "either in use on all of [the] goods [or services], or [they] [were] not" as of the dates it told the USPTO. *Herbaceuticals, Inc. v. Xel Herbaceuticals, Inc.,* 2008 WL 618623, *6 (P.T.O. T.T.A.B. 2008); *see also Medinol Ltd. v. Neuro Vasx, Inc.*, 67 U.S.P.Q.2d 1205, *6 (P.T.O. T.T.A.B. 2003). They were not in use and were not used exclusively as represented in FLVS's applications for at least the following reasons.

-4-

A.      **"Primary School" Commonly Means Grades K-5 Or Younger.**

The Florida Legislature, which created FLVS, has long recognized that "secondary school" encompasses grades 6-12, whereas "primary school" encompasses at most K-5.  Fla. Stat. § 1003.413(1) (eff. 2006-2012); 1 Tr. 55:1-19. Moreover, the Florida Department of Education ("FLDOE") – *FLVS's parent agency*, which determines school year grades, administers FLVS's funding, and certifies its teachers – defines "primary education" as "grades kindergarten through grade three."  Fla. Admin. Code r. 6A-4.0142 (2000); 1 Tr. 45:22-46:22, 52:2-54:25.  FLVS itself, in a 2010-2011 report to the Florida Legislature, contrasted elementary/"K-5 students" with those in "secondary course[s]," *i.e.*, "above the 5th grade level."  SE-25.0003.[5]  FLVS also regularly segmented the markets as K-5, 6-8, and 9-12.  3 Tr. 16:17-18:13.  So, regardless of how one defines "primary" school, it includes at a minimum K-5, meaning to claim use-based exclusivity in *that* market, FLVS had to show that it had use in commerce in that market.

B.      **There Is No Evidence Of Use Of FLVS Marks For Primary School Programs Or Curriculum Development Before April 2016.**

Contrary to FLVS's statements in its 2016 applications, there is no evidence of use in commerce, acquired distinctiveness, or exclusivity of the 2016 marks for

---

[5] Multiple former FLVS officials defined "primary school" as K-5 or K-3, and "secondary" as grades 6-8 or high school, including: Clark Berry (who worked at FLVS from 2011-2018, including as its Chief Academic Officer), Sarah Sprinkel (FLVS's Executive Director from 2008-2018), and Kerrie DeMilio (who worked in marketing at FLVS from 2011-2018).  1 Tr. 55:11-13, 77:12-80:5; 2 Tr. 50:6-23, 111:24-112:11, 114:4-115:14.

"providing online courses," "conducting distance learning instruction," or "developing curriculum" at the primary school market before 2016.

1.    *No K-5 Use From* **1997 to 2009**.  FLVS was created in 1997 as the "Florida Online High School," providing secondary services (grades 9-12) in Florida.  Admitted Facts 2-3.  In 2001, the Florida Online High School changed its name to Florida Virtual School, though it continued serving exclusively grades 9-12 until 2004, when it expanded to middle school (6-8). Admitted Fact 4; 3 Tr. 7:4-8:15, 104:19-105:9; SE-5.0002; SE-8; SE-79.0002; SE-137.0002.

Rather it was *Stride* which, in 2003, began to serve the K-8 online market in Florida, initially under the Florida Virtual Academy ("FLVA") name, but later as Florida Virtual Program ("FLVP"). SE-5.0002; SE-6.0004; 2 Tr. 118:18-120:4.[6]  A 2007 FLDOE publication, for example, described *Stride's* FLVA and a different provider as the *only* virtual, full-time K-8 schools, but described FLVS as serving students in grades *6-12*.  SE-10.0008; 1 Tr. 49:9-51:2.  In a 2007-2008 Legislative Report, FLVS described itself as an "online secondary school," stating it was not then even "authorized to serve elementary school students" (whom FLVS considered as K-5) until *2008*.   SE-11.0004 & 0024; 2 Tr. 114:4-116:21.

In 2008, FLVS issued an Intent to Negotiate, describing itself as offering

---

[6] In fact, in 2004, FLVS asked the FLDOE to make Stride "change the name of FLVA," claiming it and "other virtual pilots [were] confusing the public."  SE-7.0004; 3 Tr. 12:21-13:13.

"curriculum online for *middle and high school students*" but seeking to "*add*[ ] an elementary component for grades prekindergarten - five to its offerings." SE-13.0001 & 06 (emphasis added); *see* 3 Tr. 16:17-18:13. For-profit provider Connections Academy, LLC ("Connections"), which already had a K-5 program, responded by proposing to provide "its" K-5 content and curriculum services to FLVS. SE-14.0003-04 & 0078; 2 Tr. 23:3-13; 3 Tr. 18:21-23:8. In August 2008, FLVS entered an agreement with Connections to "expand" FLVS's course offerings into "grades K-5," with Julie Young (FLVS's founder and then President & CEO) signing for FLVS. JE-4; 1 Tr: 39:20-40:25; 3 Tr. 22:25-23:20.[7]

Student enrollment in the Connections program did not begin until the 2009 school year. 3 Tr. 95:18-96:4. But as Young testified, "FLVS didn't have any K-5 courses" or K-5 curriculum development before then and lacked even an interest in providing these services before then. 3 Tr. 9:22-14:13, 16:8-23:8, 36:17-37:5. Sarah Sprinkel (FLVS's former head of elementary education) and Clark Berry (FLVS's former Chief Academic Officer) confirmed this fact. 1 Tr. 35:7-14, 37:17-38:7, 49:9-51:2, 109:4-12; 2 Tr. 118:8-17. Jason Schultz, FLVS's corporate representative, also confirmed that prior to 2016, "all of our elementary offerings were through our Connections Academy partnership." Dkt. 349, Ex. 6; *see* 3 Tr.

---

[7] The arrangement with Connections made sense given that the Florida Legislature did not even authorize FLVS to provide full-time K-12 programming and part-time, 4-12 programming until *2011*. Fla. Stat. § 1002.37(8)(a) (2011).

97:12-22.[8]   Critically, Wurzel (who signed FLVS's applications) testified that it was "***not***" ***accurate*** to state FLVS had use of its marks in commerce in the K-5 market back to 2002.  Dkt. 327-9 at 38:14-40:7.  Therefore, there was no basis for FLVS relying on its Registration No. 3,830,765 as part its Section 2(f) acquired distinctiveness claim in the '225 and '248 applications.  SE-1.0004; SE-3.0006.

2.    ***No K-5 Use From 2009 To April 2016***.  The record contained no evidence, besides unsubstantiated hearsay testimony, that FLVS's 2016 Marks were used in commerce in the primary school market even during FLVS's arrangement with Connections, or at any time before FLVS's 2016 USPTO applications.  Connections – not FLVS – provided all teachers, staff, and "exclusive" and "proprietary" services like curriculum development and expressly retained trademark rights in those services.  JE-4.0003-07 & 09; JE-6.0004 (§ 2.2); Tr. 38:8-12, 41:22-42:3, 59:13-21; 2 Tr. 123:18-23; 3 Tr. 24:25-25:14, 95:18-96:7.  Section 3.1 of the 2008 agreement also only permitted use of *Connections'* "logos and trademarks" (not FLVS's).  JE-4.0007; 1 Tr. 124:3-6; 3 Tr. 24:7-24.[9]

Wurzel indeed testified it was *not accurate* to state that the FLVS marks had been in use for at least five years in connection with developing primary school

---

[8] This was consistent with Schultz' Rule 30(b)(6) deposition testimony that FLVS had "zero" enrollments in the Florida K-5 market until 2009-2010.  Dkt. 327-4 at 18:11-19:9.

[9] Unlike the 2008 contract, a 2011 amendment to the Connections agreement (also signed by Ms. Young) first contained a reciprocal agreement permitting Connections to use FLVS's branding as well as a clause discussing joint marketing material. JE-6.0011- 12; 3 Tr. 25:22-29:8

curriculum as of April 2016.   Dkt. 327-9 at 42:4-9.   And Imber agreed that if FLVS "hadn't been already" "developing curriculum for primary-level schoolteachers as of April 27, 2016" under its marks in commerce, then FLVS's 2016 declarations "would not be correct." 2 Tr. 71:1-8.  That was the case.

Not a single document introduced by FLVS (even the specimens on its 2016 applications) demonstrate *actual* use *in commerce*, let alone substantial use, of the 2016 Marks prior to the April 2016 applications for K-5 described services such as curriculum development.[10]  Tellingly, Berry testified that it was not until April 25, 2016 – ***two days before FLVS's applications*** – that he presented a formal "K-5 Elementary Business Case" to FLVS's leadership and board to spend $10 million to develop FLVS's own K-5 curriculum once the Connections arrangement expired in *2018*.   SE-36; SE-35.0012 & 0053; 1 Tr. 34:24-37:16, 60:14-71:17; 2 Tr. 125:18-127:13.  The board approved the plan in May 2016.  SE-37; SE-38.0004; SE-40.0013; 1 Tr. 71:18-73:3, 75:1-7.  But before then, FLVS did not have its own K-5 program or curriculum development.  Dkt. 349, Ex. 6; 2 Tr. 25:13-26:17.

**3.**    FLVS's April 27, 2016 declaration statements of exclusive use also were false.  SE-1.0005; SE-2.0005; SE-3.0005.  As FLVS senior management and

---

[10]  FLVS's evidence of use consisted only of *internal* reports, mere announcements or press releases prior to any use, and/or documents not even using the actual 2016 Marks (*e.g.*, use of "Florida VirtualSchool**'s**" (with apostrophe) and on a *white* background).  *See* PE-202; PE-324, PE-728; PE-730; PE-731; 3 Tr. 114:11-116:14 (Schultz agreeing the marks actually used are different).  Even this evidence did not address use for curriculum development services.

then Allen, Dyer attorney Stephen Luther were well aware, Section 5 of FLVS's

2015 Settlement Agreement with Stride expressly permitted Stride to continue use

of the FLVA and FLVP marks – which *FLVS had claimed caused confusion* – until

the ***June 30, 2016*** "Cessation Date" (Section 5(a)(1)) and then continuing from

June 30, 2016 through the October 31, 2016 "Transitional Use Safe Harbor" date

of October 31, 2016.   JE-14.0003-05; *see* SE-7.0003 (claiming the FLVA name

was "confusing the public"); 2 Tr. 71:9-24.   Therefore, the application falsely

declared that "to the best of the signatory's knowledge and belief, no other persons,

except, if applicable, concurrent users, have the right to use the mark in commerce,

either in the identical form or in such near resemblance as to be likely . . . to cause

confusion or mistake, or to deceive."  SE-1.0005; SE-2.0005; SE-3.0006.

FLVS could have chosen to disclose Stride's authorized use in a concurrent

use application but chose not to do so.[11]  Wurzel, who signed the declarations, had

no personal knowledge regarding the authorization contained in the Settlement

Agreement.  Dkt. 327-9 at 32:15-37:11.  Imber's after-the-fact rationalization for

the false statement is both wrong and irrelevant; she did not bother to review the

settlement terms, although Luther knew them.  2 Tr. 71:9-73:1, 76:17-18.  And

Imber's attempt to assert that Stride's simultaneous use of marks *FLVS* considered

"confusingly similar" was "infringing use," *id*. 74:23-75:15, ignores that in

---

[11] *See* 15 U.S.C. § 1051(a)(3)(D) (requiring statement of exceptions to claim of exclusive use).

exchange for Stride giving up its earlier fraud claim with a release and dismissal with prejudice, Stride obtained from FLVS a release and dismissal with prejudice of FLVS's never-adjudicated infringement claim, and Stride made no admission of fault or liability.   2 Tr. 74:17-77:13; JE-14.0010.   Simply put, at the time of FLVS's 2016 declarations, Stride's use was authorized, not infringing, and Stride had a clear contract right to use marks that FLVS regarded as confusingly similar.

## C.    *Angel Flight* Is Readily Distinguishable From The Facts Here.

In *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, the Eleventh Circuit held that "[a] misstatement of the date of first use in the application is not fatal to the securing of a valid registration ***as long as there has been valid use of the mark prior to the filing date***."   522 F.3d 1200, 1210 (11th Cir. 2008) (emphasis added).   That caveat is critical because the evidence (or lack thereof) confirms that FLVS had no "valid use" of its 2016 Marks in commerce for primary school programs or curriculum development prior to its April 2016 applications.[12] So the key question is not who was first to the USPTO, but who was first to the marketplace: "The way to obtain rights in a business symbol is to actually *use* it as a mark" because "[i]n the absence of customer recognition of the symbol . . . there is nothing for the 'trademark' . . . to symbolize or represent."   *McCarthy* § 16:01.

---

[12] *See McCarthy* § 31:74 ("[T]he exact date of claimed first use is immaterial to the grant of a registration, *just so long as the first use in fact preceded the filing date of a use-based application*." (emphasis added)).

-11-

This case therefore is akin to *Spiral Direct*, where the Court found no evidence the applicant even had made sales of its good in all of the specified markets or "exposed its intended customers to the . . . Mark" in commerce before filing the application. 293 F. Supp. 3d at 1360-61. With no valid use of the mark prior to the filing date, *Angel Flight* did not apply, and the Court found fraud. *Id*.

Moreover, regardless of dates of first use, FLVS's '225 and '248 Registrations also falsely claimed Section 2(f) "acquired distinctiveness" based on purported "*substantially exclusive and continuous*" use of the marks for at least *five years* prior to the 2016 applications. SE-001.0004-05; SE-003.0005-06. That alone is actionable falsity. *Drdisabilityquotes.com, LLC v. Charles Krugh*, 2021 WL 877775, *5 (P.T.O. T.T.A.B. 2021).

## II.    FLVS Knowingly Made Its False Statements With Intent To Deceive.

"Where a trademark owner knows that he has not used a trademark in commerce but nonetheless submits an application based on use of the mark in commerce, the Court may infer a fraudulent intent" through "indirect and circumstantial evidence." POL 9 & 10 (quoting *Spiral Direct*, 293 F. Supp. 3d at 1359 & 1361). That is so because "the law does not require 'smoking gun' evidence of deceptive intent." *Nationstar*, 112 U.S.P.Q.2d 1361, *3. "As a matter of law . . . reckless disregard satisfies the requisite intent for fraud on the USPTO in trademark matters," that is, "[a] declarant is charged with knowing what is in the

declaration being signed, and by failing to make an appropriate inquiry into the accuracy of the statements the declarant acts with a reckless disregard for the truth." *Chutter, Inc. v. Great Conceps, LLC*, 2021 WL 4494251, *6 & *9 (P.T.O. T.T.A.B. Sept. 30, 2021), *rev'd on other grounds*, 2023 WL 6854647 (Fed. Cir. Oct. 18, 2023). Here, the indirect and circumstantial evidence established that (1) when FLVS submitted its 2016 applications, it knew or should have known what educational services it was offering in what markets (and from what date), (2) who else was in those markets, and (3) that its false statements were deliberate.

1.      Wurzel, who signed FLVS's applications, said she did not have personal knowledge of when FLVS first used the marks and did not necessarily understand that the applications were based on "actual use." Dkt. 327-9 at 24:16-27:22.[13]   However, she did communicate with Berry (who in 2016 oversaw FLVS's academic programs), and both he and Sprinkel (FLVS's Executive Director of Elementary Education in 2016) fully knew the grade levels for which FLVS had (and had not) provided services and regularly reported to FLVS's CEO and Board. 1 Tr. 30:19-39:15; 2 Tr. 108:11-109:3, 111:11-16, 126:6-18.

In light of the 2015 Settlement Agreement, FLVS also had to have known it

---

[13] It is immaterial that Wurzel relied on FLVS's attorneys for ensuring the accuracy of the information in the applications, Dkt. 327-9 at 24:21-25:1, 42:14-44:10, 45:5-46:18, or that Imber would have obtained information from FLVS as the client, 2 Tr. 65:1-66:6. Both Wurzel and the "attorney[s] shared the duty to ensure the accuracy of the application and the truth of its statements." *Hachette Fillipacchi Presse v. Elle Belle, LLC,* 2007 WL 1144946, at *6 (P.T.O. T.T.A.B. 2007); *see Fair Isaac Corp. v. Experian Info.*, 650 F.3d 1139, 1148-49 (8th Cir. 2011).

was false to state in April 2016 that FLVS had exclusive use of its marks and that "no other person" had the right to use similar marks where it deemed such use likely "to cause confusion." *E.g.*, SE-1.0005; *see* Dkt. 327-9 at 32:15-37:11. After all, Luther, who *negotiated* the Settlement Agreement and who worked with Imber at the Allen, Dyer law firm in 2016, was listed as an "other Appointed Attorney."

2.      FLVS's false statements were intentional and consistent with a long, institutionalized practice by FLVS (to this day) of making false statements to the USPTO, the Court, and the public about its services. For example, in 2010, FLVS obtained multiple trademark registrations by swearing to the USPTO that it had use of its marks in the "pre-kindergarten" levels (Dkt. 249-23), even though FLVS has admitted it *never* has provided pre-K services. Dkt. 270 at 12; 3 Tr. 113:17-18; 1 Tr. 33:23-34; 2 Tr. 111:11-14. Similarly, in 2013, FLVS's Chief Strategist, Holly Sagues, testified to the Florida Legislature that "[e]ffective July 2012," FLVS would be able to provide both a Full-Time option to K-6 students and a part-time option. SE-30.0003. Yet, in 2012 and 2015, Sagues said nearly the exact opposite to this Court in a summary judgment declaration, falsely averring under oath that FLVS had been in the K-5 primary school market since 2002. SE-29.0003 (¶ 7).

FLVS's intent to lie to the USPTO also is evident by its repeated statements in board meetings about its intent to use its trademarks "aggressively" to "compete, compete, compete" in commerce, including against Stride, to obtain more revenue.

-14-

SE-137.0003-0004; *see* 6 Tr. 75:11-17.   It further is evident in FLVS's false and deceptive advertising campaign featuring the competitive superiority claim that it has been a leader *since 1997* in serving the kindergarten-12 online school market. SE-65[14]; SE-66.   These public statements – some of which began in 2013 (SE-31.0003) – are *literally* and demonstrably false in relation to the K-5 grade segment of the market. 2 Tr. 53:11-55:7; 4 Tr. 107:13-109:6.   And they still are displayed on the bottom every single page of FLVS's website today, even after receiving notice from Stride that they are false.  SE-129.[15]

The motive behind FLVS falsely advertising to the public that it offered far more than what it had and for longer than it could substantiate is no different than its 2016 trademark applications.   Kerrie DeMillio, who was FLVS's Senior Director of Marketing and Communications, testified that there is clear value in such a strategy: It "allows you to appeal to a broader consumer base," which will think that "[i]f you have more than 20 years and someone else has two, you have more expertise."  2 Tr. 52:4-57:21.

### **CONCLUSION & PRAYER**

The Court should grant judgment in Stride's favor on its counterclaim.

---

[14]  The advertisement, as played at trial (2 Tr. 55:18-56:21) is still available at https://www.youtube.com/watch?v=DWvNn8gqXVI (last accessed Nov. 13, 2023).

[15] The very bottom under the logo reads "Leading the way in Kindergarten-12th online education for more than 25 years throughout Florida."  https://www.flvs.net/ (last accessed Nov. 13, 2023).

Dated:  November 13, 2023

Respectfully submitted,

/s/ *Steven P. Hollman*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  Steven P. Hollman (Lead Counsel) (*pro hac vice*)
  Abraham Shanedling (*pro hac vice*)
  Charles Spencer-Davis (*pro hac vice*)
  2099 Pennsylvania Ave., N.W., Suite 100
  Washington, D.C. 20006-6801
  Tel. (202) 747-1941
  Fax (202) 747-3012
  shollman@sheppardmullin.com
  ashanedling@sheppardmullin.com
  cspencerdavis@sheppardmullin.com

  Anne-Marie Dao (*pro hac vice*)
  12275 El Camino Real, Suite 100
  San Diego, CA  92130
  Tel. (858) 720-8900
  Fax (858) 509-3691
  adao@sheppardmullin.com

CARLTON FIELDS, P.A.
  Daniel C. Johnson (Fla. Bar No. 522880)
  200 S. Orange Avenue, Suite 1000
  Orlando, Florida 32801-3456
  Tel. (407) 849-0300
  Fax (407) 648-9099
  djohnson@carltonfields.com
  Secondary: dcarlucci@carltonfields.com
  Secondary: orlecf@cfdom.net

  Eleanor M. Yost (Fla. Bar No. 1003178)
  4221 W. Boy Scout Blvd, Suite 1000
  Tampa, Florida 33607-5780
  Tel. (813) 229-4395
  Fax (813) 229-4133
  eyost@carltonfields.com

  ***Attorneys for Stride, Inc., and K12 Florida LLC***

-16-