# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FLORIDA VIRTUAL SCHOOL,**

      **Plaintiff,**

**vs.**

                                      **Case No.: 6:20-cv-2354-GAP-EJK**

**STRIDE, INC., formerly known as
K12 INC., and K12 FLORIDA LLC**

      **Defendants.**

_____/

**POST-TRIAL BRIEF OF DEFENDANTS/COUNTERCLAIM PLAINTIFFS
STRIDE, INC. AND K12 FLORIDA LLC ON PHASE 2 OF TRIAL:
FLVS'S CLAIMS FOR TRADEMARK INFRINGEMENT, UNFAIR
<u>COMPETITION, AND EQUITABLE REMEDIES</u>**

## TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................1

I. "Florida Online School" Could Not Have Infringed On FLVS's Marks. ...............................................................................................1

II. Stride Is Entitled To Judgment On FLVS's Trademark Infringement And Unfair Competition Claims. ...................................3

    A.    *FLVS's Marks Are Weak And Descriptive.* ........................................ 4

    B.    *There Is No Evidence Of Actual Confusion In The Marketplace.* ........................................................................... 7

    C.    *FLVS Offered No Proof That Stride Intended To Cause Confusion.* ..................................................................... 11

    D.    *The Other Similarity Factors Do Not Favor FLVS.* ........................ 12

III. FLVS's Claims Are Barred By Stride's Affirmative Defenses. ..........16

IV. FLVS Is Not Entitled To An Award Of Stride's Profits ....................22

CONCLUSION & PRAYER ..........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

<u>Federal Cases</u>

*Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*
522 F.3d 1200 (11th Cir. 2008) ...............................................................19

*Aronowitz v. Health-Chem Corp.*
513 F.3d 1229 (11th Cir. 2008) ...............................................................22

*Auction Mgmt. Sols., Inc. v. Manheim Auctions, Inc.*
2008 WL 4452362 (N.D. Ga. Sept. 30, 2008)........................................1

*Burger King Corp. v. Mason*
855 F.2d 779 (11th Cir. 1988) .................................................................24

*Custom Mfg. v. Midway*
508 F.3d 641 (11th Cir. 2007) .......................................................3, 12, 13

*Dieter v. B & H Indus. Of Sw. Florida, Inc.*
880 F.2d 322 (11th Cir. 1989) ...................................................................5

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc. ("FIU")*
830 F.3d 1242 (11th Cir. 2016) ........................................................*passim*

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*
91 F. Supp. 3d 1265 (S.D. Fla. 2015)......................................................11

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*
2010 WL 2662720 (N.D. Ga. June 30, 2010)..........................................24

*Frehling Enters. v. Int'l Select Grp.*
192 F.3d 1330 (11th Cir. 1999) .................................................................4

*Gift of Learning Found., Inc. v. TGC, Inc.*
329 F.3d 792 (11th Cir. 2003) ................................................................1, 2

*Gulfstream Aerospace Corp. v. Gulfstream Unsinkable Boats, LLC*
530 F. Supp. 3d 1167 (M.D. Fla. 2021).....................................................1

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*
2018 WL 10322164 (S.D. Fla. Jan. 13, 2018)..........................................25

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*
  921 F.3d 1343 (11th Cir. 2019) ....................................................8

*Healthpoint, Ltd. v. Stratus Pharms., Inc.*
  273 F. Supp. 2d 871 (W.D. Tex. 2001) ..............................................21

*Kason Indus., Inc. v. Component Hardware Grp., Inc.*
  120 F.3d 1199 (11th Cir. 1997) ....................................................17

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
  543 U.S. 111 (2004)....................................................................7

*Messer v. E.F. Hutton & Co.*
  833 F.2d 909 (11th Cir. 1987) ..............................................17, 18, 19

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*
  522 F.3d 1211 (11th Cir. 2008) ....................................................10

*Newborn Bros. Co. v. Albion Eng'g Co.*
  481 F. Supp. 3d 312 (D.N.J. 2020)..................................................21

*Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*
  437 F.3d 1145 (11th Cir. 2006) ....................................................20

*Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*
  217 F. App'x 899 (11th Cir. 2007)..............................................12, 23

*Optimum Techs, Inc. v. Home Depot USA, Inc.*
  2005 WL 3307508 (N.D. Ga. 2005)..............................................23, 24

*Planetary Motion, Inc. v. Techsplosion, Inc.*
  261 F.3d 1188 (11th Cir. 2001) .....................................................3

*PlayNation Play Sys., Inc. v. Velex Corp.*
  924 F.3d 1159 (11th Cir. 2019) ....................................................22

*Publications Int'l, Ltd. v. Landoll, Inc.*
  164 F.3d 337 (7th Cir. 1998) ......................................................15

*Qualitex Co. v. Jacobson Prods. Co.*
  514 U.S. 159 (1995)..................................................................15

*Select Export Corp. v. Richeson*
 2011 WL 13135114 (S.D. Fla. May 5, 2011).....................................................20

*Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*
 210 F.3d 278 (5th Cir. 2000) ............................................................................2

*Suntree Techs., Inc. v. EcoSense Int'l, Inc.*
 802 F. Supp. 2d 1273 (M.D. Fla. 2011),
 *aff'd*, 693 F.3d 1338 (11th Cir. 2012)..............................................................10

*Upper Deck Co. v. Flores*
 569 F. Supp. 3d 1050 (S.D. Cal. 2021).............................................................21

*USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*
 165 F. Supp. 3d 1256 (S.D. Fla. 2016).............................................................10

*Welding Servs., Inc. v. Forman*
 509 F.3d 1351 (11th Cir. 2007) ...........................................................10, 12, 13

State Cases

*Bueno v. Workman*
 20 So. 3d 993 (Fla. 4th DCA 2009)...................................................................19

*Graphic Assocs., Inc. v. Riviana Rest. Corp.*
 461 So. 2d 1011 (Fla. 4th DCA 1984)...............................................................17

LeNeve *v. Via S. Fla., L.L.C.*
 908 So. 2d 530 (Fla. 4th DCA 2005).................................................................19

*U.S. Bank Nat'l Ass'n v. Qadir*
 342 So. 3d 855 (Fla. 1st DCA 2022) .................................................................20

Docketed Cases

*FLVS v. D2L Corp.*
 No. 6:20-cv-1788-RBD-DCI-Orl, Dkt. 78 (June 2, 2022) ................................25

Federal: Statutes, Rules, Regulations, Constitutional Provisions

15 U.S.C.
    § 1115(b)(4) ....................................................................................................1
    § 1117(a) ..............................................................................................24, 25

Fed. R. Evid.
    407...............................................................................................................18

State: Statutes, Rules, Regulations, Constitutional Provisions

Fla. Stat.
    § 1002.45(1)(a)(3)........................................................................................14
    §§ 1002.45(1)(a)(93) & (b)(1) ......................................................................6

Other Authorities

https://www.flvs.net/ ..........................................................................................21

https://www.youtube.com/watch?v=DWvNn8gqXVI ..........................................21

6 *McCarthy on Trademarks and Unfair Competition*
    § 11:85 ........................................................................................................14
    § 27:65 ........................................................................................................21
    § 31:73 ........................................................................................................20

Defendants/Counterclaim Plaintiffs Stride, Inc. and K12 Florida LLC (collectively "Stride"), hereby submit their post-trial brief for judgment on the trademark infringement and unfair competition claims of Plaintiff FLVS.[1]

## ARGUMENT

Stride incorporates herein the Admitted Facts and Agreed Principles of Law ("POLs").  Dkt. 302.

## I.   "Florida Online School" Could Not Have Infringed On FLVS's Marks.

"[I]t is well established that [a] trademark cannot be infringed by the generic term for the product it designates."  *Auction Mgmt. Sols., Inc. v. Manheim Auctions, Inc.*, 2008 WL 4452362, at *5 (N.D. Ga. Sept. 30, 2008); *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 799 (11th Cir. 2003).  Stride was permitted to use "a name or term, other than as a trademark, that is descriptive and is used fairly and in good faith only to describe the goods."  POL 35 (quoting 15 U.S.C. § 1115(b)(4) & *Gulfstream Aerospace Corp. v. Gulfstream Unsinkable Boats, LLC*, 530 F. Supp. 3d 1167, 1173 (M.D. Fla. 2021)); *see also* POL 36 ("[T]he common law preserves defendants' ability to use . . . descriptive terms in their primary descriptive sense.").

This is precisely what was at play here regarding Stride's discontinued use of "Florida Online School" – an inherently descriptive and generic name.  FLVS's own

---

[1] For consistency in labeling, references herein to Joint Exhibits (filed at Dkt. 350) are "JE"; to Stride Exhibits (filed at Dkt. 352) are "SE"; and to FLVS's Exhibits (filed at Dkt. 351) are "PE."

-1-

witness agreed that "Florida is a state," that "online is a way of describing a location or a vehicle of delivery," and that "school is a place of education." 5 Tr. 95:24-96:5; *see* SE-31.0003 (describing FLVS as an "online public school district"). FLVS also did not dispute that "online school providers in Florida use generic terms like Florida, virtual, online, or virtual school." 5 Tr. 78:7-13; SE-82. Indeed, "probably all" school districts in Florida use "a… geographically descriptive locator," Stride's *Florida* Online School among them. 4 Tr. 94:6-16. Consistent with a presentation made to FLVS's executive leadership, FLVS too considered its "competitors" – Stride's FLOS among them – as using "***generic terms***," which FLVS's witness agreed meant in "general use," to "***describe their Florida-based schools***." 5 Tr. 77:5-78:13; *see also* SE-82.009; 6 Tr. 82:2-7, 150:6-151:3, 215:24-216:6. The descriptive words "Florida," "online," and "school" "help all companies in [the online education] space . . . because that's what we do. ***It's a description of what we all are doing***." 6 Tr. 222:21-223:3 (emphasis added).

Because the "Florida Online School" name involved common, generic, and descriptive terms for an *online school in Florida*, that name could not have infringed on FLVS's marks. *See, e.g.*, *Gift of Learning*, 329 F.3d at 799 (holding terms "Drive Chip & Putt" were "descriptive of words in the public domain" and thus could not infringe on "Drive Pitch & Putt"); *Small Bus. Assistance Corp. v. Clear Channel Broad., Inc.*, 210 F.3d 278, 279 (5th Cir. 2000) (holding "'Summer Jam' is a generic

term for a musical concert occurring during the summer months" and therefore "cannot infringe" on the mark "Uncle Sam Jam").

## II. Stride Is Entitled To Judgment On FLVS's Trademark Infringement And Unfair Competition Claims.

To prevail on infringement claims, FLVS had the burden of establishing: "(1) that it had prior rights to the mark at issue and (2) that [Stride] had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." POL 14 (quoting *Planetary Motion, Inc. v. Techsplosion, Inc*., 261 F.3d 1188, 1193 (11th Cir. 2001)).[2]

Of the seven "likelihood of consumer confusion" factors, "[t]he strength of the mark and evidence of actual confusion are the most important factors." POL 14 (citing *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016) ("*FIU*")). The seven factors are "(1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming

---

[2] "[T]he analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." *Custom Mfg. v. Midway*, 508 F.3d 641, 652-53 (11th Cir. 2007); *see also* POL 34.

public." POL 15 (quoting *FIU*, 830 F.3d at 1255). But "courts are mindful that "sophisticated consumers of complex goods or services are less likely to be confused than casual purchasers of small items." POL 17 (quoting *FIU*, 830 F.3d at 1256).

FLVS failed to meet its burden under these standards. As this Court already has observed, "the nature and importance of a parent's choice regarding where and how to educate their children carries comparable weight" to college selection in the Eleventh Circuit's *FIU* decision – one nearly identical to this case, in which the appeals court held that "Florida National University" ("FNU") did not infringe on "Florida International University" ("FIU"). Dkt. 297 at 11 & 13 (citing *FIU*, 830 F.3d at 1255-58. The exact same is true here.

## A. FLVS's Marks Are Weak And Descriptive.

Courts are "to first classify a mark as 'generic, descriptive, suggestive, or arbitrary based on the relationship between the mark and the service or good it describes." POL 18 (citing Dkt. 297 at 11). "Generic marks are the weakest and not entitled to protection' and arbitrary marks are "the strongest of the four categories." POL 19 (quoting *FIU*, 830 F.3d at 1256). "Courts then look to the 'degree to which third parties make use of the mark.' The more that third parties use the mark, the weaker it is, and the less protection it deserves." POL 20 (quoting *Frehling Enters. v. Int'l Select Grp.*, 192 F.3d 1330, 1335 (11th Cir. 1999)). While a mark may have been declared "incontestable" by the USPTO, "that presumption can be rebutted by

-4-

a showing of 'extensive third-party use.' "  POL 21 & 22 (citing & quoting *Dieter v. B & H Indus. Of Sw. Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) & *FIU*, 830 F.3d at 1257-58)).  Here, the evidence confirms the USPTO's observations and rationale behind requiring FLVS to disclaim "VIRTUAL SCHOOL" (*see* 2 Tr. 76:6-17; SE-1): FLVS's marks are inherently weak, generic, descriptive, and diluted by a marketplace jam packed with third-parties that commonly use similar generic and descriptive terms and phrases to describe market participants.

FLVS's own evidence showed the limited "commercial strength" of its marks. *See FIU*, 830 F.3d at 1258-59.  FLVS's head of marketing testified that in a survey, only "*one percent*" of prospective FLVS customers even could name Florida Virtual School as a provider "without prompting." 4 Tr. 94:6-15; SE-85.002.  Incredibly, in FLVS's home state of Florida, its acronym ***"has* "*less than 15 percent [aided] awareness among prospective <u>and current</u> families*," and its *full name has only around 36% aided awareness*. 5 Tr. 23:24-24:8, 83:23-88:1; SE-82.0012; *see* 6 Tr. 108:3-111:4 (discussing SE-133, SE-70.003-4, & SE-79-004) (emphasis added).[3] FLVS itself found its marks "*plain, bored, indifferent, apathetic, [and] uninspired*." 4 Tr. 66:21-67:7 (emphasis added); 5 Tr. 91:20-92:13; SE-82.0017 &

---

[3] These startling figures reflect that a substantial number of families with children currently enrolled in FLVS's program have no idea what school their child attends.

0.0019.[4] FLVS's witnesses also admitted that FLVS's frequent changing of its logo and "lack of consistency" has "***diluted***" FLVS's visual brand.  5 Tr. 81:9-83:2 (discussing SE-82.011).

FLVS's witness further admitted that FLVS's marks have serious "legibility challenges," including those for people (like parent Lisa Kornheisl) with "***visual impairments***."  5 Tr. 80:19-81:8, 88:15-90:20, 92:14-93:2; SE-82.0010.

FLVS also admitted its competitors frequently use generic terms like "Florida," "Virtual," and "Virtual School" in their "marketing materials as generic words/phrases to describe their Florida-based schools . . . [t]hereby further confusing the marketplace." SE-82.009; *see also* 5 Tr. 78:7-80:5; 3 Tr. 184:4-17.  Indeed, "almost every major school district" in Florida has an online program using some form of "Virtual," "Virtual School," or "Online School" in the name, as do several other private education providers of what the FLDOE calls "virtual instruction programs" or "virtual schools."  3 Tr. 139:4-20,  190:24-195:5; 4 Tr. 94:6-97:25; 6 Tr. 102:12-106:9, 142:11-153:1; SE-130; SE-131; SE-134; SE-135; SE-136; SE-133; Fla. Stat. §§ 1002.45(1)(a)(93) & (b)(1).[5]  All of this confirms the marks are weak and entitled to no protection against similarly descriptive program names.

---

[4] Additionally, a 2019 FLVS report described how the entire FLVS name was "limiting to conducting business outside of Florida" because "acronym form is not descriptive," Florida is "geographically limiting," virtual is "limiting as well," and school is "perceived as a direct competitor to schools who we are only trying to sell curriculum to."  SE-84.002.

[5] Many other Florida companies use similar names too.  SE-133; 6 Tr. 102:12-106:9.

**B.    There Is No Evidence Of Actual Confusion In The Marketplace.**

FLVS failed to establish actual confusion among consumers between its marks and the FLOS name and acronym caused by Stride's conduct.

### 1.    *The FLOS Acronym Could Not Create Confusion With FLVS.*

Stride's use of the FLOS acronym could not infringe on FLVS's acronym mark because FLVS admits it got "away from using [the acronym] exclusively as the only mark." 4 Tr. 62:18-23. FLVS's marketing head also testified FLVS used its marks in rigorous compliance with its brand usage guidelines that "counsel that the FLVS mark is not to be used in isolation without reference to the word mark," because the full name "had substantially more recognition than just the acronym by itself." *Id.* 62:7-65:5; *see* 4 Tr. 13:17-8 (explaining that "the new identify" for FLVS is "Florida Virtual School written underneath the acronym").

### 2.    *FLVS Failed To Show Meaningful Point Of Sale Confusion.*

FLVS did not meet its burden of proving likelihood of confusion. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 118-20 (2004). "Evidence of confusion by actual or potential customers is . . . the best evidence of a likelihood of confusion." POL 25 (quoting *FIU*, 830 F.3d at 1264). But "[i]n assessing the weight of evidence of actual confusion" it is important "<u>who</u> was confused and <u>how</u> they were confused"—*i.e.*, what carries the most weight is whether "actual customers" were confused by the use of the mark "as opposed to other categories of people." *FIU*, 830 F.3d at 1264. Thus, "[s]hort lived confusion

or confusion of individuals casually acquainted with a business is worthy of little weight." *Id*. "If consumers have been exposed to two allegedly similar trademarks in the marketplace . . . and no actual confusion is detected either by survey or in actual reported instances of confusion, that can be powerful indication that the junior trademark does not cause a meaningful likelihood of confusion." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019).

    **a.**    FLVS presented no expert on brand surveys or confusion, meaning it had no way of filtering out any marketplace confusion that may *already* have existed unrelated to the FLOS name before that school even launched.  5 Tr. 78:7-80:5, 98:17-20; SE-82.009.  For example, as far back as 2004, FLVS's executive leadership spoke about "virtual pilots . . . confusing the public."  3 Tr. 12:21-13:13, 15:9-23 (discussing SE-6 & SE-7).  FLVS also could not filter any purported residual confusion that FLVS attributed to Stride and expressly released in the 2015 Settlement Agreement.  6 Tr. 89:19-90:16, 91:22-94:12.  Nor could FLVS even filter out confusion caused by *its own* use of "online," "school," and "Florida" and even "K12" use in FLVS's marketing.  4 Tr. 91:7-92:8 (discussing SE-1.0009 (header)).

    **b.**    There is no evidence of point-of-sale, actual consumer confusion caused by the FLOS program, compared to some other lawful factors.  *See* 4 Tr. 86:18-87:15; 6 Tr. 98:21-99:20, 173:4-173:10, 174:8-177:18, 178:22-179:11; 8 Tr. 12:13-13:5  The only evidence was "brief testimony of two people," neither of which

established actionable confusion.  6 Tr. 98:3-13.  Casey Kalajian testified that she did not do much due diligence and "wouldn't consider what [she] did research" to determine what virtual school to send her daughter to in 2020, inasmuch as "she didn't believe it was necessary" because she thought "only one" online education provider existed in Florida.  5 Tr. 106:12-16, 107:1-9, 111:5-7, 114:7-17.  After she received "K12"-branded educational materials, she promptly unenrolled her child from FLOS, tried to sign up with FLVS, and then opted to enroll her daughter in the brick and mortar school, where her daughter remains to this day.  *Id.* 107:13-108:22, 115:15-116:1.  Kornheisl meanwhile testified she first wanted a full-time program, but then wanted a "flexible" schedule for her son, and after realizing she had enrolled in FLOS, she "*immediately* realized" the issue and enrolled her son in *FLVS* Flex, where he "completed courses" in the flexible program option she had always wanted for him. 6 Tr. 14:23-15:1, 16:20-17:5, 19:3-17, 22:17-22, & 24:3-5.  Kornheisl's son never even attended an FLOS class. 6 Tr. 17:22-19:2; PE-339.  More importantly, she admitted her "confusion" came from "one letter ***and [her] poor vision***,"[6] as she is completely blind on the right side and partially on the left side. 6 Tr. 13:9-16, 14:23-15:1, 16:20-17:2, 19:3-17 (emphasis added), *see* 5 Tr. 81:2-7.

Both witnesses' testimony confirmed Stride's use of the FLOS name was ***not***

---

[6] As Kornheisl testified at deposition and confirmed in Court, prior to her deposition, she spoke to FLVS's counsel, who clearly influenced Kornheisl's answers by explaining to her in advance "what this all was about" was "literally a difference of one letter."  6 Tr. 26:3-18.

the definitive source of any confusion.  5 Tr. 111:5-7, 114:7-17 (Kalajian believed "only one" online provider existed in Florida); 6 Tr. 13:9-16, 14:23-15:1, 16:20-17:21, 19:3-17 (Kornheisl testifying about her visual impairment); *see Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1361 (11th Cir. 2007) (finding no infringement where confusion evidence had "no explicit connection" to the marks and "could just as likely have arisen" from other causes).  Further, both parents admitted that whatever "confusion" *might* have existed was resolved before the transaction was consummated, *i.e.*, before their children ever attended a FLOS, class, proving that Stride was not unjustly enriched and that there was no causal loss to FLVS.  5 Tr. 109:18-20; 6 Tr. 18:12-19:2.[7]

    **c.**    FLVS had no other relevant "evidence" of confusion.  Its reliance on purported confusion by registrars – many in other states – seeking transcripts from the wrong school is not relevant because registrars are not actual customers of either FLVS or Stride's FLOS program.  6 Tr. 180:14-17; *see FIU*, 830 F.3d at 1264 (the relevant inquiry is whether "actual customers" were confused by the use of the mark "as opposed to other categories of people").  FLVS also had no support for its unpled

---

[7] At most, this might qualify as initial interest confusion, which "is not actionable confusion in the Eleventh Circuit." *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1283 (M.D. Fla. 2011), *aff'd*, 693 F.3d 1338 (11th Cir. 2012); *see also USA Nutraceuticals Grp., Inc. v. BPI Sports, LLC*, 165 F. Supp. 3d 1256, 1265-66 (S.D. Fla. 2016).  The Eleventh Circuit also has suggested that if initial interest confusion is remedied prior to a customer going through with a sale, there is no infringement cause of action. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 n.10 (11th Cir. 2008).

theory that search engine optimization ("SEO") or search engine marketing caused any confusion, let alone that any such confusion could have been or even was caused by Stride's FLOS program name. Instead, Stride's witness confirmed "we don't invest in any SEO associated with a school webpage… It's all K12;" Stride "does not optimize or spend any effort or dollars optimizing school names or school websites." 6 Tr. 207:8-15, 216:7-217:8, 218:5-222:2.

### C.  FLVS Offered No Proof That Stride Intended To Cause Confusion.

To prove intent, FLVS had to "show that Defendants possessed a 'conscious intent to capitalize on [their] business reputation, w[ere] intentionally blind, or otherwise manifested improper intent in adopting [the Florida Online School] name and acronym." POL 24 (quoting *FIU*, 830 F.3d at 1263). But prior knowledge of a competitor's marks does "not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 91 F. Supp. 3d 1265, 1282 (S.D. Fla. 2015).

Here, the evidence established that Stride did not select FLOS with any intention to infringe on FLVS's marks or to benefit from FLVS's good will. 6 Tr. 153:16-158:18, 160:20-23. To the contrary, Stride selected a generic name that was **_not_** explicitly barred by the 2015 Settlement Agreement— FLVS obviously could have included the name "Florida Online School" on the prohibited list, but it did not. 6 Tr. 81:23-82:1, 150:17-151:3, 156:1-157:18; 7 Tr. 15:13-25; JE-14.0007-0008,

-11-

0016 (§ 5(e) & App'x A). Stride picked the name just to have a simple naming convention, and it was approved at arms-length by the Hendry County School Board. 6 Tr. 160:14-19; 7 Tr. 19:9-13; JE-16; *see Welding*, 509 F.3d at 1361 (finding no intent to confuse where mark "was created . . . to harmonize . . . and shows an innocent origin for the logo"). Moreover, once FLVS complained to Stride, Stride voluntarily agreed to change the FLOS name as "[a]s quickly as we could," and even began the process well before FLVS even filed suit. 6 Tr. 149:11-17, 163:6-169:2; 7 Tr. 59:2-14, 83:15-19; 8 Tr. 13:6-14:5; JE-17; Admitted Fact 20; *see Optimum Techs., Inc. v. Home Depot U.S.A., Inc.*, 217 F. App'x 899 (11th Cir. 2007).

**D.    The Other Similarity Factors Do Not Favor FLVS.[8]**

*1.    The FLOS And FLVS Marks Are Not Nearly Identical.*

While FLVS argued similarity based on Florida Virtual School and Florida Online School sharing two words and FLVS and FLOS sharing three letters, that is of no moment because "the appearance of the litigated marks side by side in the courtroom does not accurately portray actual market conditions." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007). Rather, the "key question" when evaluating similarity is "whether the marks are sufficiently

---

[8] While FLVS frequently has sought simply to "add up" the seven similarity factors, application of the factors "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the 'overall balance.' " *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007).

similar to deceive the public."  POL 28 (quoting *FIU*, 830 F.3d at 1260).  "The manner in which the marks are used, in addition to 'the appearance, sound and meaning of the marks" are relevant points of comparison…'  However, the Court considers 'the overall impression created by the marks.'"  POL 29 (quoting *FIU*, 830 F.3d at 1260); *see also Custom Mfg.*, 508 F.3d at 652.

And as the *FIU* decision made clear, "[i]f a trademark operates in a crowded field of similar marks on similar goods or services, slight differences in names may be meaningful because consumers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."  830 F.3d at 1260-61 (finding any word or letter similarities between "Florida International University" ("FIU") and "Florida National University" ("FNU") did not materially add to confusion); *see also Welding*, 509 F.3d at 1361 ("sophisticated consumers" "are less likely to be confused than casual purchasers of small items").

Here, the "primary consumers" – school districts, their administrators, and parents of students – "spend a substantial amount of time and energy learning about their options before choosing a school." *See FIU*, 830 F.3d at 1260.  School districts, guidance counselors, and administrators are highly sophisticated, have an "[e]xtreme understanding" of the market, and conduct "[a] lot of due diligence" when deciding on an online education provider.  4 Tr. 88:12-21, 90:24-91:16; 6 Tr. 173:9-174:7; *see* 8 Tr. 16:12-18:1.  Plus, to even get to the relevant Florida Online School/FLOS

branded materials, a parent first would have to go to the K12.com main page (branded with Stride/K12), enter a Florida Zip code, go to a K12.com Florida landing page, pick one of the available options, and *then* go to a sub-URL that still begins with k12.com.  6 Tr. 202:23-204:22.

FLVS also operated in a "crowded field of similar names," *FIU*, 830 F.3d at 1258, meaning "customers will not likely be confused between any two of the crowd." 6 *McCarthy on Trademarks and Unfair Competition* § 11:85 ("*McCarthy*"); *see supra,* §§ I & II.A.   The Florida Legislature's denomination of online schools as "virtual instruction programs," and FLDOE's use of "virtual schools," effectively assures widespread generic use.  6 Tr. 101:15-102:3; Fla. Stat. § 1002.45(1)(a)(3). As does FLVS's *own* frequent use of "online," "school," and "Florida" in advertising.  4 Tr. 91:7-92:8; 4 Tr. 66:21-67:7; SE-31.0003.

Additionally, "the visual appearance of each mark [FLVS v. FLOS] contain[ed] plain differences."  Dkt. 297 at 20; PE-685.  While FLVS's witnesses quibbled about use of the color blue, FLVS's marketing witness confirmed: (1) that FLVS does not have any evidence or claim that Stride used the specific "Pantone color 300U" for its FLOS program, the only color prohibited by the Settlement Agreement; (2) that Stride used a "different" blue than FLVS; and (3) that blues can appear differently based on the viewing monitor.  4 Tr. 98:1-106:3; 5 Tr. 16:21-18:12; 5 Tr. 21:19-22:12; 5 Tr. 93:4-94:11; 6 Tr. 100:22-101:9.   Even more

-14-

critically, FLVS's use of various shades of blue in its marks and advertising "serve[d] as a function for FLVS," 5 Tr. 94:5-11, *discussing* SE-82.0015, and FLVS is not entitled to trade dress protection for functional features of its marks.[9]

### 2.    The FLOS And FLVS Services Were Not Identical.

FLVS had to prove that the parties' "services are the kind that the public attributes to a single source" based on "the reasonable belief of the average consumer as to what the likely source of the goods is." POL 30 & 31. It could not do so. Clark Berry, the former FLOS Head of School and, before that, *FLVS*'s Chief Academic Officer, testified that FLVS provided fewer "career readiness" (*i.e.*, technical certification) programs than FLOS; that FLVS far more limited special education programming; and unlike FLOS; FLVS had several restrictions on what students types of students could enroll and when they could apply. 7 Tr. 69:23-73:19.

### 3.    The Customers And Sales Outlets Were Not the Same.

This factor "takes into consideration where, how, and to whom the parties' products are sold." POL 32 (quoting *FIU*, 830 F.3d at 1261). "Dissimilarities between the manner of sale and the typical customers of the parties' services lessen the possibility of confusion." *FIU*, 830 F.3d at 1261. Here, FLVS's and Stride's

---

[9] "The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.,* 514 U.S. 159, 164 (1995). Functional marks "are by definition those likely to be shared by different producers of the same product and therefore are unlikely to identify a particular producer." *Publications Int'l, Ltd. v. Landoll, Inc.,* 164 F.3d 337, 340 (7th Cir. 1998).

FLOS retail outlets and customers had critical differences besides those above. Most importantly, while FLVS considered parents and students its customers, for Stride's Hendry County program, the Hendry County *School District* was and continues to be Stride's customer, as the only one purchasing products and services from Stride, by contract. 4 Tr. 23:10-16; 6 Tr. 145:25-146:1, 149:18-150:5.

### 4.    *The FLOS And FLVS Advertising Was Not the Same.*

The key question here is "whether there is likely to be significant enough overlap in the [audience of the advertisements] that a possibility of confusion could result." POL 33 (quoting *FIU*, 830 F.3d at 1262). While both parties advertise online, this factor should be afforded little weight, given that that parents enrolling their students in the FLOS program were not Stride's "audience" (Hendry County was), and given that Stride did not even actively market its FLOS school (let alone any school-specific program). 6 Tr. 157:4-12, 180:18-20, 183:11-186:8, 193:19-197:6, 202:5-203:12. Instead, Stride advertised under its national "K12" or "Stride" branding, with 98% of web traffic going to K12.com, further lessening the potential for confusion between FLVS and FLOS. 6 Tr. 157:4-12, 183:11-185:6.

## III.    FLVS's Claims Are Barred By Stride's Affirmative Defenses.[10]

***Estoppel, Laches, Failure to Mitigate, and Avoidable Consequences.*** "The

---

[10] Stride's Affirmative Defenses are pleaded in its First Amended Answer and Affirmative Defenses to FLVS's Complaint. Dkt. 155 at 28-30.

equitable defense of estoppel by laches may be applied to bar claims for . . . trademark infringement brought under the Lanham Act" and consists of three elements: "(1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted."  POL 38 (quoting *Kason Indus., Inc. v. Component Hardware Grp., Inc.*, 120 F.3d 1199, 1203 (11th Cir. 1997)).  Similarly, "[t]he doctrine of avoidable consequences, commonly referred to as a duty to mitigate damages, prevents a party from recovering those damages inflicted by a wrongdoer which the injured party 'could have avoided without undue risk, burden, or humiliation.'"  POL 42 (quoting *Graphic Assocs., Inc. v. Riviana Rest. Corp.*, 461 So. 2d 1011, 1014 (Fla. 4th DCA 1984)); *see also* POL 41 (citing *Messer v. E.F. Hutton & Co.*, 833 F.2d 909, 921 (11th Cir. 1987)).  All elements of these defenses have been met here.

FLVS top leadership was fully aware of the FLOS program as soon as the program launched in June 2019.  Admitted Facts 18-19; 3 Tr. 186:2-14; 4 Tr. 43:10-47:7, 50:21-51:8, 73:20-75:2; JE-9; JE-10; SE-43; SE-44; SE-46; SE-75; SE-76; PE-242; PE-256.  But FLVS took no action regarding the FLOS name or any of the other challenged conduct until it sent demand letters to Stride in August 2020 – over *14 months* after the FLOS program opened.  3 Tr. 186:2-14; 4 Tr. 43:10-45:20, 46:11-47:7, 73:20-75:2, 75:3-77:8, 79:25-80:6, 164:2-164:25.  Instead, FLVS sat back in what obviously was a strategic decision to allow its claimed damages and

-17-

"irreparable harm" (*see* Dkt. 1, ¶ 72) to accrue in an attempt to justify a larger payout from Stride. *See* 4 Tr. 77:12-79:2. Nor did FLVS ever even complain to its fellow school district, Hendry County. 8 Tr. 12:7-19. FLVS's inaction was inexcusable.

And the undue prejudice by FLVS's delay was obvious: had FLVS reached out earlier to Stride (and negotiated with Stride in good faith), Stride would have had the opportunity to change the name of its Hendry County program far earlier, even *before* the start of the 2020-2021 school year, which would have been far easier than mid-year. 6 Tr. 169:3-22. Instead, having heard nothing from FLVS for over 14 months, Stride reasonably assumed FLVS had no issue with FLOS name, especially given it was not prohibited by the 2015 Settlement Agreement. 6 Tr. 164:2-25; 7 Tr. 44:12-23. FLVS should not be permitted to profit from its own failure to "exercise [ ] reasonable care and diligence" regarding a competitor's use of a mark it now alleges was causing it "irreparable harm." *Messer*, 833 F.2d at 921.[11]

***Waiver And Acquiescence.*** "Waiver is the intentional relinquishment of a known right" and requires "(1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) the intent to relinquish the

---

[11] The same is true with FLVS's inexcusable delay in complaining about allegedly offending language on a Stride webpage until when FLVS admits it "sprung that evidence" on Stride *at trial* instead of notifying Stride and negotiating in good faith about the issue as required under Sec. 14 of 2015 Settlement Agreement. 7 Tr. 7:3-10. And yet, consistent with Stride voluntarily changing the FLOS name, upon learning of FLVS's latest issue, Stride voluntarily removed those inadvertent website remnants. 7 Tr. 6:14-25. This was not evidence tampering (the prior webpage was well preserved, like any other website that changes regularly, and Stride even presented a copy of that prior webpage to the Court) and it is not admissible in any event. Fed. R. Evid. 407.

right." POL 39 (quoting *Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009)). "Proof of these elements may be express, or implied from conduct or acts that lead a party to believe a right has been waived." *Id*. (quoting *LeNeve v. Via S. Fla., L.L.C.*, 908 So. 2d 530, 535 (Fla. 4th DCA 2005)). Likewise, "[t]he defense of acquiescence requires proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." POL 40 (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008)).

Here, with the 2015 Settlement Agreement, FLVS provided Stride a list of prohibited and approved names, but agreed that Stride was "not required to select" one of the "approved names" and that there would be "no presumption against [Stride's] choice of a mark not listed." JE-014.0007-014.0008 & 0016 (§ 5(e) & App'x A). FLVS certainly could have included the name "Florida Online School" on the prohibited list, but it *chose* not to. So, Stride selected a name ***not*** prohibited by the agreement, meaning FLVS had no presumption against that choice. 6 Tr. 150:17-151:3; 7 Tr. 15:13-25; JE-14.0007-0008 at § 5(e); JE-14.0016. Nevertheless, despite being aware of the FLOS program from Day One, FLVS did nothing about it for over 14 months. 3 Tr. 186:2-14; 4 Tr. 43:10-45:20, 46:11-47:7, 73:20-75:2, 75:3-77:8, 79:25-80:6, 164:2-164:25; PE-242; PE-256. By *not* prohibiting the FLOS

-19-

name and then inexcusably waiting over a year to complain about it (until it was more difficult for Stride to change names), FLVS waived and acquiesced.

***Unclean Hands and In Pari Delicto.*** "The defense of unclean hands 'applies to bar an equitable claim no matter the claim's merits when the plaintiff has engaged in some manner of unscrupulous conduct, overreaching, or trickery that would be 'condemned by honest and reasonable men.'" POL 37 (quoting *U.S. Bank Nat'l Ass'n v. Qadir*, 342 So. 3d 855, 859 (Fla. 1st DCA 2022)). Likewise, "[u]nder the doctrine of *in pari delicto,* 'a wrongdoer may not profit from his wrongful acts.'" POL 47 (quoting *Off. Comm. of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1148-49 (11th Cir. 2006)). FLVS's hands are unclean in multiple ways:

1.      Because FLVS fraudulently procured several of the trademarks it now asserts against Stride, *see* Stride's Post-Trial Brief on Phase One, FLVS's "claims for trademark infringement under federal and state law . . . all must fail." *Select Export Corp. v. Richeson*, 2011 WL 13135114, *9 (S.D. Fla. May 5, 2011); *see also McCarthy* § 31:73 & n.29.50 (explaining if trademarks upon which a plaintiff relies were "obtained by fraud, the unclean hands defense can bar all relief").

2.      FLVS unreasonably delayed in pursuing its claims and failed to mitigate what it claimed to be "irreparable harm," while Stride promptly and voluntarily moved to address all of FLVS's concerns once FLVS articulated them.

3.      For years, and continuing today, FLVS has claimed in its nationwide

-20-

online public advertising that it has been serving students in the kindergarten through twelfth grade market for 25 years. SE-65[12]; SE-66; SE-129.[13]   But with respect to the K-5 market, those statements are ***literally false***—as admitted by FLVS's current head of marketing Kate Lysaught, and Kerrie DeMilio, who worked below Lysaught for years, 4 Tr. 107:17-108:17; 2 Tr. 53:11-55:7—or, as the Court observed, they are "partially incorrect." 4 Tr. 108:20-109:6.[14]   That FLVS would engage in such an advertising campaign that falsely inflates its appeal to consumers is consistent with its stated goal to use FLVS's trademarks "aggressively" to "compete, compete, compete" to drive up revenues from out-of-state commercial activities. SE-137.0003-0004; 6 Tr. 75:11-17; 4 Tr. 80:5-81:15, 106:5-18; 2 Tr. 52:4-57:21.

4.     FLVS plainly breached its obligation in Section 14 of the 2015 Settlement Agreement to "negotiate in good faith" with Stride "in an effort to resolve [any dispute] without litigation." *See* JE-014.0012.  FLVS waited over 14 months to demand Stride change the FLOS name, claiming it was causing significant

---

[12] The advertisement, as played at trial (2 Tr. 55:18-56:21) is still available at https://www.youtube.com/watch?v=DWvNn8gqXVI (last accessed Nov. 13, 2023).

[13] The very bottom under the logo reads "Leading the way in Kindergarten-12th online education for more than 25 years throughout Florida." https://www.flvs.net/ (last accessed Nov. 13, 2023).

[14] "Partially incorrect" advertising is false advertising. *See, e.g., Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1064 (S.D. Cal. 2021) ("[A] statement actionable under the Lanham Act may be an affirmatively misleading statement, a *partially incorrect statement*, or a statement which is untrue as a result of a failure to disclose a material fact." (emphasis added); *Newborn Bros. Co. v. Albion Eng'g Co.*, 481 F. Supp. 3d 312, 344 (D.N.J. 2020) (same); *Healthpoint, Ltd. v. Stratus Pharms., Inc.*, 273 F. Supp. 2d 871, 887 (W.D. Tex. 2001) (same); *McCarthy* § 27:65 (same).

confusion, and yet refused to provide any evidence of confusion or loss to justify its demand for a significant payout for claimed damages. 6 Tr. 170:4-173:3. Even after Stride agreed to change the name (which FLVS had not even prohibited under the agreement), FLVS nevertheless filed suit claiming irreparable harm and "considerable market confusion." *Id*.; 6 Tr. 191:1-192:5; Dkt. 1, ¶ 48.

***Injunctive Relief Is Inappropriate.*** Besides being premised on meritless claims, FLVS's request for injunctive relief also is foreclosed by the basic fact that Stride promptly and voluntarily addressed the challenged conduct once FLVS requested Stride to do so, long after it first learned of the challenged conduct. *See Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1242 (11th Cir. 2008).[15]

## IV. FLVS Is Not Entitled To An Award Of Stride's Profits

Even if FLVS had proven liability for infringement, it still could not establish the showings necessary for a disgorgement of profits remedy: that (1) Stride's conduct was "willful and deliberate"; (2) that Stride was "unjustly enriched"; or (3) or that disgorgement "is necessary to deter future conduct." *See* POL 46 (quoting *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1170 (11th Cir. 2019)).

---

[15] Though the phrase "Florida online school" was inadvertently still on one of Stride's webpages at trial, as a matter of trademark law, that phrase (a) was manifestly non-trademark, descriptive, fair use that FLVS permitted through Section 5(d) of the 2015 Settlement Agreement; and (b) constituted no existing or continuing injury to FLVS. Nor is any adverse inference appropriate. Stride explained that the changes to its website and the email chain provided to the Court for *in camera* inspection showed no ill intent to modify evidence or to violate the rule of sequestration of witnesses (whose testimony was not impacted in any way).

***No Willfulness.*** A willful violation of a trademark occurs when a party was "knowingly and deliberately cashing in on the good will of the trademark owner," *Optimum*, 217 F. App'x at 903, whereas, evidence that infringement was "unintentional and remedied upon notification" supports a finding that the defendant was *not* willful and does not support a disgorgement remedy. *Optimum Techs, Inc. v. Home Depot USA, Inc.*, 2005 WL 3307508, at *3 (N.D. Ga. 2005). Here, there was no evidence whatsoever that Stride intended to infringe on FLVS's marks when it selected the FLOS name. To the contrary, Stride selected a name that FLVS chose *not* to prohibit in the 2015 Settlement Agreement. 6 Tr. 81:23-82:1, 150:17-151:3; 7 Tr. 15:13-25. And as soon as FLVS complained, Stride promptly agreed to drop the name for the upcoming school year, which it did. 6 Tr. 164:10-168:17. Just as in *Optimum*, Stride "began to rectify the situation before this lawsuit was filed and continued the process until" the Hendry program was changed to Digital Academy of Florida (DAOF). *See Optimum*, 217 F. App'x at 903; 6 Tr. 168:18-169:2.

***No Unjust Enrichment.*** "Unjust enrichment occurs when an infringer has enriched themselves by tapping the reputation and good will of [the infringed]." *Optimum*, 217 F. App'x at 903. That would exist if FLVS could prove that Stride's "sales were attributable to its alleged infringing use" of FLVS's marks and caused "actual consumer confusion." *See Optimum*, 2005 WL 3307508, at *3. It did not. There is zero evidence of even a *single* gained enrollment by Stride connected to the

-23-

alleged infringement resulting in any attributable revenue to Stride.  6 Tr. 179:5-11;

7 Tr. 68:9-22. Therefore, an award of Stride's profits is not justified under a theory

of unjust enrichment.

*No Need for Deterrence.*  FLVS also could not show any deterrent value in

requiring Stride to disgorge profits from its operations that have not been shown to

have resulted in an unjust enrichment for Stride.  As soon as FLVS complained about

the FLOS name, Stride took swift "remedial actions" to rebrand the program.  And

without any evidence that Stride purposefully used FLVS's marks (it did not even

use FLVS's actual marks) or obtained any good will benefit that belonged to FLVS,

"awarding profits under the deterrence rationale would serve as an impermissible

penalty." *Optimum*, 2005 WL 3307508, at *3 (citing 15 U.S.C. § 1117(a)).

*No Net "Profits" Even To Disgorge.*  "[U]nder the Lanham Act, "[i]f a

defendant can show the costs required to make its sales, then it may deduct those

costs from its gross sales." *Flowers Bakeries Brands, Inc. v. Interstate Bakeries

Corp.*, 2010 WL 2662720, at *13 (N.D. Ga. June 30, 2010); *see also* 15 U.S.C.

§ 1117(a) (permitting defendant to establish "cost or deduction" claimed).  Losses

also are properly deductible. *Burger King Corp. v. Mason*, 855 F.2d 779, 782 (11th

Cir. 1988).  Here, during the relevant 2019-2020 and 2020-2021 school years, Stride

show that its FLOS program operated at a net *loss* of *millions of dollars* when

factoring in Stride's deductible costs and expenses for the FLOS program.  SE-106;

SE-107; SE-108; 8 Tr. 74:8-76:8.  This was due in part to a State Executive Order that reduced state funding to all virtual instruction programs.  8 Tr. 33:11-34:2, 36:5-9, 80:2-5; SE-109; SE-110; SE-111.[16]

*FLVS's Misconduct Precludes a Disgorgement of Stride's Profit*.  Because disgorgement is an equitable remedy, under the doctrines of unclean hands and *in pari delicto*, FLVS's own misconduct, including the conduct that is the subject of Stride's affirmative defenses, bars and/or entirely offsets any disgorgement remedy. *See* POL 37 & 47; *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 2018 WL 10322164, *6 (S.D. Fla. Jan. 13, 2018) (Once a plaintiff proves gross sales, the defendant may "assert[ ] reasons, including . . .  equitable reasons for a reduction in the amount of sales"); *FLVS v. D2L Corp.*, No. 6:20-cv-1788-RBD-DCI-Orl, Dkt. 78, at 2-3 (June 2, 2022) (declining to award FLVS disgorgement remedy where doing so would "unfairly reward it" for "violating public policy").

## CONCLUSION & PRAYER

For all the foregoing reasons, the Court should grant Stride judgment on FLVS's trademark infringement and unfair competition claims and hold that FLVS is not entitled to either a disgorgement award or permanent injunctive relief.[17]

---

[16] FLVS cannot reasonably dispute this because FLVS itself lost at least $45 million dollars during the 2020-2021 school year due to the Executive Order.

[17] Stride further intends to seek an "exceptional" case determination and a consequent award of attorneys' fees and costs in this action (including on FLVS claims on which Stride already has prevailed). *See* POL 48 (citing 15 U.S.C. § 1117(a)).

Dated: November 13, 2023          Respectfully submitted,

/s/ *Steven P. Hollman*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  Steven P. Hollman (Lead Counsel) (*pro hac vice*)
  Abraham Shanedling (*pro hac vice*)
  Charles Spencer-Davis (*pro hac vice*)
  2099 Pennsylvania Ave., N.W., Suite 100
  Washington, D.C. 20006-6801
  Tel. (202) 747-1941
  Fax (202) 747-3012
  shollman@sheppardmullin.com
  ashanedling@sheppardmullin.com
  cspencerdavis@sheppardmullin.com

  Anne-Marie Dao (*pro hac vice*)
  12275 El Camino Real, Suite 100
  San Diego, CA 92130
  Tel. (858) 720-8900
  Fax (858) 509-3691
  adao@sheppardmullin.com

CARLTON FIELDS, P.A.
  Daniel C. Johnson (Fla. Bar No. 522880)
  200 S. Orange Avenue, Suite 1000
  Orlando, Florida 32801-3456
  Tel. (407) 849-0300
  Fax (407) 648-9099
  djohnson@carltonfields.com
  Secondary: dcarlucci@carltonfields.com
  Secondary: orlecf@cfdom.net

  Eleanor M. Yost (Fla. Bar No. 1003178)
  4221 W. Boy Scout Blvd, Suite 1000
  Tampa, Florida 33607-5780
  Tel. (813) 229-4395
  Fax (813) 229-4133
  eyost@carltonfields.com

  ***Attorneys for Stride, Inc., and K12 Florida LLC***

-26-