# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

FLORIDA VIRTUAL SCHOOL,

      Plaintiff,

v.

                                        Case No.: 6:20-cv-2354-GAP-EJK

STRIDE, INC., formerly known as K12 INC., and K12 FLORIDA LLC,

      Defendants.

_____/

## DEFENDANTS' AMENDED MOTION FOR RULE 11 SANCTIONS AND <u>MEMORANDUM OF LAW IN SUPPORT</u>

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...............................................................................................1

BACKGROUND ...............................................................................................4

I.     Plaintiff Sought Nationwide Damages Based On Allegations That Stride Infringed On Plaintiff's Marks And Falsely Advertised Outside Florida. .................................................4

II.    Plaintiff's Claim For Infringement Outside Of Florida Was Baseless. ...................................................................7

     A.    Stride Never Used Florida-Centric Branding Outside Florida, And Plaintiff Had No Evidence To The Contrary. ..................................................7

     B.    Plaintiff Had No Evidence That Its Marks Were Even Sufficiently Recognized Outside Of Florida. ..........................8

     C.    Plaintiff Had 'Zero' Evidence For Any Damages Claim Outside Of Florida Arising From Stride's Use Of the FLOS Program Name. ...................................10

     D.    The Court Found Plaintiff's Infringement Claim Had No Merit. ...................................................13

III.    Plaintiff's False Advertising Claim Outside Of Florida Was Baseless. ...................................................16

     A.    Plaintiff Had No Evidentiary Support For Any Damages Outside Of Florida Based On Stride's Advertising. .................16

     B.    The Court Found Plaintiff's False Advertising Claim Meritless. ...................................................17

STANDARD...............................................................................................19

ARGUMENT ...............................................................................................20

CONCLUSION ...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Brown v. Generac Power Sys., Inc.*
No. 20-22434-CIV, 2021 WL 1030229 (S.D. Fla. Feb. 27, 2021) ....................22

*Contini v. United Trophy Mfg., Inc.*
No. 6:06-cv-432-Orl-18UAM, 2007 WL 1696030 (M.D. Fla. June 12,
2007) ................................................................................................................21

*Cooter & Gell v. Hartmarx Corp.*
496 U.S. 384 (1990)..........................................................................................19

*Gulisano v. Burlington, Inc.*
34 F.4th 935 (11th Cir. 2022) ...............................................................20, 22, 24

*Holgage v. Baldwin*
425 F.3d 671 (9th Cir. 2005) ............................................................................25

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*
952 F. Supp. 2d 1373 (N.D. Ga. 2013)...............................................................22

*In re Itel Sec. Litig.*
791 F.2d 672 (9th Cir. 1986) ............................................................................25

*Johnson v. 27th Ave. Caraf, Inc.*
9 F.4th 1300 (11th Cir. 2021) ...........................................................................25

*Kryder v. Est. of Rogers*
321 F. Supp. 3d 803 (M.D. Tenn. 2018) ...........................................................25

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.*
No. 04cv604, 2008 WL 1777855 (S.D.N.Y. Apr. 16, 2008) ............................25

*Massengale v. Ray*
267 F.3d 1298 (11th Cir. 2001) ........................................................................19

*NCM of Collier Cnty., Inc. v. Durkin Grp., LLC*
No. 2:11-CV-558-FTM-99DN, 2012 WL 2792802 (M.D. Fla. July 9,
2012) ................................................................................................................21

*Osmose, Inc. v. Viance, LLC*
  612 F.3d 1298 (11th Cir. 2010) ...............................................................19

*Ransaw v. Hernando Cnty. Sch. Bd.*
  No. 8:06cv-2393-T23EAJ, 2007 WL 4163396 (M.D. Fla. Nov. 20, 2007).......23

*Turner v. Sungard Bus. Sys., Inc.*
  91 F.3d 1418 (11th Cir. 1996) .........................................................21, 25

*Upper Deck Co. v. Flores*
  569 F. Supp. 3d 1050 (S.D. Cal. 2021).............................................17

*Worldwide Primates, Inv. v. McGreal*
  87 F.3d 1252 (11th Cir. 1996) ......................................................22, 24

Statutes & Rules

28 U.S.C. § 1927 ...........................................................................19, 21

Fed. R. Civ. P. 11 .........................................................................19, 23

Fed. R. Civ. P. 11(b)(3).................................................................*passim*

Fed. R. Civ. P. 11(c)(1)...............................................................24, 25

Fed. R. Civ. P. 11(c)(2).................................................................1, 25

Fed. R. Civ. P. 11(c)(4).....................................................................25

Pursuant to the Court's January 2, 2024, Order (Doc. 369 at 36), Defendants Stride, Inc., and K12 Florida LLC (together, "Stride") respectfully submit this Amended Motion for Rule 11 Sanctions against Plaintiff Florida Virtual School ("FLVS") and its counsel for their prosecution of claims for damages and injunctive relief for conduct outside of Florida that lacked any evidentiary support and for their refusal to withdraw those claims long ago.   Fed. R. Civ. P. 11(c)(2).[1]

## INTRODUCTION

Stride brings this motion to redress, in part, harm inflicted on it by a "trademark bully."  *See* Doc. 369 at 36 n.33.[2]  At trial in this marathon dispute – after nearly three years of litigation and 329 docket entries – the Court aptly observed that "[t]his is one of the most overlitigated cases I've ever experienced" in "50-plus years."  Doc. 337 at 10:18-20.  Stride agrees.  As its counsel commented at trial, Plaintiff's case always was a molehill masquerading as a mountain.  Doc. 334 at 143:10-11; Doc. 342 at 136:23-137:6.  This was so in large part because Plaintiff and its counsel insisted on prosecuting claims for *$6 billion* in damages and injunctive relief against Stride on a *nationwide* basis and on pursuing discovery of

---

[1] Stride does not bring this motion against Plaintiff's former counsel at Gray Robinson, P.A., because even though they signed Plaintiff's Complaint (Doc. 1), they were disqualified and withdrew from the case before Stride served its original Rule 11 motion.  Docs. 84, 85, 137, 212.

[2] Once final judgment has been entered, Stride intends to file a separate motion for exceptional case designation under 15 U.S.C. § 1117(a) and for an award of all compensable attorneys' fees and costs in this case pursuant to Fed. R. Civ. P. 54(d), Fla. Stat. § 95.141, and Local Rule 7.01.

Stride's sensitive financial information despite the complete absence of evidence of loss or harm outside of Florida to support those claims. While Plaintiff's hyperbolic claims had no factual basis, as now has been proven, Stride had no choice but to employ the resources necessary to defend itself fully and vigorously.

In its December 2020 Complaint, Plaintiff alleged it had been – and continued to be – damaged and irreparably harmed by Stride's discontinued use of the program name "Florida Online School" and the acronym "FLOS" to describe its program offered to Florida students through the Hendry County School District; by Stride's discontinued use of obviously generic and descriptive terms to describe its available online schooling options in Florida; and by Stride's use of a PDF comparison checklist tool on its website. Plaintiff maintained from this case's inception that Stride's challenged actions caused Plaintiff monetary damages and irreparable injury not only within Florida, but also nationally and even globally—and that it also entitled Plaintiff to disgorgement of Stride's *nationwide* profits.

In discovery, Stride probed the bases for Plaintiff's claimed injury and damages, both within and outside of Florida. In sworn interrogatory responses, Plaintiff stated it had sustained and would continue to sustain monetary and irreparable harm outside of Florida caused by the challenged conduct. Plaintiff even moved to compel far reaching discovery into Stride's competitively sensitive national financial information. Plaintiff met Stride's protests over this intrusive

discovery by noting that "[once] all discovery is in, [Stride] can try to limit this dispute solely to Florida."  Doc. 52 at 3.

But once discovery did close in February 2023 (Doc. 116), it was clear that Plaintiff's nationwide claims had no evidentiary basis—and never did.  After years of Plaintiff imposing substantial and intrusive discovery burdens on Stride in response to its sweeping damages claims, not a single document or witness (corporate representative, fact, or expert) identified a *penny* of damage or injury actually suffered by Plaintiff (or of ill-gotten Stride profits) caused by any claimed confusion or material deception arising from Stride's challenged conduct outside of Florida.

None of this should have been any surprise to Plaintiff and its counsel had they conducted a reasonable investigation after Stride halted the challenged conduct and before Plaintiff filed this lawsuit.  Neither Stride nor Plaintiff even uses Florida-branded material outside of Florida, and Plaintiff itself recognized that its marks had little, if any, recognition outside the state.  Stride therefore demanded in February 2023 that Plaintiff withdraw its claims for relief outside of Florida.  Ex.  A.  But Plaintiff refused to do so, forcing Stride to continue defending against Plaintiff's unsubstantiated claims.  Ex. B.  And yet, when the Court ultimately reviewed the merits of those claims, it too concluded that Plaintiff had "***no good faith contention***," and that its claims were "***simply meritless***," "***wholly deficient***," had "***absolutely no evidentiary support***," and should "***never have been brought in the***

-3-

*first place.*" Doc. 261 at 12-14; Doc. 287 at 6-7; Doc. 295 at 5-6; Doc. 306 at 4-6.

It was, in sum, objectively unreasonable for Plaintiff and its many counsel to prosecute and maintain such baseless claims and for so long, while imposing unnecessary, undue burdens on Stride and the Court. Sanctions therefore are appropriate for this "harassing" behavior. Doc. 369 at 36 n.33.

## BACKGROUND

**I.    Plaintiff Sought Nationwide Damages Based On Allegations That Stride Infringed On Plaintiff's Marks And Falsely Advertised Outside Florida.**

With its December 22, 2020 Complaint, Plaintiff alleged trademark infringement, unfair competition, false advertising, and breach of contract against Stride. Doc. 1. Plaintiff's infringement allegations challenged Stride's abandoned use of the FLORIDA ONLINE SCHOOL and FLOS names for an online education program provided to the Hendry County School District ("HCSD") in Florida. *Id*. ¶¶ 41-52.[3] Plaintiff's false advertising allegations centered on a comparative PDF checklist buried on Stride's website that encouraged parents to compare Stride's offerings to those of other online education services providers when "weigh[ing] your options" on where to send their child. Doc. 139-17; Doc. 1-1 at its Ex. L; Doc.

---

[3] When Plaintiff first complained to Stride in August 2020 about the FLOS name (*14 months after the school publicly announced its opening*), Stride began "instantly" working with HCSD to completely rename the program as Digital Academy of Florida ("DAOF"), which became effective within a year. Doc. 369 at 3, 26. Nevertheless, Plaintiff still filed suit in December 2020, even though it "suffered no damage by reason of Defendants' conduct, and had no beneficial remedy available to it." *Id*. at 36 n.33.

261 at 2, 7-9.[4]   Plaintiff also complained about Stride's inadvertent use of the FLVA.com domain as a redirect.  Doc. 1 ¶ 61; *see* Doc. 306 at 4-5.[5]

Plaintiff sought nationwide damages from Stride for the alleged conduct on the basis of its bare, conclusory, and self-serving allegation that Plaintiff's marks are "known to purchasers throughout the United States and are associated with [Plaintiff's] services." Doc. 1 ¶ 78.   Plaintiff alleged Stride used the FLOS program names in interstate commerce in a manner that had caused (and was causing) "considerable" market confusion; that Stride did so willfully in order to trade off the good will Plaintiff claimed existed nationwide in its marks; that Stride's actions had caused Plaintiff extensive monetary injury; and that these actions had caused and would continue to cause irreparable harm to Plaintiff.  *Id.*  ¶¶ 39, 60, 65, 72, 80-83, 91-94, 104-107, 113-15, 119-124, 129, 130, 135, 136, 142 & 143.

After Stride objected to Plaintiff's discovery requests seeking commercially sensitive information about Stride's financial operations outside of Florida, Plaintiff filed a motion to compel on December 8, 2021, stating it "expect[ed] that discovery will disclose *substantial additional evidence* of infringement, false advertising and

---

[4] Prior to Plaintiff's filing this lawsuit, Stride removed the reference to FLVS from the introductory comments accompanying the Checklist, as Plaintiff acknowledged in its Complaint. Doc. 1 ¶ 58.

[5] Plaintiff previously released any claim for trademark infringement regarding the FLVA name. Doc. 306 at 5 (citing Doc. 250-1, ¶ 6(a)).

other misconduct outside of the State of Florida." Doc. 52 at 2 (emphasis added).[6]

While Plaintiff argued it was then "premature" to limit Plaintiff's claims solely to Florida, it offered that Stride could do so "[o]nce all discovery is in." *Id*. at 3.[7]

Once discovery was indeed fully "in" – it was scheduled to end on December 1, 2022 (Doc. 91) but was extended at Plaintiff's last minute request to pursue additional putative "confusion" deposition discovery and eventually did close on February 1, 2023 (Docs. 101, 114, 116) – the record clearly demonstrated that Plaintiff's claims for nationwide damages were baseless from their inception.

Accordingly, on February 3, 2023, Stride's counsel served a notice of Rule 11 Motion on Plaintiff's counsel, demanding Plaintiff withdraw/amend its claims so that they were limited solely to Florida. Ex. A. But Plaintiff refused, asserting in a letter signed by its *fourth* outside law firm that there were "numerous grounds on which

---

[6] Plaintiff insisted that its in-house counsel, who are involved in competitive decision-making, appear in the case, affording them access to Stride's sensitive financial information. These attorneys refused to give assurances that the competitively sensitive information would not be used for Plaintiff's commercial advantage. *See* Doc. 57. Tellingly, one of these attorneys, David D'Agata, boasted just months before filing this lawsuit about wielding Plaintiff's trademarks "aggressively" to "compete, compete, compete" to drive up revenues from out-of-state commercial activities. Doc. 352-87 at SE-137.0003-04. Thus, using discovery to gain access to this information for competitive purposes gave Plaintiff an unfair advantage.

[7] Stride opposed Plaintiff's motion to compel discovery outside of Florida on the basis that such information was irrelevant and disproportionate because Stride did not use Florida-branded material outside of Florida and because Plaintiff refused to identify, in response to Stride's discovery requests, any evidence of confusion or damage outside of Florida. Doc. 54. While the Magistrate Judge granted Plaintiff's motion in part, Doc. 65, all of the arguments Stride advanced in its opposition were later confirmed by the Court. Doc. 287 (finding "absolutely *no* evidentiary support" for Plaintiff's actual damages claim); Doc. 295 (holding that "Plaintiff's argument regarding the relevancy of Defendants' statewide and nationwide profits [was] simply meritless").

damages can be awarded for the claims and injuries pled in this case" and that the "record evidence" and "pleadings" supported that assertion. Ex. B. Stride therefore filed its original Rule 11 Motion. Docs. 137, 212. In its response, Plaintiff and its counsel stated that Plaintiff's "claims for nationwide damages are meritorious, both from a factual and legal standpoint." Doc. 157 at 18. But any reasonable investigation of the record would have shown that not to be so.

## II.    Plaintiff's Claim For Infringement Outside Of Florida Was Baseless.

### A.    Stride Never Used Florida-Centric Branding Outside Florida, And Plaintiff Had No Evidence To The Contrary.

At every critical juncture in this litigation, Stride made clear that its branding and advertising are driven by its "K12" and Stride brands—not school or state-specific programs. This is particularly so for its branding and advertising outside of Florida. Todd Goldthwaite, Managing Director at Stride, explained in a sworn declaration at the outset of discovery, in ***December 2021***, that "K12 limited the use of FLOS, FLORIDA ONLINE SCHOOL, and Florida-centric branding to the state of Florida because K12 is only authorized to enroll students in the HCSD program and other Florida programs if those students are qualified to attend Florida public K-12 schools." Doc. 54-2 ¶ 5. Consequently, Stride regarded the use of FLORIDA ONLINE SCHOOL or FLOS program names, or any other Florida-reference in its marketing and promotion outside of Florida, to be "pointless," and Stride did not use them for such marketing and promotion. *Id*. ¶¶ 6-8.

-7-

At his Rule 30(b)(6) deposition on behalf of Stride in **November 2022**, Goldthwaite again confirmed that Stride does not use Florida-centric or FLOS-specific branding outside of Florida.   When even asked if Stride takes steps to "prevent people from outside the state of Florida from seeing its Florida Online School material online," Goldthwaite responded affirmatively, because when "[y]ou go to K12.com, and you put in your zip code . . . .  If you put in a zip code that's not associated with Florida, you see other schools."   Ex. C at 349:19-350:4. Goldthwaite confirmed this testimony for the third time at trial in **October 2023**. Doc. 369 at 32-34 (citing Doc. 342 at 183:15-22, 185:10-13, 207:8-122).

**B.      Plaintiff Had No Evidence That Its Marks Were Even Sufficiently Recognized Outside Of Florida.**

Even more unreasonable than Plaintiff's claim for trademark infringement *in* Florida was Plaintiff's claim for infringement outside of the state.  Notably, Plaintiff did not conduct any secondary meaning survey to demonstrate name recognition outside of Florida that it self-servingly claimed in its Complaint, and it likewise chose not to conduct any confusion survey to demonstrate likely confusion among non-Florida customers.  Any inquiry into Plaintiff's internal studies before filing its case (and certainly prior to trial) would have confirmed that Plaintiff's marks were even more inherently geographic, descriptive, and weak outside Florida than in it.

Plaintiff's own analysis from *before the litigation* showed that, even within Florida, without prompting, only 1% of respondents could name Plaintiff as an

online education provider.  Doc. 352-55 at 2; *see* Ex. D at 103:1-17; Doc. 369 at 13.

And the acronym, FLVS, had less than 15% *aided* awareness among prospective and

*current* families.  Doc. 352-52 at 12; *see* Ex. E at 41:19-42:25; Doc. 369 at 13-14.

At deposition and again at trial, Plaintiff's Director of Marketing, Ashley Reyes, also

testified that changing a logo and using it in different ways can "dilute" a brand—

admitting that, in only 25 years of existence, Plaintiff had changed its logo *six* times.

*Id*. at 40:22-41:18 (discussing Doc. 352-52 at 11); Doc. 338 at 81:22-82:12 (same).

And in January 2022, Plaintiff described its branding as "plain … bored …

indifferent … apathetic … uninspired … [and] sterile."  Doc. 352-52 at 17; *see also*

Ex. E at 50:10-56:24; Doc. 369 at 14.  When asked about Plaintiff's brand strength

outside of Florida, Plaintiff's former Senior Digital Strategy Manager, Marissa

Draeger, testified that use of Plaintiff's current marks "was a challenge with the

geographic limitations but, also . . . there wasn't as high awareness as we'd like

outside the state of [the Florida Virtual School] name."  Ex. F at 47:17-48:1.[8]

In fact, as early as *May 2019* – a month before Stride had even launched the

FLOS program – Plaintiff began a nearly $5 million effort to fully rebrand its

national and global services formerly known as "Florida Virtual School" and "FLVS

Global."  It did so because its Florida-centric branding was not well recognized and

---

[8] Rebecca Kelley, Assistant to the Superintendent of the Wattsburg Area School District in Pennsylvania, testified she had never even heard of Plaintiff or its services when conducting extensive research for an online school provider for her district. Ex. G at 13:19-14:5.

limited Plaintiff's ability to "███████████████████████████." Doc. 352-54 at 2; *see also* Ex. F at 50-58; Doc. 337 at 79:7-81:1. Every word in its full name (*i.e.*, every element of its trademark) – "Florida," "virtual," and "school" – limited its ability to ████████████████████████████. Doc. 352-54 at 2-3. According to Plaintiff, the word "Florida" was "███████████████." *Id.* at 2. The word "virtual" was limiting because it gave "██████████████" to whom Plaintiff seeks to sell its curriculum products "████████████████ ████████." *Id.* And the word "school" was limiting because Plaintiff's services could be "████████████████████████████████████ ██████████." *Id.* Plaintiff therefore considered it "████████" that a new name "█████████████████████████." *Id.* at 3-4.[9]

Given its wholly underwhelming brand recognition and the limiting nature of its trademarks in conducting business outside of Florida, Plaintiff announced the re-branding of its global services to FlexPoint on October 6, 2021. Doc. 352-58.

> ### C.    Plaintiff Had 'Zero' Evidence For Any Damages Claim Outside Of Florida Arising From Stride's Use Of the FLOS Program Name.

Plaintiff never had any evidence that it suffered any monetary loss outside of

---

[9] Former Executive Director of Global Services for Plaintiff, Courtney Calfee, also testified that Plaintiff's use of "Florida Virtual School" outside of Florida was problematic. She explained that the word "Florida" was "problematic because many customers assumed that it would not meet their own State's standards"; the word "Virtual" was "problematic because [Plaintiff] had many customers that wanted to use it in a blended environment and not necessarily a virtual school"; and the word "School" was "problematic because we were licensing/process curriculum, and really acting as a curriculum provider versus just a school of record, or a school." Ex. H at 35:5-19.

Florida as a consequence of Stride's use of the FLOS program name or any other Florida-related terms in its non-Florida advertising or promotion efforts.

Not a single individual Plaintiff disclosed as purportedly having knowledge of "[t]he injury suffered by FLVS resulting from the acts complained of in the Complaint" actually had any knowledge of Plaintiff having sustained any injury outside of Florida as a result of Stride's actions. Ex. I at 6-8. For example, Plaintiff's former Executive Director of Global Services testified she was "not aware" of Plaintiff "having lost any money as a result of confusion between the name FLOS and FLVS." Ex. H at 112:22-25. In fact, when she learned of Stride's FLOS program launch, she had no concerns about it because it had no impact on Plaintiff outside Florida. *Id*. at 131:17-21. None of Plaintiff's other witnesses could identify any actual damage suffered by Plaintiff outside of Florida either. Ex. J at 26:20-28:2; Ex. K at 122:1-6, 125:23-126:21, 148:18-149:9; Ex. D at 204:7-11.

Instead, both the testimony of Plaintiff's corporate representative and Plaintiff's interrogatory answers confirmed that Plaintiff was relying solely on the expert report of its "damages" expert, Daniel Gallogly, for the proposition that Plaintiff suffered monetary loss outside of Florida. Ex. L at 7-8 (Rog. 13); Ex. M at 20:19-23:21 ("I would say definitely we are relying on Mr. Gallogly and his report . . . to address that issue."). But Plaintiff knew it could not rely on Gallogly for any evidentiary support for injury it claims to have sustained outside of Florida because

Plaintiff's counsel instructed Gallogly to *presume* confusion and damage, without reviewing or analyzing any substantiating evidence. Ex. N at 35:1-3, 36:18-37:1, 70:3-72:12, 77:19-80:1, 128:17-129:19, 148:1-9, 159:7-10, 173:2-20, 247:4-24, 281:25-282:17. In fact, Gallogly admitted he had "*zero actual evidence*" of any damage to Plaintiff and just assumed the facts alleged in Plaintiff's complaint were all true. *Id*. at 166:4-14, 282:3-6; *see generally* Doc. 268; Doc. 268-1, ¶¶ 18, 22. Nor could Plaintiff rely on Gallogly for evidence linking Stride's profits outside of Florida to its use of the Florida Online School name because Gallogly simply *assumed*, without apportioning or making any showing of causation, that 100 percent of Stride's total U.S.-based revenues was infringing. *Id*. ¶ 63; Ex. N at 247:4-24, 254:21-255:9, 281:25-282:17. Plaintiff's counsel just instructed Gallogly to assume the "maximum amount of damage." *Id*. at 133:3-12, 155:5-8, 280:22-281:24.

In sum, discovery confirmed what Plaintiff and its counsel should have known all along: there was no evidence of monetary loss to Plaintiff or of profits to Stride outside of Florida caused by Stride's use of the Florida Online School name and no justification for pursuing financial discovery from Stride on a national basis.

In August 2023, the Court granted Stride's motion to exclude Gallogly's testimony on lost profits, finding his opinions "***absurd***[ ]" and "***entirely speculative***," and holding that they "***fail to meet even basic standards of reliability and helpfulness***." Doc. 287 at 4 (emphasis added); *see also* Doc. 286 at 45:22-47:18

-12-

(finding Gallogly's lost profits opinions "preposterous" and observing that they "could be done by a middle school student in 90 seconds"). Deeming Gallogly's lost profits opinions "**wholly deficient**," the Court held that "***Plaintiff ha[d]*** <u>***zero***</u> ***evidence of actual damages***" and its claim had "***absolutely*** <u>***no***</u> ***evidentiary support for it***." Doc. 287 at 6-7 (emphasis added).

A few weeks later, the Court held that "Plaintiff's argument regarding the relevancy of Defendants' statewide and nationwide profits [was] ***simply meritless***" because Plaintiff "combined and conflated its own allegations related to its trademark infringement claims with allegations related to its claim that Defendants breached the parties' 2015 Settlement Agreement," and "disgorgement is not a remedy for a breach of contract claim." Doc. 295 at 5 (emphasis added). The Court therefore granted Stride's motion to limit Gallogly's opinions regarding disgorgement to 2019-2021 revenue from the HCSD program. *Id*. at 6.

**D.     The Court Found Plaintiff's Infringement Claim Had No Merit.**

In the Court's September 2023 order on summary judgment motions, it warned Plaintiff (which had sought summary judgment on its own infringement claim) that *even in Florida*, Plaintiff only had "limited proof of actual confusion." Doc. 297 at 18. The Court found it "odd that Plaintiff conducted no statistical survey to measure the likelihood of confusion, which is typical in cases like this," and it noted that "[w]ith no survey, . . . Plaintiff face[d] an uphill battle to demonstrate that

-13-

the one instance of potential customer confusion justifies the millions it seeks in disgorgement damages." *Id*. at 17-18. But Plaintiff did not heed the Court's warning.

Instead, "[w]ith trial several weeks away, Plaintiff, seemingly unable to comprehend or unwilling to accept the Court's rulings in this case, . . . desperately move[d] for reconsideration" of the Court's rulings on Plaintiff's damages claims. Doc. 306 at 1. Plaintiff made the "sophomoric argument that because it [purportedly] ha[d] evidence of confusion, it necessarily follows that it ha[d] been damaged." *Id*. at 2-3. And "[i]n a last-ditch attempt to salvage" its nationwide profits claim, Plaintiff argued that Stride's alleged use of the FLVA.com domain as a redirect constituted trademark infringement. *Id*. at 4-5. But the Court held that all of these arguments were "***patently without merit***" and denied Plaintiff's motion. *Id*. at 1 (emphasis added). The Court noted that Plaintiff had "simply regurgitat[ed] the same unpersuasive evidence of confusion that it ha[d] already presented through its summary judgment and *Daubert* papers" and that "***[a]mong the thousands of pages filed on this docket, . . . the Court ha[d] not seen one sentence that genuinely attempts to demonstrate or calculate actual damages***." *Id*. at 3 (emphasis added). The Court further held that Plaintiff's claim to Stride's nationwide profits based on the FLVA.com domain was released in the 2015 Settlement Agreement between the parties and thus was "***a claim that could never have been brought in the first place***."

-14-

*Id*. at 5-6 (emphasis added).[10]  The Court therefore granted summary judgment to Stride on Plaintiff's claim for actual damages with respect to trademark infringement and held that the "disgorgement remedy only applies to trademark infringement claims regarding Plaintiff's marks *in Florida*" for the two years Stride used the Florida Online School name.  *Id*. at 6-7.

Following trial, the Court granted judgment for Stride on Plaintiff's infringement claims, holding that to be the "only reasonable outcome given the dearth of evidence supporting Plaintiff's claims," which the Court found to be "feeble" and "grossly insufficient."  Doc. 369 at 35-36.  Finding "Plaintiff's prosecution of this lawsuit . . . akin to a 'trademark bully' harassing a competitor," the Court found that "Plaintiff's mark is among the most generic, descriptive – and therefore *weak* – marks the Court has seen"; that Plaintiff had "no credible evidence of actual confusion"; and that "the intent evidence supports a strong inference against *Plaintiff*, not Defendants."  *Id*. at 35 (emphasis in original).

The Court also found it "notable that this case proceeded to trial after years of contentious litigation even though Plaintiff suffered no damage by reason of Defendants' conduct, and had no beneficial remedy available to it," including injunctive relief or disgorgement of Stride's profits.  *Id*. at 36 n.33.

---

[10] Plaintiff's current counsel, Stephen Luther was aware of the release inasmuch as he negotiated the 2015 Settlement Agreement's joint stipulation for dismissal with prejudice of the prior litigation on behalf of Plaintiff.  Doc. 350-14 at JE-015.0017.

**III.    Plaintiff's False Advertising Claim Outside Of Florida Was Baseless.**

**A.    Plaintiff Had No Evidentiary Support For Any Damages Outside Of Florida Based On Stride's Advertising.**

Plaintiff's claim that it suffered monetary loss outside of Florida because of Stride's advertising practices lacked any factual support to begin with.  Seemingly aware that the claim outside of Florida was a stretch – particularly with little name recognition outside Florida and after Stride removed any reference to Plaintiff as a competitor from the challenged conduct – Plaintiff's counsel deliberately chose *not* to hire any expert to survey the consumer universe outside of Florida for any deception potentially caused by the Checklist; it limited Jeffrey Stec's survey to Florida only. Ex. O at 143:24-144:8 ("Q: Are you offering any opinions as to whether the results of your survey of Florida parents have statistically and methodologically correct application to a universe outside of Florida?  A: So I have not been asked to do that one way or the other.  So that's not an opinion I take in my report.").

Plaintiff likewise produced no testimony to support a claim of injury.  Rather, the *only* "basis" for Plaintiff's extraordinary damages claim was an "examination" of the damages expert reports furnished by Gallogly.   Ex. L at 5-7 (Rog. 10);  Ex. M at 20:19-21:7.    But again, Gallogly admitted he offered no opinions on whether there was *actual evidence* of damages *caused* by Stride's advertising or use of the Checklist.   Instead, he simply assumed that the Checklist actually led to people selecting FLOS instead of FLVS.  Ex. N at 284:17-22.  That is all Plaintiff ever had.

Nor did Plaintiff ever even have evidence that the Checklist was false or misleading or had the capacity to deceive anyone—especially outside Florida. Indeed, Plaintiff's corporate representative, in deposition, could not identify anything "literally false" about the Checklist. Ex. P at 198:13-202:13.[11] There was nothing misleading about the Checklist either, which was a PDF marketing tool clearly meant for users to print or otherwise utilize in their research for an online educational program. Doc. 261 at 8-9; *see* Doc. 139-17. It did *not* state that none of Stride's competitors possessed any of the featured attributes of Stride's programs, especially when viewed in the full context of the website, which invited readers to do their own research. Doc. 261 at 9, 12. Simply put, there was no evidence – survey or otherwise – that the Checklist created any deception or that it caused Plaintiff to suffer monetary loss in or outside of Florida. The Court agreed.

## B.    The Court Found Plaintiff's False Advertising Claim Meritless.

On July 10, 2023, following an evidentiary hearing (*see* Doc. 248), the Court granted Stride's motion to exclude the expert report and testimony of Plaintiff's

---

[11] All the meanwhile, and continuing today, Plaintiff has claimed in *its own* nationwide, online public advertising that it has been serving students in the kindergarten through twelfth grade market for 25 years (Docs. 352-41, 352-42, 352-79) even though it now has admitted that, with respect to the K-5 market, those statements are *literally false*, Doc. 331 at 52:4-55:7, Doc. 337 at 107:17-25—or, as the Court observed, "partially incorrect." Doc. 337 at 108:20-109:6; *see also* Doc. 363 at 4 (finding Plaintiff did not expand into K-5 education until 2008); *Upper Deck Co. v. Flores*, 569 F. Supp. 3d 1050, 1064 (S.D. Cal. 2021) ("[A] statement actionable under the Lanham Act may be an affirmatively misleading statement, a *partially incorrect statement*, or a statement which is untrue as a result of a failure to disclose a material fact." (emphasis added)).

survey expert, Stec, and also granted Stride summary judgment on Plaintiff's false advertising claim. Doc. 261. The Court found that Stec's survey was "flawed" and "based upon a misleading premise" because it "assumes the Checklist contains false and misleading statements" and "ultimately portrays Defendants' website and the Checklist out of context." *Id*. at 7-9. In "reality," because the website asked readers to "weigh your options" when comparing Stride to generic "Other Online Learning Solutions," the Court recognized that the Checklist was merely a "marketing tool inviting the reader to compare the features of Defendants' program with competing online educational programs." *Id*. at 7-8.

As the Court held, "[t]here can be ***no good faith contention*** that the corresponding blank checkboxes 'state' that *none* of Defendants' competitors, including Plaintiff, possess *any* of those attributes, especially when viewed in the full context of the website." *Id*. at 12 (bold emphasis added); *see also id*. at 7-8 & n.6. The Court held that "[t]he only 'statements' in the checklist are the features offered by Defendants, represented by the boxes," and there was "simply no evidence in the record that these statements are literally false," that they deceived consumers, or that Plaintiff "would suffer . . . harm." *Id*. at 9, 12-13; *see also* Doc. 248 at 50:5-51:5 (observing that, if accepted, Plaintiff's "proposition would basically make almost all comparative marketing illegal in the United States"). Accordingly, because "no admissible evidence showing consumer deception ha[d] been offered and the

advertisement in question [was] not literally false," the Court held that Plaintiff's false advertising claim "cannot stand." *Id*. at 261.[12]

## **STANDARD**

Rule 11 serves a purpose fundamental to the fair and proper functioning of our federal civil litigation system: "to deter baseless filings in the district court" that are prejudicial and waste the court's and the parties' time and resources. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Accordingly, anyone who files a "pleading, written motion, or other paper" is duty-bound to ensure that its factual contentions are grounded in evidentiary support before filing suit or will have such support "after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *see also Massengale v. Ray*, 267 F.3d 1298, 1301-02 (11th Cir. 2001); 28 U.S.C. § 1927 (permitting sanctions against any attorney who "multiplies the proceedings in any case unreasonably and vexatiously").

A party and its counsel may be sanctioned for failing to " 'stop-and-think' before initially making . . . factual contentions" and/or "for insisting upon a position after it is no longer tenable," because "if evidentiary support is not obtained after a

---

[12] Plaintiff tried to salvage its false advertising claim with a theory, advanced by its counsel at Rumberger Kirk, that the challenged conduct was "literally false" by necessary implication. Doc. 157 at 9-12. But that requires that the *only* reasonable interpretation of the challenged content was one that rendered it literally false. *See* Doc. 185 at 3-4 (citing *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010)). And Plaintiff's expert conceded that as to Time4Learning (one of the competitors identified in the challenged content) the statements were *literally true*, because Time4Learning is a curriculum seller, and unlike Stirde, does not offer live classes, certified teachers, transcripts, or degrees. Doc. 248 at 9:16-14:22, 30:23-31:17, 33:23-36:14.

reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention."  Fed. R. Civ. P. 11, Notes of Advisory Cmte.—1993 Amend.  In other words, "an attorney's obligations with respect to the contents of pleadings or motions are not measured solely as of the time when the pleading or motion is initially filed with the court, but also at the time when the attorney, having learned the claims lack merit, reaffirms them to the court." *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 942 (11th Cir. 2022).

## ARGUMENT

Plaintiff's Complaint contained core claims of injury and damages outside of Florida that had no evidentiary support at the time they were filed, and never did through their disposal by the Court, even after years of "further investigation [and] discovery."  *See* Fed. R. Civ. P. 11(b)(3); *see, e.g.*, Doc. 261 at 12-14 (finding "no good faith contention" and "simply no evidence in the record" behind Plaintiff's false advertising claim); Doc. 287 at 6-7 (holding Plaintiff's lost profits claim "wholly deficient" and with "absolutely *no* evidentiary support"); Doc. 295 at 5-6 (finding Plaintiff's nationwide profits claim "simply meritless"); Doc. 306 at 4-6 (holding that Plaintiff "produced no evidence whatsoever that it has been damaged by Defendants' alleged infringement" and its nationwide profits claim "could never have been brought in the first place"); Doc. 369 at 36 n. 33 (finding "Plaintiff suffered no damage by reason of Defendants' conduct, and had no beneficial remedy

-20-

available to it").

By any measure, it was unreasonable for Plaintiff and its counsel to file, and subsequently continue to maintain, such exceptional, baseless claims, while wasting Stride's time and resources defending against them. *See* 28 U.S.C. § 1927; *Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996) (affirming sanctions when plaintiff's counsel knew at the time of filing and throughout the litigation "that the case was without a factual basis but failed to dismiss it"); *NCM of Collier Cnty., Inc. v. Durkin Grp., LLC*, No. 2:11-CV-558-FTM-99DN, 2012 WL 2792802, at *1-3 (M.D. Fla. July 9, 2012) (Presnell, J.) (granting sanctions where "Plaintiffs did not amend their complaint, or rethink the legal sufficiency of their claims"); *Contini v. United Trophy Mfg., Inc.*, No. 6:06-cv-432-Orl-18UAM, 2007 WL 1696030, at *4-5 (M.D. Fla. June 12, 2007) (holding plaintiff's counsel violated Rule 11 and 28 U.S.C. § 1927 "in continuing to pursue this case before this Court" after discovery confirmed no basis for plaintiff's claims).

There can be little question that Plaintiff unreasonably filed and prosecuted claims based on damage outside of Florida. Plaintiff specifically alleged Stride caused Plaintiff to suffer damages and "irreparable harm" from alleged trademark infringement, false advertising, and unfair competition outside the State of Florida. Doc. 1 ¶¶ 72, 81, 82, 92, 93, 105, 106, 113, 114, 129, 130, 135, 136, 142 & 143. But "even the most minimal investigation would have alerted" Plaintiff and its

-21-

counsel that these claims were baseless.   *See Gulisano*, 34 F.4th at 944 (quoting *Worldwide Primates, Inv. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996)).

After all, it was clear well before Plaintiff filed its Complaint in December 2020 that only *Florida* students could enroll in Stride's FLOS (n/k/a DAOF) program; that Stride did not use Florida-centric branding outside of Florida; and that at least as early as 2019, Plaintiff *itself* recognized its brand outside of Florida had little, if any, recognition or good will that a competitor even could harm or damage. *See Brown v. Generac Power Sys., Inc.*, No. 20-22434-CIV, 2021 WL 1030229, at *7-11 (S.D. Fla. Feb. 27, 2021) (noting "[i]t is well established that Rule 11(b)(3) applies to infringement allegations" and finding counsel's "pre-filing inquiry was not objectively reasonable under the circumstances"), *report and recommendation adopted,* 2021 WL 1022872 (S.D. Fla. Mar. 17, 2021); *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tennessee*, 952 F. Supp. 2d 1373, 1380-84 (N.D. Ga. 2013) (holding plaintiff knew or should have known that its allegations were "directly contradicted by [its] own documents" and as a result, its "factual allegations . . . lacked evidentiary support in violation of Rule 11(b)(3)").

Plaintiff also never had any proof whatsoever that the Checklist caused it any actual damage in or outside of Florida, or that there was anything false or misleading about asking consumers to compare Stride's attributes to those of others—indeed Plaintiff's counsel chose *not* to have Stec survey anyone outside of Florida.  As the

Court rightfully observed about the Checklist: "That's just typical marketing technique . . . That's not false. It's not misleading. It's marketing." Doc. 248 at 49:3-9; *see also Ransaw v. Hernando Cnty. Sch. Bd.*, No. 8:06cv-2393-T23EAJ, 2007 WL 4163396, at \*6 (M.D. Fla. Nov. 20, 2007) ("Sanctions are warranted when an attorney exhibits a deliberate indifference to obvious facts.").

Nevertheless, Plaintiff filed the claims and later told the Court it "expect[ed] that discovery will disclose substantial additional evidence of infringement, false advertising and other misconduct outside of the State of Florida." Doc. 52 at 2. But once discovery closed, it was clear that Plaintiff and its counsel had over-pleaded and over-promised, and that their asserted evidentiary foundation for Plaintiff's inflated damage claims had never materialized. There simply was no documentary or testimonial evidence whatsoever that Plaintiff suffered any monetary loss or harm outside of Florida or that Stride earned undue nationwide profits based on the use of the Florida Online School program names or any other marks; based on Stride's advertising practices; or based on Stride's use of the FLVA.com domain name.

Plaintiff and its counsel never should have pursued the claims based on conduct outside of Florida, and at a minimum, they should have withdrawn the claims once Stride demanded that in February 2023. *See* Fed. R. Civ. P. 11, Notes of Advisory Cmte.—1993 Amend. As the Eleventh Circuit repeatedly has held, "[t]hat the contentions in the complaint were not frivolous at the time it was filed

does not prevent the district court from sanctioning [the attorney] for his continued advocacy of them after it should have been clear that those contentions were no longer tenable." *Gulisano*, 34 F.4th at 942-43 (affirming sanctions); *see also, Worldwide Primates*, 26 F.3d at 1091-93 (affirming Rule 11 sanctions where "[t]he evidence shows [plaintiff] knew from the beginning that the letters had not harmed its business relationship with Delta" and plaintiff pursued the claim "when it knew, or should have known, that its claim was legally and factually baseless").

Here, by filing and pressing claims regarding conduct and damages outside of Florida despite the lack of any supporting evidence, Plaintiff and its many counsel severely harmed and prejudiced Stride, including by forcing it needlessly and unfairly to expend considerable time and resources defending against such claims.[13]

As the Court aptly observed, "***Plaintiff's prosecution of this lawsuit seems more akin to a 'trademark bully' harassing a competitor than a party seeking***

---

[13] Aside from those at Gray Robinson, P.A. (*see supra* n.1), Stride is unaware of any "exceptional circumstance" that would limit sanctions to any specific attorney or law firm for Plaintiff. *See* Fed. R. Civ. P. 11(c)(1). Stephen Luther has been Plaintiff's lead counsel throughout the entire case. The attorneys at Bishop & Mills PLLC, have served as counsel to Plaintiff since February 1, 2023 (Doc. 126) having first sent Plaintiff's response to Stride's notice of Rule 11 motion. Ex. B. The attorneys at Rumberger, Kirk & Caldwell, P.A., served as Plaintiff's counsel from May 2022 until July 2023 (Docs 86, 87, 88, 265), having also imposed unnecessary burdens on Stride through discovery into its nationwide finances and also signing Plaintiff's response to Stride's original Rule 11 motion. Docs. 96, 102, 157. And Plaintiff's in-house attorneys, David D'Agata and Luis Guzman, appeared and have actively participated in the case since March 2021. Docs. 18, 44. Each of these attorneys, who appeared on Plaintiff's submissions, had an independent duty "stop-and-think" about the evidentiary support for Plaintiff's claims and whether they were no longer "tenable." Fed. R. Civ. P. 11(b)(3) & Notes of Advisory Cmte.—1993 Amend.

***reasonable redress for any harm caused by Defendants***.” Doc. 369 at 36 n.33. (emphasis added). Sanctions are necessary and appropriate to redress the misconduct of Plaintiff and its counsel. *See Turner*, 91 F.3d at 1422.[14]

## CONCLUSION

For all of the foregoing reasons, the Court should grant this Motion and award Stride sanctions against Plaintiff and each of its attorneys (including those that withdrew, except those at Gray Robinson, P.A.). *See* Fed. R. Civ. P. 11(c)(1) & (4).[15] The Court should further award Stride its reasonable costs and attorneys' fees incurred to prosecute this motion. Fed. R. Civ. P. 11(c)(2). Should the Court consider attorneys' fees and costs as a sanction, Stride requests that it be permitted to submit an application (with supporting documentation) for such fees and costs.

---

[14] Sanctions also should be imposed on Plaintiff itself because its in-house attorneys have actively managed Plaintiff's trademark litigation strategy and chose to appear and actively participate in this case (Docs. 18, 44), including preparing Plaintiff's corporate representatives for deposition, attending numerous depositions, and even lodging improper and frivolous objections at some of them, Ex. P at 2:11-16, 21:2-26:4, Ex. M at 2:6, 15:23-16:5; Ex. E at 2:17-21, 11:5-16, 56:25-57:23, 49:11-21, 61:1-14, 115:4-117:13; Ex. H at 2:8-9, 11:5-15:17, 71:3-21, 76:3-77:24 *see also* FLVS Bd. of Trustees Meeting, at 2:04:09-2:04:59 (Nov. 29, 2022), https://www.youtube.com/watch?v=C8grfMFspNQ&ab_channel=,%20FloridaVirtualSchoolBoardofTrustees (David D'Agata stating that he "appear[s] in our cases" and "actively participates" because "I think all my ideas are the best"); *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) (citing Fed. R. Civ. P. 11(c)(1)).

[15] Lawyers cannot "escape [Rule 11] sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions." *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986); *see also Holgage v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) ("[A]ny attorney who, at any time, certified to the court that a pleading complies with Rule 11 is subject to the rule, even if the attorney later withdraws from the case."); *Kryder v. Est. of Rogers*, 321 F. Supp. 3d 803, 806 (M.D. Tenn. 2018); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04cv604, 2008 WL 1777855, at *2 (S.D.N.Y. Apr. 16, 2008) (stating that "withdrawal from the case does not insulate" counsel from Rule 11 sanctions "for pre-withdrawal litigation conduct").

Dated: January 19, 2024      Respectfully submitted,

/s/ *Steven P. Hollman*

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  Steven P. Hollman (Lead Counsel) (*pro hac vice*)
  Abraham Shanedling (*pro hac vice*)
  Charles Spencer-Davis (*pro hac vice*)
  2099 Pennsylvania Ave., N.W., Suite 100
  Washington, D.C. 20006-6801
  Tel. (202) 747-1941
  Fax (202) 747-3012
  shollman@sheppardmullin.com
  ashanedling@sheppardmullin.com
  cspencerdavis@sheppardmullin.com

  Anne-Marie Dao (*pro hac vice*)
  12275 El Camino Real, Suite 100
  San Diego, CA  92130
  Tel. (858) 720-8900
  Fax (858) 509-3691
  adao@sheppardmullin.com

CARLTON FIELDS, P.A.
  Daniel C. Johnson (Fla. Bar No. 522880)
  200 S. Orange Avenue, Suite 1000
  Orlando, Florida 32801-3456
  Tel. (407) 849-0300
  Fax (407) 648-9099
  djohnson@carltonfields.com
  Secondary: dcarlucci@carltonfields.com
  Secondary: orlecf@cfdom.net

  Eleanor M. Yost (Fla. Bar No. 1003178)
  4221 W. Boy Scout Blvd, Suite 1000
  Tampa, Florida 33607-5780
  Tel. (813) 229-4395
  Fax (813) 229-4133
  eyost@carltonfields.com

  ***Attorneys for Stride, Inc., and K12 Florida LLC***

-26-

## LOCAL RULE 3.01(g) CERTIFICATION

In accordance with Local Rule 3.01 as well as Fed. R. Civ. P. 11(c), the undersigned certifies that: (1) a copy of the original version of this motion was *served* upon Plaintiff by serving its counsel in accordance with Rule 11(c)(2) by email on February 3, 2023 (see Ex. A); (2) on February 24, 2023, Plaintiff's counsel wrote that it refused to consent to the relief sought herein, Ex. B; (3) on January 17 and 19, 2024, undersigned counsel conferred with Plaintiff's counsel who stated that Plaintiff is opposed to this motion. Plaintiff's former counsel at Rumberger, Kirk & Caldwell, P.A. also stated they are opposed to the relief sought herein.

/s/ Abraham J. Shanedling
Abraham J. Shanedling

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 19, 2024, I served unredacted versions of Stride's Amended Motion for Rule 11 Sanctions and supporting exhibits via email on all current counsel of record for Plaintiff.

I further certify that on January 19, 2024, I served unredacted versions of this motion and supporting exhibits via email on the following former counsel for Plaintiff:

       RUMBERGER, KIRK & CALDWELL, P.A.
       Suzanne Barto Hill
       Sally R. Culley
       Leonard J. Dietzen
       shill@rumberger.com
       sculley@rumberger.com
       ldietzen@rumberger.com

                             */s/ Abraham J. Shanedling*
                             Abraham J. Shanedling