# EXHIBIT K

Page 1

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

CASE NO.:  6:20-cv-02354-GAP-EJK

FLORIDA VIRTUAL SCHOOL,

Plaintiff,

vs.

STRIDE, INC., formerly known as

K12 INC., and K12 FLORIDA LLC,

Defendants.

* * * * * * * * * * * * * * * * * *

VIDEO-RECORDED

DEPOSITION OF:  TANIA CLOW

DATE:           November 18, 2022

TIME:     COMMENCED:  9:12 a.m.
          CONCLUDED:  2:17 p.m.

TAKEN BY:       Defendants

PLACE:          Rumberger, Kirk & Caldwell, PA
                300 South Orange Avenue
                Suite 1400
                Orlando, Florida 32801

REPORTED BY:    Mae Fisher, RMR, CRR

Q.   What injury are you aware of FLVS having suffered as a result of the use of this checklist document?

MR. LUTHER:  Object to form.

THE WITNESS:  I'm not sure what injury we'd suffer.  But if it has misleading information, there's confusion in the marketplace.

BY MR. HOLLMAN:

Q.   And what's your basis for the assertion that there is confusion in the marketplace?

A.   The way this was primed for readers to look for a difference.  It's causing -- it's assuming and misleading that this information, this -- the competitors of K12 don't offer this the way this is set up.

And the way they're reading and the wording that was set up prior to getting this checklist implies and prime the reader to expect a difference.  Then when they see one column checked off, they're expecting a difference.  So that implies that difference.

So there's a misleading in the marketplace.  And it's not really very fair to mislead parents.  We're here to serve them, not mislead them.

Q.   Have you done any market survey or other market research to see if, in fact, parents were confused by this information?

Page 125

A.  -- students not selecting -- parents not moving forward on misleading information.

Q.  Are you aware of any instance where a parent did not move forward with FLVS on the basis of what you consider to be misleading information?

MR. LUTHER:  Object to form.

THE WITNESS:  I do not have a specific example. Me personally, I do not have a specific example.

BY MR. HOLLMAN:

Q.  Do you have personal knowledge of any enrollment that was lost to FLVS on the basis of the information contained in this document, Exhibit 20?

MR. LUTHER:  Object to form.

THE WITNESS:  Not that has been shared with me.

BY MR. HOLLMAN:

Q.  Do you have information that wasn't shared with you?

A.  Well, if it hasn't been shared with me --

MR. LUTHER:  Object to form.

THE WITNESS:  -- how would I have the information?

BY MR. HOLLMAN:

Q.  Well, I'm trying to understand the basis for the statement in the initial disclosures that you have knowledge concerning the injuries suffered by FLVS.  And

Page 126

other than your own surmise or conjecture or opinion about who would be deceived, I want to know what information you have about injury that FLVS claims to have suffered; can you answer that question, please?

A.   Other than a potential loss of revenue, I do not have any other information.

Q.   Have you made any effort to quantify the supposed loss of revenue that you surmise FLVS may have suffered?

A.   I have not.

MR. LUTHER:   Object to form.

THE WITNESS:   I have not.

BY MR. HOLLMAN:

Q.   Do you know if anyone else has done so?

A.   I do not know if anyone else has done so.   I would assume they have but I do not know.

Q.   As we sit here today, do you have any other knowledge or information about injury that FLVS claims to have suffered resulting from the acts complained of in the complaint?

MR. LUTHER:   Object to form.

THE WITNESS:   No.   I've answered that question.

BY MR. HOLLMAN:

Q.   In Exhibit 19, Kate Lysaught responds to your e-mail of August 4, 2020, with the statement:   I've sent this to our legal team.   Thanks for sharing.

Page 148

MR. LUTHER:  Object to the form.

THE WITNESS:  Well, if that FLVA was supposed to be owned by Florida Virtual School and directed to Florida Virtual School and it had not been and people were typing FLVA and going to you, going to K12, then K12 got those customers, as opposed to FLVS, which was the intent.  How many that is, I don't have -- I don't have the data on that.  How many people from 2016 or whenever that was supposedly supposed to be filtered over to today, to 2020 when we found out about it, typed in FLVA.com and were sent to K12 as opposed to Florida Virtual School like they were supposed to, I don't know.  I'm sure there's a way to Google that and get Google analytics to find out in that time frame how many people went to that -- went to K12 as opposed to Florida Virtual School.

BY MR. HOLLMAN:

Q.  But as we sit here today, you're not aware personally yourself of a single instance in which someone intending to reach the FLVS site ended up on the Florida Cyber Charter Academy site and therefore, became an enrollee of a K12 program?

MR. LUTHER:  Object to form.

THE WITNESS:  No, I personal have not surveyed anybody who went to FLVA.net and enrolled there as

opposed to wanting to come to FLVS but there are

instances of confusion.

BY MR. HOLLMAN:

Q.   When you say there are instances of confusion,

are you aware personally yourself of any instances of

confusion resulting from use of the FLVA.com domain as a

redirect?

MR. LUTHER:   Object to the form.

THE WITNESS:   Not of the redirect but of

confusion in the marketplace, yes, I have seen

instances in e-mails where people are confused on who

they thought they were -- who they thought they were

enrolling with.

BY MR. HOLLMAN:

Q.   Are you aware of any information suggest that the

confusion you just testified existed in the marketplace

was attributable to K12's use of the FLVA.com as a

redirect?

MR. LUTHER:   Object to form.

THE WITNESS:   Not a specific person example,

no.

MR. HOLLMAN:   27.

(Defendants' Exhibit No. 27 was marked for

identification.)

BY MR. HOLLMAN:

Page 164

Stephen Luther, Esquire                    November 22, 2022

Sluther@lutherlawgroup.com


RE: Florida Virtual School v. Stride, Inc. and K12

    Florida, LLC

    Deposition of: Tania Clow

    Date: 11/18/22

    Job No. 5572206


    The above-referenced transcript is available for review.

    The witness should read the testimony to verify its accuracy. If there are any changes, the witness should note those with the reason on the attached Errata Sheet.

    The witness should, please, date and sign the Errata Sheet and email to the deposing attorney as well as to Veritext at Transcripts-fl@veritext.com and copies will be emailed to all ordering parties.

    It is suggested that the completed errata be returned 30 days from receipt of testimony, as considered reasonable under Federal rules*, however, there is no Florida statute to this regard.

    If the witness fails to do so, the transcript may be used as if signed.

                    Yours,

                    Veritext Legal Solutions

    *Federal Civil Procedure Rule 30(e)/Florida Civil

    Procedure Rule 1.310(e).

    cc:  Steven Hollman, Esquire

RE: Florida Virtual School v. Stride, Inc. and K12 Florida, LLC

Deposition of: Tania Clow

Date: 11/18/22

E R R A T A  S H E E T

PAGE _17_ LINE _8_ CHANGE _"Stephens" to_

_"Stevens"_

REASON _Correct spelling of last name_

PAGE _17_ LINE _12_ CHANGE _"Juliet" to_

_"Juliette"_

REASON _Correct spelling of first name_

PAGE _53_ LINE _16 + 23_ CHANGE _"Gonyea" to "Gagne"_

REASON _Correct spelling of last name._

PAGE _127_ LINE _20 + 21_ CHANGE _"FLVS" to "FLVA"_

REASON _"FLVA"_ → Mr. Hollman asked if it was known what consequences _faced. I responded that I would not know what "FLVA" faced._

PAGE _151_ LINE _24_ CHANGE _"would have" to_

_"would not have"_

REASON _The word "not" is missing._

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

_Tania Clow_                    _Dec. 13, 2022_
Tania Clow                          DATE

cc: Steven Hollman, Esquire

5572206