# EXHIBIT M

Page 1

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

CASE NO.:  6:20-cv-02354-GAP-EJK

FLORIDA VIRTUAL SCHOOL,

Plaintiff,

vs.

STRIDE, INC., formerly known as

K12 INC., and K12 FLORIDA LLC,

Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

VIDEO-RECORDED

DEPOSITION OF:  SAMUEL VERGHESE

DATE:           November 15, 2022

TIME:           COMMENCED:  2:02 p.m.
                CONCLUDED:  4:14 p.m.

TAKEN BY:       Defendants

PLACE:          Rumberger, Kirk & Caldwell, PA
                300 South Orange Avenue
                Suite 1400
                Orlando, Florida 32801

REPORTED BY:    Mae Fisher, RMR, CRR

Page 2

A P P E A R A N C E S:

STEPHEN LUTHER, ESQUIRE

Of:   Luther Law PLLC

      4767 New Broad Street

      Suite 1029

      Orlando, Florida 32814-6405

      (407) 501-7049

      Sluther@lutherlawgroup.com

DAVID D'AGATA, ESQUIRE

Of:   Florida Virtual School

      5422 Carrier Drive

      Suite 201

      Orlando, Florida 32819-8323

      (407) 513-3451

      Ddagata@flvs.net

          Counsel for the PLAINTIFF

STEVEN HOLLMAN, ESQUIRE

Of:   Sheppard Mullin, LLP

      2099 Pennsylvania Avenue NW

      Suite 100

      Washington DC, 20006

      (202) 747-1900

      Shollman@sheppardmullin.com

          Counsel for the DEFENDANTS

ALSO PRESENT:

MICHAEL PETERMAN

Videographer

Page 15

any additional information right now that is in existence that's been presented.  Are you aware of any additional information relating to these instances of confusion that -- when I say you, is FLVS aware of any such information that has not yet been presented such as in interrogatory answers or in discovery materials?

MR. LUTHER:  Object to form.

THE WITNESS:  So what I believe is that everything we were talking about related to those instances and the original interrogatories and then in Exhibit A were examples that we knew of related to confusion that were identified as -- as that.  I can't say I'm aware of other additional areas of confusion or else they would have been put forward at the time.  But it doesn't mean that more won't come out in the course of, you know, this litigation.  But this is what I'm aware today.  That's what I attested to.

BY MR. HOLLMAN:

Q.  Has FLVS interviewed or communicated with any of the individuals who are identified in the documents reflected in Exhibit A to the supplemental answers?

A.  Not to my knowledge.

Q.  What have you done to prepare for your deposition today?

A.  I've spent many sessions with our legal counsel

Page 16

and I have taken time to look at the instances that were marked as confusion, and I've taken time with that over several hours and over several days to take time to do that.

Q. Did you obtain information from any source, apart from your communications with counsel, than the documents themselves and the supplemental interrogatories?

A. I did not.

Q. Did you speak with any fact witness in preparation for your testimony?

A. I did not.

Q. Did you speak with anyone besides counsel in preparation for your testimony?

A. I did not.

Q. Apart from the documents which are identified in Exhibit A to the supplemental answers, did you review any documents in preparation for your deposition testimony here today?

A. I reviewed the documents that were responsive to that related to these in front of us with the supplemental interrogatory, Exhibit A. So anything that's stated here, I looked through it, outside of the Gallogly report which was the rebuttal because that was considered highly confidential with some of the

information that K12 had.  So I did not review that because it was marked as highly confidential.  But I made sure I was prepared to speak to those today.  So I made sure I did a review in relation to that with everything there in the supplemental interrogatories that we had before us.

Q.   Has FLVS ever undertaken to determine whether there are instances of confusion relating to the Florida Cyber Charter Academy?

MR. LUTHER:  Object to form.

THE WITNESS:  So I'm not aware of a specific commissioned survey or report related to something like that.  Specifically with Cyber Charter Academy. I do know, as have been discussed in previous depositions, just related to brand trackers and surveys that may have captured some of that information.  But there wasn't a direct concerted effort that I'm aware of related to that.

BY MR. HOLLMAN:

Q.   So if I asked you, you know, if you could come up with -- if I asked FLVS if it could come up with a percentage of the consuming public that has confusion between -- confusion about the relationship or sponsorship between Florida Cyber Charter Academy and FLVS, you wouldn't be able to give me a percentage; is

Page 18

that so?

MR. LUTHER:  Object to form.

THE WITNESS:  So I wouldn't be able to give you something off the top of my head, Mr. Hollman.  I'm aware there could be data points related to that.  There might be some of the information that had been produced in discovery from our marketing and communications team that may have some of those data points with that.  I know there was -- as have been discussed before, that's just due diligence from our marketing and communications team to look at the competitive landscape and to look at certain areas and arenas of brand awareness and market placing.

And I think there could be some data points to that related to.  I don't off the top of my head, specifically on that.  But I would say there could be, I just -- as I stated before, I do not know a specific commission study related to the question you asked me.

BY MR. HOLLMAN:

Q.  Do you see that Interrogatory No. 10 in the -- repeated in the supplemental interrogatories calls for FLVS to explain the basis for its allegation in paragraph 60 of the complaint that FLVS has been damaged by these and other false representations in K12's advertisements?

Page 19

A.   Do you mind pointing me a specific page?

Q.   Sure.  Bottom of 5.

A.   Okay.

Q.   Under the heading Interrogatory No. 10, first two lines.

A.   Yes.  Okay.  And do you mind repeating that question, Mr. Hollman?

Q.   Yes.  Do you see that Interrogatory No. 10 calls for FLVS to explain the basis for its allegation in paragraph 60 of the complaint that FLVS has been damaged by these and other false representations?

A.   Yes, I do see that.

Q.   And in its supplemental response, FLVS refers to the expert reports prepared by Mr. Gallogly including his April 4th and July 1st reports and his more recent rebuttal report; do you see that?

A.   Yes, I do see that.

Q.   Is FLVS relying on anything in Mr. Gallogly's report to show causation between K12's challenged conduct and the damages that FLVS is claiming here?

MR. LUTHER:  Object to form.

THE WITNESS:  Do you mind repeating the second part of that question or rephrasing that second part of that question related to that?  I'd appreciate if you could just reword that a bit.

Page 20

BY MR. HOLLMAN:

Q.   Sure.  You understand that the interrogatory is asking FLVS for the basis for its allegation in paragraph 60 of the complaint that FLVS has been damaged by these and other false representations, referring to the conduct of K12, right?

A.   Yes.  That is my understanding.

Q.   And as part of the answer, FLVS states in its supplemental response that it's relying on the expert report of Dan Gallogly, which you said you've reviewed, right?

A.   That is correct.  I've reviewed his April 4th and July 1st reports.  And as I stated, the rebuttal, because there was highly confidential information that K12 deemed only appropriate for counsel to look at, I did not review that.  But I have -- but I have stated in the response what is accurate and what I believe to be on there.

Q.   Right.  And so my question to you is, is FLVS relying on anything in any of Mr. Gallogly's reports for the proposition that FL -- that conduct of K12 that's challenged in this lawsuit caused the injury --

MR. LUTHER:  Object to form.

BY MR. HOLLMAN:

Q.   -- that FLVS is complaining about?

Page 21

MR. LUTHER:  Object to form.

THE WITNESS:  So I would say -- I would say yes.  And what I would explain is, as I look at this, there is mentioning, harkening back to the complaint and some of the concerns that are there.  Of course, talking about the checklist and some of those other exhibits were part of that.  That was in there.

And Mr. Gallogly, of course, is, you know, the damages expert in relation to what that would look like.  But there are, you know, also issues related to Dr. Stec and how the market confusion and some of the issues related to that.  And the implications of that are also laid out, that are linked back to that also in relation to how someone could be confused.  There's actual -- an expert that was involved in that process as well to get to the science behind that.

BY MR. HOLLMAN:

Q.  Right.  But you didn't mention Mr. Stec in your supplemental response, did you?

A.  So specifically, in supplemental response, that is not there.  But keep in mind that is -- each interrogatory is a part of a larger document as well.  And I think that's very important.  That pertains to the question you asked me.  I think that's what I'm trying to answer with that.  So I think it's -- there's a --

Page 23

including the basis for the allegation that injury

includes the lost revenue from consumers and the

calculation of such loss.

Do you see that?

A.  I do see that.

Q.  And in the supplemental response, FLVS refers to

the expert reports prepared by Mr. Gallogly; do you see

that?

A.  I do see that.

Q.  And I understand that FLVS is relying on

Mr. Gallogly's report as to the calculation of -- or as

to a calculation of losses.  My question to you is, is

FLVS relying on Mr. Gallogly's report for the

proposition that K12's use of the Florida Online School

and FLOS has caused injury to FLVS including the basis

for the allegation that the injury includes the lost

revenue from consumers?

MR. LUTHER:  Object to form.

THE WITNESS:  I would say definitely we are

relying on Mr. Gallogly and his report, you know, to

address that issue with that Interrogatory 13.

BY MR. HOLLMAN:

Q.  You would agree, wouldn't you, Mr. Verghese, that

if a parent already has enrolled his or her child in

K12's program before there's any instance of what FLVS