**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

Case No. 6:20-cv-02354-GAP-EJK

FLORIDA VIRTUAL SCHOOL,

        Plaintiff,

v.

STRIDE, INC. f/k/a K12 INC. and
K12 FLORIDA LLC,

        Defendants.
_____/

**RUMBERGER, KIRK & CALDWELL, PA'S RESPONSE
AND INCORPORATED MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' AMENDED MOTION
<u>FOR RULE 11 SANCTIONS (DOC. 372)</u>**

RUMBERGER, KIRK & CALDWELL, P.A. ("Rumberger"), former counsel for Plaintiff, by and through its undersigned attorneys, and pursuant to Federal Rule of Civil Procedure 11, Local Rule 3.01, and this Court's *Order* dated January 31, 2024 (Doc. 377), responds in opposition to the *Amended Motion for Rule 11 Sanctions and Memorandum of Law in Support* (Doc. 372) (the "Subject Rule 11 Motion") filed by Defendants, STRIDE, INC., f/k/a K12 INC. ("Stride") and K12 FLORIDA LLC, as follows:

1

## I. RELEVANT PROCEDURAL HISTORY

On May 4, 2022, Rumberger attorneys, SUZANNE BARTO HILL, ESQ. and LEONARD J. DIETZEN, III, ESQ., entered their appearances herein as additional counsel for Plaintiff, FLORIDA VIRTUAL SCHOOL.[1] Rumberger appeared as counsel of record (i) *after* Plaintiff's Complaint (Doc. 1) had been filed, (ii) *after* the initial deadline to disclose experts expired (Doc 59); (iii) *after* Plaintiff's experts, Daniel Gallogly ("Gallogly") and Dr. Jeffrey Stec ("Stec"), had formulated their opinions and served their initial expert reports; (iv) *after* Plaintiff served its discovery requests seeking discovery of Defendants' nationwide financials (Doc. 118-2); (v) *after* Plaintiff moved to compel that discovery (Doc. 52); (vi) *after* Plaintiff filed a second motion to compel that discovery (Doc. 68); and (vii), importantly, *after* this Court ruled that Plaintiff was entitled to discovery of Defendants' nationwide financial information. (Doc. 75) (noting that "the Court has already found the Complaint to state 'plausible claims for nationwide relief'". *Id.* at 5.).

On March 1, 2023, Defendants filed their *Motion for Rule 11 Sanctions and Memorandum of Law in Support* (Doc. 137) (the "Original Rule 11 Motion") against Plaintiff and its attorneys of record at the time, including Rumberger. On March 15,

---

[1] SALLY R. CULLEY, ESQ. of Rumberger made her appearance in this case on behalf of Plaintiff on July 5, 2022.

2023, Rumberger filed Plaintiff's *Response in Opposition to Defendants' Motion for Rule 11 Sanctions (Doc. 137)* (Doc. 157) ("Response to Original Rule 11 Motion").

Pursuant to this Court's *Order* dated July 14, 2023 (Doc. 265), Rumberger withdrew from its representation of Plaintiff in this case. After Rumberger's withdrawal, on January 2, 2024, this Court entered its *Memorandum Opinion* (Doc. 369) in which it ordered that "[n]ow that the record is complete, Defendants may file an Amended Motion for Sanctions, *see* Docs. 137, 212, on or before January 19, 2024. Plaintiff may docket a response within fourteen days of Defendants' filing." (Doc. 369, p. 36).

On January 19, 2024, Defendants filed the Subject Rule 11 Motion and requested that this Court enter sanctions against, *inter alia*, Rumberger, under Federal Rule of Civil Procedure 11. In the Subject Rule 11 Motion, Defendants seek sanctions against Rumberger for "impos[ing] unnecessary burdens on Stride through discovery into its nationwide finances and also signing Plaintiff's response to Stride's original Rule 11 motion." (Doc. 372, n. 13). On January 31, 2024, this Court extended Rumberger's deadline to respond to the Subject Rule 11 Motion until March 4, 2024. (*See* Doc. 377). Accordingly, this response is timely filed.

## II. ARGUMENT

"Rule 11 is intended to deter claims with no factual or legal basis at all." *Davis v. Carl*, 906 F.2d 533, 538 (11th Cir. 1990). Its purpose is to reduce frivolous claims,

defenses, or motions, and to deter costly meritless maneuvers. *Massengale v. Ray*, 267 F. 3d 1298, 1302 (11th Cir. 2001). "[Rule 11] sanctions are reserved as punishment for those litigants who blatantly abuse the Court's resources – they will not be imposed lightly against every failing litigant." *Gelles v. Skrotsky*, 15 F. Supp. 2d 1293, 1297 (M.D. Fla. 1998). The "Court does not take motions for sanctions lightly and deplores the waste of time and money spent on issues that should and could have been resolved in another manner." *McMaham Secs. Co. L.P. v. FB Foods, Inc.*, No. 04-cv-1791-T-24TGW, 2006 WL 2092643, at *3 (M.D. Fla. July 27, 2006).

Three types of conduct warrant Rule 11 sanctions: filing a paper with "no reasonable factual basis" (Rule 11(b)(3)); filing a paper based on a legal theory with "no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law" (Rule 11(b)(2)); or filing a paper in "bad faith for an improper purpose" (Rule 11(b)(1)). *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1514 (11th Cir. 1991)). Rule 11 sanctions are therefore appropriate only in extreme cases where the plaintiff "tried to use a judgment against a non-existent party to collect from an unrelated non-party…" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 943–44 (11th Cir. 2022), or in the *Turner* case where the plaintiff alleged he was passed over for a promotion to a position that was filled by another employee when in fact the position remained

vacant. *See Turner v. Sungard Business Systems, Inc.*, 91 F.3d 1418, 1420 (11th Cir. 1996).

**A.    New Issues Raised in Defendants' Subject Rule 11 Motion Should Not Be Considered by this Court because the Subject Rule 11 Motion Was Not Served on the Parties in Compliance with Rule 11(c)(2)'s Strict Safe-Harbor Requirement.**

Federal Rule of Civil Procedure 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). **The motion must be served under Rule 5**, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." (emphasis added) The foregoing safe-harbor requirement set forth in Rule 11(c)(2) is mandatory, and a party's failure to comply with the same is fatal to a motion for sanctions under Rule 11. *See Huggins v. Lueder, Larkin & Hunter, LLC*, 39 F.4th 1342, 1345–46 (11th Cir. 2022) ("The Rule contains no timing requirement beyond its safe harbor provision, which gives a party 21 days to withdraw or correct any pleading or motion challenged by an opponent. So when a litigant identifies a filing that he believes violates Rule 11—say, a frivolous pleading—**he can draft a sanctions motion and serve it on the opposing party.** But he cannot file **that motion** just yet. Instead, **service of the motion** notifies the opposing party of the possible violation and starts the 21-day safe harbor clock. From there, three things can happen. First, if the

5

opponent withdraws or properly amends the challenged document, the proposed Rule 11 motion has served its purpose and cannot be filed. Second, if the court eliminates the opportunity to withdraw or correct the challenged filing by ruling on it before the safe harbor period expires, the same result occurs—the sanctions motion cannot be filed. Third, if the 21-day safe harbor period expires without action to cure the challenged filing or judgment on the issue from the court, the litigant may file the motion for sanctions.") (internal citations omitted) (emphasis added); *Meunier Carlin & Curfman, LLC v. Scidera, Inc.*, 813 F. App'x 368, 375 (11th Cir. 2020) ("A party seeking sanctions **must first serve its Rule 11 motion** on the opposing party— and allow 21 days for the offending party to cure the potential problem by withdrawing the offending paper, claim, or contention. Only if the problem remains uncorrected can a party then file its Rule 11 motion in court. The purpose of this safe harbor provision is to allow an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions.") (internal citations and quotation marks omitted) (emphasis added); *Milledge v. McClellan*, No. 3:20-CV-269-BJD-PDB, 2021 WL 9544884, at *1 (M.D. Fla. Mar. 23, 2021) ("Plaintiff moves the Court to impose sanctions against Defendant Espino's counsel under Rule 11(c) for making an alleged 'false contention' about Plaintiff's litigation history in Defendant Espino's motion to dismiss (Doc. 78). Plaintiff's motion is denied for Plaintiff's failure to comply with Rule 11's 'safe harbor provision.'");

6

*Hyman v. Borack & Assocs., P.A.*, No. 8:12-CV-1088-T-23TGW, 2012 WL 6778491, at *3 (M.D. Fla. Dec. 17, 2012), *report and recommendation adopted*, No. 8:12-CV-1088-T-23TGW, 2013 WL 68534 (M.D. Fla. Jan. 4, 2013) ("As the *O'Connell* decision discussed, **'[t]he requirement that the actual motion be served was deliberately imposed ... to ensure that the moving party understands the seriousness of [the] motion and [that it] will define precisely the conduct claimed to violate the rule.' *O'Connell v. Smith*, *supra*, 2008 WL 477875 at \*2. Therefore, BLG's failure to serve a copy of the actual motion for sanctions upon the plaintiff at least 21 days prior to its filing with the court warrants denial of the motion."** (emphasis added))

Here, the Subject Rule 11 Motion contains a new argument that was not advanced in the Original Rule 11 Motion, namely that Rumberger should be sanctioned because it signed Plaintiff's Response to the Original Rule 11 Motion. (*See* Doc. 372, n.12 and n.13). However, Defendants did not provide notice to Rumberger under Rule 11(c)(2) with regard to that particular argument, nor could Rumberger correct or withdraw that filing because it is no longer counsel of record for Plaintiff. *See Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010) ("When the attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining clear evidence of the violation, a party cannot move for sanctions under Rule 11 because the offending attorney no longer has the authority to correct or

withdraw the challenged pleading."). Accordingly, Rumberger cannot now be sanctioned for signing Plaintiff's Response to the Original Rule 11 Motion.

To the extent that Defendants' other arguments advanced in the Subject Rule 11 Motion are the same arguments advanced by Defendants in the Original Rule 11 Motion, such arguments were previously addressed in Plaintiff's Response to the Original Rule 11 Motion, which is hereby incorporated herein by reference.

**B.     Rule 11 Sanctions against Rumberger Are Not Warranted Based on Plaintiffs' Good-Faith Assertion that the Challenged Conduct Was "Literally False" by "Necessary Implication"**

In the Subject Rule 11 Motion, Defendants assert that Plaintiff's claims are frivolous primarily because there was no evidence of actual confusion and no evidence of monetary loss outside Florida justifying disgorgement of Defendants' non-Florida revenue.

A plaintiff suing for false advertising under Section 43(a)(B)(1) of the Lanham Act is entitled to recover the damages available under 15 U.S.C. § 1117, which include a defendant's profits. *See Ameritox, Ltd. v. Millennium Laboratories, Inc.*, No. 11-cv-775-T-24-TBM, 2014 WL 1456347, at *8 (M.D. Fla. April 14, 2014). While a plaintiff generally must prove that its damages were caused by the legally false statements of the defendant, the Second Circuit, and other courts, have held that in a false advertising case between direct competitors where literal falsity and deliberate deception are proven, courts will presume injury to the plaintiff supporting

an award of monetary damages. *See Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 260 (2d Cir. 2014); *see also North American Medical Corp. v. Axiom Worldwide, Inc.,* 522 F.3d 1211, 1227 (11th Cir. 2008) ("Proof of falsity is generally only sufficient to sustain a finding of irreparable injury when the false statement is made in the context of comparative advertising between the plaintiff's and defendant's products."); *Trilink Saw Chain, LLC v. Blount, Inc.,* 583 F. Supp. 2d 1293, 1321 (N.D. Ga. 2008) (acknowledging the Eleventh Circuit's presumption of irreparable harm when a false, comparative statement is made and concluding that "a presumption of causation and harm should apply to claims for actual damages when a defendant disseminates willfully deceptive, comparative advertising.").

In inviting a comparison of their respective educational service product offerings, Defendants' website advertisements necessarily imply that Plaintiff cannot check the same boxes favorably checked for Defendants. Such advertisements are particularly problematic because "[a] misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the consumer." *McNeilab, Inc. v. Am. Home Products Corp.,* 848 F.2d 34, 38 (2d Cir. 1988) (emphasis added). Moreover, a "'literally false' message may be either explicit **or 'conveyed by necessary implication' when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated."** *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck*

*Consumer Pharm. Co.,* 290 F.3d 578, 586–87 (3d Cir. 2002) (emphasis added). In such a case, where there is willfulness on the part of the defendant, courts have imposed a rebuttable presumption of causation and injury in fact. *Merck Eprova,* 760 F. 3d at 260.

Plaintiff and Rumberger as Plaintiff's counsel had a good-faith basis to believe that the presumption was warranted. Defendants' nationally accessible "About" section of its webpage touted to consumers the differences between the respective educational offerings of Defendants and Plaintiff: "**K12 vs. Competitors",** "**What makes K12-powered schools different from other online learning solutions like Connections Academy, FLVS, and Time4Learning?",** and "**What sets K12 apart?"** Then, following the statement "Learn more about K12 compared to other online learning solutions, like Connections Academy, FLVS and Time4Learning," Defendants included a "comparison checklist" listing online learning attributes that Defendants had, but that the others, including Plaintiff, purportedly did not. (*See* Doc. 1-1, p. 29; *see also* Doc. 157-1, 181:3-190:4, and Exs. 31 and 32 thereto). Where all boxes are checked for Defendants and none are checked for Plaintiff, certainly a plausible conclusion that a reasonable consumer might draw is that Defendants possessed each of the checked attributes while Plaintiff possessed none.

Despite none of the boxes being checked for Plaintiff, Defendants argued that no one could reasonably be misled into believing that Plaintiff was missing any of the important attributes set forth on the Checklist. (*See* Doc. 137, p. 4). In the foregoing described context, no expert opinion is necessary to argue in good faith that Defendants are at least implying to consumers that Plaintiff cannot similarly check all boxes. Why else would Defendants encourage consumers to "use this checklist to weigh your options"? (*See* Doc. 157-1, Ex. 32). In context, the clear, compelling and necessary implication is that should the consumer conduct his or her own due diligence, Plaintiff will suffer in comparison. Consumers could reasonably conclude that Defendants had already done the investigation and know that the result will favor Defendants – otherwise, why invite the comparison? The necessary implication, however, is contrary to the factually correct conclusion that none of the listed attributes set Defendants apart from Plaintiff because Plaintiff possesses the same attributes (*See* Doc. 157-2, 107:2-112:3; Doc. 157-3, 197:13-199:20; Doc. 157-1, 184:23-185:24). Based on the foregoing, Plaintiff had a good-faith basis to argue that the Checklist was literally false by necessary implication. *See Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 889 F. Supp. 2d 1304, 1315 (M.D. Fla. 2012).

**C.    Rule 11 Sanctions against Rumberger Are Unwarranted Given Rumberger's Role in this Case.**

Defendants cannot obtain sanctions against Rumberger under Rule 11, given Rumberger's role in the case. While Plaintiff's counsel of record, the bulk of

11

Rumberger's work related primarily to follow through on aggressively contested discovery matters. As a matter of law, Rumberger's participation in discovery matters during its representation of Plaintiff in this case is not sanctionable under Rule 11. *See Weaver v. Mateer & Harbert, P.A.*, 523 F. App'x 565, 568 (11th Cir. 2013) ("By its own terms, however, Rule 11 'does not apply to disclosures and discovery requests, responses, objections, and motions.' Fed.R.Civ.P. 11(d). Rather, sanctions for discovery abuses are separately provided for under Rule 37. Fed.R.Civ.P. 37.").

In the Subject Rule 11 Motion, Defendants exaggerate to the extreme the extent of Plaintiff's "far reaching discovery into Stride's competitively sensitive national financial information" and the "substantial and intrusive discovery burdens on Stride" in responding to same. (Doc. 372, pp. 2-3). In so doing, Defendants commit what they have accused Plaintiff of doing, i.e., creating a mountain out of a molehill. (Doc. 372, p. 1). Indeed, though there were significant and ongoing disputes between Plaintiff and Defendants regarding the production of financial discovery, the vast majority of the financial documents produced by Defendants related solely to its Florida schools, not nationwide information – and the reason for the ongoing disputes was because Defendants' initial production was incomplete, unreliable, and unresponsive to Plaintiff's requests. (*See* Doc. 120).

12

Furthermore, the vast majority of the financial documents produced by Defendants were reports that were run from their financial management systems (e.g., Balance Sheets, Income Statements, Transaction Detail Reports), and thus would not have required significant time to create. Any "competitively sensitive" information was protected via a strong Protective Order agreed to by the parties, which protected documents marked "Highly Confidential" from disclosure to employees of the parties (Doc. 61), though much of STRIDE, INC.'s financial information is publicly available anyway, given that it is a publicly-traded company (*see* http://investors.stridelearning.com/investors/default.aspx).

And finally, Rumberger's attorneys appeared in the case after the issue of whether financial discovery regarding Defendants' non-Florida revenue had been resolved. (*See, e.g.*, Docs. 52, 54, 65, 68, 69, 75). Rumberger's reliance on the Order requiring Defendants to produce nationwide financial discovery (Doc. 75) is reasonable and not sanctionable under Rule 11.

The Response to the Original Rule 11 Motion also addressed Rumberger's attorneys' advocacy on behalf of Plaintiff through March 15, 2023, the date that the Response was filed. Rumberger's attorneys remained as attorneys of record for Plaintiff in this case until July 14, 2023, i.e., approximately four months after the filing of the Response to the Original Rule 11 Motion. During those four months, Rumberger's role in this case was limited primarily to amending and correcting the

expert report of Plaintiff's damages expert, Gallogly[2], mostly by facilitating his integration of additional financial information obtained through discovery. *See Weaver*, 523 F. App'x at 568 ("By its own terms, however, Rule 11 'does not apply to disclosures and discovery requests, responses, objections, and motions.'"). At no point during Rumberger's representation of Plaintiff in this case was Rumberger involved with Plaintiff's survey expert, Stec[3].

Rumberger neither signed Plaintiff's response in opposition (Doc. 171) to Defendants' motion for summary judgment (Doc. 139) nor argued Plaintiff's response in opposition to Defendants' motion for summary judgment during the hearing on June 15, 2023. Nevertheless, as set forth more particularly above, Plaintiff had a good-faith basis to oppose Defendants' motion for summary judgment by arguing that Defendants' conduct was literally false by necessary implication (*see* Sec. II(A) *supra*), an argument that this Court did not reject (or directly address) in its *Order* (Doc. 261) dated July 10, 2023.

Further, without conceding same, "[w]hen [an] attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining clear evidence of the violation, a party cannot move for sanctions under Rule 11 because the offending

---

[2] Gallogy's original expert report (Doc. 273-1) was rendered on or about April 4, 2022, i.e., before Rumberger's attorneys' appearance in this case.

[3] Stec's expert report (Doc. 157-7) was rendered on or about April 4, 2022, i.e., before Rumberger's attorneys' appearance in this case.

attorney no longer has the authority to correct or withdraw the challenged pleading." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010) (emphasis added). Here, Rumberger withdrew from the case on July 14, 2023, before the trial of the remaining claims, before the record was complete, and before Defendants filed and served the Subject Rule 11 Motion. Accordingly, given Rumberger's limited involvement in the intervening four months after the filing of the Response to the Original Rule 11 Motion and before its withdrawal as counsel of record, Rumberger stands on the arguments set forth in the Response to the Original Rule 11 Motion.

### III. CONCLUSION

Based on the foregoing, Defendants have failed to satisfy their heavy burden of establishing entitlement to sanctions under Rule 11 against Rumberger. Consequently, this Court must deny the Subject Rule 11 Motion as to Rumberger.

Filed this 4th day of March 2024.

/s/ James S. Toscano
**James S. Toscano**
Florida Bar Number 0899909
**Michael D. Piccolo**
Florida Bar Number 1003505
**Lowndes, Drosdick, Doster, Kantor & Reed, P.A.**
215 North Eola Drive
Orlando, Florida 32802-2809
Telephone:  407-843-4600
jim.toscano@lowndes-law.com
michael.piccolo@lowndes-law.com
carol.anderson@lowndes-law.com
tina.althoff@lowndes-law.com
litcontrol@lowndes-law.com

*Attorneys for RUMBERGER, KIRK & CALDWELL, PA*

### Certificate of Service

I hereby certify that on the 4th day of March 2024, a true and correct copy of the foregoing was electronically filed with this Court and served on all attorneys of record.

/s/ James S. Toscano
**James S. Toscano**

16