**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

FLORIDA VIRTUAL SCHOOL,

        Plaintiff,

v.                                                      Case No:   6:20-cv-2354-GAP-NWH

K12, INC. and K12 FLORIDA, LLC,

        Defendants

---

**ORDER**

This cause came before the Court for consideration without oral argument on Defendants' Amended Sealed Motion for Rule 11 Sanctions. Doc. 372 (redacted version); Doc. 373. The Court has also considered the Responses in Opposition of Plaintiff and its various counsel. Doc. 378; Doc. 379; Doc. 380; Doc. 393.

## I.      Background

On December 22, 2020, Plaintiff Florida Virtual School ("Plaintiff"), an agency of the State of Florida which provides online educational services, filed suit against Defendants K12, Inc. and K12 Florida, LLC ("Defendants"), for-profit companies who likewise offer online educational services. Doc. 1. Plaintiff's Complaint alleged trademark infringement under the Lanham Act and the common law, in addition to claims for unfair competition, false advertising, and breach of contract. *Id.*, ¶ 1.

In its Complaint, Plaintiff alluded to the nationwide scope of the damages it sought. *See, e.g., id.*, ¶¶ 78 ("[Plaintiff's] marks are known to purchasers throughout the United States and are associated with FLVS's services."), 80 ("Defendants have used, *in interstate commerce*, marks that are identical to or confusingly similar to…") (emphasis added).

On December 8, 2021, during the discovery phase of this lawsuit, Plaintiff filed a motion to compel discovery from Defendants' business activities outside of Florida, expressly stating that its "claims against the Defendants are not limited solely to the State of Florida." Doc. 52 at 1. Plaintiff argued that it had "already discovered evidence of confusion outside Florida and expect[ed] that discovery w[ould] disclose substantial additional evidence of infringement, false advertising and other misconduct outside of the State of Florida." *Id.* at 2. After several briefings and a hearing, and over Defendants' firm objection, the Court granted, in part, Plaintiff's request to compel the production of Defendants' nationwide financial documentation. Doc. 75 at 5, 8; *see also* Doc. 54; Docs. 62-72.

The discovery period, which was extended on several occasions, finally closed on February 1, 2023.[1] Doc. 116 at 1; *see also* Doc. 82; Doc. 91. Defendants

---

[1] On March 10, 2023, the magistrate judge granted Defendants' motion for leave to amend their counterclaim and extend discovery "solely as to the new counterclaim" until May 12, 2023. Doc. 153. That narrow extension did not affect the general closure of discovery on the merits of

- 2 -

served Notice of their Rule 11 Motion on Plaintiff two days later, demanding it withdraw or correct its claims "for monetary loss outside of Florida" which it had "no good faith basis for continuing to maintain." Doc. 373-2 at 10. On March 1, 2023, Defendants filed their Motion for Rule 11 Sanctions, arguing that Plaintiff "refused to withdraw claims for damages outside of Florida for which it lack[ed] evidentiary support within 21 days after [Defendants'] request that it do so." Doc. 137 at 1. On March 15, 2023, Plaintiff filed a Response in Opposition countering that Defendants were "repurpose[ing] summary judgment arguments on damages into a Rule 11 motion."[2] Doc. 157 at 1.

After ordering Defendants to refile a clean, organized version of their motion for Rule 11 sanctions, the Court noted that it would resolve the motion after the trial. Doc. 211; Doc. 293. Upon conclusion of the bench trial on the merits, and the completion of the record, the Court allowed Defendants to file an Amended Motion for Sanctions. Doc. 369 at 36. On January 19, 2024, Defendants filed their Amended Sealed Motion for Sanctions. Doc. 372; Doc. 373. Plaintiff and its counsel filed their

---

Plaintiff's claims which occurred on February 1, 2023. *See* Doc. 116.

[2] The Response was signed by one of Plaintiff's many counsel of record, Sally R. Culley of Rumberger, Kirk & Caldwell, P.A, and also included her colleague, Suzanne Barto Hill, and attorneys from Luther Law PLLC, Bishop & Mills PLLC, and Plaintiff's General Counsel staff in the signature block. Doc. 157 at 19; *see generally* Docket (listing 13 attorneys as counsel of record in this matter).

responses soon after and then docketed their notice of interlocutory appeal to the Eleventh Circuit. *See* Doc. 378; Doc. 379; Doc. 380; Doc. 381; Doc. 393.

On February 28, 2024, the Court, in the interest of judicial economy, granted Plaintiff's motion to stay the case and defer ruling on Defendants' sanctions motion pending resolution of their appeal. Doc. 386 at 2-4. On January 15, 2026, the Eleventh Circuit affirmed this Court's rulings and issued its Mandate on March 27, 2026. *See* Doc. 403; Doc. 404; Doc. 405. The matter is ripe for adjudication.

## II.      Plaintiff's Representation

Several of Plaintiff's counsel filed individual Responses to Defendants' Rule 11 Motion for Sanctions, arguing why each should be excused from liability. *See* Doc. 379; Doc. 380; Doc. 393. Accordingly, it is appropriate to take account of the revolving door of Plaintiff's representation throughout this case.

On December 22, 2020, lead counsel Stephen Luther ("Luther") of Luther Law PLLC ("LLP") signed and filed Plaintiff's Complaint, along with Stephanie M. Marchman, Thomas C. McThenia, Jr., and Michael J. Colitz III of Gray Robinson, P.A. ("Gray Robinson").[3] Doc. 1; *see also* Docket. On March 10, 2021, Luis Remigio Guzman ("Guzman") filed a notice of appearance as Plaintiff's Assistant General

---

[3] Mayanne Downs, of Gray Robinson (at the time), also appeared in this case. *See, e.g.*, Doc. 74 (signing and filing Gray Robinson's Response to Defendants' motion to disqualify Gray Robinson); *see also generally* Docket.

- 4 -

Counsel.[4] Doc. 18. David J. D'Agata ("D'Agata"), Plaintiff's General Counsel, filed a notice of appearance on October 11, 2021. Doc. 44.

On March 15, 2022, Defendants filed a motion to disqualify Gray Robinson as co-counsel for Plaintiff based upon one of their firm's attorney's prior representation of Defendants during the first round of litigation between the parties which commenced in 2011. *See* Doc. 73. Upon the magistrate judge's recommendation, the Court granted Defendants' motion on May 4, 2022, thereby disqualifying Gray Robinson and the above-referenced attorneys from the case.[5] Doc. 84; Doc. 85. Subsequently, on May 4th, May 6th, and July 5th, Suzanne Barto Hill, Leonard J. Dietzen, II, and Sally Rogers Culley ("Culley") of Rumberger, Kirk & Caldwell ("Rumberger") appeared (respectively) on behalf of Plaintiff. Doc. 86; Doc. 87; Doc. 88.

The case then continued through discovery, which came to a close on February 1, 2023. *See* Doc. 116 at 1. Also on February 1, 2023, Thomas Edward Bishop ("Bishop") of Bishop & Mills, PLLC ("B&M") (at the time) filed a notice of

---

[4] According to his CM/ECF profile, Guzman is now employed by Byrd Campbell, P.A. *See* Docket. Nevertheless, he remains listed as an "Attorney to be Noticed" on the docket and has never sought withdrawal. *Id.*; *see* Local Rule 2.02(c).

[5] Defendants' do not seek sanctions against Gray Robinson or its attorneys because they were disqualified and withdrew from the case before they served their Rule 11 motion. Doc. 373 at 1, n.1.

appearance as counsel for Plaintiff. Doc. 126. Defendants' filed the first iteration of the instant sanctions motion on March 1, 2023. *See* Doc. 137.

On March 6, 2023, B&M's Katherine Roth ("Roth") was added as an attorney for Plaintiff. Kyle William Mason ("Mason"), also of B&M, filed a notice of appearance on behalf of Plaintiff on June 9, 2023.[6] Doc. 236. However, on July 12, 2023, the Rumberger attorneys filed an unopposed motion to withdraw as counsel for Plaintiff, with its permission, and requested to be terminated from receiving docket notices. Doc. 264. The Court granted that motion on July 14, 2023.[7] Doc. 265.

As it stands today, Plaintiff continues to be represented in this case by Luther, of LLP, Bishop and Roth, of B&M, D'Agata, Plaintiff's General Counsel, and Guzman, of Byrd Campbell, PA. *See* Docket.

## III.    Legal Standard

An attorney who files a pleading in federal court "certifies that he or she has conducted a reasonable inquiry and that the pleading is well-grounded in fact, legally tenable, and is not presented for any improper purpose." *Baker v. Alderman*,

---

[6] On April 8, 2026, the Court granted Mason's Unopposed Motion to Withdraw as Counsel. *See* Doc. 408; Doc. 409. However, his withdrawal at this stage of the case does not impact any liability for sanctions associated with his representation of Plaintiff in these matters.

[7] However, Ms. Culley reappeared in the case on behalf of Rumberger on January 30, 2024, to request an extension of time to file a response to the sanctions motion. Doc. 375. Rumberger attorneys James Steven Toscano and Michael David Piccolo also filed notices of appearance on February 28, and March 4, 2024, respectively for the purposes of responding to the instant Rule 11 sanctions motion.Doc. 388; Doc. 392; *see also* Doc. 393.

158 F.3d 516, 524 (11th Cir. 1998); Fed. R. Civ. P. 11. "The objective standard for testing conduct under Rule 11 is 'reasonable under the circumstances' and 'what was reasonable to believe at the time' the pleading was submitted." *Baker*, 158 F.3d at 524. Courts consider whether a party's claims are objectively frivolous and whether the person who signed the pleadings should have been aware they were frivolous. *Id.*

"Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021) (quoting *Baker*, 158 F.3d at 524).

"Ordinarily [Rule 11] motion[s] should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely." Fed. R. Civ. P. 11 advisory committee note of 1993; *see Peer v. Lewis*, 606 F.3d 1306, 1313 (11th Cir. 2010). "Given the 'safe harbor' provisions…[in Rule 11(c)(2)], a party cannot delay serving its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)." *Id.* "The rationale for this rule is simple: 'if the court disposes of the offending contention within the 21–day safe-harbor period after service, it becomes impossible under the provision of Rule 11(c)(2) to file the

motion or otherwise present it to the court.' " *Peer*, 606 F.3d at 1313 (quoting 2 James Wm. Moore et al., Moore's Federal Practice § 11.22[1][c] (3d ed. 2010)).

### IV.    Analysis

#### A. Safe Harbor

"Rule 11 motions are collateral to an action and are not barred if filed after a dismissal order, or after entry of judgment. Although the timing of sanctions rests in the district judge's discretion, Rule 11 sanctions normally will be determined at the end of litigation." *Baker*, 158 F.3d at 523.

Plaintiff contends that Defendants have procedurally erred in failing to abide by Rule 11(c)(2)'s safe harbor provision because their Amended Sealed Motion for Rule 11 Sanctions is not "*the same* sanctions motion" that was served upon it on February 3, 2023.[8] Doc. 378 at 16 (emphasis original). Indeed, it complains that "[t]he vast majority of these new facts and arguments rely on events which actually took place months *after* [Defendants] served their motion." *Id.* at 17 (emphasis original). But *of course* Defendants have made new arguments deriving from Plaintiff's reaction (or lack thereof) to being served with their Rule 11 motion on

---

[8] Plaintiff concedes that the initial service of Defendants' Motion for Sanctions on February 3, 2023, satisfied Rule 11's safe harbor provision. *See* Doc. 378 at 17; *Peer v. Lewis*, 606 F.3d 1306 (11th Cir. 2010).

February 3rd—the Court expressly invited them to do so by allowing Defendants to amend their motion with the benefit of a complete record.[9] *See* Doc. 369 at 36.

Plaintiff's inaction in response to Defendants' Rule 11 motion is the very basis of Defendants'—and every other party seeking Rule 11 sanctions—prayer for relief. *See* Fed. R. Civ. P. 11(c)(2). Plaintiff's argument is frivolous and, like the rest of its case, only further evinces it and its counsel's bad faith penchant for feigning "quibbles" with self-evident legal principles. *See, e.g.*, Doc. 287 at 6 (recognizing that Plaintiff's damages expert "simply ignore[d] the critical element of causation"). Moreover, any suggestion that allowing Defendants to amend their motion and raise new arguments was prejudicial or improper was cured by the Court's allowance for Plaintiff and its counsel to file (*four*) renewed responses. *See Baker*, 158 F.3d at 523 ("The reasonableness of the filing period is determined by reviewing the prejudice to the plaintiff.").

### B. Plaintiff's Claim for Nationwide Damages

---

[9] Plaintiff and its counsel's arguments that Defendants "failed to serve [their] amended Rule 11 motion on [Plaintiff]" and that the Court already "disposed of the challenged filings" are frivolous on their face. *See* Doc. 378 at 17. The safe harbor (obviously) does not apply to minor amendments made at the conclusion of the case—these contrived arguments require no further analysis by the Court. *See Baker v. Alderman*, 158 F.3d 516, 523 (11th Cir. 1998) ("Although the timing of sanctions rests in the district judge's discretion, Rule 11 sanctions normally will be determined at the end of litigation."); Doc. 369 at 36 ("Now that the record is complete, Defendants may file an Amended Motion for Sanctions.").

Defendants' Motion argues that Plaintiff should have known its pursuit of nationwide damages for its infringement and false advertising claims was baseless when the Complaint was filed and its continued prosecution of them was clearly sanctionable following the close of discovery. Doc. 373 at 20-25. Plaintiff counters that it had good faith bases for bringing and maintaining those claims, but this Court has already found otherwise. *See* Doc. 295 at 5 ("Plaintiff's argument regarding the relevancy of Defendants' statewide and nationwide profits is simply meritless."); Doc. 369 at 36, n. 33 ("[I]t is notable that this case proceeded to trial after years of contentious litigation even though Plaintiff suffered no damage by reason of Defendants' conduct.").

In several instances, Plaintiff and its counsel attempt to relitigate the matter of whether they presented sufficient evidence of confusion outside of the state of Florida during the case to justify their trademark and false advertising claims for nationwide damages. *See* Doc. 378 at 3-15; Doc. 393 at 9-11. But the Court has already determined, on multiple occasions, that they did not.[10] *See, e.g.*, Doc. 261 at 13 ("There is simply no evidence in the record that these statements [in the checklist] are literally false."); Doc. 287 at 6 (as far back as August 25, 2023, the Court stated

---

[10] Remarkably—and emblematic of their belligerent prosecution of this case—in their filing, Rumberger *again* attempts to convince the Court than an innocuous comparison checklist was "literally false." Doc. 393 at 8-11.

in no uncertain terms that "Plaintiff has *zero* evidence of actual damages"). Indeed, the Court characterized Plaintiff's argument that a few flimsy instances of confusion were sufficient to show actual damages as "sophomoric." Doc. 306 at 2-3. And because the Eleventh Circuit has affirmed the Court's holdings in this case, it need not repeat itself here. *See* Doc. 403; Doc. 405.

Plaintiff's remaining arguments in opposition ultimately all stem from the contention that the sanctions motion is based on a "faulty premise"—that because it sought disgorgement, which does not require proving actual damages, the fact that it had no evidence of nationwide damages did not render its claims frivolous. *See* Doc. 378 at 3-4. But this argument has always been "simply meritless." *See* Doc. 295 at 5.

True, the equitable remedy of disgorgement operates by "shifting the burden of proving economic injury off the **innocent party**, and places the hardship of disproving economic gain onto the infringer." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019) (emphasis added). The trouble for Plaintiff is that it was never the "innocent party." *See id.*; Doc. 369 at 35-36. This Court warned Plaintiff at every step that it was pursuing claims for which it had presented no evidence of damages or harm. *See, e.g.*, Doc. 306 at 3 ("[T]he Court has not seen one sentence that genuinely attempts to demonstrate or calculate actual damages."). Instead, to this day Plaintiff continues to advocate for the proposition

- 11 -

that a trademark owner has the right to relentlessly pursue claims for which it has no evidence simply because "a Plaintiff need only prove Defendants' sales before the burden shifts to Defendants to provide their other expenses and other deductions for disgorgement." Doc. 378 at 5 (internal quotations and citations omitted).

Proof of damage, however, is an essential element of a trademark claim. *See, e.g.*, *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007) ("As part of its case-in-chief, Optimum was required to establish that HCA's alleged Lanham Act violations proximately caused it to suffer monetary damages."); *Hard Candy*, 921 F.3d at 1353 ("The primary limiting principle is that the damages may not be 'speculative.' "). Although Plaintiff may elect the remedy of disgorgement of Defendants' profits, that does not negate the essential element of proof that Plaintiff suffered economic harms by reason of Defendants' trademark infringement. *See id.* Here, Plaintiff had no evidence of any injury, much less injury on a nationwide basis.[11]  *See, e.g.*, Doc. 287 at 6; Doc. 369 at 36, n.33.

---

[11] Plaintiff contends, without *anything* more, that it "need not prove any form of actual injury outside of Florida to seek disgorgement of [Defendants'] non-Florida profits." Doc. 378 at 5. In rejecting *Plaintiff's* faulty premise years ago, however, the Court clarified that Plaintiff's penchant for duplicitous briefing "**does not open the door to revenue that is unrelated to Defendants' allegedly infringing use** of the name 'Florida Online School.' " Doc. 287 at 6 (emphasis added); *see also, e.g.*, Doc. 369 at 32-3 ("Defendants only market [nationally] under their

Plaintiff's various counsel steadfastly defend their representation as vigorous advocacy on behalf of their client's interests. *See* Doc. 379 at 9; Doc. 393 at 1011, 13-15; *see generally* Doc. 380. But a lawyer's duties to his or her client are not without limitation:

> This explanation counts for little: a lawyer's duties as a member of the bar—an officer of the court—are generally greater than a lawyer's duties to the client. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993) **("An attorney's duty to a client can never outweigh his or her responsibility to see that our system of justice functions smoothly. This concept is as old as common law jurisprudence itself."**); *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1327 (11th Cir. 2002) ("Independent judgment is an essential ingredient of good lawyering, since attorneys have duties not only to their clients, but also, as officers of the court, to the system of justice as a whole.") (internal quotation marks omitted)).

*Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1246, n.7 (11th Cir. 2009) (emphasis added).

Plaintiff's contentions that Defendants' nationwide profits were relevant to any ultimate damages or disgorgement analysis, despite exhaustive discovery eliciting no evidentiary support for them, were—at least from the end of discovery onwards—baseless. *See* Doc. 373 at 11-13. Plaintiff and its counsel's continued

---

parent K12 brand—they do not market Florida Online School.").

pursuit of these claims to trial, for which there was neither reasonable evidentiary basis nor legal theory to support, constitutes bad faith and a violation of Rule 11.[12]

By continuing to pursue nationwide disgorgement of Defendants' profits, "Plaintiff[ and its] lawyers showed little concern for the district court's time and energy and no courtesy to [their] fellow lawyers." *Id.* "[T]his conscious disregard for lawyer-to-lawyer collegiality and civility caused (among other things) the judiciary to waste significant time and resources on unnecessary litigation and stood in stark contrast to the behavior expected of an officer of the court." *Id.* at 1245 (footnote omitted).

### C. *Allocation of Liability*

"Sanctions may be imposed on the attorney, law firm, or party if Rule 11 is violated, the offending party is provided with an opportunity to withdraw the objectionable pleading and fails to do so, and a motion for sanctions is filed with the court." *Lee v. Mid–State Land & Timber Co., Inc.*, 285 F. App'x. 601, 608 (11th Cir.2008) (citing Fed. R. Civ. P. 11(c))[13]; *see also Bus. Guides, Inc. v. Chromatic Commun. Enterprises, Inc.*, 498 U.S. 533, 543 (1991) ("The certification requirement now

---

[12] As the Court stated previously, Plaintiff's "prosecution of this lawsuit seems more akin to a trademark bully harassing a competitor than a party seeking reasonable redress for…harm." Doc. 369 at 36, n.33.

[13] The Court recognizes that this is an unpublished case and therefore is relied upon only as persuasive authority.

mandates that *all* signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings.") (internal quotation and citations omitted). Indeed, "Rule 11 explicitly contemplates imposition of sanctions against a party: [i]If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, <u>or party</u> that violated the rule or is responsible for the violation." *Johnson v. 27th Avenue Caraf, Inc.*, 9 F. 4th 1300, 1315 (11th Cir. 2021) (emphasis original).

Rumberger and B&M filed separate motions arguing that their firms and attorneys should not be covered by Defendants' Motion because of the timing of their representation. *See* Doc. 379; Doc. 393. However, because each played a significant role in defending and purporting to legitimize the sanctionable conduct in this case (despite ample opportunity to conduct themselves professionally), it is reasonable for each to share in its liability.

### 1. Rumberger, Kirk & Caldwell

Rumberger first complains that the Motion is procedurally deficient because it contains new argument—"namely that Rumberger should be sanctioned because it signed Plaintiff's Response to the Original Rule 11 Motion." Doc. 393 at 7. Though typical of Plaintiff's counsel's posture throughout this matter, this circular logic will not prevail. To put it simply, *of course* that argument is "new" where it did not exist

in the first instance (Rumberger was counsel of record at the time and for another five months after the sanctions motion was served), but it is not a new *substantive* ground for sanctions and is (obviously) irrelevant to any purported procedural deficiency.

Next, and instead of addressing the substance of the sanctions motion against it, Rumberger attempts to relitigate its rejected position that Defendants' checklist constitutes false advertising. *See* Doc. 393 at 8-11. It does not. Indeed, this Court found that it was *Plaintiff's* argument regarding the checklist that was "based upon a misleading premise."[14] Doc. 261 at 8. Regardless, after discovery Plaintiff was aware that Defendants did not even market this checklist nationally so they had no basis to continue advocating for nationwide damages. *See* Doc. 369 at 32-33.

Regarding its participation in this case, Rumberger (guardedly) admits that its primary role was to "follow through on aggressively contested discovery matters"—to include the dispute over Defendants' nationwide financial information.[15] Doc. 393 at 12. As recognized *supra*, Rumberger and its counsel were

---

[14] This finding was affirmed by the Eleventh Circuit. *See* Doc. 404; Doc. 405.

[15] Rumberger argues it was reasonable to rely on the Court's order requiring Defendants to produce nationwide financial discovery, which was litigated before it signed on as counsel for Plaintiff. Doc. 393 at 13. While it may have been reasonable to rely on the Court's order at the outset, by the close of discovery Rumberger was aware that there was no evidentiary support for these nationwide damages claims but chose to continue pursuing and defending them anyway, so this distinction is unavailing. *See, e.g.,* Doc. 157.

intricately involved in this case for over a year, beginning in May 2022, and including the close of discovery and initial response to Defendants' Rule 11 Motion—which included a steadfast defense of the validity of Plaintiff's continued pursuit of damages suffered outside Florida. *See* Doc. 157 (Plaintiff's initial Response to Defendants' Rule 11 Motion was signed by Ms. Culley of Rumberger). Moreover, and in spite of this Court's conclusions having been affirmed by the Eleventh Circuit, Rumberger *continues* to assert that there is sufficient evidence to support the nationwide damages claims. Doc. 393 at 8-11. In short, Rumberger has not demonstrated that it should be excused from liability for the sanctionable conduct outlined by the Court.

### 2. Bishop & Mills

B&M argues that its representation only began two days before Plaintiff was served with the Rule 11 motion and, thus, it "cannot be sanctioned for the actions of other attorneys at other law firms years before [B&M] became involved in this matter." Doc. 379 at 6-7. But B&M's contention ignores the fact that Bishop not only acted as lead trial counsel, but he even authored the initial correspondence in response to Defendants' motion for sanctions on February 24, 2023, in which he stated that Plaintiff "will be prepared to adduce evidence to support its damages claims in the upcoming trial"—despite having had three weeks to learn that no evidence for nationwide damages had been produced in discovery. *See* Doc. 373-2.

- 17 -

Indeed, Bishop still appears to be taking a lead in this litigation and is still contending that there was evidence to support Plaintiff's frivolous nationwide damages claims. *See* Doc. 379 at 3; Doc. 378; Doc. 406.

Notwithstanding the litany of summary judgment filings, *Daubert* motion pleadings, and other filings that Bishop and B&M signed, their suggestion that their role in litigating these claims to trial should be excused simply because (some of) the conduct underlying the Rule 11 motion occurred before they signed on is troubling. *See Baker*, 158 F.3d at 524. Taken to its logical conclusion, B&M advocates for the position that hired guns for trial need not conduct the professional diligence that all lawyers must engage in prior to and throughout the representation of their client.

In this case, it is especially startling that—only two days into signing up for this case, B&M was faced with a Rule 11 motion for sanctions. By agreeing to respond in opposition and carry this case forward, B&M did so with eyes wide open to the potential risks that they could be advocating for sanctionable positions. And that is precisely what Bishop and his colleagues at B&M proceeded to do through the end of the trial and appeal.

B&M also argues, without any legal authority, that Roth and Mason should be excluded from liability because they did not receive notice that Defendants personally sought sanctions against them in the initial service of the Motion and

they merely assisted other counsel. *See* Doc. 379 at 12-13. But B&M concedes that Roth examined a witness at trial and both attorneys' names appeared in the signature block of numerous, if not all of, B&Ms filings. *See, e.g.*, Doc. 302 (the parties' Joint Pretrial Statement containing Roth and Mason in the signature block as Plaintiff's counsel of record); *see also Bus. Guides, Inc.*, 498 U.S. at 543. Moreover, for the reasons explained above, both Roth and Mason (like Bishop) knew when they agreed to sign on to this case that a Rule 11 motion was coming down the pipeline. *See supra* at 6; Doc. 151 at 10. The claim that they did not receive notice that Defendants' Rule 11 motion could apply to them is frivolous. *See, e.g.*, Doc. 373-2 at 10 (Defendants' initial service of their Rule 11 Motion warning that if Plaintiff did not withdraw its nationwide damages allegations that it would file the motion "against FLVS and its counsel…").

### 3. Florida Virtual School's In-House Counsel

In a footnote, Plaintiff argues that its in-house counsel should be excused from these sanctions. Doc. 378 at 19, n.4. Confusingly, however, Plaintiff's argument in support of that proposition consists of affirming that D'Agata and Guzman "appear[ed] on behalf of their client, pariticipate[d] in litigation strategy, and assist[ed] with discovery" and that they had every right to "represent [their] client." *Id.* D'Agata and Guzman's signatures appear in the signature block of nearly every filing as Plaintiff's counsel of record and they affirmatively noticed their

appearances in this case. *See supra* at 4-5. As recognized above, Rule 11 "mandates that *all* signers consider their behavior in terms of the duty they owe to the court system." *Bus. Guides, Inc.*, 498 U.S. at 543 (emphasis original). D'Agata and Guzman do not contest that they actively and substantially participated in litigating this case; they cannot now claim to be innocent sideline observers. *See Bus. Guides, Inc.*, 498 U.S. at 543; *Johnson*, 9 F.4th at 1315.

### 4. Luther Law

No party has advocated for the exclusion of Luther or LLP and, finding no cause to do so, they will share in the liability for this conduct, jointly and severally, along with Plaintiff (and its in-house counsel), B&M (and its attorneys) and Rumberger (and its attorneys).[16]

### V.    Conclusion

Accordingly, it is **ORDERED** that Defendants' Motion for Rule 11 Sanctions is hereby **GRANTED**.

---

[16] Luther and LLP filed a separate Response to Defendants' Rule 11 Motion for Sanctions but generally argued in Plaintiff's defense—Luther made no attempt to distinguish himself or LLP from liability for this conduct. *See* Doc. 380. Instead, Luther's Response contends that granting Defendants' motion for sanctions would "have a severe chilling effect on legitimate trademark advocacy." *Id.* at 6-7. But the Court does not share his concerns. Indeed, this case *should* have a chilling effect on the style of *illegitimate* trademark advocacy that has been on display in this case. *See* Doc. 369 at 36, n. 33.

Florida Virtual School, David J. D'Agata, Luis Remigio Guzman, Luther Law PLLC, Stephen Luther, Rumberger, Kirk & Caldwell, Suzanne Barto Hill, Leonard J. Dietzen, II, Sally Rogers Cully, Bishop & Mills, PLLC, Thomas Edward Bishop, Katherine Roth, and Kyle William Mason are **JOINTLY AND SEVERALLY LIABLE for monetary sanctions under Rule 11** pursuant to their bad faith pursuit of nationwide damages after discovery yielded no supporting evidence.

**Defendants shall submit an application**, with supporting documentation, for the attorney's fees and costs related to the issue of nationwide damages sought pursuant to this Order, in addition to those incurred prosecuting the instant motion for sanctions, **to Plaintiff for review on or before April 24, 2026**.

The parties are hereby **DIRECTED to confer** regarding Defendants' application and submit their stipulations and any of Plaintiff's unresolved objections to the Court, in accordance with Local Rule 7.01(c), **on or before May 4, 2026.**

**DONE** and **ORDERED** in Orlando, Florida on April 9, 2026.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

- 21 -

Copies furnished to:

Counsel of Record
Unrepresented Parties